UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                              Chapter 11

E.S. BANKEST, L.C.,                                 Case No. 04-17602-BKC-AJC

    Debtor.
_____/

LEWIS B. FREEMAN, Responsible Officer
for the Reorganized Debtor E.S. Bankest, L.C.,
a Florida limited liability corporation,

    Plaintiff,                                  Adv. Pro. No. 06-1220-BKC-AJC-A
v.

BDO SEIDMAN, LLP, BDO INTERNATIONAL
B.V., SANDOR LENNER and KEITH
ELLENBERG

    Defendants.
_____/

## MOTION OF DEFENDANTS BDO SEIDMAN, LLP AND
## SANDOR LENNER TO DISMISS ADVERSARY COMPLAINT

Defendants BDO Seidman, LLP ("BDO") and Sandor Lenner (together, the "BDO

Seidman Defendants"), hereby move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure, as incorporated into Rule 7012 of the Federal Rules of Bankruptcy

Procedure, and to the Private Securities Litigation Reform Act (15 U.S.C. § 78u-4, *et seq.*)

("PSLRA"), to dismiss the Adversary Complaint of Lewis B. Freeman, Responsible Officer (the

"Responsible Officer") for the Reorganized Debtor E.S. Bankest, L.C. ("Bankest" or the

"Debtor"). For the reasons stated below, the Complaint against the BDO Defendants should be

dismissed in its entirety.

## PRELIMINARY STATEMENT

This Adversary Proceeding arises from a conspiracy and pervasive fraud involving much of the Debtor's management and its principal clients.  Prior to August, 2003, the Debtor purportedly engaged in the business of factoring accounts receivable.  (Adv. Comp. ¶ 17).  For most of its existence, the Debtor was 50% owned by Espirito Santo Bank ("Espirito Santo") and 50% owned by Bankest Capital Corporation ("BCC").  (*Id.* ¶ 16).  Espirito Santo was also charged with soliciting Espirito Santo's banking customers to purchase the Debtor's debentures.  (*Id.* ¶ 19).  The Responsible Officer contends that the pervasive fraud commenced at the very beginning of the Debtor's creation as a separate entity.  (*See id.* ¶ 2, 22).

A main purpose of the fraud and conspiracy was to conceal its existence from, among others, the BDO Seidman Defendants.  The BDO Seidman Defendants were the Debtor's outside auditors.  (Adv. Comp. ¶ 1).  Between 1999 and 2003, the BDO Seidman Defendants conducted audits and tests of the Debtor's year-end financial statements to determine whether they could provide reasonable assurance that the financial statements were not materially misstated.  (Adv. Comp. ¶ 108).

Because of the pervasive fraud, BDO did not detect during its audits that much of the Debtor's accounts receivable were fictitious.  Purchasers of the Debtor's debentures and a lender, as well as their collateral agent Banco Espirito Santo International Ltd. ("BESIL"), are currently pursuing a malpractice claim against BDO in Florida State Court seeking $170 million in purported damages relating to the debentures purchased and loans issued to the Debtor (the "Florida State Action").  Trial of the Florida State Action has been ordered to commence in September, 2006 to enable BDO to complete its fact and expert discovery.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

After years of threats, this Adversary Proceeding was filed on the heels of the Florida State Court's trial setting order, and will require BDO to engage in discovery and relevant motion practice at the same time it is preparing for trial in the Florida State Action. By this Adversary Proceeding, the Debtor, through its Responsible Officer seeks to recover the same $170 million sought by BESIL in the Florida State Action—namely, monies provided to the Debtor by debenture purchasers and a lender that remain unpaid.

The Adversary Complaint asserts three claims against the BDO Seidman Defendants: (1) professional malpractice (Count I); (2) aiding and abetting breach of fiduciary duty (Count IV); and (3) violation of federal securities laws under 15 U.S.C. § 78j(b) and SEC Rule 10b-5(b) (Count V).[1] The only purported injury to which the Responsible Officer points is the nascent theory of "deepening insolvency" of the Debtor relating to the $170 million debt it purportedly incurred. (Adv. Comp. ¶ 22).

As demonstrated below, the Adversary Complaint should be dismissed in its entirety. In the first instance, the Responsible Officer lacks standing because he is unable to demonstrate that the Debtor suffered "injury in fact" under the case and controversy requirements of the United States Constitution. Indeed, the injury to the Debtor alleged on the face of the Adversary Complaint is illusory because (1) the Debtor served as a conduit for theft by certain of its management, and (2) the Debtor was an illegitimate and irreparable entity from its creation, and therefore its insolvency could not have been deepened by any action or omission by the BDO Seidman Defendants.

Separate from the Responsible Officer's standing, the Adversary Proceeding should be also dismissed because the Court lacks subject matter jurisdiction. The Adversary Complaint

---

[1] The Adversary Complaint asserts two additional claims against defendant BDO International B.V. for vicarious liability (Count II), and for violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.210 et seq. (Count III).

asserting purported damages from a pre-petition relationship between BDO and the Debtor was filed only *after* the Debtor's Plan was confirmed. This Adversary Proceeding is decidedly not within the Court's core bankruptcy jurisdiction. Moreover, as a result of Plan confirmation, the Court's subject matter jurisdiction over matters "related" to the Debtor's chapter 11 case has been curtailed as a matter of law, and limited to matters where there is a *close nexus* to the bankruptcy plan or proceeding, *as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan.* This Adversary Proceeding has nothing to do with the Debtor's Plan.

Finally, the Court should dismiss the purported federal securities claim (Count V) because the Adversary Complaint fails to meet the heightened pleading standard for such claims mandated by the PSLRA, 15 U.S.C. 78u-4, *et seq.* In particular, the Adversary Complaint fails to allege with the requisite specificity that the BDO Seidman Defendants conducted their audits with fraudulent intent in connection with the sale of the Debtor's debenture notes. And in any event, the injury alleged in the Adversary Complaint arising from the Debtor's placement of debenture notes and the subsequent theft of the proceeds of those notes is not remediable under the federal securities laws.

## **FACTUAL BACKGROUND**

1.     The facts relevant to this motion to dismiss are based upon facts asserted in the Adversary Complaint and facts over which the Court may take judicial notice. The facts are, therefore, presumed true for purposes of this motion only.

2.     As alleged in the Adversary Complaint, between 1998 and 2003 the Debtor purported to be engaged in the business of factoring accounts receivable. (Adv. Comp. ¶¶ 16-17). The Debtor raised money that was earmarked to be used to purchase accounts receivable by

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

issuing debentures, which it solicited and sold through Espirito Santo as placement agent. (*Id.* ¶ 19). The Debtor also borrowed money through a bank line of credit. (*Id.* ¶ 20). Despite owning 50% of the Debtor, appointing 50% of its managers, and being in exclusive control over the placement of the Debtor's debenture notes, Espirito Santo somehow "missed" the fact that its subsidiary was being used as a conduit for a massive fraud. (*Id.* ¶¶ 16, 18, 19).

3.      Indeed, the Adversary Complaint alleges that, from inception, virtually all of the Debtor's business was fictitious and designed to steal money from lenders and debenture purchasers through the Debtor. The Adversary Complaint contends that during the Debtor's five years of existence "virtually all" of the $1 billion in receivables posted as collateral for money raised "did not exist" and were "fake". (Adv. Comp. ¶¶ 2, 4, 27, 39, 45, 46, 54, 57, 109). During the same period, "[t]he Capital Officers used a series of techniques to create false financials reflecting nonexistent accounts receivables." (Adv. Comp. ¶ 23). The money raised using the "fake" receivables was thereafter "funneled" out of the Debtor to the Capital Officers and others. (Adv. Comp. ¶ 87).

