## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No. 04-17602-BKC-AJC

E.S. BANKEST, L.C.,

_____ Debtor _____/

LEWIS B. FREEMAN, Responsible Officer          Adv. Pro. No. 06-01220-BKC-AJC
for the Reorganized Debtor E.S. Bankest,
L.C., a Florida limited liability corporation,

                    Plaintiff,

v.

BDO SEIDMAN, LLP, BDO
INTERNATIONAL B.V., SANDOR
LENNER and KEITH ELLENBERG,

_____ Defendants. _____/

## DEFENDANT BDO GLOBAL COORDINATION B.V.'S MOTION TO DISMISS ADVERSARY COMPLAINT AND JOINDER IN MOTION OF DEFENDANTS BDO SEIDMAN, LLP AND SANDOR LENNER TO DISMISS ADVERSARY COMPLAINT

### (REQUESTED TO BE HEARD ON MAY 10, 2006 AT 2:00 P.M.)

Defendant BDO Global Coordination B.V. ("BDO BV"), formerly known as

BDO International B.V., hereby moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure, as incorporated by Rule 7012, and to the Private Securities Litigation

Reform Act (15 U.S.C. § 78u-4, *et seq.*) ("PSLRA"), to dismiss the Adversary Complaint filed

by Lewis B. Freeman (the "Responsible Officer" or "Freeman"), in his capacity as responsible

officer for the Reorganized Debtor E.S. Bankest, L.C. (the "Debtor" or "Bankest").  For the

reasons stated below, the Adversary Complaint against BDO BV should be dismissed in its

entirety.

## PRELIMINARY STATEMENT

The Responsible Officer brings this Adversary Proceeding against BDO BV and Defendants BDO Seidman, LLP ("Seidman"), Sandor Lenner and Keith Ellenberg in relation to accounting services provided for the Debtor between 1999 and 2002. During that time, the Debtor purportedly engaged in the business of factoring accounts receivables. (Adversary Complaint ¶ 17). In reality, the Debtor was engaged in a scheme to conceal the fact that its accounts receivables were fictitious and thereby defraud its investors, lenders and accountants.

The Responsible Officer alleges that Defendants Seidman, Lenner and Ellenberg were negligent in providing accounting services to Bankest. The Adversary Complaint does not allege that BDO BV is directly liable for such negligence, but instead alleges only that BDO BV is vicariously liable for Seidman's actions. Specifically, the Responsible Officer claims that BDO BV is vicariously liable for malpractice and aiding and abetting the alleged breach of fiduciary duty. (*Id.* ¶¶ 77-106.) Additionally, without asserting a factual basis upon which the Court may conclude that BDO BV had the requisite fraudulent intent, Freeman further contends that BDO BV is liable for federal securities fraud, and seeks damages unrelated to the value of the purported securities -- namely, damages for an alleged deepened insolvency. (*Id.* ¶¶ 107-16.) Finally, the Adversary Complaint alleges that BDO BV's conduct amounted to deceptive and unfair trade practices under Florida law.

In the Adversary Complaint, Freeman makes no attempt to distinguish between BDO BV and Seidman with respect to the substantive allegations. Instead, Freeman collectively refers to BDO BV and Seidman as "BDO" in relation to the accounting services. There is, however, no dispute that the accounting services in question were provided only by Seidman, not by BDO BV. BDO BV has never provided any advice or information to Bankest and has never served as Bankest's internal accountant or as its independent auditor. BDO BV has never

examined, prepared, maintained or reviewed Bankest's books, financial statements, or reports and has never prepared or signed any of Bankest's audited financials.

As set forth in the Motion of Defendants BDO Seidman, LLP and Sandor Lenner to Dismiss Adversary Complaint ("Seidman's Motion to Dismiss"), the Adversary Complaint should be dismissed in its entirety. To begin with, the Responsible Officer lacks standing to recover the damages he seeks for the injury alleged in the Adversary Complaint because he cannot demonstrate that the Debtor suffered "injury in fact" under the case and controversy requirements of the United States Constitution. In addition, the entire Adversary Complaint should be dismissed because the Bankruptcy Court lacks subject matter jurisdiction since the Adversary Complaint was filed after the Debtor's Plan was confirmed and the Adversary Proceeding is unrelated to any matter arising under Title 11 of the United States Code.

