ORDERED in the Southern District of Florida on ___SEP 18 2006___



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

SEP 20 2006

In re:

E.S. BANKEST L.C.,

    Debtor.
_____/

Chapter 11
Case No. 04-17602-BKC-AJC

LEWIS B. FREEMAN,

    Plaintiff,
vs.

BDO SEIDMAN, LLP, BDO
INTERNATIONAL, B.V., SANDOR
LENNER, KEITH ELLENBURG,

    Defendants.
_____/

Adv. Pro. No. 06-1220-BKC-AJC-A

**ORDER DENYING (I) BDO SEIDMAN, LLP AND SANDOR LENNER'S MOTION TO DISMISS ADVERSARY COMPLAINT, AND (II) BDO GLOBAL COORDINATION, B.V.'S MOTION TO DISMISS ADVERSARY COMPLAINT WITH RESPECT TO 15 U.S.C. § 78J(B) AND RULE 10B-5(B) ARGUMENTS**

**THE MATTER** came before the Court on July 13, 2006 at 2:30 p.m. in Miami, Florida upon the (1) Motion of Defendants BDO Seidman, LLP ("BDO") and Sandor Lenner to Dismiss Adversary Complaint ("BDO Seidman Motion") (C.P.#14), (2) BDO Global Coordination, B.V.'s[1] Motion to Dismiss Adversary Complaint ("BDO Int'l Motion") (C.P.#31), (3) Defendant Keith Ellenberg's Joinder in Motion by BDO Seidman, LLP and Sandor Lenner to Dismiss Freeman's Complaint (the "Joinder") (C.P.#17) (collectively, the BDO Seidman Motion, BDO Int'l Motion and Joinder shall be referred to herein as the "Motion to Dismiss"), and (4) Plaintiff's Response in Opposition to (i) BDO Seidman, LLP and Sandor Lenner's Motion to Dismiss Adversary Complaint and, (ii) BDO Global Coordination, B.V.'s Motion to Dismiss Adversary Complaint. (C.P.#64.) The Court has reviewed the above-identified pleadings, the Court file in this adversary proceeding and the main case, and heard argument of counsel.

BDO moves to dismiss Plaintiff Lewis B. Freeman's claim under 15 U.S.C. § 78j(b) and Rule 10b-5(b) on the grounds that the Complaint does not adequately allege scienter or that BDO's allegedly unlawful conduct was "in connection with" the sale of debenture notes. *See* (BDO Seidman Motion at 29, 33.) By this Order, the Court denies the Motion to Dismiss Count V of the Complaint and holds that the allegations of the Complaint are sufficient to state a Rule 10b-5 claim against each of the Defendants.

## SUMMARY

BDO's primary argument is that scienter is not adequately pled  The Court disagrees. *In re Eagle Bldg. Techs. Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1326 (S.D. Fla. 2004); *see also In re Sahlen & Assoc., Inc. Sec. Litig.*, 773 F. Supp. 342, 359 (S.D. Fla. 1991) (Compl. ¶¶ 2, 4, 53).

---

[1] The Adversary Complaint for Damages ("Complaint") filed February 22, 2006 names as a Defendant BDO International B.V., which is the alias of BDO Global Coordination B.V. (BDO Int'l Motion at 1.) For consistency, the Court refers to this entity as "BDO International."

The determination of whether the Complaint sufficiently pleads scienter is "fact-specific" and requires "consideration of each individual factor as well as the context as a whole." *In re Eagle Bldg.*, 319 F. Supp. 2d at 1326. Courts consider whether allegations of GAAS and GAAP violations, red flags that would have placed a reasonable auditor on notice of the wrongdoing, and the magnitude of the fraud, taken together and in context, create the "sufficient inference of scienter" for pleading a Rule 10b-5 claim. *See, e.g., id.* at 1326-32 quoting *Arnlund v. Deloitte & Touche, LLP*, 199 F. Supp. 2d 461 (E.D. Va. 2002) (reviewing case law and concluding that "when the GAAS and GAAP violations are combined with the magnitude of the fraud or red flags . . . it is apparent that the 'factual picture painted by the complaint' reveals allegations providing a sufficient inference of scienter.").

