SEP 18 2006

ORDERED in the Southern District of Florida on_____



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

SEP 20 2006

In re:

E.S. BANKEST L.C.,

     Debtor.

_____/

Chapter 11
Case No. 04-17602-BKC-AJC

LEWIS B. FREEMAN,

     Plaintiff,

vs.

BDO SEIDMAN, LLP, BDO
INTERNATIONAL, B.V., SANDOR
LENNER, KEITH ELLENBERG,

     Defendants.

_____/

Adv. Pro. No. 06-1220-BKC-AJC-A

**ORDER DENYING (I) BDO SEIDMAN, LLP AND SANDOR LENNER'S
MOTION TO DISMISS ADVERSARY COMPLAINT, AND (II) BDO GLOBAL
COORDINATION, B.V.'S MOTION TO DISMISS ADVERSARY COMPLAINT
WITH RESPECT TO STANDING AND JURISDICTION ARGUMENTS**

THE MATTER came before the Court on July 13, 2006 at 2:30 p.m. in Miami, Florida upon the (i) Motion of Defendants BDO Seidman, LLP ("BDO") and Sandor Lenner to Dismiss Adversary Complaint ("BDO Seidman Motion") (C.P.#14), (ii) BDO Global Coordination, B.V.'s[1] Motion to Dismiss Adversary Complaint ("BDO Int'l Motion") (C.P.#31), (iii) Defendant Keith Ellenberg's Joinder in Motion by BDO Seidman, LLP and Sandor Lenner to Dismiss Freeman's Complaint (the "Joinder") (C.P.#17) (collectively, the BDO Seidman Motion, BDO Int'l Motion and Joinder shall be referred to herein as the "Motion to Dismiss"), and (iv) Plaintiff's Response in Opposition to (a) BDO Seidman, LLP and Sandor Lenner's Motion to Dismiss Adversary Complaint and (b) BDO Global Coordination, B.V.'s Motion to Dismiss Adversary Complaint.  (C.P.#64)  The Court has reviewed the above-identified pleadings, the Court file in this Adversary Proceeding and the main case, and heard argument of counsel.

By this Order, the Court denies the Motion to Dismiss based on BDO's arguments that Plaintiff Lewis B. Freeman ("Freeman" or "Responsible Officer") lacks standing and that the Court lacks "related to" jurisdiction contemplated by 28 U.S.C. § 1334(b).[2]

## Summary

In this Order, the Court addresses BDO's arguments that (i) the Court lacks subject matter jurisdiction over this Adversary Proceeding, (ii) that E.S. Bankest, L.C. (the "Reorganized Debtor" or "Bankest"), argued by BDO to be the instrumentality of the fraud committed by the

---

[1] The Adversary Complaint for Damages ("Complaint") filed February 22, 2006 names as a Defendant BDO International B.V., which is the alias of BDO Global Coordination B.V. (BDO Int'l Motion at 1.)  For consistency, the Court refers to this entity as "BDO International."

[2] The Court intends that the rulings enunciated herein apply to *all* Defendants whether or not a particular Defendant(s) is identified with respect to a particular ruling(s).

Capital Officers,[3] has no injury from such fraud and therefore that Freeman lacks standing to bring claims against BDO on behalf of Bankest, and (iii) that Bankest's $170 million loss is "illusory".[4] BDO also argues that this Adversary Proceeding should be dismissed because it asserts the identical claims and seeks recovery for the identical injury claimed by Banco Espirito Santo International, Ltd. ("BESIL") in its state court action against BDO styled *Banco Espirito Santo International, Ltd., et al. v. BDO Seidman, LLP, et al.,* Case No. 04-14009 CA 31 (the "BESIL Lawsuit").