4.      The BDO Seidman Defendants were the pre-petition Debtor's outside auditors. Pursuant to their engagement agreement with the pre-petition Debtor, the BDO Seidman Defendants were charged with testing the Debtor's year-end financial statements to obtain "reasonable assurance" that the "financial statements are free of material misstatement," and to determine if they "present fairly, in all material respects, the financial position of E.S. Bankest . . . in conformity with generally accepted accounting principles." (Adv. Comp. ¶ 108).

5.      In or about September, 2003, the Ponzi scheme came to an end after the Debtor defaulted on the outstanding debenture notes and loans. Ultimately, the Capital Officers and certain of the Debtor's clients pled guilty or have been indicted for the pervasive fraud. (Adv.

5

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Comp. ¶ 56). Moreover, BESIL commenced an action against Bankest, the Capital Officers, and others in the United States District Court for the Southern District of Florida to recover on the outstanding debt, and for the fraud.

6.      On June 9, 2004, the Debtor and BESIL entered into a Consent Judgment to resolve claims relating to money owed under the debentures and loans, as well as to resolve claims BESIL asserted against the Debtor for fraud. In the Consent Judgment, the parties agreed that the Debtor (and certain affiliates) "were used to fraudulently induce BESIL and its affiliates to extend $160,000,000 to Bankest, and were instrumentalities in furtherance of the conspiracy to defraud BESIL and its affiliates." (Consent Judgment at 6).

7.      On August 9, 2004, the Debtor, through the Responsible Officer, filed its case under Chapter 11 of the United States Bankruptcy Code.  (Adv. Comp. ¶ 8).

8.      On December 28, 2004, BDO filed a Proof of Claim asserting claims for fraud, breach of contract, indemnity, and contribution.  BDO also filed challenges to the purported secured creditor's lien, a complaint seeking subordination of the purported secured creditor's claim, and objections to the proposed Plan of Liquidation.

9.      At no time did defendants Lenner, BDO International B.V., or Keith Ellenberg, file a Proof of Claim or participate in the Debtor's chapter 11 case. (*See* Adv. Comp. ¶ 10).

10.     On September 14, 2005, the Bankruptcy Court entered an order disallowing and dismissing BDO's claim. (C.P. 346).

11.     On November 19, 2005, the Bankruptcy Court dismissed BDO's lien challenge and subordination complaints.  The Bankruptcy Court ruled that because BDO's Proof of Claim had been disallowed, BDO no longer had any interest in the Debtor's chapter 11 case, and held

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

that BDO lacked standing.  (Adversary Proceeding No. 05-01012-AJC-AP (C.P. 46); Adversary Proceeding No. 05-01069-AJC-AP (C.P. 20).

12.    On December 23, 2005, the Bankruptcy Court prohibited BDO from objecting to the proposed Plan of Liquidation.  The Bankruptcy Court ruled that because its Proof of Claim had been disallowed, BDO no longer had any interest in the Debtor's chapter 11 case, and held BDO lacked standing.  (C.P. 522).

13.    On December 30, 2005, the Bankruptcy Court confirmed Debtor's Second Amended Plan of Liquidation (the "Plan").  The Plan created two post-confirmation entities, the so-called Reorganized Debtor[2] and the Liquidation Trust both of which were to be administered by Lewis B. Freeman.  (*See Plan*, at 27-30, 38-44).  Pursuant to the Plan, the Reorganized Debtor was vested with all pre-petition malpractice and related claims. (*See Plan* at 41).

14.    On January 6, 2006, the Responsible Officer filed a Notice of Effective Date of the Debtor's Second Amended Plan of Liquidation, asserting that the Plan had been substantially consummated (C.P. 542).

15.    Neither the Debtor nor the Responsible Officer filed any claims or counterclaims against BDO prior to confirmation of the Plan.   Rather, the Responsible Officer filed this Adversary Proceeding on February 23, 2006, in the Bankruptcy Court.

16.    Thereafter, on or about March 7, 2006, the Responsible Officer filed an affidavit attesting that the Plan had been substantially consummated.

17.    In the meantime, the purported secured creditor in the Debtor's chapter 11 case, Banco Espirito Santo International Limited ("BESIL"), has been prosecuting a malpractice claim against BDO in the Eleventh Circuit Court for Miami-Dade County, Case No. 04-14009 CA 31

---

[2]   Although the plan uses the definitional term "Reorganized Debtor" that term is a misnomer in this case, in that there is no operating reorganized debtor, but rather just a liquidating estate.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

(the "BESIL State Action"). The BESIL State Action arises out of the same nucleus of facts as the present Adversary Proceeding and seeks the same ultimate damages. Indeed, the BESIL State Action concerns (among other matters) the manner in which BDO conducted its audits of the Debtor's annual financial statements, the extent to which BDO's audits were relied on by purchasers of the Debtor's debentures and BESIL, and the extent to which BESIL's purported damages were caused by BDO's actions.

## ARGUMENT

I. **THE ADVERSARY COMPLAINT SHOULD BE DISMISSED BECAUSE THE RESONSIBLE OFFICER LACKS STANDING**

A. **The Constitutional Principles Applicable To This Motion**

Before the Court may exercise subject matter jurisdiction over the Responsible Officer's purported claims, the Responsible Officer must, as a "threshold" matter, establish his standing to assert those claims. *E.F. Hutton & Co v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990). Standing is a matter of constitutional dimension that requires the responsible officer to establish, pursuant to the "case or controversy" clause of Article III, that the Debtor "has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury would likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *accord McConnell v. Federal Election Comission*, 540 U.S. 93, 225 (2003). In essence, in determining the constitutional prerequisite of standing, "the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue is justiciable." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). The constitutional requirements are "irreducible," and short of each of them being established, the Adversary Complaint must be dismissed. *Hadley*, 901 F.2d at 983-84.

8

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

The Responsible Officer must also surmount "prudential considerations" that "restrain" the Court from exercising jurisdiction. *Hadley*, 901 F.2d at 984-85. The three considerations that disqualify the Court from exercising subject matter jurisdiction, even should the Responsible Officer satisfy the constitutional prerequisites, are "(1) assertion of a third-party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision." *Hadley*, 901 F.2d at 985; *see Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474-75 (1982). As demonstrated below, the Responsible Officer is unable to meet his burden to establish a constitutional basis for standing, or overcome the prudential limitations mandated by the Supreme Court.

**B.      The Responsible Officer Is Unable To Demonstrate "Injury In Fact" Because The Alleged Injury To The Debtor Is Illusory**

**1.      The Injury Alleged Is Illusory Because The Debtor Served As A Conduit For Theft**

A purported injury that is illusory is not an injury at all for purposes of establishing an "injury in fact" sufficient to support standing. *See McConnell v. Federal Election Comission*, 540 U.S. 93, 227 (2003) (the injury "must be an invasion of a *concrete and particularized legally protected interest*"). In the context of a company that incurs increasing debt that allegedly deepens its insolvency—the purported basis for recovery in all of the Responsible Officer's purported claims here—the law precludes a finding of "injury in fact" sufficient for standing where, as here, the company's "primary existence" was to enable money raised from creditors to be channeled out of the company. *See O'Halloran v. First Union National Bank*, 350 F.3d 1197, 1202-03 (11th Cir. 2003) (company "cannot be said to have suffered injury" when it was used to raise money fraudulently to benefit its principals). In such a circumstance, the company is not

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

injured by a prolonged life; the company's primary existence as "conduit" or "vehicle" through which proceeds from fraudulently obtained loans flowed injures the duped lenders alone. *SIPC v. Capital City Bank (In re Meridian Asset Management, Inc.)*, 296 B.R. 243, 257 (Bankr. N.D. Fla. 2003); *Feltman v. Prudential Bache Securities*, 122 B.R. 466, 473-74 (S.D. Fla. 1990).