Moreover, this Court should dismiss the federal securities claim (Count V) of the Adversary Complaint. As set forth, in Seidman's Motion to Dismiss, the federal securities claim fails because: (1) the Adversary Complaint does not meet the heightened pleading standard for such claims mandated by the PSLRA, 15 U.S.C. 78u-4, *et seq.*, and (2) the Responsible Officer has not alleged the requisite "loss causation" necessary to state a claim for federal securities fraud.

Finally, this Court should dismiss the claim against BDO BV for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, as alleged in Count III of the Adversary Complaint. As set forth below, the Responsible Officer fails to adequately set forth a cause of action under the Act because he has not alleged any actual damages which were caused by BDO BV.

## RELEVANT FACTUAL BACKGROUND

1.    The facts relevant to this motion to dismiss are based upon facts asserted in the Adversary Complaint and facts over which the Court may take judicial notice. The facts are, therefore, presumed true for purposes of this motion.

2.    As alleged in the Adversary Complaint, between 1998 and 2003 the Debtor purported to be engaged in the business of factoring accounts receivable (Adv. Comp. ¶ 16-17.) For most of its existence, the Debtor was 50 % owned by Espirito Santo Bank ("Espirito Santo") and 50 % owned by Bankest Capital Corporation ("Capital"). (*Id.* ¶ 16).

3.    The Debtor raised money by issuing debentures, which it solicited and sold through Espirito Santo as placement agent. (*Id.* ¶ 19). The Debtor also borrowed money through a bank line of credit. (*Id.* ¶ 20). The money that it raised from issuing the debentures and by borrowing from the bank was intended to be used to purchase accounts receivable. (*Id.* ¶ 19, 20). Instead, the Debtor's management and its principal clients engaged in an elaborate scheme to funnel the money out of company. (*Id.* ¶ 2, 23, 39, 109).

4.    Seidman acted as Bankest's outside auditors between 1999 and 2003. Pursuant to its engagement agreement with Bankest, Seidman was responsible for testing the Debtor's year-end financial statements to obtain "reasonable assurance" that the "financial statements are free of material misstatement," and to determine if they "present fairly, in all material respects, the financial position of E.S. Bankest . . . in conformity with generally accepted accounting principles." (*Id.* ¶ 108).

5.    The Adversary Complaint does not allege that BDO BV ever provided any advice or information to Bankest or that it ever served as Bankest's internal accountant or as its independent auditor. Nor does it allege that BDO BV ever examined, prepared, maintained or

reviewed Bankest's books, financial statements, or reports or prepared or signed any of Bankest's audited financials. In fact, the Responsible Officer has not pled that BDO BV had any direct professional contact or relationship with Bankest whatsoever because there is no basis for him to make such an allegation.

6.      The Adversary Complaint alleges that Bankest was engaged in a scheme to defraud the debenture purchasers, its lenders and its auditors. Specifically, the Adversary Complaint alleges that "virtually all" of the $1 billion in accounts receivables posted as the collateral for loans made to Bankest and debentures issued by Bankest "did not exist" or were "fake." (*Id.* ¶ 4, 19, 20, 109). The Adversary Complaint also contends that "[t]he Capital Officers used a series of techniques to create false financials reflecting nonexistent accounts receivables" and that the money raised using the fake receivables was thereafter funneled out of Bankest. (*Id.* ¶ 23, 87.)

7.      In or about September, 2003, Bankest's fraudulent scheme came to an end after it defaulted on the outstanding debenture notes and loans. Ultimately, the Capital Officers and certain of the Debtor's clients pled guilty or were indicted for the fraud. Moreover, Banco Espirito Santo International Ltd. ("BESIL"), the collateral agent for the debenture purchasers and the lender, commenced an action against Bankest, the Capital Officers and others in the United States District Court for the Southern District of Florida to recover on the outstanding debt and for the fraud.