To withstand a motion to dismiss, the Eleventh Circuit held that allegations that defendant "acted with a severely reckless state of mind" will establish scienter. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir. 1999). Here, the Complaint alleges that BDO, and its lead partners on the Bankest audit, Defendants Lenner and Ellenburg, intentionally ignored red flags that warranted further investigation. The Complaint alleges that these red flags included the Capital Officers' refusal to provide documents necessary to the Bankest audit, and that BDO's own audit manager stopped the audit. Defendants Lenner and Ellenburg then overruled the audit manager and restarted the audit, informing the audit manager that Capital Officer Parlapiano, with whom Lenner had a "social relationship," was an "important person in the community," and that the manager should be more "business oriented." (Compl. ¶ 38.); *In re Rent-way Sec. Litig.*, 209 F. Supp. 2d 493, 509 (W.D. Pa. 2002) (scienter alleged against auditor when employee who raised concerns regarding accuracy of client's information was removed from audit by partner who had friendship with officer at client); *see also In re Suprema*

3

*Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 280 (3d Cir. 2006) (noting that client's limitation of the scope of an audit is a strong indicator of fraud and reversing dismissal of a Rule 10b-5 claim against auditor).

The Complaint further alleges that BDO was a financial partner with Stratasys, which generated some of the very accounts receivable that BDO was supposed to verify as Bankest's auditor. The Complaint alleges that BDO verified as real over $30 million in fake receivables from its financial partner, Stratasys. (Compl. ¶¶ 37, 53.) BDO, Lenner and Ellenburg also each are alleged to have had a motive to ignore the fraud because, by continuing to certify Bankest's financial statements, they could guarantee that BDO would continue to receive revenue from its strategic financial partner Stratasys, revenue that was reflected in Lenner and Ellenburg's compensation. (*Id.* ¶¶ 4, 24-26, 38, 46-48, 51-53.); *see, e.g., In re Microstrategy, Inc. Secs. Litig.*, 115 F. Supp. 2d at 655 (holding that auditor's partnership with and financial stake in audit client compromised independence and provided auditor with the "motive" to certify allegedly false financial statements necessary to find inference of scienter).

Finally, the Complaint alleges that over the course of five years, BDO verified over $1 billion in fictitious accounts receivables, virtually all of Bankest's purported assets. (Compl. ¶¶ 2, 51.) Plaintiff asserts the overwhelming magnitude of the fraud BDO failed to detect over five separate audits supports a finding of scienter. *See, e.g. In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1345 (S.D. Fla. 1999) ("[W]hen tidal waives of accounting fraud are alleged, it may be determined that the accountant's failure to discover the client's fraud raises an inference of scienter on the face of the pleading.").

The Court agrees with the Plaintiff that the Complaint's allegations of GAAS violations, red flags ignored by BDO, the magnitude of the fraud undetected by BDO and that BDO had a

4

motive to turn a blind eye to the fraud, taken together, adequately plead scienter under Rule 10b-5. Furthermore, the Complaint's allegations that BDO knew or should have known that its unqualified audited financial statements were provided to the Bank Directors who authorized the issuance of the debenture notes and the investors who purchased the debenture notes satisfies the "in connection with" prong of a 10b-5 claim. (*Id.* ¶ 115); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1513 (2006) (defining "in connection with" to encompass any fraud that "coincide[s]" with a securities transaction).

## FACTS

In light of the standard applicable to motions to dismiss, to wit, that a trial court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff," *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996); *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) (same), the Court adopts the facts as alleged in the Complaint and incorporates those facts herein in their entirety.

## ANALYSIS

### I.  LEGAL STANDARDS

On a motion to dismiss the Court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Johannessen*, 76 F.3d at 350; *Kirwin*, 391 F.3d at 1325. "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995). The threshold is similarly low when the defendant moves to dismiss on the grounds that the plaintiff lacks standing. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1536 & n.5 (11th Cir. 1994) (reversing the district court's order granting a motion to dismiss based on standing and "reiterat[ing] that we may only affirm the dismissal of the complaint if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations"). At bottom, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 430 F. Supp. 2d 1296, 1309 (S.D. Fla. 2006) citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

To state a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5 (collectively, "Rule 10b-5"), a plaintiff must show: "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

## II. THE COMPLAINT'S ALLEGATIONS OF BDO'S SEVERELY RECKLESS CONDUCT ARE SUFFICIENT TO ALLEGE SCIENTER.

The Court holds that the Complaint satisfies the Eleventh Circuit Court of Appeals standard for pleading scienter.[2] The Eleventh Circuit has held that, to adequately plead scienter under Rule 10b-5, plaintiff need only show severe recklessness. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir. 1999) (allegations that defendant "acted with a severely reckless state of mind still suffices to state a claim for civil liability under Rule10b-5"); *see also Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F. Supp. 2d 1324, 1339 (N.D. Ga. 1998) ("A showing of severe recklessness satisfies the scienter requirement" of Rule 10b-5).