The Court has considered BDO's arguments in support of the Motion to Dismiss and for the reasons set forth herein denies the Motion to Dismiss. In doing so, the Court finds and holds that it has subject matter jurisdiction over the claims asserted in this Adversary Proceeding pursuant to the Eleventh Circuit's decision in *In re Lemco Gypsum,* 910 F.2d 784, 788 (11th Cir. 1990) and the "related to" test enunciated therein. The Court further finds and holds that Freeman has standing to pursue the claims asserted in the Complaint because Bankest—which had four innocent directors who had no knowledge of the fraud of the Capital Officers—was not merely an instrumentality of the wrongdoers and therefore suffered injury redressable by Freeman's claims asserted in the Complaint. (Compl. ¶¶ 23-26); *In re Fuzion Techs. Group, Inc.,* 332 B.R. 225 (Bankr. S.D. Fla. 2005). Finally, the Court finds and holds that Bankest's losses in excess of $170 million are not "illusory" because the Complaint alleges that Bankest incurred and continued to incur $170 million in debt that Bankest would not have incurred absent BDO's five grossly negligent audits. (Compl. ¶¶ 20, 56, 57, 79, 87-89). These allegations suffice to plead injury. *In re Flagship Healthcare,* 269 B.R. 721, 728 (Bankr. S.D. Fla. 2001).

---

[3] Compl., ¶ 18 (identifying the Capital Officers as Hector Orlansky, Eduardo Orlansky, Dominick Parlapiano and Peter Stanham).

[4] The Court will address and deny the remainder of BDO's arguments advanced in the Motion to Dismiss in separate orders entered contemporaneously herewith.

## Facts

On a motion to dismiss the trial court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff," *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996); *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004). Therefore the Court adopts the facts as alleged in the Complaint and incorporates those facts herein in their entirety.

## Analysis

### I.      Legal Standards Applicable to Motions to Dismiss

As indicated herein, when considering a motion to dismiss, the Court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Johannessen*, 76 F.3d at 350; *see also Kirwin*, 391 F.3d at 1325. "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995). The threshold is similarly low when the defendant moves to dismiss on the grounds that the plaintiff lacks standing. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1536 & n.5 (11th Cir. 1994) (reversing the district court's order granting a motion to dismiss based on standing and "reiterat[ing] that we may only affirm the dismissal of the complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). At bottom, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Hollywood Comm. Synagogue, Inc. v. City of Hollywood*, 430 F. Supp. 2d 1296, 1309 (S.D. Fla. 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**II.      The BESIL Lawsuit Against BDO Is Not Relevant to, or a Basis to Grant, the Motion to Dismiss**

BDO has asked this Court to grant the Motion to Dismiss based on the fact that a creditor of Bankest, BESIL, has brought the BESIL Lawsuit against BDO for professional negligence in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida seeking in excess of $170 million in damages.  BDO makes several arguments regarding the significance of the BESIL Lawsuit, none of which the Court finds persuasive or relevant to its adjudication of the Motion to Dismiss.

BDO contends that the Complaint filed by Freeman should be dismissed because the present Adversary Proceeding and the BESIL Lawsuit seek the same damages, thereby allowing Freeman and BESIL to somehow obtain a double recovery from BDO.  Notwithstanding such argument, the Court finds that the claims asserted by Freeman against BDO seek recovery for injuries to Bankest, not Bankest's creditors, as BDO argues.[5]  *See* (BDO Seidman Motion at 16).  The obvious truth that any funds Freeman collects from BDO will ultimately flow to Bankest's creditors, including BESIL, does not transform Bankest's claims into claims that belong to Bankest's creditors.  *Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 349 (3d Cir. 2001) ("Simply because the creditors of a[n] estate may be the primary or even the only beneficiaries of such a recovery does not transform the action into a suit by the creditors." (alteration in original)); *In re Plaza Mortg. & Fin. Corp.,* 187 B.R. 42 (Bankr. N.D. Ga. 1995).  Thus, the Court holds that the BESIL Lawsuit in which BESIL is asserting its own

---

[5] BDO relies on *Caplin v. Marine Midland Grace Trust Co. of N.Y.,* 406 U.S. 416 (1972) for the proposition that Freeman is not able to assert claims belonging to creditors.  While the Court does not disagree with the holding of *Caplin, Caplin* is clearly distinguishable on its face because *Caplin* involved a trustee who brought "a suit on behalf of debenture holders against an indenture trustee," *i.e.* asserted claims that undisputedly belonged to the debtor's creditor bondholders.  *Caplin,* 406 U.S. at 416, 425, 429 ("Nowhere does petitioner argue that [the debtor] could make any claim against [the indenture trustee].").  Here, all of Bankest's claims in the Complaint are based upon duties owed to Bankest, not to third parties.  BDO does not argue differently.

rights against BDO is no bar to Bankest, BDO's client, suing BDO on Bankest's own claims to redress the injuries to Bankest.