For example, the trustee in *Feltman* commenced an action against an accounting firm (among others) for negligence and breach of fiduciary duty arising from an alleged "Ponzi" scheme. The debtor companies purportedly engaged in financial planning services, but after raising money from creditors, the companies' principal withdrew the money raised for his own use. The trustee asserted that through the defendants' actions, the *debtors* were injured by "artificially extended" lives. 122 B.R. at 473.

In dismissing the trustee's adversary complaint, the District Court acknowledged that "an 'artificial and *fraudulently* prolonged life. . .and. . .consequent *dissipation of assets*' constitutes a recognized injury for which a corporation can sue *under certain conditions*." *Feltman*, 122 B.R. at 473, *quoting Schact v. Brown*, 711 F.2d 1343 (7th Cir. 1983) (emphasis added). The court ruled, however, that the debtor corporations "were not injured by their prolonged life" because they "were essentially only conduits for stolen money," and therefore "any injury to the debtors in this case must be substantially coterminous with the injury to the defrauded creditors." *Feltman*, 122 B.R. at 473. As the court made clear, the debtors' purported injury was "illusory" and the trustee lacked standing because the money the debtors' principal "stole from the debtor corporations, the debtors had stolen from the creditors." *Id*. at 474. Thus, because the corporations were not injured by their prolonged life, the trustee as representative of the debtor corporations had no standing to sue. *Id*. at 473.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

On the same grounds, the court in *Meridian* also dismissed the trustee's claim for lack of standing.  In *Meridian*, the trustee alleged that the investment company debtor raised money from creditors purportedly to engage in private investing.  The money raised was instead funneled through the debtor's bank accounts to, and stolen by, the company's management. Relying on *O'Halloran* and *Feltman*, the court ruled that any "alleged injury" the company suffered was "illusory," in that the company and its accounts were used "to mislead customers and as a vehicle to channel money" with little or no legitimate business to injure.  296 B.R. at 252.  Again, because the corporations were not injured, including by their prolonged life, the trustee as representative of the debtor corporations had no standing to sue. *Id.*

Assuming all the "facts" set forth in the Adversary Complaint to be true, the Debtor's purported injury is illusory because its "primary existence" was to enable money raised from creditors to be channeled out of the company.  *O'Halloran*, 350 F.3d at 1202-03.  As with allegations in *Feltman* and *Meridian* requiring dismissal, the Adversary Complaint asserts that the Debtor was a fraudulent entity utilized by the Capital Officers, and other indicted and convicted co-conspirators, to steal money from lenders and debenture purchasers in a scheme similar to a Ponzi scheme.  The Adversary Complaint alleges that the Debtor was a factoring company managed "day-to-day" by the Capital Officers "that *was to earn* money through factoring fees, interest and the spread between the receivables' invoiced face amount and the discount price paid for receivables." (Adv. Comp. ¶¶ 17-18 [emphasis added]).[3]  The Debtor funded its purchases of receivables by borrowing money and issuing "debenture notes . . .

---

[3] That the Responsible Party did not label the Debtor a "sham" in the Adversary Complaint is immaterial. *O'Halloran*, 350 F.3d at 1202.  The issue is whether from the face of the Adversary Complaint, the Debtor was used to mislead lenders to raise and then channel money to the Capital Officers and others. *Meridian*, 296 B.R. at 252.  In *O'Halloran*, the Eleventh Circuit explained that complaint language that indicates the trustee assigns fiction to the debtor's legitimate business or operations is sufficient.  350 F.3d at 1202-03.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

whereby money was *supposed* to be backed by receivables." (Id. ¶¶ 19-20 [emphasis added]). The Adversary Complaint alleges that ultimately, the Debtor raised $170 million from lenders and debenture purchasers that remain unpaid and uncollateralized.

The Adversary Complaint alleges that, from inception, virtually all of the Debtor's business was fictitious and designed to steal money from lenders and debenture purchasers through the Debtor. The Adversary Complaint contends that during its five years of existence "virtually all" of the $1 billion in receivables posted as collateral for money raised "did not exist" and were "fake". (Adv. Comp. ¶¶ 2, 4, 27, 39, 45, 46, 54, 57, 109). The Adversary Complaint concludes that BDO's actions in not detecting the fictitious receivables resulted in the Debtor taking "debts exceeding $170 million it could not pay" and "artificially . . . prolong[ing] its existence." (Adv. Comp. ¶ 7).

As in *Feltman* and *Meridian*, the Debtor was unable to repay investors because the money raised was thereafter "funneled" out of the Debtor to the Capital Officers and others. (Adv. Comp. ¶ 87). The Capital Officers and certain of the Debtor's clients "have pleaded guilty or have been indicted for defrauding Bankest." (Adv. Comp. ¶ 56).[4] The fraudulent raising of money, and subsequent theft by the Capital Officers, according to the Adversary Complaint, "did not benefit Bankest in either the short term or long term." (*Id.*).

Any question concerning whether the debtor was used as a vehicle to funnel money raised from debenture purchasers and lenders to the Capital Officers is put to rest by the Consent Judgment entered among the Debtor and BESIL.[5] In the Consent Judgment, over which the Court may take judicial notice, the Debtor conceded that it is liable to BESIL, as collateral agent

---

[4] In fact, the indictments and plea allocutions state that these individuals were charged and (some) plead guilty for defrauding lenders and BDO. *See* Exhibits "E" and "F" attached to the BSO Seidman Defendants' Motion to Take Judicial Notice.

[5] The Consent Judgment is attached as Exhibit "D" to the Motion to Take Judicial Notice.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

for the debenture holders, for *fraud and fraudulent inducement* in the amount of $160,000,000. (Consent Judgment, ¶¶ 1, 3, 4). The Consent Judgment further provides that the Debtor (and certain affiliates) "were used to fraudulently induce BESIL and its affiliates to extend $160,000,000 to Bankest, *and were instrumentalities in furtherance of the conspiracy to defraud BESIL and its affiliates.*" (Consent Judgment, ¶ 6). Thus, the Debtor and BESIL have readily conceded the point: The Debtor was a "conduit" used to defraud BESIL and funnel money to the Capital Officers.

In short, the fraudulent scheme detailed in the Adversary Complaint was designed to benefit only the Capital Officers that managed the Debtor's so-called "day-to-day" business. The Capital Defendants caused the Debtor to raise money based upon collateral that was "fake" and "did not exist" in order to allow them to "funnel" the money raised for their own benefit. Under these circumstances, and as the court in *Feltman* concluded, the Debtor was "not injured by [its] prolonged life" because it was "essentially only [a] conduit[] for stolen money." *Feltman*, 122 B.R. at 473. The Responsible Officer, accordingly, lacks standing because any purported injury to the Debtor is "illusory" and "must be substantially coterminous with the injury to the defrauded creditors" currently being litigated by those creditors in Florida State Court. 122 B.R. at 473.