8.      On June 9, 2004, the Bankest and BESIL entered into a Consent Judgment to resolve claims relating to money owed under the debentures and loans, as well as to resolve claims BESIL asserted against Bankest for fraud. In the Consent Judgment, the parties agreed that the Debtor (and certain affiliates) "were used to fraudulently induce BESIL and its affiliates

to extent $160,000,000 to Bankest, and were instrumentalities in furtherance of the conspiracy to defraud BESIL and its affiliates." (Consent Judgment at 6).

9.       On August 9, 2004, Bankest, through the Responsible Officer, filed a petition under chapter 11 of the United States Bankruptcy Code in case number 04-17602-BKC-AJC. (Adv. Comp. ¶ 8).

10.      At no time did BDO BV or defendants Sandor Lenner or Keith Ellenberg file a Proof of Claim or participate in the Debtor's chapter 11 case. (*See* Adv. Comp. ¶ 10).

11.      On December 28, 2004, Seidman filed a Proof of Claim asserting claims for fraud, breach of contract, indemnity, and contribution.

12.      On September 14, 2005, the Bankruptcy Court entered an order disallowing and dismissing Seidman's claim. (C.P. 346).

13.      On December 22, 2005, the Bankruptcy Court precluded Seidman from objecting to the proposed Plan of Liquidation.  The Bankruptcy Court ruled that, because its Proof of Claim had been disallowed, Seidman no longer had any interest in the Debtor's chapter 11 case.

14.      On December 23, 2005, the Bankruptcy Court entered an Order confirming Second Amended Plan of Liquidation for Bankest (the "Plan").  The Plan created two post-confirmation entities, the Reorganized Debtor and the Liquidation Trust both of which were to be administered by the Responsible Officer. (*See Plan*, at 27-30, 38-44).  Pursuant to the Plan, the Reorganized Debtor was assigned all pre-petition malpractice and related claims. (*See Plan* at 41).

15.      On January 6, 2006, the Responsible Officer filed a Notice of Effective Date of the Debtor's Second Amended Plan of Liquidation, asserting that the Plan had been substantially consummated. (C.P. 542).

16.     Neither the Debtor nor the Responsible Officer filed any claims or counterclaims against BDO BV prior to the confirmation or the assignment.  Instead, the Responsible Officer filed this Adversary Proceeding on February 23, 2006, in the Bankruptcy Court.

17.     Thereafter, on or about March 7, 2006, the Responsible Officer filed an affidavit attesting that the Plan had been substantially consummated.

18.     The Adversary Complaint asserts five claims against BDO BV as follows:  (1) professional malpractice (Count I); (2) vicarious liability as principal of agent Seidman (Count II); (3) deceptive and unfair trade practices (Count III); (4) aiding and abetting breach of fiduciary duty (Count IV); and (5) violation of 15 U.S.C. § 78j(b) and Rule 10b-5(b) (Count V) (the "Securities Fraud Claim").  Aside from Count III of the Adversary Complaint, each of the claims against BDO BV are based upon alleged vicarious liability for the accounting services provided by Seidman.

19.     Prior to and throughout the Debtor's bankruptcy proceedings, BESIL, the purported secured creditor in the Debtor's chapter 11 case, has been prosecuting a malpractice claim against Seidman and BDO BV in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in Case No. 04-14009 Ca 31 (the "BESIL State Action").  The BESIL State Action arises out of the same nucleus of facts as the present Adversary Proceeding and seeks the same ultimate damages.  Indeed, the BESIL State Action concerns (among other matters) the manner in which Seidman conducted audits of the Debtor's annual financial statements, the extent to which the audits were relied on by purchasers of the Debtor's debentures and BESIL, and the extent to which BESIL's purported damages were caused by defendants' actions.