There is no single allegation required to plead scienter for a Rule 10b-5 claim against an auditor. Instead, courts consider whether allegations of GAAS and GAAP violations, red flags

---

[2] The securities law claim under the Securities Act of 1934 is the only claim asserted by Freeman on behalf of Bankest which requires scienter as an element. Although scienter was discussed at the Hearing in the context of Plaintiffs' claim for aiding and abetting the breach of a fiduciary duty, scienter is not an element of a claim for breach of fiduciary duty. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) ("The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages.").

6

and the magnitude of the fraud, taken together and in context, create the "sufficient inference of scienter" for pleading a Rule 10b-5 claim. *See, e.g., In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d at 1326-32 (reviewing case law and concluding that "when the GAAS and GAAP violations are combined with the magnitude of the fraud or red flags . . . it is apparent that the 'factual picture painted by the complaint' reveals allegations providing a sufficient inference of scienter." (quoting *Arnlund v. Deloitte & Touche, LLP*, 199 F. Supp. 2d 461 (E.D. Va. 2002).)

BDO relies on *Ziemba*, 256 F.3d 1194, to argue that Freeman must allege BDO was tipped off to the fraud; however, BDO quotes *Ziemba* out of context when it states that the *Ziemba* court "dismiss[ed] [the complaint] because '. . . Plaintiffs have pointed to no 'tips,' letters or conversations raising inferences that [the auditor] knew of any fraud.'" (BDO Motion at 30-31 (quoting *Ziemba*, 256 F.3d at 1210).) In the sentence immediately following the one cited by BDO, the Court additionally stated "Plaintiffs have pointed to no facts suggesting that C&L was severely reckless in not knowing about any fraud." *Ziemba*, 256 F.3d at 1210. Thus, the *Ziemba* court contemplated that scienter could be alleged *either* by pointing to tip-offs giving rise to an inference of knowledge *or* by pointing to red flags giving rise to an inference of severe recklessness. At least one district court has found scienter adequately pled without allegations of a tip. *In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1330-32 (S.D. Fla. 2004) (rejecting argument that *Ziemba* requires allegation of a "tip-off" to plead scienter).

### A. The Complaint's Allegations of the Magnitude of the Fraud—Over 90% of Bankest's Assets Certified by BDO Were Fake—Gives Rise to an Inference of Scienter.

The Complaint alleges that BDO verified over $1 billion in fictitious account receivables as real. (Compl. ¶ 2.) Violations of accounting standards can give rise to a strong inference of scienter "when combined with a drastic overstatement of financial results." *Carley Capital Group*, 27 F. Supp. 2d at 1339; *see also In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp.

7

2d at 1326. Here, allegations of BDO's numerous GAAS violations, (Compl. ¶ 81), and the "sheer magnitude" of the fraud that BDO's audits concealed and BDO failed to detect are sufficient to create an inference of scienter. *See, e.g., In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1345 (S.D. Fla. 1999) ("[W]hen tidal waves of accounting fraud are alleged, it may be determined that the accountant's failure to discover the client's fraud raises an inference of scienter on the face of the pleading.").

BDO relies on *In re Eagle Building Technologies, Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, to argue that the Complaint's allegations of the magnitude of the fraud are insufficient because in *Eagle Technologies*, there was a single large receivable—BDO refers to it as the "pink elephant in the room"—that was misstated, whereas here the Complaint alleges BDO misstated many smaller account receivables, and, according to BDO, it is the "magnitude of the single account receivable" that demonstrates scienter. (July 13, 2004 Transcript at 49, 85.) The Court finds BDO's argument unpersuasive.

*In re Eagle Building Technologies* does not support BDO's claim that it is necessary to allege BDO verified a single false transaction or account receivable to find scienter adequately pled. In fact, as the court in *Eagle Building Technologies* noted, in that case the plaintiff's allegation of a single false accounting entry was unlike any of the cases on which the parties relied because in those cases—like here—the allegations were that the auditor verified numerous false transactions over a period of time. *Id.* at 1327. In *Eagle Building Technologies*, the court merely held that allegations that an auditor verified as accurate a single large fictitious transaction would suffice to allege scienter; it was not necessary to allege that the auditor failed to discover numerous false transactions. 319 F. Supp. 2d at 1327-38 ("[T]he number of transactions and the amount of money involved must be taken in context.").