Moreover, because the Complaint and the BESIL Lawsuit do not involve the same plaintiffs or claims and do not seek redress for the same injury, the fact that BDO may be defending two suits at the same time is not a basis to dismiss the Complaint. BESIL seeks recovery for its injuries caused to BESIL by BDO's breach of its duty to BESIL and the other plaintiffs—not injuries caused to Bankest. *See* (Compl. ¶¶ 65-68, 70-71, 82, *BESIL, et al.* v. *BDO Seidman, LLP, et al.*, No. 04-14009 CA 36 (Fla. Cir. Ct. filed June 28, 2004) ("BDO intended that its audits reach and influence each of the Noteholders, BESIL, ESB Finance and Nassau Bank.")). Here, Freeman asserts claims on behalf of and specific to Bankest for duties owed directly to Bankest.[6] Freeman is not asserting claims belonging to BESIL.

## III.    The Court Possesses "Related To" Subject Matter Jurisdiction

The Complaint asserts claims arising out of and directly related to BDO's pre-petition audits of Bankest that were expressly contemplated by the Plan, as hereinafter defined, and Disclosure Statement.[7] As set forth in the Disclosure Statement and the Second Amended Plan

---

[6] Freeman asserts a negligence claim against BDO on behalf of Bankest, BDO's audit client. The remainder of the claims asserted by Freeman similarly belongs only to the Bankest estate. Bankest's claim for aiding and abetting breach of fiduciary duty is based on the duty owed by its officers and directors—here the Capital Officers—to Bankest and the allegations that BDO aided and abetted their breach of such duty. Only Bankest, the entity owed the fiduciary duty, has standing to sue for its breach of such duty. *See In re Caribbean K Line, Ltd.*, 288 B.R. 908, 918 (S.D. Fla. 2002) (trustee has standing to bring breach of fiduciary duty claim where "[t]he fiduciary duty at issue in this matter was owed simultaneously to both the insolvent corporation and the collective creditor body"). Similarly, Bankest is suing BDO for a securities violation based on its making material misrepresentations that induced Bankest to decide to issue more debentures and *sell* securities (Compl. ¶ 88), a claim Bankest's creditors cannot assert. *See Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 378 (S.D. Fla. 1999) (issuer of securities has standing to sue under Rule 10b-5). Finally, Bankest is suing BDO International for deceptive and unfair trade practices, based on BDO International's deceptive and unfair practices towards Bankest (Compl. ¶¶ 96, 97), not Bankest's creditors. (Compl. ¶¶ 74-75.) Thus, the allegations of the Complaint refute BDO's contention that Freeman is asserting the same claim that BESIL is asserting in the BESIL Lawsuit.

[7] Several sections of the Plan contemplate prosecution of professional malpractice claims against, *inter alia*, BDO. *See*, Plan, Article 5, Sec. D. at 41, Sec. J at 48-49, Article 14(a) at 58, Article 14(d) at 59. The term "Malpractice and Related Claims", which is defined in Article 1(74) of the Plan, specifically contemplates "all professional malpractice claims and related causes of action of the Debtor against. . . accountants. . . who provided services to the

of Liquidation, as supplemented, dated October 11, 2005 (C.P. #364) (the "Plan"), any recovery by the Bankest estate from BDO will be distributed to Bankest's creditors. Pursuant to the test enunciated by the Eleventh Circuit in *Lemco Gypsum*, the Court finds that it possesses "related to" subject matter jurisdiction contemplated by 28 U.S.C. § 1334(b) over the claims asserted in this Adversary Proceeding.

In *Lemco Gypsum*, the Eleventh Circuit held that "[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Lemco Gypsum*, 910 F.2d at 788. The "related to" test adopted by the Eleventh Circuit in *Lemco Gypsum* and binding on this Court is "extremely broad," and the relevant inquiry is whether there could be any "conceivable" effect on the Bankest estate. *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) ("The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad.").