For this reason alone, the Adversary Complaint should be dismissed.

### 2.    The Alleged Injury Is Illusory Because The Debtor Was Irreparable From The Start

Assuming for purposes of standing that there is even a cognizable claim for deepening insolvency damages in Florida, the District Court in *Feltman* explained that "an 'artificial and *fraudulently* prolonged life. . .and. . .consequent *dissipation of assets*' constitutes a recognized injury for which a corporation can sue *under certain conditions.*" *Feltman*, 122 B.R. at 473,

Greenberg Traurig, P.A. I Attorneys at Law I 1221 Brickell Avenue I Miami, FL 33131 I Tel 305.579.0500 I Fax 305.579.0717 I www.gtlaw.com

*quoting Schact v. Brown*, 711 F.2d 1343 (7th cir. 1983) (emphasis added).   The Adversary Complaint does not allege a sustainable cause of action (the federal securities fraud claim should be dismissed for the reasons set forth below) alleging that BDO engaged in *fraud* to prolong the Debtor's life.   For this reason alone, the state common law claims in the Adversary Complaint should be dismissed.   *See Stanziale v. Pepper Hamilton, LLP (In re Student Finance Corp.)*, 335 B.R. 539, 548 (D. Del. 2005) ("In order to state a claim for deepening insolvency . . . the trustee of the bankrupt debtor must allege that the defendant defrauded the debtor.").

More importantly, in *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.)*, 269 B.R. 721, 728 (Bankr. S.D. Fla. 2001), the Bankruptcy Court explained the second manner in which so-called deepening insolvency injury is illusory precluding standing:   When a company that incurs the increasing debt deepening its insolvency was illegitimate, insolvent, and could never be rehabilitated from its inception.   The Bankruptcy Court explained that deepening insolvency injury "may" occur when the "increased debt and eventual insolvency . . . significantly contributed to the Debtor's financial death."   *Id*.   An injury a company may suffer from the additional debt created "'operational limitations which hurt a corporation's ability to run its business in a profitable manner,'" as "it is not uncommon for a corporation to revitalize itself and work out financial problems no matter how dire they appear."   *Id*.   The Bankruptcy Court likened such a company as:

> akin to a boxer with one black eye who, despite being injured, might still persevere and win the fight.  If that boxer (the debtor) winds up losing the fight and landing in the hospital (bankruptcy court), a doctor (judge) might find that it was the additional injuries (deepening insolvency) which put him there"

*Id*. at n.4.   To elaborate on the metaphor, an honest company capable of rehabilitation always has a "puncher's chance" of winning the fight and pulling itself out of insolvency.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

In contrast is the instance in which the company has already suffered "financial death" by fraud and illegitimacy when the alleged deepened insolvency occurs. *Flagship Healthcare*, 269 B.R. at 728. In that instance, the increased debt cannot "significantly contribute[] to the Debtor's financial death," and therefore cannot cause the requisite "injury in fact." *Id.* As the Bankruptcy Court explained, the debtor in that situation is "like an individual who sits in the rain all day and simply cannot get more wet." *Id.* at n.4

Assuming the allegations set forth in the Adversary Complaint true for purposes of this motion, the Debtor was *drenched* for its entire existence. Indeed, at no point in the Adversary Complaint does the Responsible Officer assert any assets that could be, or were, dissipated as a result of the alleged deepened insolvency, of course separate from the money the Debtor raised from debenture purchasers and lenders. That money, however, never became real assets of the Debtor to dissipate, for as the Responsible Officer alleges, the money raised based upon fraud "did not benefit Bankest in either the short term or long term." (Adv. Comp. ¶ 56).

Moreover, and as demonstrated above, the Adversary Complaint asserts that the Debtor was a fraudulent entity from its inception. Among other things, and according to the Responsible Officer, during the Debtor's five years in existence: (1) "virtually all" of the $1 billion in receivables posted as collateral for money raised "did not exist" and were "fake" (Adv. Comp. ¶¶ 2, 4, 27, 39, 45, 46, 54, 57, 109); (2) "[t]he Capital Officers used a series of techniques to create false financials reflecting nonexistent accounts receivables" (Adv. Comp. ¶ 23); (3) the money raised to purchase receivables was, in fact, "funneled" out of the Debtor to the Capital Officers and others (Adv. Comp. ¶ 87); (4) the Capital Officers and certain of the Debtor's clients "have pleaded guilty or have been indicted for defrauding Bankest." (Adv. Comp. ¶ 56).

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

It is therefore unsurprising that at no point in the lengthy Adversary Complaint does the Responsible Officer allege that the Debtor was ever capable of rehabilitation.

In short, the Debtor was the individual in the rain that simply could not get any more wet. Under these circumstances, any purported injury to the Debtor is illusory. The injury, if any, was suffered by the debenture purchasers and lenders whose claims are scheduled for trial in Florida State Court in September, 2006. The Responsible Officer, to the contrary, lacks standing. For this additional reason, the Adversary Complaint should be dismissed.

### C.    The Responsible Officer Lacks Standing Because His Claims Assert Injury To BESIL

At its core, and read in its entire context, the Responsible Officer seeks to recover for injuries to BESIL, not the Debtor. Indeed, the Adversary Complaint makes it clear that it alleges claims "seek[ing] to recover the losses proximately caused by BDO for the legitimate creditors of Bankest." (Adv. Comp. ¶ 6). The Responsible Officer, accordingly, is unable to surmount the "prudential considerations" that "restrain" the Court from exercising jurisdiction. *Hadley*, 901 F.2d at 984-85. In particular, the Responsible Officer is improperly attempting to "assert[] third-party's rights." *Hadley*, 901 F.2d at 985. For this separate reason, the Responsible Officer lacks standing to pursue this Adversary Proceeding.

In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972), the United States Supreme Court held that a trustee lacks standing to assert claims for a group of a debtor's debenture holders, which were creditors of the debtor's estate. In reaching that ruling, the Court pointed to three prudential concerns in permitting a trustee to sue on behalf of debenture holders: (1) nothing in the bankruptcy code authorized a trustee "to assume the responsibility of suing third parties on behalf of debenture holders" or to "collect money not owed to the estate"; (2) the debtor and the defendant were *in pari delicto* with respect to the creditors' claims; and (3)

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

allowing the trustee to sue on behalf of debenture holders would complicate litigation: a trustee action "may be inconsistent with any independent actions that they might bring themselves." 406 U.S. at 428-32; *accord Hadley*, 901 F.2d at 986 (dismissing trustee claim "[w]e conclude that the Caplin concerns are valid in this case"); *Flagship Healthcare*, 269 B.R. at 727 (the trustee lacks standing "if he is only asserting a claim based upon alleged damages" to creditors that relied upon an accountant's audit report).