<u>**ARGUMENT**</u>

I.    **THE ADVERSARY COMPLAINT SHOULD BE DISMISSED**
<u>**BECAUSE THE RESPONSIBLE OFFICER LACKS STANDING**</u>

The Adversary Complaint should be dismissed because the Responsible Officer
lacks standing to recover the damages he seeks for the injury alleged.  In order to satisfy the
constitutional requirements of standing, the Responsible Officer must establish that, pursuant to
the "case or controversy" clause of Article III, that the Debtor "has suffered an 'injury in fact,'
that the injury is 'fairly traceable' to the actions of the defendant, and that the injury would likely
be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  As set forth
in Seidman's Motion to Dismiss, the Responsible Officer has failed to establish that the Debtor
has suffered an injury in fact.  First, the purported injury alleged in the Adversary Complaint –
an increasing debt that allegedly deepened Bankest's insolvency – is illusory because Bankest's
sole purpose for existence was to enable money raised from creditors to be fraudulently
channeled out of the company.  *See O'Halloran v. First Union National Bank*, 350 F.3d 1197,
1202-03 (11th Cir. 2003); *SIPC v. Capital City Bank (In re Meridian Asset Management, Inc.)*,
296 B.R. 243, 257 (Bankr. N.D. Fla. 2003); *Feltman v. Prudential Bach Securities*, 122 B.R.
466, 473-74  (S.D. Fla. 1990).  Second, the injury alleged in the Adversary Complaint is also
illusory because  Bankest was an illegitimate and insolvent company from its inception that was
not capable of rehabilitation; therefore, the  alleged deepening insolvency did not cause the death
of the company.  *See Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.)*, 269
B.R. 721, 728 (Bankr. S.D. Fla. 2001).  Finally, the Responsible Officer lacks standing because
he seeks to recover for injuries suffered, if at all, by the debenture purchasers and lenders, not the
Debtor.  *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972); *Flagship*

*Healthcare*, 269 B.R. at 727 n.3.  The  claims of the debenture purchasers and lenders are already being pursued in the BESIL State Action.

BDO BV hereby joins in and incorporates by reference the arguments relating to regarding the Responsible Officer's lack of standing as set forth in Seidman's Motion to Dismiss.


## II.     THE ADVERSARY COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION

The entire Adversary Complaint should also be dismissed because this Court lacks subject matter jurisdiction.  Under Section 1334(b), "the district courts have original jurisdiction but not exclusive jurisdiction over all cases arising under title 11, or arising in or related to a case under title 11."  28 U.S.C § 1334(b).  This Court's jurisdiction is derivative of and dependent upon the district courts' jurisdiction.  *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1349 (11th Cir. 1999).  As a result, this Court can only exercise subject matter jurisdiction in proceedings:  (1) that "arise under" title 11; (2) that "arise in" cases under title 11; or (3) that are "relate to" cases under title 11.  *See id.*

Pursuant to 28 U.S.C. § 157, "core" proceedings are those that "aris[e] under title 11 or aris[e] in a case under title 11."  A proceeding "arises under" title 11 when it "invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code."  *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1349 (11th Cir. 1999).  A proceeding "arises in" a case under title 11 when it involves "administrative matters unique to the management of a bankruptcy case."  *Id.*  As the Eleventh Circuit declared:

> [i]f the proceeding involves *a right created by the federal bankruptcy law*, it is a core proceeding; for example, an action by the trustee to avoid a preference.  If the proceeding is one that would *arise only in bankruptcy*, it is also a core proceeding; for

example, the filing of a proof of claim or an objection to the discharge of a particular debt.

*Id.* at 1348 (emphasis added); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). By contrast, "non-core" describes those proceedings that are "otherwise related" to the bankruptcy estate. *Cont'l Nat'l Bank*, 170 F.3d at 1349. "If the proceeding does not invoke a substantial right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding." *Id.* at 1348.

As explained in Seidman's Motion to Dismiss, none of the claims asserted in the Adversary Complaint "arise under" or "arise in" title 11. Indeed, all of the purported claims existed pre-petition, and entirely independent of the Debtor's chapter 11 case. This action could -- and in large part already does -- proceed outside of the Bankruptcy Court. In fact, the BESIL State Action pending in Florida State Court asserts claims and facts virtually identical to those asserted in the Adversary Complaint.