Moreover, the Complaint does allege that among the $1 billion in fictitious accounts receivable verified as real by BDO, there was a single $30 million fictitious account verified by BDO while BDO had specific knowledge of its falsity. (Compl. ¶ 53.) Specifically, the Complaint alleges that at the same time BDO was Bankest's auditor, it was also the strategic partner of Stratasys, a Bankest factor client who sold Bankest accounts receivable. (Compl. ¶ 48.) The Complaint further alleges that as Stratasys' partner, BDO—via Lenner, BDO's "Alliance Liaison Partner" for Stratasys—had access to Stratasys' financial information. (*Id.* ¶¶ 50, 52-53.) The Complaint alleges that BDO also knew that Stratasys could barely pay its licensing fees to BDO. (*Id.* ¶ 53.) According to the Complaint, BDO knew or was extremely reckless in not knowing that Stratasys had less than $1 million in accounts receivable to sell to Bankest, when BDO verified that Stratasys had sold $30 million in accounts receivable to Bankest. (*Id.*)

The Complaint's allegations that BDO verified as real over $1 billion in fictitious accounts receivables, which included BDO's verification of the Stratasys $30 million for which BDO had additional knowledge of its falsity, adequately allege the magnitude of the fraud that, taken with the allegations of GAAS and GAAP violations, satisfy the pleading requirements for scienter. *In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d at 1326-28; *Carley Capital*, 27 F. Supp. 2d at 1335-36, 1339 (where auditor issued clean opinion despite improper accounting treatment of several transactions, including understating expenses by $4 million and improperly including $12.5 million in revenue, and failed to confirm a $3.5 million contract, the magnitude of the mistakes was "dramatic" and, coupled with GAAP violations, created a strong inference of scienter); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1331-32, 1345 (where the company re-stated a restructuring charge from $300 million to $239 million, the "sheer

magnitude" of the mistakes contributed to strong inference of scienter); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 359 (S.D. Fla. 1991) (denying motion to dismiss claim against auditor, finding the write-off of nearly two-thirds of SAI's accounts receivable gave a "strong indication that something was seriously amiss); *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173, 180 (D.R.I. 2001) (denying motion to dismiss 10b-5 claim because of the "magnitude of the accounting error," where company overstated net income by 240% and 306% in successive years); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636-38 (E.D. Va. 2000) (where company overstated revenue by a total of $66 million over three years, due to improperly recognized revenue on numerous contracts, including three of its most important contracts, the overstatements were "of such a great magnitude—amounting to a night-and-day difference with regard to MicroStrategy's representations of profitability—as to compel an inference that fraud or recklessness was afoot").

### B. The Complaint's Allegations of Numerous Red Flags Ignored by BDO Are Sufficient to Establish BDO's Scienter.

The Complaint's allegations that BDO's partnership with Stratasys gave BDO a motive to turn a blind eye to the fraud and that as a result BDO consciously ignored red flags in its audits of Bankest further support the Court's finding that the Complaint adequately pleads scienter. In evaluating allegations of red flags in the context of a Rule 10b-5 claim against an auditor, courts recognize a "wide variety of alleged red flags" to find scienter, none of which are "specifically required or dispositive" because "each analysis of scienter relies heavily on the overall context." *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1362-63 (S.D. Fla. 2005);[3] *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1333 (M.D. Fla. 2002) (red flags

---

[3] BDO also argues that because some of the red flags it ignored are a "re-hash" of alleged Generally Accepted Accounting Standard (GAAS) violations, Freeman cannot establish scienter. (BDO Seidman Motion at 30.) The fact that a red flag may also constitute a violation of GAAS does not render it inadequate to plead scienter. *See, e.g.,*

are what would have put any "reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors"); *Bryant*, 187 F.3d at 1285 (motive and opportunity may be relevant to a showing of severe recklessness); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d at 655 (auditor's partnership with audit client destroyed auditor's independence and created a motive to ignore indicia of fraud that supported an inference of scienter).