The Court holds that it has subject matter jurisdiction under the Eleventh Circuit's *Lemco Gypsum* "related to" test because the Adversary Proceeding has the potential to redress Bankest's injury and bring funds into the estate to be distributed directly and solely to the creditors of Bankest. *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000) ("*Any* recovery would reduce the administrative expenses of the sale of the estate property and would perforce increase the amount of estate property available to satisfy creditors' claims. Thus, the outcome

---

Debtor prior to the Petition date, including, without limitation, those professional malpractice claims and causes of action against. . . BDO, which claims and causes of action are more particularly described below in the Disclosure Statement in Article VI – Summary of Chapter 11 Plan – B. 9. – Preservation of Claims and Causes of action".

of this case will impact Carter's bankruptcy case." (italics added)); *In re Toldeo*, 170 F.3d at 1345-46 (finding "related to" jurisdiction when the outcome of adversary proceeding challenging mortgage would affect the amount of funds available to creditors).

Relying primarily upon the Third Circuit's decision in *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004), BDO claims that post-confirmation jurisdiction is much more limited than the pre-confirmation "related to" jurisdiction test adopted by the Eleventh Circuit in *Lemco Gypsum*, and that the facts in this case do not meet that more limited jurisdictional grant. The Court disagrees. First, by adopting the *Lemco Gypsum* "related to" test, the Eleventh Circuit did not apply, nor has it adopted, the "close nexus" formulation set forth in *Resorts Int'l*. Further, the cases cited by BDO do not support a finding by this Court that it lacks subject matter jurisdiction over this Adversary Proceeding, because BDO relies on case law where the litigation at issue arose from *post-confirmation* conduct. *See Resorts Int'l; In re Craig Stores of Texas*, 266 F.3d 388 (5th Cir. 2001); *In re Leeds Bldg. Prods., Inc.* 160 B.R. 689 (Bankr. N.D. Ga. 1993). Here the conduct at issue is BDO's pre-petition audits of Bankest and therefore the Court finds BDO's cases inapplicable. For example, *Resorts Int'l* involved a post-confirmation litigation trust that received a complete assignment of a claim against Donald Trump and others as part of the debtor's confirmed plan. *Resorts Int'l*, 372 F. 3d at 158. However, the appeal in *Resorts Int'l* did *not* involve the Trump litigation and the Third Circuit did *not* suggest that the bankruptcy court lacked jurisdiction to hear the litigation trust's lawsuit against Trump. The litigation at issue in *Resorts Int'l* was a malpractice action against the litigation trust's accountant retained post-confirmation based on post-confirmation services of the accountants. Therefore, the Third Circuit found that "related to" jurisdiction was lacking. *Resorts Int'l*, 372 F.3d at 165-166.

8

More analogous to the present case against BDO is the First Circuit's decision in *In re Boston Regional Medical Center*, 410 F.3d at 107, where the First Circuit held that when a debtor or its representative, like Freeman here, "commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a liquidating plan of reorganization, the compass of related to jurisdiction persists after plan confirmation." *Id.* The court noted that "on its face, section 1334 does *not* distinguish between pre-confirmation and post-confirmation jurisdiction," that the primary reason for certain courts narrowing a bankruptcy court's post-confirmation jurisdiction—that the entity will re-enter the marketplace—is absent in liquidating chapter 11 plans, like Bankest's chapter 11 Plan, and that "a liquidating debtor [like Bankest] exists for the singular purpose of executing an order of the bankruptcy court" such that "any litigation involving such a debtor thus relates much more directly to a proceeding under title 11." *Id.* at 106, 107 (italics added).[8]

Indeed, many courts follow the First Circuit's reasoning in *Boston Regional* and reject the notion of a more limited jurisdiction post-confirmation, on the grounds that such an *ad hoc* limitation is inconsistent with the plain language in section 1334(b). *See, e.g., In re Almac's, Inc.*, 202 B.R. 648, 655 (D.R.I. 1996) ("Section 1334(b) does not evince an intent to curtail bankruptcy jurisdiction upon confirmation or substantial consummation, and this Court will not read one into the statute."); *see also* Lawrence P. King, 8 *Collier on Bankruptcy*, ¶ 1142.04[1], at 1142-7 (15th ed., rev. 2003) ("Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334; this is so whether the matter at issue arises before or after confirmation of a [chapter 11] plan. Confirmation does not alter the basic jurisdictional analysis applicable to bankruptcy courts."); Robert J. Keach, *Afterlife, Reincarnation or Purgatory? Post-Confirmation Jurisdiction in the*

---

[8] The First Circuit cited to the Eleventh Circuit's decision in *Toledo, supra*, as finding "related to" jurisdiction when the outcome of a suit would affect the amount of funds available to creditors. *Boston Regional*, 410 F.3d at 105.