The purported injury upon which the Adversary Complaint focuses is that suffered by debenture purchasers and lenders who, the Adversary Complaint alleges, provided the debtor money purportedly "in reliance upon the integrity of BDO's audited financials." (Adv. Comp. ¶¶ 19-20, 57). The Adversary Complaint contends that the BDO Seidman Defendants' audits "caused Bankest to disseminate materially false and misleading audited financial statements and results to potential investors and lenders," and that the full extent of damages sought is for the Debtor's failure to repay the lenders. (*Id.* ¶¶ 58, 59, 88). Even the Responsible Officer's attempt to cast his claims as based upon a direct injury to the Debtor relates to selling debentures and borrowing from lenders. (Adv. Comp. ¶¶ 22, 57). In short, the focus of the Adversary Complaint is to recover damages on behalf of the real party in interest, BESIL. As the Supreme Court made clear in *Caplin*, however, nothing in the bankruptcy code authorizes a trustee "to assume the responsibility of suing third parties on behalf of debenture holders" or to "collect money not owed to the estate." 406 U.S. at 428-32

Nor may the Responsible Officer end run the prudential limitations upon standing set forth in *Caplin* by asserting that his claims seek to recover for all "legitimate creditors of Bankest." (Adv. Comp. ¶ 7). Although the Eleventh Circuit has yet to consider the issue, the lower Courts in this Circuit have declared that a trustee is without standing to assert claims on

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

behalf of all general creditors of a debtor.  *See, e.g., Feltman*, 122 B.R. at 473 ("bankruptcy trustee [does] not have standing to assert claims of creditors"); *In re Flagship Healthcare*, 269 B.R. at 727 n.3 ("a trustee has no standing to assert a general claim on behalf of creditors").

Vesting the Responsible Officer with standing to sue on behalf of debenture holders would also complicate the overall litigation, as this Adversary Proceeding "may be inconsistent with any independent actions that [creditors] might bring themselves." *Caplin,* 406 U.S. at 428-32; *accord Hadley*, 901 F.2d at 986.  Duplicative litigation in which BESIL is the real party in interest is not a mere risk in this case; it is a certainty.  BESIL is currently pursuing a negligence claim against BDO in Florida State Court seeking to recover the same $170 million based upon essentially the same allegations as those asserted in the Adversary Complaint.  (*Compare* Adv. Comp. *with* State Complaint).  For this separate reason, the Responsible Officer is unable to surmount the "prudential considerations" that "restrain" the Court from exercising jurisdiction—he is attempting to recover the same damages on behalf of a single creditor that the same creditor is seeking for itself in Florida State Court. *Hadley*, 901 F.2d at 984-85.

In sum, the Responsible Officer lacks standing to pursue the purported claims set forth in the Adversary Proceeding because he is unable to overcome the prudential restraints upon this Court's jurisdiction.  Accordingly, the Adversary Complaint should be dismissed.

## II.    THE ADVERSARY COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.    The Adversary Proceeding Is Non-Core

Section 1334(b) of the Judicial Code provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334.  Section 1334(b) enables the court to exercise subject matter jurisdiction in three instances:  (1) proceedings that "arise under title 11"; (2)

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

proceedings that "arise in cases under title 11"; and (3) proceedings "related to cases under title 11." This Court's jurisdiction is derivative of and dependent upon these three bases. *Cont'l Nat'l Bank v. Sanchez ( In re Toledo)*, 170 F.3d 1340, 1349 (11th Cir. 1999).

Pursuant to 28 U.S.C. § 157, "core" proceedings are the equivalent to those "arising under title 11 or arising in a case under title 11," while "non-core" proceedings are synonymous with those "otherwise related" to the bankruptcy estate. *Toledo*, 170 F.3d at 1349. A proceeding "arises under" title 11 when it "invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code." *Id*. A proceeding "arises in" title 11 when it involves "administrative matters unique to the management of a bankruptcy case." *Id*. As the Eleventh Circuit declared:

> [i]f the proceeding involves *a right created by the federal bankruptcy law*, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding *is one that would arise only in bankruptcy*, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. *If the proceeding does not invoke a substantial right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.*

*Id*. at 1348 (emphasis added); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).

Moreover, in limiting "core" proceedings to those that are unique to, or uniquely affected by, the Bankruptcy Code, a bankruptcy case or directly affect a core bankruptcy function, the Court should bear in mind its responsibility to construe 28 U.S.C. § 157(b) so as to avoid any doubt of its constitutionality. *See First Florida Builders Corp. v. Employers Ins. Of Wausau (In re Shaffer & Miller Ind., Inc.)*, 66 B.R. 578, 581 (S.D. Fla. 1986). To do otherwise "would seriously ignore the constitutional defects [*Northern Pipeline Co. v. Marathon Pipe Line Co.* 458 U.S. 50 (1982)] sought to correct." *Id*.; *see Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 276 (M.D. Fla. 2002). Accordingly, even if success on the merits of the Adversary Proceeding would

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

ultimately enhance creditor distributions, this possibility alone is insufficient to elevate otherwise non-core causes of action into a core proceeding "affecting the adjustment of the debtor-creditor relationship." *Id.*

None of the claims asserted in the Adversary Complaint "arise under" or "arise in" title 11. The Adversary Complaint asserts state law claims for malpractice, vicarious liability (against defendant BDO International, B.V.), Florida Unfair Trade Practice under Florida Statutes § 501.210, et seq. (against defendant BDO International, B.V.), and aiding and abetting breach of fiduciary duty. (Adv. Comp. ¶¶ 77-106). The Adversary Complaint also asserts a federal securities fraud claim. (*Id.* ¶¶ 107-116). All of these purported claims existed pre-petition and, had there been no bankruptcy, this action could have proceeded outside of the Bankruptcy Court. In fact, The BESIL State Action is pending and asserts claims that are virtually identical to those asserted in this Adversary Proceeding. Accordingly, this Adversary Proceeding involves claims falling outside the core jurisdiction of the Bankruptcy Court. *E.g., George W. Stevenson v. J. C. Bradford & Company (In re Cannon)*, 277 F.3d 838, 846 (6th Cir. 2002) (violations of federal commodities laws, breach of fiduciary duties, fraud, state consumer protection laws, and failure to supervise are "all non-core proceedings under 28 U.S.C. § 157(b)(2)"); *In re Insilco Technologies, Inc.*, 330 B.R. 512, 522 (Bankr. Del. 2005) (deepening insolvency claim is non-core); *In re RDM Sports Group, Inc.*, 260 B.R. 915, 919 (Bankr. N.D. Ga. 2001) (claim for professional malpractice is non-core).

The only attempt at asserting a basis for this Court's subject matter jurisdiction is the Responsible Officer's conclusion that this proceeding is "core". (Adv. Comp. ¶ 15). The only fact to which the Responsible Officer appears to point as a basis for his conclusion is that BDO filed a Proof of Claim that was litigated and disallowed in the Bankruptcy Court. (*Id.* ¶ 10).

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Although BDO filed a Proof of Claim, none of the other defendants here filed proofs of claim or participated in any way in the Debtor's chapter 11 case. For this reason alone, this Adversary Proceeding raises no claims arising under or arising in bankruptcy, and is therefore non-core.

Moreover, because BDO's claim in the Debtor's chapter 11 case has been resolved through disallowance, the Adversary Complaint raises issues independent and unrelated to the claims administration process. As the Supreme Court stated in *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990), a creditor "triggers the process of 'allowance and disallowance of claims," thereby subjecting itself to the bankruptcy court's equitable power when the response to the proof of claim is a claim by the estate to recover a preferential transfer. *Accord Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989). In such circumstances, the estate's action "becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee *become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction*." *Langenkamp*, 498 U.S. at 44 (emphasis added).

Here, the claims allowance process relating to BDO's Proof of Claim ended when BDO's claim was disallowed back in September, 2005. Because the claims allowance process is no longer implicated, and BDO's claims against the Debtor have been fully adjusted, the Adversary Complaint seeks relief unrelated to any bankruptcy function or administrative matters unique to the management of the Debtor's bankruptcy case. Under these circumstances, the Adversary Proceeding is non-core. *See Miramar Resources, Inc. v. Webb (In re Miramar Resources, Inc.)*, 176 B.R. 45 (Bankr. D. Colo. 1994); *In re New York City Shoes, Inc.*, 122 B.R. 668 (E.D. Pa. 1991).