Other than the conclusory allegation that this proceeding is core, the Responsible Officer points only to the fact that Seidman filed a Proof of Claim in the Debtor's chapter 11 case to establish core status. (Adv. Comp. ¶ 10.) However, as more fully set forth in Seidman's Motion to Dismiss, Seidman's Proof of Claim was disallowed in the chapter 11 case and the Bankruptcy Court ruled that Seidman no longer had any interest in the Debtor's chapter 11 case. In addition, BDO BV never filed a Proof Claim, nor participated in any way, in the Debtor's chapter 11 case. Because the claims allowance process is no longer implicated and Seidman's claims against the Debtor have been fully adjusted, the Adversary Complaint seeks relief that is unrelated to any bankruptcy function or to the Debtor's bankruptcy case. *See Miramar Resources, Inc. v. Webb (In re Miramar Resources, Inc.)*, 176 B.R. 45 (Bankr. D. Colo. 1994); *In*

*re New York City Shoes, Inc.*, 122 B.R. 668 (E.D. Pa. 1991). Thus, the Adversary Proceeding does not qualify as a core proceeding.

Moreover, the Adversary Proceeding does not fall within this Court's "related to" jurisdiction. As explained by Seidman, the Adversary Proceeding cannot impact or alter the Debtor's rights, liabilities, options or freedom of action in any way that alters the administration of the bankruptcy estate. In fact, the Debtor's Plan has already been confirmed and consummated. Therefore, the requisite nexus between the Debtor's chapter 11 case and the Adversary Proceeding -- which involves claims entirely unrelated to bankruptcy law -- is lacking and the Court should dismiss the Adversary Complaint for lack of subject matter jurisdiction.

BDO BV hereby joins in and incorporates by reference the arguments relating to subject matter jurisdiction set forth in Seidman's Motion to dismiss.

## III.    THE ADVERSARY COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(b) AND SEC RULE 10b-5(b)

The Adversary Complaint alleges that BDO BV violated 10(b) of the Exchange Act and SEC Rule 10b-5(b). (Adv. Comp., Count V. ¶¶ 107-16). To successfully state a securities fraud claim under Rule 10b-5, a plaintiff must allege (1) a material misrepresentation; (2) scienter, *i.e.*, a wrongful state of mind, (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) "loss causation," *i.e.*, a causal connection a between the material misrepresentation and the loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1631 (2005); *Ziemba v. Cascade Intern., Inc.*, 256 F.3d. 1194, 1202 (11th Cir. 2001); *Echavarri v. Cellstar Corp.*, No. 99-1502-Civ-Graham, 2001 U.S. Dist. LEXIS 25347, at *10 (S.D. Fl. Sept. 28, 2001) (citing *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997)).

Under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act (the "PSLRA"), a federal securities claim is subject to heightened pleading requirements.  In particular, the PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  In the Eleventh Circuit, in order to adequately meet the pleading requirements of PSLRA relating to scienter, a plaintiff must allege with particularity facts giving rise to a strong inference that a defendant acted with a severely reckless state of mind.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir. 1999).

As set forth in Seidman's Motion to Dismiss, the Responsible Officer has failed to allege facts sufficient to meet the PSLRA pleading requirements.  First, the Responsible Officer's attempt to plead "motive and opportunity" is insufficient.  *See id.* at 1286 (rejecting "the notion that allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter in [the Eleventh] Circuit.").  Second, the Responsible Officer's conclusory allegations that Seidman's audits did not comply with Generally Accepted Auditing Standards and that Seidman overlooked so-called "red-flags" is insufficient to meet the heightened pleading requirements.  *See Ziemba, Inc.*, 256 F.3d. at 1201; *Cheney v. Cyberguard Corp.*, No. 98-6879-CIV-GOLD, 2000 WL 1140306 at *11 (S.D. Fla. 2000).