### 1. Red flag: The Complaint alleges that BDO intentionally failed to investigate when the Capital Officers refused to provide BDO with information necessary to prepare accurate financial statements.

The Complaint alleges that BDO signed off on Bankest's financials as "free of material misstatement" even though Bankest—at the direction of the Capital Officers—repeatedly refused to provide BDO with the documents and information BDO deemed necessary to perform accurate audits. (Compl. ¶¶ 37, 47.) As alleged in the Complaint, BDO's severely reckless conduct was evident during BDO's first audit of Bankest when one of the Capital Officers *refused* to provide BDO with the requested documentation, raising the suspicion of the audit manager, who promptly terminated the audit. (*Id.* ¶¶ 37-38.) The Complaint alleges that the audit resumed only because the decision to discontinue the audit was overridden by Defendants Lenner and Ellenburg, the BDO partners responsible for the Bankest audit. (*Id.* ¶¶ 5, 38.) The Complaint alleges that Lenner had a social relationship with Dominick Parlapiano, the Capital officer who refused to provide the requested information. (*Id.* ¶ 24.) According to the Complaint, Lenner informed the audit manager that Parlapiano was an "important person in the community," and that the manager should be more "business orientated." (*Id.* ¶ 38.)

---

*In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d at 1337-38 (noting that a conflict of interest is a GAAS violation and can support an inference of scienter). The Complaint identifies red flags—some of which included GAAS violations—that were allegedly ignored by BDO at the time of the Bankest audits such that BDO was allegedly severely reckless when it failed to investigate further and instead consciously decided to issue unqualified opinions warranting the accuracy of Bankest's financials.

11

An allegation that an audit partner ignored indicia of fraud and continued an audit on the basis of his personal relationship with the audit client constitutes a red flag sufficient to plead scienter. *In re Rent-way Sec. Litig.*, 209 F. Supp. 2d 493, 509 (W.D. Pa. 2002) (scienter alleged against auditor when employee who raised concerns regarding accuracy of client's information removed from audit by partner who had friendship with officer at client); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 280 (3d Cir. 2006) (noting that client's limitation of the scope of an audit is a strong indicator of fraud and reversing dismissal of a Rule 10b-5 claim against auditor); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1366 (N.D. Ga. 2005) (allegations that "defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter" and state a 10b-5 claim quoting *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002)).

### 2. Red Flag: The Complaint alleges that BDO repeatedly disregarded suspicious results when it purported to test Bankest's accounts receivable and reduced its level of scrutiny to match those results.

The Complaint also alleges in detail that when BDO obtained a suspicious result in testing the validity of Bankest's accounts receivable it chose to ignore that result and switch to a different—and less rigorous and reliable—test. (Compl. ¶¶ 33-36, 39-43.) Specifically, according to the Complaint, in verifying the existence of Bankest's accounts receivable, BDO could not obtain the necessary third-party confirmations that the receivables were good and valid. (*Id.*) The Complaint alleges that BDO chose to apply consistently less rigorous tests, until ultimately BDO accepted verifications based on Bankest internal documents prepared by the Capital Officers. (*Id.*) The Complaint alleges that not only did BDO violate GAAS, by failing to verify Bankest's accounts receivable with information obtained from third parties independent from the audit client, but these allegations establish scienter because they demonstrate that BDO

chose to "ignore the obvious" and conducted audits so deficient that they "amounted to no audit at all." *In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d at 1326-31.

For example, according to the Complaint, in its 1998 audit, BDO determined that it needed to contact 29 account debtors to confirm that the accounts receivable listed as Bankest's primary asset actually existed. The Complaint alleges that, inexplicably, BDO acquiesced when the Capital Officers requested that BDO not contact 22 of the 29 debtors. (Compl. ¶ 33.) The Complaint alleges that even when BDO switched to the "subsequent collections" test to verify Bankest's receivables, BDO *again* proceeded with the audit despite being denied access to proper evidence of payments from third parties—information necessary to perform that test. (*Id.* ¶ 36.)

According to the Complaint, in 1999, for example, BDO was able to obtain confirmation from only one vendor (*id.* ¶ 39), and incredibly BDO never verified Bankest's receivables with the account debtors who actually owed the purported debts. (*Id.* ¶ 43.) The Complaint further alleges that for its 2001 audit, BDO sent 48 confirmations and did not receive back a single one. (*Id.*) The Complaint alleges that rather than questioning these startling results, BDO gave up. (*Id.* ¶ 35.)