*First Circuit*, ABI Journal (Oct. 2005) (concluding, after a review of *Resorts*, its progeny and *Boston Regional*, that bankruptcy courts "should have ["related to"] jurisdiction when the [post-confirmation] litigation at issue is the very litigation contemplated by the plan to be prosecuted for the benefit of creditors, such as the liquidating trustee pursuing a cause of action assigned to the trust. The same should be true where title to, or rights in, an asset assigned to the trust or retained by the reorganized debtor is at issue.").

BDO makes two additional arguments in respect of the Court's subject matter jurisdiction. First, BDO claims that the District Court is the only Court with subject matter jurisdiction that can adjudicate Freeman's securities law claim. The Court disagrees. The Bankruptcy Courts act as a "unit" of the District Court, 28 U.S.C. § 151. There is ample precedent for the adjudication of a securities law claim by a Bankruptcy Court, including securities law claims made by liquidating trustees. *See, e.g., In re Southern Industrial Banking Corp.*, 67 B.R. 399, 402 (Bankr. E.D. Tenn. 1986) (holding it had "related to" jurisdiction over suit by liquidating trustee to recover over $132 million in claims under RICO and federal and state securities laws against FDIC as receiver for failed banking institutions where the outcome would, like here, "significantly impact the value of claims of [the debtor's] creditors holding contingent interest certificates"); *see also California Public Employees' Retirement System v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir. 2004) (holding, in part, that district court sitting in bankruptcy and exercising "related to" jurisdiction had power to hear claims brought under Securities Act of 1933). Thus, Freeman's securities claims are properly the subject of a referral by the District Court to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and by District

10

Court Local Rule 87.2 (providing for automatic referral of, *inter alia*, all cases and proceedings related to chapter 11 cases in bankruptcy court) as claims "related to" Bankest's chapter 11 case.[9]

Finally, BDO argues that this Adversary Proceeding is non-core and therefore the Court does not have "arising in" or "arising under" subject matter jurisdiction. However, because the Court has "related-to" subject matter jurisdiction over this matter, the Court need not reach the issue of whether the claims asserted are core or non-core.

## IV.    Freeman, Responsible Officer for the Reorganized Debtor, Possesses Standing to Prosecute This Adversary Proceeding

In order to have standing, a plaintiff must show that the complaint alleges "injury in fact, causation and redressability," and "that the requested relief will redress the injury." *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) (citations omitted). Of these factors, BDO limits its argument to the "injury in fact" prong of the standing analysis, and argues first that Bankest was a sham entity that suffered no injury because its existence was to perpetuate the Capital Officers' fraudulent scheme and second that Bankest's loss in excess of $170 million is "illusory." (BDO Seidman Motion at 13.) The Court finds these arguments unpersuasive.

### A.    This Court's prior ruling precludes BDO's imputation defense

In a prior decision binding on BDO, this Court rejected BDO's arguments that the fraud perpetrated by the Capital Officers should be imputed to Bankest so as to bar Bankest's claims against BDO for its grossly negligent audits. The same analysis applies here in the context of BDO's standing argument. Specifically, in the Order granting summary judgment dated September 14, 2005 (C.P. #346) against BDO and disallowing BDO's claim in the Bankest chapter 11 proceeding, this Court found that BDO "specifically contracted and agreed to 'detect fraud'" and held that the Capital Officers "looted [Bankest] for the benefit of themselves" and

---

[9] The Court notes that BDO has filed a motion with the District Court seeking to withdraw the reference, which motion is pending.

11

therefore their alleged fraud could not "be imputed to Bankest as a matter of law." (C.P.#346 at 24, 25, 27 ("Summary Judgment Order").)