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

*Miramar* is on point and compels a finding that the Adversary Proceeding here is non-core. As with BDO, the defendant (an attorney) in *Miramar* provided pre-petition professional services to the debtor. After the debtor filed its petition under Chapter 11 of the Bankruptcy Code, the defendant attorney filed a proof of interest asserting stock ownership in the debtor and a proof of claim for pre-petition legal services. The defendant attorney's proof of interest was ultimately cancelled under the debtor's plan of reorganization, and its proof of claim was allowed (and then extinguished under the plan in exchange for certain contractual rights set forth in the plan). *Miramar*, 176 B.R. at 47.

Sixty days prior to plan confirmation, the debtor commenced an adversary proceeding against the defendant attorney seeking damages relating to pre-petition legal malpractice. The court ruled that although the defendant attorney filed a proof of claim seeking damages that arose out of the very professional relationship that was the subject of the debtor's later malpractice claim, the malpractice claim was "not a core proceeding" because the claims allowance process had "concluded." As the court explained:

> Regardless of whether the claim allowance process is defined narrowly or broadly, *it has a beginning and an ending point*. The triggering of the claim allowance process is the filing of the proof of claim. The conclusion of the claim allowance process *is the completion of the restructuring of the debtor-creditor relationship by allowance or disallowance of the claim.*

*Id*. at 54 (emphasis added). Because the claims allowance process "concluded" as to the defendant attorney's fees claim—as it similarly concluded as to BDO when its claim was disallowed—the debtor's later malpractice claim constituted an "independent lawsuit" that was non-core. *Id*.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

The court in *New York City Shoes* reached the same conclusion. In *New York City Shoes*—as in *Miramar*—the debtor's accounting firm filed proofs of claim for outstanding auditing fees. The proofs of claim were waived and disallowed as part of a settlement with the debtor. 122 B.R. at 672. Thereafter, the debtor commenced an adversary proceeding in the bankruptcy court against the auditor alleging a failure to perform audits in accordance with generally accepted accounting principles and failure to discover fraudulent sales transactions engaged in by the debtor's officers.

In granting the accounting firm's motion to withdraw the reference of the adversary proceeding and declaring its right to a jury trial, the district court ruled that the adversary proceeding was non-core. Indeed, because the debtor's adversary complaint was filed after the accounting firm's proof of claim was "waived and disallowed," the subsequent malpractice action against the accounting firm arising out of pre-petition services constituted "a new suit." 122 B.R. at 672. The court concluded that the subsequent adversary proceeding was distinguishable from the circumstance in which "the debtor's claim was responsive to a pending proof of claim and thereby implicated the allowance and/or disallowance of claims against the debtor's estate and the structuring of debtor-creditor relations." *Id.* at 673.

The same reasoning applies here and compels a finding that the Responsible Officer's Adversary Proceeding is, at best, non-core. As in *Miramar* and *New York Shoes*, the Responsible Officer chose not to file an Adversary Proceeding against BDO until long after BDO's Proof of Claim was disallowed, and after plan confirmation. There was no "pending proof of claim" to which the Responsible Officer's Adversary Complaint was in response. To the contrary, the claims allowance procedure relating to BDO's Proof of Claim came to its

23

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

"ending point" and the present Adversary Proceeding constitutes a "new suit" unrelated to the core bankruptcy function of adjusting creditor claims.

In short, bankruptcy law plays no role in the claims asserted in the Adversary Complaint, and therefore the proceeding is, at best, non-core. Accordingly, the court should dismiss the Adversary Proceeding for lack of subject matter jurisdiction. The appropriate forum for this action is in a Florida State Court, where the very issues to be resolved in this action are set for trial in September, 2006.

**B.      The Adversary Proceeding Is Also Not "Related To" The Debtor's Confirmed And Consummated Plan Of Reorganization**

The Responsible Officer does not even attempt to assert that this Adversary Proceeding falls within the Court's "related to" jurisdiction, and with good reason. The Court lacks "related to" subject matter jurisdiction because there is an insufficient nexus between the Debtor's Plan and the present Adversary Proceeding commenced post-confirmation.

In declaring the boundaries of pre-confirmation, "related to" jurisdiction, the Eleventh Circuit explained that Congress vested "limited authority" in bankruptcy courts. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 789 (11th Cir. 1990). Accordingly, the Eleventh Circuit adopted the "*Pacor* test" for determining the scope of pre-confirmation, "related to" jurisdiction: Whether "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Lemco Gypsum*, 910 F.2d at 789, *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984).

Consistent with the limitations imposed by Congress, Article III of the United States Constitution, and Section 157 of the Judicial Code, the court in *Lemco Gypsum* warned, however, that "[t]he fact that property was once owned by a bankrupt does not supply federal

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

jurisdiction of all future disputes concerning the property." 910 F.2d at 789; *accord Binder v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.)*, 372 F.3d 154, 165 (3rd Cir. 2004) ("bankruptcy court jurisdiction 'must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case'"), *quoting Donaldson v. Bernstein*, 104 F.3d 547, 553 (3rd Cir. 1997). For instance, after a debtor's plan is confirmed, "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *Resorts*, 372 F.3d at 165. Estate assets are typically vest in a new entity, which in this instance is the "Reorganized Debtor." *See* 11 U.S.C. § 1141(b). (Plan, Article V, pp. 27-29).

Accordingly, and consistent with the *Pacor* test and the jurisdictional limitations imposed by Congress, the Constitution, and the Judicial Code, "related to" jurisdiction is curtailed post-petition. "Related to" jurisdiction is limited to matters "where there is a *close nexus* to the bankruptcy plan or proceeding, *as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan . . . .*" *Resorts*, 372 F.3d at 168-69 (emphasis added); *accord In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 389 (5th Cir 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. No longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize.") (citations omitted); *Zahn Associates, Inc. v. Leeds Building Products, Inc. (In re Leeds Building Products, Inc.)*, 160 B.R. 689, 691 (Bankr. N.D. Ga. 1993) ("Of course, a bankruptcy court does not lose all jurisdiction once a chapter 11 plan has been confirmed. Nevertheless, its role is

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

limited to matters involving the execution, implementation, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law").

In *Resorts*, the Third Circuit held that the bankruptcy court was divested of related to jurisdiction over post-confirmation claims brought on behalf of a litigation trust against an accounting firm. The trust asserted professional malpractice and breach of contract relating to the accounting services provided. In reversing the district court's determination that the bankruptcy court had subject matter jurisdiction, the Third Circuit stated:

> Resolution of this matter *will not require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement.* Whether Price Waterhouse was negligent or breached its contract will not be determined by reference to those documents. There is no dispute over their intent. The Trustee's claims are *"ordinary" professional negligence and breach of contract claims that arise under state common law.* Though the Plan and Trust Agreement provide the context of the case, *this bare factual nexus is insufficient to confer bankruptcy jurisdiction.*

*Resorts*, 372 F.3d at 170 (emphasis added).