Also, as discussed by Seidman in its Motion to Dismiss, the Responsible Officer's 10b-5 claim should be dismissed because the Adversary Complaint fails to allege the requisite causal connection between the material misrepresentation and the loss alleged.  *Dura Pharmaceuticals,* 544 U.S. 1t 336, 125 S.Ct. at 1631.  Specifically, the Adversary Complaint does not contain adequate allegations with regard to loss causation because the damages claimed by the Responsible Officer were directly caused by the Debtor's scheme to fraudulently funnel

money out of the company. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985) ("but for" causation insufficient to show that plaintiff's loss was caused by defendant's conduct for purposes of pleading 10(b) claim); *Rochelle v. Marine Midland Grace Trust Co. of New York*, 535 F.2d 523, 528-29 (9th Cir. 1976).  Moreover, the alleged injury was not made "in connection with" the purchase or sale of a security because the injury occurred upon the misappropriation of the money by the Debtor's principals, not upon the sale of a security.  *See id.*; *Allard v. Arthur Andersen & Co.*, (USA), 924 F. Supp. 488, 494-95 (S.D.N.Y. 1996); *In re Investors Funding Corp. of New York Secs. Litig.*, 523 F. Supp. 533 (S.D.N.Y. 1980).  Thus, the Responsible Officer has failed to show that any alleged injury occurred as a direct result of BDO BV's purported conduct or "in connection with" the purchase or sale of a security.

BDO BV hereby joins in and incorporates by reference the arguments set forth in Seidman's Motion to Dismiss relating to failure to state a claim under Section 10(b) and SEC Rule 10b-5.

## IV.    THE ADVERSARY COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

The Adversary Complaint alleges that BDO BV violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act"), Fla. Stat. §§ 501.201, *et seq.* FDUTPA prohibits "unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §§ 501.204(1).  To state a claim under the Act, a plaintiff must allege that the defendant (1) engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce" and (2) that Plaintiff suffered a loss as a result of the violation.  *See, e.g., Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, (Fla. 3d DCA 2000),

*citing* §§ 501.204(1) and 211(2), Florida Statutes; *Macias v. HBC of Florida, Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997) ("In order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair deceptive act.").

### A.    A Claim for Violation of FDUTPA Requires Proof of Actual Damages

Under the FDUTPA, a successful plaintiff is entitled to recover its actual damages incurred as a result of the underlying transaction, but is not entitled to collect special or consequential damages. *See, e.g., Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985); *In re Crown Auto Dealerships Inc.*, 187 B.R. 1009 (Bankr. M.D. Fla. 1995). "Actual damages" is defined under the Act as follows:

> "Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect – then the purchase price is the appropriate measure of actual damages."

§ 501.211(2), Fla. Stat.; *Urling,* 468 So.2d at 454; *Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984). In addition, "to be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer." *GMAC v. Laesser*, 718 So. 2d 276 (Fla. 4th DCA 1998). Thus, in order to properly plead a cause of action for violation of the FDUTPA, a plaintiff must allege actual damages proximately caused by the statutory violation. *See id.*; *Urling,* 468 So.2d at 454.

**B.**    **The FDUTPA Claim Should Be Dismissed Because The Responsible Officer Has Failed to Allege Actual Damages Caused by BDO BV**

The Adversary Complaint does not allege that the Debtor suffered any actual damages caused by BDO BV. Instead, the Responsible Officer alleges only that, as a result of BDO BV's allegedly unfair or deceptive acts, the Debtor "became insolvent which deepened to debts in excess of $170 million." (Adv. Comp. ¶ 98).

The FDUTPA only entitles a plaintiff "to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." *Urling*, 468 So.2d at 454. For example, in *Rollins, Inc. v. Heller*, homeowners sued a burglar alarm company for violation of FDUTPA after they were burglarized and the alarm system installed by the defendant failed to work during the burglary. The trial court found the alarm company liable for FDUTPA violations and awarded the plaintiffs $128,487 in compensatory damages based upon the value of the unrecovered stolen items. *Id.* The Third District Court of Appeal reversed the award of damages holding that the Act only allows recovery for actual damages, which must be related to the property which was the subject of the consumer transaction. *Id.* Because it found that the subject of the consumer transaction in that case was the installation of the burglar alarm system and the services performed thereon -- not the items stolen from the homeowners -- the homeowners were not entitled to the $128,487 for the stolen property. *Id.* at 585. Thus, the homeowners could only recover their actual out-of-pocket expenses paid for the installation of the alarm system and monthly service charges. *Id.*