According to the Complaint, ultimately, BDO claims to have relied on a "Agreed to Invoice" test in which the auditors simply examined a seller's invoice and compared it to the amount recorded on Bankest's own books—a test which merely confirmed that Bankest properly had recorded the amount it was purportedly owed and was a procedure that conveniently required no third party confirmation of the receivables whatsoever. (*Id.* ¶¶ 40, 43.) The Complaint alleges that BDO used this "test" to certify the validity of Bankest's entire accounts receivable portfolio. (*Id.*)

13

According to the Complaint, BDO also never applied the GAAS-mandated "greater scrutiny" when it verified the receivables Bankest purchased from its related parties, Capital and Stratasys. (*Id.* ¶¶ 4, 30, 81(c).) The Complaint alleges that the majority of Bankest's receivables were "re-factored" through Capital, meaning that Capital purchased the receivables and then re-sold them to Bankest. (*Id.* ¶ 27.) The Complaint alleges that BDO, despite having a duty to Bankest to detect fraud, accepted without question the validity of transactions confirmed *by the same person for both Capital and Bankest*. (*Id.* ¶ 30.)

According to the Complaint, Bankest also listed as assets $30 million in purported receivables from Stratasys, whose CEO was also the CFO of Bankest, making Stratasys another related party for the purposes of GAAS. (*Id.* ¶ 4.) The Complaint alleges that even though BDO knew Bankest and Stratasys constituted related parties, BDO performed no additional testing of their transactions. (*Id.* ¶ 81(c).)

BDO argues that allegations that it failed to verify Bankest's accounts receivable are no different from the red flag found "insufficient" by the court in *Cheney v. Cyberguard Corp.*, No. 98-6879, 2000 WL 1140306 (S.D. Fla. July 31, 2000). (BDO Seidman Motion at 31-32.) In *Cheney*, however, the auditor "failed to directly contact [the company's] resellers and make inquiries regarding the terms of their payment obligations"; that is, the auditor negligently failed to take steps that *would have* put it on notice that something was amiss. *Cheney*, 2000 WL 1140306, at *12. Here, according to the Complaint, BDO actually took those steps, and obtained highly suspicious results when it attempted to contact the vendors and their customers. Thus, according to the Complaint, BDO *was* on notice that something was amiss—precisely the sort of red flag that courts consistently hold is adequate to allege scienter under 10b-5. *See, e.g., In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d at 1329 (red flags are sufficient to establish

14

an auditor's scienter). As in *Eagle Building Technologies*, "Plaintiffs are not pleading that 'later disclosed information' would have been discovered earlier, but that information actually disclosed should have been investigated." *Id.* (distinguishing *Cheney* and finding that plaintiff had alleged facts giving rise to a strong inference of scienter). If proven true, the allegations of the Complaint may well establish severely reckless conduct by BDO that establishes scienter under Eleventh Circuit law.

### C. Allegations of BDO's Conflict of Interest and Motive to Turn a Blind Eye to the Fraud Create Inference of Scienter.

The Complaint also alleges that BDO had a significant motive to ignore these red flags: The Complaint alleges that at the same time BDO—as Bankest's auditor—was certifying that $30 million in receivables Stratasys had sold to Bankest were genuine, it—as Stratasys' strategic partner—was profiting from the revenue generated by those receivables. (Compl. ¶ 53.) Thus, according to the Complaint, as long as Bankest had BDO's unqualified audited financials necessary for Bankest to remain in business, BDO would continue to generate audit fees from Bankest and revenue in the form of fees paid to BDO by Stratasys. (*Id.* ¶¶ 49, 53.) BDO's motive -- its alleged direct stake in the Bankest audit -- supports a finding of scienter. *See, e.g., In re Microstrategy, Inc. Secs. Litig.*, 115 F. Supp. 2d at 655 (holding that auditor's partnership with and financial stake in audit client compromised independence and provided auditor with the "motive" to certify allegedly false financial statements necessary to find inference of scienter).

Moreover, according to the Complaint, Lenner and Ellenburg also each had a similar motive that supports a finding of scienter: their compensation was tied to the success of BDO's strategic partnerships, including the Stratasys partnership. (Compl. ¶ 51.) BDO's, Lenner's and Ellenburg's alleged conflicts of interest therefore "weigh heavily in favor of a finding of scienter." *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d at 1337 (dismissing Rule 10b-5 claim

in part because plaintiffs did not allege any "benefit that would enure to [the auditor] as a result of returning an audit favorable to Sunterra").