Pursuant to the Summary Judgment Order, the Court holds that the fraud perpetrated by the Capital Officers is not imputed to Bankest and therefore Freeman has standing to bring claims on behalf of Bankest against BDO.[10]  In addition, the Court's holding is supported by the recent Supreme Court of New Jersey decision rejecting as a matter of law the application of the imputation, or *in pari delicto*, defense to bar claims for damages suffered as a result of an auditor's failure to detect fraud against the auditor who agreed to detect fraud. *NCP Litigation Trust v. KPMG, LLP*, 2006 WL 1766178, at *11 (N.J. Sup. Ct. June 28, 2006) (rejecting imputation defense raised by auditor against audit client and finding that allegations of "auditor negligence" create an "exception" to the imputation doctrine and preclude its application).

### B.    Bankest was injured by BDO's breach of its duty to detect the fraud and Freeman therefore has standing to assert claims against BDO.

Even absent the Court's prior Summary Judgment Order concluding that the Capital Officers' fraud could not be imputed to Bankest, BDO's argument [that Bankest suffered no injury] is without merit.  BDO relies on a line of cases which hold that when a fraud is committed using a corporation, and the corporation is the alter ego of the wrongdoers or has benefited from the fraud, the corporation has no independent identity, suffers no injury and cannot assert any claims seeking damages arising from the fraud.  (BDO Seidman Motion at 10,

---

[10] In fact, many courts hold that the imputation, or *in pari delicto*, defense can only be raised if both the plaintiff corporation and the defendant were a part of the same fraudulent scheme. *See, e.g., Kulla v. E.F. Hutton & Co.*, 426 So. 2d 1055, 1057 (Fla. 3d DCA 1983) ("It is a well-settled principle of law requiring little discussion that one who himself engages in a fraudulent scheme, that is, acts in pari delicto, may forfeit his right to any legal remedy against a co-perpetrator."); *Smith ex rel. Estates of Boston Chicken, Inc. v Arthur Anderson LLP*, 175 F. Supp. 2d 1180, 1199 (D. Ariz. 2001) ("The doctrine of in pari delicto dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another *participant in that conduct*, . . . the law will aid neither, but rather, will leave them where it finds them." (italics added)).  Bankest, the insolvent debtor, never conspired with BDO, whom Bankest always viewed as an independent auditor—which is another ground to reject the imputation defense raised by BDO.

12

13.) The Complaint, however, alleges facts that support a finding that Bankest had an identity independent from the wrongdoing Capital Officers, specifically that Bankest had four directors or statutory managers (the equivalent of directors in a limited liability company) who were innocent of the fraud, and that the looting of Bankest by the Capital Officers injured Bankest. (Compl. at ¶¶ 23-26.) Based on these allegations, BDO's cases are inapplicable.

BDO's cases are additionally inapplicable because in each case cited by BDO where the court found that the corporation had not suffered an injury, the plaintiff corporations had no innocent insiders and were merely sham corporations or the alter egos of the wrongdoers. *See* (BDO Seidman Motion at 10-11); *Feltman* v. *Prudential Bache Securities*, 122 B.R. 473-74 (S.D. Fla. 1990) ("The complaint alleges [the corporations were] alter egos with no corporate identity separate from [the fraudulent insider] . . . [and] any alleged injury to the debtors is as illusory as was their corporate identity."); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 257-58 (Bankr. N.D. Fla. 2003) (trustee lacked standing because debtor "was managed by a sole owner who committed the wrongful acts. There were no innocent decision makers who could have prevented the embezzlement.").

The case law is uniform that a corporation suffers legal injury from fraud committed by insiders and the corporation has standing to sue third parties for that injury as long as there were other insiders who were innocent of the fraud. *See, e.g., In re Fuzion Techs. Group, Inc.*, 332 B.R. 225, 239-40 (Bankr. S.D. Fla. 2005) (holding trustee's claims against law firm were not barred because "there were innocent board members who could have terminated [the fraudulent insider's] wrongdoing had his misconduct been uncovered"). In fact, in *O'Halloran*, cited by BDO, the court specifically found the corporation had standing to bring claims against its lender because the existence of innocent insiders prevented the company from being the alter ego of the

wrongdoer. As a consequence, the corporation had suffered injury from its management's fraud. *O'Halloran v. First Union Nat'l Bank*, 350 F.3d 1197, 1204 (11th Cir. 2003) (because the debtor "was not merely Payne's alter ego, it is conceivable that Payne could have wrongfully embezzled money from the organization" and therefore the "alleged injury resulting from Payne's embezzlement . . . gives [the debtor] standing to pursue a claim against [the corporation's lender]"); *see also Tew v. Chase Manhattan Bank, N.A.*, 728 F. Supp. 1551, 1561 (S.D. Fla. 1990) (when wrongdoing insiders looted corporation and directed it to borrow funds without adequate collateral in order to perpetuate fraud, they were acting adversely to corporation and therefore Trustee was not barred from bringing claims to recover for that injury).