This Court is without subject matter jurisdiction here for the identical reasons. The Adversary Complaint asserts "ordinary," state-based, common law claims as well as a federal securities claim, the core of which is the BDO Seidman Defendants' alleged professional negligence. None of the alleged claims relate to the bankruptcy laws. None of the claims will require interpretation or application of the Debtor's Plan, and reference to the Plan and related documents will be unnecessary to resolve the claims. Given that the pre-petition claims the Responsible Officer asserts have no nexus, much less the requisite "close nexus", to the Debtor's Plan, it is not surprising that in the entire 40-page, 116-paragraph Adversary Complaint, the Plan is never mentioned—*not even once!* As the Court in *Resorts* concluded, "[t]hough the Plan . . .

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

provide[s] the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction." 372 F.3d at 170.

That the Debtor's Plan purported to retain nonexclusive jurisdiction in the Bankruptcy Court for certain matters is immaterial.  (Plan, Article XIV, pp. 58-59)  For as the court in *Resorts* confirmed, "jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157." 372 F.3d at 169.  That is, "neither the bankruptcy court nor the parties can write their own jurisdictional ticket," and where jurisdiction is otherwise deficient, "the parties cannot create it by agreement even in a plan of reorganization." *Id.* at 161; *In re Insilco Technologies, Inc.*, 330 B.R. 512, 519 (Bankr. D. Del. 2005); *accord In re General Media, Inc.*, 335 B.R. 66, 74 n.8 (Bankr. S.D.N.Y. 2005) ("the federal courts are courts of limited jurisdiction, and 'neither the bankruptcy court nor the parties can write their own jurisdictional ticket'"), *quoting Resorts*, 372 F.3d at 161; *Grimes v. Graue (In re Haws)*, 158 B.R. 965, 969 (Bankr. S.D. Tex. 1993) ("Regardless of how that plan provision may read, a reservation of jurisdiction beyond what Congress has given or what is necessary to effectuate the debtor's reorganization exceeds the power of the bankruptcy court."). As demonstrated above, the Bankruptcy Court lacks subject matter jurisdiction over this Adversary Proceeding, and any attempt by the Debtor and BESIL to create jurisdiction by agreement—an agreement to which BDO was not a party and was denied standing to object— was contrary to the law.

In sum, this Adversary Proceeding involves alleged pre-petition disputes that are collateral to the bankruptcy process and the terms of the Debtor's confirmed and consummated Plan.  There is no "close nexus" between the Plan and this Adversary Proceeding.  Therefore, the Court lacks subject matter jurisdiction and should dismiss the Adversary Complaint.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

## III.   THE ADVERSARY COMPLAINT FAILS TO STATE
A CLAIM UNDER SECTION 10(b) AND SEC RULE 10b-5(b)

### A.    The Relevant Pleading Standard

The Adversary Complaint alleges that the BDO Seidman Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5(b).  (Adv. Comp., Count V ¶¶ 107-16). Before the Court may sustain the purported securities claim, however, the Responsible Officer is required to allege (1) a material misrepresentation, (2) scienter, *i.e.*, a wrongful state of mind, (3) a connection with the purchase or sale of a security (4) reliance or "transaction causation," (5) economic loss, and (6) "loss causation," *i.e.*, a causal connection between the material misrepresentation and the loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1631 (2005); *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

The federal securities claim is subject to the heightened pleading requirements of the Private Securities Litigation Reform Act (15 U.S.C. § 78u-4(b)) (the "PSLRA"), and Rule 9(b) of the Federal Rules of Civil Procedure. *Ziemba*, 256 F.3d at 1202.  In particular, the PSLRA mandates that the Adversary Complaint "state with particularity facts giving rise to a strong inference" of scienter "with respect to each act or omission alleged." 15 U.S.C. § 78u-4(b)(2); *Theoharous v. Fong*, 256 F.3d 1219, 1225 (11th Cir. 2001).  Allegations of negligence, gross negligence, or even inexcusable neglect are insufficient satisfy this standard.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 & n.18 (11th Cir. 1999).  Moreover, the Court should bear in mind that "[w]hen the claim is brought against an outside auditor," the "meaning of recklessness in securities fraud cases is especially stringent." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004).  Specifically, "[r]ecklessness on the part of an independent auditor entails a mental state so culpable that it 'approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company.'"  *Id.*, *quoting Decker v. Massey-Ferguson, Ltd.*, 681 F.2d

111, 121 (2d Cir. 1982); *accord Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1008 (S.D. Cal. 2000) (the PSLRA makes it "exceedingly difficult for a securities plaintiff to plead facts suggesting that an independent accountant acted with the deliberate state of mind now required to withstand a motion to dismiss"), *aff'd. DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).

**B.    The Adversary Complaint Fails To Meet The
Heightened Pleading Requirements To Allege Scienter**

To satisfy his heightened pleading the obligations for alleging scienter under the PSLRA, the Responsible Officer was required to "allege particular facts giving rise to a strong inference that the defendant acted 'in a severely reckless manner.'"  *Theoharous*, 256 F.3d at 1225, *quoting Bryant*, 187 F.3d at 1287.  In *Bryant*, the Eleventh Circuit declared that "[s]evere recklessness is limited to *those highly unreasonable omissions or misrepresentations* that involve not merely simple or even inexcusable negligence, but *an extreme departure from the standards of ordinary care*, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."  187 F.3d at 1282 n.18 (emphasis added); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1321 (S.D. Fla. 2004).  The Responsible Officer attempts to meet his burden of alleging scienter with the requisite particularity in two ways, both of which fail.

First, the Responsible Officer attempts to allege scienter by referring to the outdated "motive and opportunity" test—*i.e.,* that the BDO Seidman Defendants had a "motive" to commit fraud accompanied by an opportunity to do so.  (Adv. Comp. ¶ 112).  Since enactment of the PSLRA back in 1995, alleging that a securities defendant had a motive and opportunity to commit fraud is insufficient as a matter of law.  As the Eleventh Circuit in *Bryant* declared, because "the clear purpose of the [PSLRA] was to curb abusive securities litigation, and because

we believe that the motive and opportunity analysis is inconsistent with that purpose, we decline to adopt it." 187 F.3d at 1286.

The second method by which the Responsible Officer attempts to meet his burden to allege, with specificity, a "strong inference" of recklessness is to point out the manner in which the BDO Seidman Defendant's audits allegedly did not comply with Generally Accepted Auditing Standards ("GAAS") and the so-called "red flags" they purportedly overlooked. (Adv. Comp. ¶ 111). Asserted violations of GAAS standing alone, however, are insufficient to meet the heightened pleading requirement to allege scienter. *Ziemba*, 256 F.3d at 1201; *In re Recoton Corp. Securities Litigation*, 358 F. Supp. 2d 1130, 1147 (M.D. Fla. 2005).

Moreover, asserted "red flags" that simply reiterate purported GAAS violations or constitute a recitation of additional GAAS violations are "insufficient to support a strong inference of scienter." *Cheney v. Cyberguard Corp.*, No. 98-6879-CIV-GOLD, 2000 WL 1140306 at *11 (S.D. Fla. 2000); *In re Spear & Jackson Securities Litigation*, 399 F. Supp. 2d 1350, 1363 (S.D. Fla. 2005) ("It is established, however, that the purported red flags cannot simply 're-hash' the alleged GAAP violations."). "Red flags" are facts discovered during the audit process that "would place a reasonable auditor on notice that the audited company was *engaged in wrongdoing* to the detriment of its investors." *In re Sunterra Corp. Securities Litigation*, 199 F. Supp. 2d 1308, 1333 (M.D. Fla. 2002); *accord Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 278 (D.N.J. 2002) (red flags "must be closer to smoking guns than mere warning signs").