Here, the subject of the consumer transaction is accounting services provided by Seidman. Nonetheless, the Responsible Officer is seeking to recover $170 million of alleged damages that have no relation to the value of the services provided. Because the Responsible

Officer has failed to allege actual out-of-pocket expenses paid in relation to the consumer transaction at issue, he has failed to allege actual damages. *See Himes v. Brown & Co. Secs. Corp.,* 518 So.2d 937, 938 (Fla. 3d DCA 1987) (finding no recovery under FDUTPA where plaintiff sustained no out-of-pocket losses); *Urling,* 468 So.2d at 454 (finding that cost of repairing extensive termite damage to structure of house constitutes special or consequential damages which fall outside the ambit of actual damages under FDUTPA).

Not only are the damages alleged by the Responsible Officer in the Adversary Complaint unrelated to the transaction at issue, they are also not losses incurred by the Debtor. As explained in detail in the standing section of Seidman's Motion to Dismiss and incorporated above, the Responsible Officer is seeking to recover for injuries suffered by the debenture purchasers and lenders who provided the Debtor with money. The Responsible Officer has not alleged any direct losses incurred by the Debtor in the Adversary Complaint.

Instead, the Debtor attempts to argue that it incurred indirect damages of $170 million based on a theory of deepening insolvency. As explained in Seidman's Motion to Dismiss, however, the Debtor cannot recover damages under a deepening insolvency theory because (1) the Debtor's primary existence was to enable money raised from the creditors to be fraudulently channeled out of the company and (2) the deepening insolvency did not cause the death of the company because it was already incapable of rehabilitation. *See O'Halloran v. First Union National Bank*, 350 F.3d 1197, 1202-03 (11th Cir. 2003); *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.)*, 269 B.R. 721, 728 (Bankr. S.D. Fla. 2001). In other words, the Debtor could not have been damaged under a deepening insolvency theory and, therefore, the Responsible Officer has not alleged any actual damages to the Debtor.

In sum, the Responsible Officer has not alleged any actual damages sustained by the Debtor that were caused by BDO BV.  Accordingly, he has failed to state a claim under FDUTPA and Count III of the Adversary Complaint should be dismissed.

## **CONCLUSION**

Based on the foregoing, BDO BV respectfully requests that the Court dismiss the Adversary Complaint in its entirety.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Dated: 4/20/06

| BROAD AND CASSEL | SHEPPARD, MULLIN, RICHTER |
|---|---|
| Co-Counsel for BDO Global Coordination B.V. (formerly known as BDO International B.V.) | & HAMPTON, LLP |
| One North Clematis Street, Suite 500 | Kevin W. Goering, Esq. |
| West Palm Beach, Florida 33401 | Email: kgoering@sheppardmullin.com |
| Telephone: (561) 832-3300 | (admitted pro hac vice) |
| Facsimile: (561) 655-1109 | Lisa M. Lewis, Esq. |
| Email: damiller@broadandcassel.com | Email: lmlewis@sheppardmullin.com |
| | (admitted pro hac vice) |
| | Co-Counsel for BDO Global Coordination B.V. (formerly known as BDO International B.V.) |
| By: _____ | 30 Rockefeller Plaza, Suite 2400 |
| Daniel A. Miller, Esq. | New York, NY 10112 |
| Florida Bar No. 091804 | Telephone: (212) 332-3800 |
| | Facsimile: (212) 332-3888 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail this _20th_ day of April, 2006, upon: **Warren R. Trazenfeld, Esq.**, Warren R. Trazenfeld, P.A., 3225 Aviation Avenue, Suite 600, Miami, Florida 33133; **Daniel F. Blonsky, Esq.**, Burlington, Schwiep, Kaplan & Blonsky, P.A., 2699 S. Bayshore Drive, Penthouse A, Miami, Florida 33133; **Karen Y. Bitar, Esq.** and **Adam D. Cole, Esq.**, Greenberg Traurig, LLP, 885 Third Avenue, New York, NY 10022-4834; **John B. Hutton, Esq.**, Greenberg Traurig, LLP, 1221 Brickell Avenue, Miami, FL 33131.

By: _____

Daniel A. Miller, Esq.
Florida Bar No. 091804