### III. BDO'S MATERIALLY MISLEADING AUDITS WERE IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

The Complaint alleges that BDO's audited financials were provided to Bankest's investors in connection with their purchase of Bankest debenture notes and relied upon by the Bank Directors in authorizing Bankest's issuance of the debenture notes. *See* (Compl. ¶115). BDO argues that these allegations fail to establish that BDO's alleged severely reckless conduct as Bankest's auditor was in connection with the purchase or sale of Bankest debenture notes. (BDO Seidman Motion at 33; BDO Int'l Mot. at 12-13.)

Recent Supreme Court cases define the "in connection with" element of a Rule 10b-5 claim quite expansively. The phrase "in connection with" encompasses any fraud that "coincide[s]" with a securities transaction. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1513 (2006). This broad construction of the "in connection with" element has been applied to find Rule 10b-5 claims against auditors adequately pled when the allegations were that the auditor's representations were communicated to the investors. *See, e.g., In re Enron Corp. Secs., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 584-85 (S.D. Tex. 2002). Here, the Complaint's allegations that BDO knew or should have known that its unqualified audited financial statements were provided to the Bank Directors who authorized the issuance of the debenture notes and the investors who purchased the debenture notes satisfies the "in connection with" prong of a 10b-5 claim. (Compl. ¶ 115); *Dabit*, 126 S. Ct. at 1513.

BDO relies on four cases from outside the Eleventh Circuit to argue that the "in connection with" requirement cannot be met if the plaintiff received full value for the securities, and then was injured by a subsequent misappropriation of the proceeds. *See* (BDO Seidman

Motion at 33). However, the Supreme Court has rejected such a narrow construction of the "in connection with" element of a Rule 10b-5 claim. In *SEC v. Zandford*, 535 U.S. 813, 821 (2002), the Supreme Court rejected the argument that the misconduct at issue must take place "within the context of a securities exchange" in order for it to be conduct prohibited by Rule 10b-5. *Id.* In holding that a Rule 10b-5 claim is stated even when the lawful sale or purchase of a security "coincides" with a subsequent misappropriation of the value of that security, the *Zandford* Court cited with approval the holding of *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6 (1971). *Zandford*, 535 U.S. at 821-22. In *Bankers Life*, the Court found that a corporation could state a 10b-5 claim based on allegations that its directors had been misled into authorizing the sale of bonds believing that the corporation would receive the proceeds of the sale, finding that the fact that those proceeds were misappropriated by someone other than the defendant was "irrelevant." *Id.* at 822 quoting *Bankers Life*, 404 U.S. at 10.

Finally, BDO International cites the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), to argue that Plaintiff has not alleged "loss causation" because its damages "were directly caused by the Debtor's scheme to fraudulently funnel money out of the company." (BDO Int'l Mot. at 12-13.) In *Dura Pharmaceuticals*, the Court held that all that was required of a plaintiff who seeks to recover an economic loss under Rule 10b-5 claim is to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind in the allegations of his complaint." 544 U.S. at 347. The allegations of the Complaint that Bankest lost in excess of $170 million as a result of BDO's certification of $220 million in fake accounts receivable as good and valid satisfies that standard. *See, e.g.*, (Compl. ¶ 2).

The Court finds that the Complaint adequately alleges that BDO's allegedly unlawful conduct as Bankest's auditor was in connection with the sale or purchase of a security for the purposes of pleading a Rule 10b-5 claim.

For the reasons set forth herein, it is

**ORDERED AND ADJUDGED** that the Motions to Dismiss are DENIED as to Count V of the Complaint which alleges a violation of 15 U.S.C. § 78j(b) and Rule 10b-5(b). Defendants shall file an answer to the Plaintiff's Complaint within twenty (20) days of the date of this order.

### #

**Submitted by:**
Paul J. Battista, Esq.
pbattista@gjb-law.com
GENOVESE, JOBLOVE & BATTISTA, P.A.
Bank of America Tower Int'l Place
100 S.E. 2nd Ave., 44th Floor
Miami, FL 33131
Tel. (305) 349-2300
Fax (305) 349-2310

**Copies to:**
Paul Battista, Esq.
*(Attorney Battista shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*