Thus, for BDO to prevail on its argument that Freeman lacks standing and Bankest has no redressable injury, BDO would have to show that the Complaint alleges that Bankest was a sham entity operated exclusively by and for the benefit of the Capital Officers such that Bankest was the alter ego of the Capital Officers. *See, e.g., Feltman*, 122 B.R. at 473-74 & n.8 (corporation was a "sham" that could not suffer injury when corporation was "alter ego" of individual perpetrating fraud); *Wechsler v. Squadron, Ellenoff, Plesent & Scheinfeld, LLP*, 994 F. Supp. 202, 205 (S.D.N.Y. 1997) (recognizing that rule imputing acts of corporate agents' wrongdoings "only applies where *all* relevant shareholders and/or decisionmakers are involved in the fraud" (emphasis added)); *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Anderson LLP*, 175 F. Supp. 2d 1180, 1199 (D. Ariz. 2001) (recognizing that fraudulent acts of corporate agents are only attributable to the corporation when "*all* relevant shareholders and/or decisionmakers" were involved in the wrongful conduct (italics added)).

The Complaint, however, alleges just the opposite: Bankest was independent from the Capital Officers because Capital never had majority control over Bankest and half of the eight-

14

member board of directors had no knowledge of the fraud. (Compl. ¶¶ 16, 18, 57.) Because the identity of Bankest never merged with the identity of the Capital Officers, Bankest suffered injury as a result of their actions for which Freeman can seek redress. *See, e.g., O'Halloran*, 350 F.3d at 1204 (debtor corporation will have injury "[a]s long as [the debtor] was not merely [the wrongdoer's] alter ego" and corporation could not be alter ego of director who perpetrated the fraud when corporation had "significant membership and governing body" innocent of the fraud); *In re Fuzion Techs. Group, Inc.*, 332 B.R. at 239-40 (holding that corporation not barred from asserting claims because innocent board members would have stopped the fraudulent activity if they had known about it); *Boston Chicken*, 175 F. Supp. 2d at 1199, 1200 (declining to impute agents' acts to corporation and bar claims when Trustee "alleged that there were innocent members . . . who were unaware of the wrongdoing" and that in "cases involving more than one corporate actor, the plaintiff may avoid dismissal for lack of standing by alleging the existence of an innocent member of management who would have been able to prevent the fraud had he known about it" (internal quotation marks omitted)); *Wechsler*, 994 F. Supp. at 214 (refusing to impute corporate agents' wrongdoings to corporation when innocent directors had been "identified" in pleadings and when pleadings "explained how [the directors] could and would have brought the fraud to an end," and that the debtor "is not required to do more at the initial pleading stage").

## C.    Bankest's $170 million debt is a cognizable injury and is not "illusory."

BDO argues Freeman lacks standing on the grounds that Bankest's claimed injury of a "deepening insolvency" as a result of BDO's grossly negligent audits is "illusory." (BDO Seidman Motion at 14.) The Court finds BDO's argument unavailing. BDO's argument that Bankest's injury is "illusory" is confined only to one alleged type of injury, deepening

15

insolvency. (*Id.* at 13-16.) BDO omits any reference to the other injuries Bankest alleges it suffered in the Complaint, including that $170 million was stolen from Bankest through fraud that BDO was duty-bound to detect. (Compl. ¶ 79) Specifically, Freeman alleges that BDO's negligence proximately caused Bankest's injuries in part because

> "[t]he Capital Officers required the acquiescence and participation of BDO in order to continue their fraudulent scheme and funnel money out of Bankest. The fraud committed by the Capital Officers should have and would have been discovered had a competent and independent auditor performed the audits of Bankest." (*Id.* ¶ 87)