Accordingly, most courts require the purported "red flag" to amount to a direct "tip off" that a serious irregularity, or a fraud, occurred. *Ziemba*, 256 F.3d at 1194 (dismissing because "Plaintiffs have not alleged any facts suggesting actual awareness by [the auditor] of any fraud.

30

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Plaintiffs have pointed to no 'tips,' letters, or conversations raising inferences that [the auditor] knew of any fraud"); *Cheney, supra,* 2000 WL 1140306 at *12 (plaintiffs "recitation of additional GAAP violations" without an indication the accounting firm was "tipped off" insufficient to allege scienter); *Holmes v. Baker,* 166 F. Supp. 2d 1362, 1380 (S.D. Fla. 2001).

At no point does the Adversary Complaint allege that any BDO Seidman Defendant was "tipped off" that there was a fraud afoot relating to the Debtor's annual financial statements. Moreover, the so-called "red flags" to which the Responsible Officer points are the very "re-hash" of alleged GAAS violations courts in the Eleventh Circuit have ruled "insufficient to support a strong inference of scienter." *Cheney,* supra, 2000 WL 1140306 at *11; *Spear & Jackson,* 399 F. Supp. 2d at 1363.

For example, the Adversary Complaint points to BDO's "flagrant" decision to classify the Debtor' audits as "sensitive" as a so-called "red flag." (Adv. Comp. ¶¶ 28, 32, 111(e)). The Responsible Officer's assertion is silly, as BDO's actions in *following* its own procedures is hardly a "tip" that there was fraud occurring at the Debtor. Indeed, the district court in *Cheney,* rejected a virtually identical "red flag"—KPMG was "required to give such factors heightened consideration in planning its audit"—as both "insufficient to support a strong inference of scienter" and "simply a recitation of additional GAAP violations." 2000 WL 1140306 at *12.

The Adversary Complaint also points to an alleged failure and refusal to contact customers and confirm accounts receivable as a "red flag". (Adv. Comp. ¶¶ 34, 25, 39-46, 111(b)). Once again, this allegation—even if true—constitutes what the Responsible Officer himself terms a "derogation of GAAS" insufficient to meet the heightened pleading requirement to allege scienter. *Ziemba,* 256 F.3d at 1201. And once again, this so-called "red-flag" has been rejected as "insufficient" by the district courts in this Circuit. *Cheney,* supra, 2000 WL 1140306

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

at *12 (that "KPMG failed to directly contact CyberGuard's resellers and make inquiries regarding the terms of their payment obligations to CyberGuard" was "insufficient").

The Adversary Complaint also alleges that the BDO Seidman Defendants should have engaged in "additional testing" due the Debtor's CFO also being the CEO of a large client. (Adv. Comp. ¶¶ 30, 31, 111(d)). To the extent that additional such testing was required and the BDO Seidman Defendants "failed" in this regard, however, may constitute a violation of auditing standards. Missing from the Responsible Officer's allegation is how this purported failure rose to the level of a "tip" that a fraud was occurring at the Debtor. As with the other so-called "red flags," the Debtor's sharing of an officer with one of its clients does not constitute a strong inference of scienter.

The Adversary Complaint also makes the broad allegation, unsupported by any facts, that had the BDO Seidman Defendants conducted audits "in accordance with GAAS," they "would have detected these irregularities and red flags and expanded [their] audit testing procedures." (Adv. Comp. ¶ 28). Such an allegation is also insufficient to support a finding of scienter. As the District Court in *Spear & Jackson* held in rejecting the identical assertion as "insufficient" to meet the heightened scienter pleading requirement, "[n]or may Plaintiffs establish scienter by alleging that the auditor would have discovered the fraud had it not violated GAAS." 399 F. Supp. 2d at 1363.

In sum, the Adversary Complaint fails to set forth with requisite specificity under the PSLRA the manner in which the BDO Seidman Defendants acted "'in a severely reckless manner.'" *Theoharous*, 256 F.3d at 1225, *quoting Bryant*, 187 F.3d at 1287. As such, the federal securities claim set forth in Count V of the Adversary Complaint should be dismissed.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

**C.    The Securities Claim Should Be Dismissed Because It Fails To
Allege Injury In Connection With A Purchase Or Sale Of A Security**

The federal securities fraud claim also suffers from deficiency of not alleging the requisite injury "in connection with" the purchase or sale of a security that was the cause of the alleged injury. *Dura Pharmaceuticals*, 544 U.S. at 336, 125 S.Ct. at 1631; *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). When a company issues securities and, in return, receives money that is then misappropriated by its management, the securities laws recognize that the potential injury to the company occurs upon the misappropriation, not "in connection with" the sale of the securities. Thus, such purported claims are not cognizable under the federal securities laws because they fail the "in connection with" requirement. *Allard v. Arthur Andersen & Co. (USA)*, 924 F. Supp. 488, 494-95 (S.D.N.Y. 1996); *In re Investors Funding Corp. of New York Secs. Litig.*, 523 F. Supp. 533 (S.D.N.Y. 1980); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985). *See also Rochelle v. Marine Midland Grace Trust Co. of New York*, 535 F.2d 523, 528-29 (9th Cir. 1976) (bankruptcy trustee cannot sue company's accountants to recover proceeds of securities offering that later were "frittered away").

Here, the core of the Responsible Officer's federal securities claim is that the Capital Officers criminally inflated the value of the Debtor's accounts receivable, and used that value to induce persons to purchase debenture notes. (Adv. Comp. ¶ 19). After the proceeds from the debenture notes were delivered to the Debtor, the Capital Officers "funnel[ed] money out of Bankest," causing the Debtor's actual damage. (Adv. Comp. ¶ 87). Because the Debtor's actual damage occurred upon the money being funneled out of the Debtor, the Responsible Officer is unable to establish that the Debtor's purported injury occurred "in connection with" the sale of the debenture notes as a matter of law.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

In short, the Adversary Complaint fails to assert a cognizable federal securities claim for this separate reason, and should therefore be dismissed.

## **CONCLUSION**

For all the foregoing reasons, the Adversary Complaint should be dismissed in its entirety.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated April 10, 2006.

GREENBERG TRAURIG, P.A.
Attorneys for BDO Seidman, LLP and
Sandor Lenner
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:_____
Mark D. Bloom, Esq.
Florida Bar No. 303836
John B. Hutton, Esq.
Florida Bar No. 902160

-and-

GREENBERG TRAURIG, LLP
Karen Y. Bitar, Esq.
Adam D. Cole, Esq.
*Of Counsel*
200 Park Avenue
New York, New York
Telephone: (212) 801-2100
Facsimile: (212) 688-2449

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by U.S. mail, postage prepaid upon all parties on the attached Service List, this 10th day of April, 2006.

JOHN B. HUTTON

MIA-FS1\HUTTONJ\827100v01\P7MS01_.DOC\4/10/06

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Warren R. Trazenfeld,Esq.
Warren R. Trazenfeld, PA.
3225 Aviation Avenue, Suite 600
Miami, FL 33133-4741

Daniel A. Miller, Esq.
Broad and Cassel
One North Clematis Street, Suite 500
West Palm Beach, FL 33401

Kevin W. Goering, Esq.
Lisa M. Lewis, Esq.
Sheppard, Mullin, Richter & Hampton, LLP
30 Rockefeller Plaza, Suite 2400
New York, NY 10112

Daniel F. Blonsky, Esq.
Burlington, Schwiep, Kaplan & Blonsky, P.A.
2699 South Bayshore Drive
Office in the Grove, Penthouse A
Miami, FL 33133