In other words, the Complaint alleges that BDO's negligence injured Bankest because it allowed the Capital Officers to steal from Bankest. It is settled Eleventh Circuit law that a debtor has standing to sue a third party for negligently failing to discover and stop the debtor's principals from stealing money from the debtor. *See O'Halloran*, 350 F.3d at 1203-04 (trustee has standing to sue bank for the bank's negligence in allowing debtor's principal to embezzle from the debtor); *In re Huff*, 109 B.R. 506, 512 (Bankr. S.D. Fla. 1989) (fact that $800,000 was stolen from the corporation "alone is sufficient to sustain standing"); *In re Plaza Mortg. & Fin. Corp.*, 187 B.R. at 43 (Bankr. N.D. Ga. 1995) (trustee has standing to sue accountants for negligently allowing bankrupt corporation to make improper distributions). Before reaching the question of whether Bankest suffered an injury in the form of deepening insolvency, the Court holds that Bankest suffered injury as a result of the funds stolen by the Capital Officers, for which it can sue BDO.

Further, BDO's argument that Bankest's injury is "illusory" ignores the holdings of cases cited by BDO in the Motion to Dismiss. The only grounds for finding an injury "illusory" such that the plaintiff lacks standing in the cases cited by BDO is when the corporation is the alter ego of the wrongdoing insider. *See Feltman*, 122 B.R. at 473, 474 n.8 (holding injury was "illusory"

16

where debtor corporations were "sham corporations, alter egos with no corporate identity separate from" the wrongdoer); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. at 252 (holding injury was "illusory" where one wrongdoer "exercised complete dominion and control over the accounts and treated them as his own, they were his alter-ego"). As previously discussed, Bankest had four innocent insiders and it was not the alter ego of the Capital Officers, *see supra*, Part IV.B. As a result, the Court rejects BDO's "illusory" injury argument.

Finally, BDO argues that Bankest could not have been injured by its deepening insolvency because from its formation, Bankest was incapable of rehabilitation. (BDO Seidman Motion at 14.) In so arguing, BDO ignores the Complaint's allegation that "[a]s a direct and proximate result of BDO's professional negligence, Bankest *became* insolvent." (Compl. ¶ 89 (italics added)). Moreover, the only authority cited by BDO in support of this argument, *In re Flagship Healthcare*, expressly holds that deepening insolvency is an injury that *confers* standing. In that case, the court held that even a corporation insolvent *prior* to the commission of any wrongdoing *can* be injured by increased debt incurred as a result of the wrongdoing, because the extra debt itself is a legal injury. 269 B.R. at 728 ("[E]ven if the Debtor may have been insolvent before the Greenleaf Valuation, the additional debt incurred thereafter, and allegedly as a result of the Defendants' negligence, may provide a measure of damages recoverable by the Trustee."); *see also In re Huff*, 109 B.R. at 512 ("A corporation is damaged where its officers and directors fraudulently conceal its insolvency and allow the corporation to continue incurring more and more debt and become more and more insolvent."); *Schact v. Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983) ("[T]he corporate body is ineluctably damaged by the deepening of its insolvency, through increased exposure to creditor liability.").

17

Here, Bankest began and continued to incur $170 million in debt through the issuance of debentures and a line of credit, debt that would not have been incurred absent what Plaintiff alleges were five grossly negligent audits in which BDO verified assets that did not exist and failed to detect the fraud it was duty-bound to detect. (Compl. ¶¶ 20, 56, 57, 79, 87-89.) The Court holds that these allegations suffice to plead injury. *In re Flagship Healthcare*, 269 B.R. at 728.

For the reasons set forth herein, it is

**ORDERED AND ADJUDGED** that the Motions to Dismiss, to the extent they are based upon lack of standing and lack of "related to" jurisdiction contemplated by 28 U.S.C. § 1334(b) are DENIED. Defendants shall file an answer to the Plaintiff's Complaint within twenty (20) days of the date of this order.

# # #

**Submitted by:**
Paul J. Battista, Esq.
pbattista@gjb-law.com
GENOVESE, JOBLOVE & BATTISTA, P.A.
Bank of America Tower Int'l Place
100 S.E. 2nd Ave., 44th Floor
Miami, FL 33131
Tel. (305) 349-2300
Fax (305) 349-2310
**Copies to:**
Paul J. Battista, Esq.
*(Attorney Battista shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*