UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                    Chapter 11

E.S. BANKEST, L.C.,                                       Case No. 04-17602-BKC-AJC

                              Debtor.
_____/

LEWIS B. FREEMAN, Responsible Officer
for the Reorganized Debtor E.S. Bankest, L.C.,
a Florida limited liability corporation,

                              Plaintiff,
v.                                                        Adv. Pro. No. 06-1220-BKC-AJC-A

BDO SEIDMAN, LLP, BDO INTERNATIONAL
B.V., and SANDOR LENNER,

                              Defendants.
_____/

## MOTION OF DEFENDANTS BDO SEIDMAN, LLP
## AND SANDOR LENNER FOR SUMMARY JUDGMENT

Defendants BDO Seidman, LLP and Sandor Lenner ("BDO Seidman"), respectfully move pursuant to Rule 56 of the Federal Rules of Civil Procedure, incorporated into Rule 7056 of the Federal Rules of Bankruptcy Procedure, for summary judgment dismissing the Adversary Complaint ("Adv. Comp.") of Lewis B. Freeman, Responsible Officer (the "Responsible Officer") for E.S. Bankest, L.C. ("Bankest").

## PRELIMINARY STATEMENT

This adversary proceeding arises from a pervasive fraud involving much of Bankest's management. The fraud occurred when Bankest's officers, appointed by Bankest's directors and owners (including Espirito Santo Bank) (the "Managers"), defrauded BDO Seidman with falsified documents and other misrepresentations. The Managers provided the false documents

and information for the express purpose of deceiving BDO Seidman in connection with its audits of Bankest's annual financial statements. The false information prevented BDO Seidman from detecting wrongdoing at Bankest. These facts are uncontested.

After duping BDO Seidman, the Managers used the false Bankest financial statements to obtain debt financing for the stated purpose of purchasing accounts receivable. Rather than purchase accounts receivable, however, the Managers caused Bankest to make direct loans to, and investments in, its purported factoring clients. Thus, Bankest operated more as a merchant banker than a factor. Although contrary to its business purpose, Bankest received in exchange for its loans and investments secured commitments to repay with interest, and in some instances, potential ownership interests in the clients. Bankest lost money when its clients failed, and the loans and investments remained unpaid. Once again, these facts are uncontested.

Other than BDO Seidman, the entity allegedly harmed by the fraud was Bankest's lender, Espirito Santo. Espirito Santo has already sued BDO Seidman in Dade County Circuit Court, and obtained a verdict for the full amount of its loans to Bankest. Despite the state court verdict, the Responsible Officer has opened this "second front" to recover the same damages on behalf of Espirito Santo, albeit under different legal theories. The Adversary Complaint asserts three claims against BDO Seidman: (1) professional malpractice (Count I); (2) aiding and abetting breach of fiduciary duty (Count IV); and (3) violation of federal securities laws (Count V).

Based upon the uncontested facts, the Court should now put this adversary proceeding to rest, enter summary judgment, and permit the lender's claims to conclude in state court. As demonstrated below, the Managers' knowledge and wrongdoing is imputed to Bankest as a matter of law. The Responsible Officer, accordingly, is unable to prove that Bankest justifiably

relied upon BDO's audits being accurate, or that the audits were the proximate cause of Bankest's alleged harm, and his claims are precluded under the doctrine of *in pari delicto*.

Separate from Bankest's imputed knowledge and wrongdoing, summary judgment is warranted dismissing the securities claim (Count V). The uncontested facts prove that in selling debentures based on false financial statements, Bankest received ***more than*** the value of the issued debentures, and therefore could not have suffered securities harm. Bankest's subsequent misuse of the moneys is not a securities harm as a matter of law, and could not have been caused by BDO Seidman's audit opinions. The Responsible Officer's proposed securities claim also fails because BDO Seidman was a victim of the fraud, not one of its knowing perpetrators.

The Responsible Officer's common law claims -- professional malpractice (Count I) and aiding and abetting breach of fiduciary duty (Count IV) -- suffer from similar maladies. Both claims require the Responsible Officer to prove proximate cause and damages. BDO Seidman's audit opinions could not have caused damages because Bankest issued debentures worth ***less*** than the money it received; nor could BDO Seidman have foreseen that Bankest would misapply the proceeds. Moreover, the aiding and abetting claim fails because the Responsible Officer cannot prove that BDO Seidman  knew that a breach of fiduciary duty had occurred, much less intended to aid in its commission.

For these reasons, and as demonstrated below, the Responsible Officer's claims are invalid based upon the uncontested facts. As such, summary judgment should be entered, and this case should come to a close.

## THE UNCONTESTED FACTS

BDO Seidman respectfully refers the Court to the accompanying Statement of Uncontested Facts submitted pursuant to Southern District of Florida Local Rule 7.5 for the undisputed factual background that compels summary judgment.

## THE RELEVANT SUMMARY JUDGMENT STANDARD

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), the Supreme Court endorsed summary judgment as a "principal" means "to isolate and dispose of factually unsupported claims." The Court directed that Rule 56 of the Federal Rules of Civil Procedure be applied "in a way that allows [courts] to accomplish this purpose." *Id*. As the Court declared, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure a just, speedy and inexpensive determination of every action.'" *Id.* at 327, *quoting* Fed. R. Civ. 1. Thus, under Rule 56, summary judgment "should" be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

As demonstrated below, BDO Seidman has met its initial burden to establish no genuine issue of material fact that the Responsible Officer's claims are invalid. To avoid summary judgment, the Responsible Officer is required to submit admissible evidence "beyond the pleadings" to establish a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. A mere "scintilla of evidence in support of the [Responsible Officer's] position will be insufficient" to forestall summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The Responsible Officer is unable to meet his heavy burden.

4

## ARGUMENT

### I.    THE RESPONSIBLE OFFICER IS SUBJECT TO THE SAME EVIDENTIARY BURDENS AND DEFENSES AS BANKEST WAS PRE-PETITION

The Responsible Officer possesses no greater right to assert claims than Bankest possessed pre-petition.  *Official Comm. of Unsecured Creditors v. Edwards*, 437 F.3d 1145, 1149-50 (11th Cir. 2006).  Accordingly, to establish liability  the Responsible Officer is required to prove each element of the asserted claims, and to meet the same burdens on summary judgment that Bankest would have had to meet had it filed a similar action before its bankruptcy. The Responsible Officer's claims are also "subject to the same defenses that were available against a complaint filed by [Bankest] at the commencement of the bankruptcy." *Id.*

Summary judgment is warranted because, based upon the uncontested facts, the Responsible Officer is unable to prove the elements of his claims against BDO Seidman, and BDO Seidman's defenses preclude any recovery as a matter of law.

### II.    SUMMARY JUDGMENT IS WARRANTED BECAUSE THE MANAGERS' KNOWLEDGE AND WRONGDOING IS IMPUTED TO BANKEST

#### A.    The Responsible Officer Is Unable To Prove Reliance Upon BDO Seidman's Audit Opinions Or That Those Opinions Caused Bankest Harm Because Bankest Knew The Financial Statements Were False

Common among the Responsible Officer's claims is the burden to prove that Bankest relied upon BDO Seidman's audit opinions, and that those opinions were the proximate cause of Bankest's alleged harm.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341, 346 (2005)(securities fraud); *Coopers & Lybrand v. Archdiocese of Miami*, 536 So. 2d 278, 281 (Fla. 3d DCA 1988)(professional negligence).  Bankest could not have relied upon BDO Seidman's audits, and those audits could not have caused harm, because Bankest knew (through its

Managers) that its financial statements were false.  (Exh. "A" [1/31/07 P.M. Trial] Tr. at 34-35;
Exh. "B" [Parlapiano Allocution] at 30; Exh. "C" [Mendez Allocution] at 25-27.)[1]

As officers and agents of Bankest, the Managers' knowledge concerning the company's
financial condition and the falsity of its financial statements is imputed to Bankest.  *Banco
Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000); *Seidman & Seidman v.
Gee*, 625 So. 2d 1 (Fla. 3d DCA 1992), *appeal dismissed*, 653 So. 2d 384 (Fla. 1995).  Because
Bankest is vested with knowledge that its financial statements were false, it could neither rely
upon their accuracy, nor could its alleged harm be caused by their inaccuracy.  *See, e.g., M/I
Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 94 (Fla. 2002) ("if the recipient knows that
[the statement] is false or its falsity is obvious to him, his reliance is improper") (citation
omitted); *Robbins v. Koger Properties, Inc*., 116 F.3d 1441, 1448 (11th Cir. 1997) (dismissal
where "no evidence of a connection between [accountant's] misrepresentations" and the
plaintiff's harm).  Summary judgment is warranted for this reason alone.

Imputation applies here with even greater force than usual because Bankest received
direct benefits from the Managers' wrongdoing.  As the court in *Gee* explained, where an
officer's wrongdoing benefits the company, "the fraud is imputed to the corporation and is an
***absolute defense*** to the corporation's action against its accounting firm for negligent failure to
discover the fraud."  625 So. 2d at 3 (emphasis added); *see Beck v. Deloitte & Touche, Deloitte,
Haskins & Sells, Ernest & Young*, 144 F.3d 732, 735 (11th Cir. 1998) (to avoid imputation,
officer's interest must be "***entirely adverse*** . . . (i.e., his actions must neither be intended to
benefit the corporation nor actually cause short- or long-term benefit to the corporation)")
emphasis added); *Banco Latino*, 95 F. Supp. 2d at 1336 (officer's actions "are imputed to the

---

[1]    The Exhibits referred to herein are submitted under separate cover.

corporation and constitute an *absolute defense to subsequent lawsuits by the corporation*, unless the corporation derived *absolutely no benefit* from those actions") (emphasis added).

Here, the fraud benefitted Bankest when it used an inflated account of its assets to borrow money to fund its purchase of accounts receivable. (Adv. Comp. ¶ 19.) Although some of the money was used to purchase "real accounts receivable," most of the money was advanced to Bankest's "portfolio" clients in the form of direct investments and loans. (Exh. "D" [2/21/08 Freeman Dep.] Tr. at 32:7-15, 34:6-15, 36:8-11; Exh. "E" [Mendez Dep.] Tr. at 101:5-14; *see* Exh. "F" [1/31/07 A.M. Trial] Tr. at 66-68.) According to the Responsible Officer, Bankest received potential ownership interests in some of the "portfolio" clients, but it also received commitments to pay back the advances with interest secured by certain assets of the portfolio clients. (*See*, *e.g.*, Exh. "S" [1/26/07 P.M. Trial] Tr. at 18:17-20; Exh. "G" [Stratasec Factoring Agreement] at 3, 7; Exh. "H" [Joy Factoring Agreement, and Amendment] at 2, 4; Exh. "I" [Stratasys Factoring Agreement] at 3, 6; Exh. "J" [First Amendment to Schedule B-1 of Stratasys Factoring Agreement]; Exh. "K" [Joy Athletic Agreed Order and Proof of Claim]; Exh. "L" [McGladrey Adversary Complaint] ¶¶ 7, 37-42; Exh. "T" [2/18/05 Freeman Dep.] Tr. at 79-80; Exh. "W" [United Container Proof Of Claim].) Thus, although the money raised was misapplied, it was used in a manner that provided Bankest with, at minimum, a short-term benefit until the portfolio companies failed and could not repay the advances with interest. These are the very circumstances -- use of an "inflated account of the company's assets" to raise money that was then misapplied -- to which the Court in *Gee* pointed as constituting a benefit that results in a wrongdoing officer's knowledge to be imputed to the company. 625 So. 2d at 3.

Indeed, it is uncontested that the Managers received no material benefit from the fraud. The Responsible Officer concedes that after conducting an "investigation," he was unable to

conclude that the Managers received anything other than their ordinary compensation.  (Exh. "D" [2/21/08 Freeman Dep.] Tr. at 17-19; Exh. "M" [3/22/06 Trial] Tr. at 166; Exh. "N" [12/1/06 Sentencing] Tr. at 20:1-3.)  Rather, the only beneficiaries of the fraud were Bankest and its owners -- including Espirito Santo, which received $2 million in dividends and ultimately sold its interest for $10 million.  (Exh. "O" [10/30/02 Minutes] at 2; Exh. "P" [9/18/02 Check].)  Stated simply, Florida law dictates that the Managers' knowledge is imputed because Bankest (and its equity owners, including Espirito Santo) benefitted from the fraud.

Any question concerning whether the Managers' knowledge is imputed is put to rest by the uncontested fact that the relevant transactions "on behalf of the principal [were] entrusted solely to the officer or agent having the knowledge."  *Nerbonne, N.V. v. Lake Bryan Intern. Prop.*, 685 So. 2d 1029, 1031 (Fla. 5th DCA 1997).  Here, Bankest's owners and directors (including Espirito Santo) entrusted the Managers to be the "sole actors" in providing BDO Seidman with information, and to manage the operations of the company.  (Exh. "Q" [5/21/07 A.M. Trial] Tr. at 56-57.)  These entrusted "sole actors" defrauded BDO Seidman, and engaged in the wrongdoing at the heart of this action.  By entrusting these functions to the Managers, Bankest (and its so called "innocent" directors) bore "the risk that such an unaccountable agent will act adversely to the corporation's interest."  *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1045 n.5 (Fla. 2d DCA 2007).  Having borne that risk, the entrusted Managers' knowledge of false financial statements and fraud is imputed to Bankest as a matter of law.

In short, summary judgment is warranted because the Responsible Officer is unable to prove that Bankest justifiably relied upon BDO Seidman's audit opinions, or that those opinions were the cause of Bankest's alleged harm.

**B.      The Responsible Officer's Claims Are Barred Because
        <u>The Managers' Wrongdoing Is Imputed To Bankest</u>**

Separate from the Responsible Officer's inability to prove the critical elements of his

claims, summary judgment is warranted under the doctrine of *in pari delicto*.  The doctrine

provides that "'a plaintiff who has participated in wrongdoing may not recover damages

resulting from the wrongdoing.'"  *Official Comm. of Unsecured Creditors of PSA, Inc. v.

Edwards*, 437 F.3d 1145, 1149-50 (11th Cir. 2006), quoting BLACK'S LAW DICTIONARY at 794

(7th ed. 1999).  *In pari delicto* applies under Florida law in cases, such as the present, asserting

an accounting firm's "negligent failure to discover the fraud."  *Gee*, 625 So. 2d at 3.[2]

Bankest participated in the very wrongdoing that is at the core of this case.  Bankest's

entrusted "sole actors" provided BDO Seidman with false information and interfered with its

successful audit in a massive and complex manner to prevent it from discovering wrongdoing.

The same "sole actors" committed fraud by using false financial statements to raise debt

financing, which they then fraudulently misapplied.  (Exh. "E" [Mendez Dep.] Tr. at 101:4-14;

Exh. "B" [Parlapiano Allocution] at 30.)  For the reasons set forth above, the Managers' actions

on behalf of Bankest are imputed to Bankest as a matter of law.  *Banco Latino*, 95 F. Supp. 2d at

1336; *Gee*, 625 So. 2d at 3.  As the entity that participated in the wrongdoing through its agents,

who ultimately caused the alleged harm, Bankest is barred from recovering damages resulting

from the wrongdoing.  *Edwards*, 437 F.3d at 1149-1150.

---

[2]      This Court referred *sua sponte* to *in pari delicto* in determining whether the Responsible Officer had
standing.  (Exh. "R" [9/18/06 Order] at 12.)  The prior reference is not preclusive here because the issue
was never fully briefed by the parties, was *dicta*, was founded upon a now-vacated prior ruling of the
Court, and its consideration as a component of standing was contrary to the law in the Eleventh Circuit.
*Edwards*, 437 F.3d at 1149-50 ("'An analysis of standing does not include an analysis of equitable
defenses such as *in pari delicto*."), *quoting Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co*.,
267 F.3d 340, 354 (3d Cir. 2001).  In addition, the Court pointed to a case applying New Jersey law for
the proposition that *in pari delicto* is inapplicable to audit negligence cases.  (Exh. "R" [9/18/06 Order] at
12.)  The applicable Florida law is to the contrary.  *Gee*, 625 So. 2d at 1 (*in pari delicto* applied where
auditor was negligent "in failing to discover Shah's fraud").

III.    **SUMMARY JUDGMENT IS WARRANTED BECAUSE THE**
        **RESPONSIBLE OFFICER CANNOT ESTABLISH SECURITIES FRAUD**

The Responsible Officer is also unable to prove basic elements of his securities fraud claim.  Before the Responsible Officer may recover for securities fraud, he must establish that BDO Seidman (1) made "a misstatement or omission," (2) "of a material fact," (3) acted "with scienter," (4) that Bankest "relied" upon the misstatement, and (5) injury that was "proximately caused" by the misstatement or omission.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  As explained above, Bankest's imputed knowledge of wrongdoing and false financial statements precluded its reliance.  As demonstrated below, the Responsible Officer is also unable to establish proximately caused damages, or BDO Seidman's fraudulent intent.

A.    **Summary Judgment Is Warranted Because The Responsible**
      **Officer Cannot Prove Proximate Cause Or Damages**

In *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972), the United States Supreme Court declared that the measure of potential damages to a ***seller*** of securities -- such as Bankest here -- is "the difference between the fair value of all that [the issuer] received and the fair value of what [it] would have received had there been no fraudulent conduct . . . ."  *Accord Pidcock v. Sunnyland America, Inc*., 854 F.2d 443, 446 (11th Cir. 1988) ("the general measure of damages for defrauded sellers is the difference between what the seller received and what the seller would have received had there been no fraudulent conduct").  Damages are measured as of "the time of [the securities] sale."  *Affiliated Ute*, 406 U.S. at 155.

Using inflated financial statements, Bankest sold debentures at amounts that, by definition, were ***equal to or greater than*** their true value at the time of sale.  As the Responsible Officer made clear in an example during his sworn testimony, when Bankest sold a debenture "for 200,000," in exchange it "would receive $200,000 in value from the purchaser."  (Exh. "D"

[2/21/08 Freeman Dep.] Tr. at 31:1-20.)    Under these circumstances, Bankest cannot "successfully sue because it lost nothing in its capacity as an investor on the issuance of its debentures." *Rochelle v. Marine Midland Grace Trust Co. of New York*, 535 F.2d 523, 529 (9th Cir. 1976).   Rather, as the District Court in *Baker v. Heller*, 571 F. Supp. 419, 421 (S.D. Fla. 1983), declared in dismissing a "seller's" securities fraud claim, the plaintiff is an entity "which sold the securities and received the benefits from any alleged violation of federal securities laws." *Accord Rollins Inv. Fund v. Valentine*, No. 5:93 CV 1992, 5:93 CV 1871, 1996 WL 943541 at *7 (N.D. Ohio 1996) ("Valley admits that the price of its stock was inflated by the alleged fraud."   Because "Valley actually took more than the stocks were worth . . . Valley cannot establish the sixth element of a securities fraud claim, that is, a compensable loss in connection with the sale of its securities."); *In re Investors Funding Corp. of New York Sec. Litig.*, 523 F. Supp. 533, 539 (S.D.N.Y. 1980) ("Since [the company] received more than fair value in exchange for its debentures and other securities, it was not damaged until the proceeds from such sales were subsequently misused.").

Perhaps recognizing this fatal flaw, the Responsible Officer contends that Bankest was harmed by taking on additional debt that "deepened" its insolvency.   (Adv. Comp. ¶¶ 7, 22, 57-59.)  This purported damages "theory" also ignores basic math.   For it is impossible to dispute, and is universally accepted, that when a company borrows money or issues debentures and receives the full amount of the loan in exchange,

> it receives an asset ***that directly offsets the newly incurred liability on its balance sheet***.  In other words, the company 'expand[s] debt in precise proportion-dollar-for-dollar proportion-to the expansion of assets in the form of new cash.'  ***The difference between the company's assets and liabilities therefore remains the same.  Its ability to pay its debts as they become due is no worse; indeed, it***

> *may be better. The company's insolvency is no greater than before.*[3]

*In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560, 574 (S.D.N.Y. 2007) (emphasis added), *quoting* Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549, 552-57 (2005); *see In re CitX Corp., Inc.*, 448 F.3d 672, 677 (3d Cir. 2006) ("Assuming for the sake of argument that [the] financial statements allowed CitX to raise over $1,000,000, that did nothing to 'deepen' CitX's insolvency.  It did the opposite.").[4]

Any attempt to concoct damages based on amounts "funneled" out of Bankest also fails. It bears repeating that securities damages are calculated *as of the time of sale*.  *Affiliated Ute*, 406 U.S. at 155.  Any squandering of investment proceeds *after* the securities transactions by which debentures were sold is not an element of recoverable securities damages; it is a harm caused by the Managers' later mismanagement or wrongdoing.  *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir 1985) (company's receipt of proceeds from offering "necessarily undercut any claim that the harm later suffered by the corporation was the result of [law firm's] activities" where "the proceeds of those transactions were allegedly funneled into unwise investments or diverted to the personal use of the [wrongdoers]"); *Rochelle*, 535 F.2d at 528-29 (trustee cannot sue accountants to recover proceeds of securities offering that were later "frittered away"); *Parmalat*, 501 F. Supp. 2d at 574-75 (no securities damages where "proceeds of loan are squandered or assets otherwise looted").

---

[3]     The Responsible Officer contends that "virtually all" receivables used as collateral for money raised "did not exist." (Adv. Comp. ¶¶ 2, 4, 27, 39, 45, 46, 54, 57, 109.)  Therefore, Bankest received *more* from investors than the value of debentures it issued because the collateral was allegedly valueless.

[4]     The Responsible Officer may have shifted his damages theory on the last day of discovery.  During his deposition, the Responsible Officer suggested that he seeks to recover "$170 million I owe the creditor, the largest creditor, the bank, and $50 million worth of profits that had accumulated in the corporation over that time."  (Exh. "D" [2/21/08 Freeman Dep.] Tr. at 42:12-17; see Tr. at 49:2-25; 50:1-25; 51:1-7.)  This is nothing more than a different way of asserting that Bankest is unable to pay its debts due to its insolvency, which is an invalid measure of securities damages.

In sum, the securities fraud claim should be dismissed for the separate reason that the Responsible Officer is unable to establish recoverable securities damages as a matter of law. *Pelletier v. Stuart-James Co., Inc*., 863 F.2d 1550, 1558 (11th Cir. 1989) ("The failure to show actual damages is a fatal defect in an anti-fraud action pursuant to Rule 10b-5.").

### B.    Summary Judgment Is Warranted Because The Responsible Officer Cannot Prove Scienter

The uncontested facts also preclude the Responsible Officer from establishing scienter. To prove scienter, the Responsible Officer must prove BDO Seidman intended "to deceive manipulate or defraud" or "acted with a severely reckless state of mind." *Bryant v. Avado Brands, Inc*. 187 F.3d 1271, 1273, 1282 (11th Cir. 1999). Severe recklessness is "'limited to those ***highly unreasonable*** omissions or misrepresentations that involve not merely simple ***or even inexcusable negligence***, but an ***extreme departure*** from the standards of ordinary care, and that present a danger of misleading buyers or sellers ***which is either known to the defendant or so obvious that the defendant must have been aware of it***.'" *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1264 (11th Cir. 2006), *quoting Bryant*, 187 F.3d at 1282 n. 18 (emphasis added).

The Responsible Officer cannot prove BDO Seidman's "intent to deceive" or that the fraud at Bankest was "so obvious" that BDO Seidman "must have been aware of it." *Garfield*, 466 F.3d at 1264. To the contrary, the uncontested facts prove that at every turn, the Managers "defrauded" BDO Seidman and engineered a complex scheme to "thwart" its ability to detect fraud. (Exh. "U" [Indictment] ¶¶ 11-15; Exh. "E" [Mendez Depo.] Tr. at 212:14-17.) The Managers, with the help of persons outside of Bankest, created fake "documentation," "checks," "invoices," "insurance reports," collection transactions, "deposit slips," "minutes," "bank statements," and "aging reports," all with the express purpose of duping BDO Seidman. (Exh. "E" [Mendez Depo.] Tr. at 51-53:9, 117-154, 211:3-14, 212:6-12.) The Managers never told

BDO Seidman that the documents and information provided to complete the audit were fake; rather as one Manager made clear, the purpose was to prevent "a call for attention from the auditors." (Exh. "E" [Mendez Depo.] Tr. at 120:7-9, 142:12-21, 148:1-4.)

Thus, the uncontested evidence is that BDO Seidman was, in fact, unaware of the fraud at Bankest. Indeed, the uncontested evidence proves BDO Seidman was prevented from detecting fraud, and was defrauded itself. For these reasons, the Responsible Officer is unable to prove, as a matter of law, that BDO Seidman "must have been aware" of the fraud or that it acted with scienter. *Garfield*, 466 F.3d at 1264.

For all the foregoing reasons, Count V of the Adversary Complaint should be dismissed.

## IV. THE RESPONSIBLE OFFICER'S COMMON LAW CLAIMS ARE ALSO INVALID AS A MATTER OF LAW

### A. Summary Judgment Is Warranted Because The Responsible Officer Cannot Prove Proximate Cause Or Damages

As with his so-called "securities fraud" claim, the Responsible Officer's malpractice and fiduciary duty claims require him to prove proximate cause and damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (fiduciary duty); *GFN Corp. v. KPMG Peat Marwick*, 820 So. 2d 944, 945 (Fla. 3d DCA 2002) (accounting negligence). And as with the securities fraud claim, the Responsible Officer is unable to meet his burden.

Indeed, after years of discovery, BDO Seidman is left to guess the damages the Responsible Officer is seeking. The Responsible Officer has furnished no evidence, and has designated no expert to testify, concerning the damages to which he may be entitled for his malpractice and fiduciary duty claims. The reason is simple. There are no recoverable damages; to the extent any person other than BDO Seidman was harmed from Bankest's fraud, it was its lender, which has already asserted its damages claim in state court. Under these circumstances

alone, the Court should enter summary judgment to prevent a double recovery.  *See Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 909 (7th Cir. 2007) ("The only possible losers from the prolongation of the corporation's miserable existence were the corporation's creditors" who can assert their own claims in the states that permit).

In his Adversary Complaint, the Responsible Officer hints at potential damages relating to Bankest's alleged "deepening insolvency."  (Adv. Comp. ¶ 22.)  Damages relating to a company's purported deepened insolvency, however, are only recoverable when the underlying claim is for fraud, not accounting negligence.  *See In re CitX Corp., Inc*., 448 F.3d 672, 681 (3d Cir. 2006) ("deepening insolvency is not a valid theory of damages for negligence"); *In re Grand Court Lifestyles, Inc*., Bankruptcy No. 00-32578 (NLW), 2007 WL 3252158 at *10 (Bankr. D.N.J. 2007) (same).  Moreover, and as explained above, upon issuing the debentures, Bankest was accorded a benefit from any malpractice or breach of fiduciary duty, not a harm, because the money it received was ***equal to or greater than*** the true value of the debentures. (Exh. "D" [2/21/07 Freeman Dep.] Tr. at 31:1-20.)  *See Morgan Stanley & Co. Inc. v. Coleman (Parent) Holdings Inc.*, 955 So. 2d 1124, 1128 (Fla. 4th DCA 2007) (damages calculated "by the difference between the value of the property as represented and the actual value of the property on the date of the transaction"); *CitX*, 448 F.3d at 677 ("Assuming for the sake of argument that [the] financial statements allowed CitX to raise over $1,000,000, that did nothing to 'deepen' CitX's insolvency.  It did the opposite.").  In short, any potential claim for so-called negligent "deepening insolvency" is invalid as a matter of law.

Any attempt to seek damages for the amount of money that Bankest diverted also fails because the Responsible Officer cannot prove BDO Seidman's audits were the proximate cause of that fraudulent mismanagement.  Under Florida law, negligence can only be the legal cause of

15

harm "if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage." *Resolution Trust Corp. v. Stroock & Stroock & Lavan*, 853 F. Supp. 1422, 1427 (S.D. Fla. 1994).  A simple "but for" relationship between the negligence and the harm "will not support the finding of legal causation." *Id.*

While BDO Seidman could arguably foresee Bankest's use of false financial statements to sell debentures at an amount exceeding their true value, the decisional law is uniform that BDO Seidman could not foresee "that the financial statements would allow the insiders to embezzle the proceeds." *In re Global Serv. Group, LLC (Kittay v. Atlantic Bank)*, 316 B.R. 451, 461 (Bankr. S.D.N.Y. 2004).  Indeed, the District Court in *Resolution Trust* reached this very conclusion under Florida law, ruling that a lawyer's professional negligence that enabled a company to sell debt securities was only the "but for" cause, and not the proximate cause, of the company's later loss of the proceeds.  853 F. Supp. at 1427-28.  Stated another way, BDO Seidman's audit opinions were allegedly issued to potential lenders to influence lending; there is no allegation or evidence that its audit opinions were issued to the Managers or to the "portfolio" clients to cause them to divert the loan proceeds.  At the point that the Managers decided to advance money in an impermissible way, the financial statements became irrelevant and could not have proximately caused a loss.  *Accord Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir.1985) (while foreseeable that audit opinion would be used to raise financing, "it was not reasonably foreseeable that inside management of [the company] would embezzle the funds so received for their personal use"); *In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560, 580, 591 (S.D.N.Y. 2007) (same); *Johnson v. Chilcott*, 590 F. Supp. 204, 210 (D. Colo. 1984) (no proximate cause where "the receiver purports to assert claims for fraudulent

16

dissipation of assets on behalf of the fund, but looks for the element of deception in misrepresentations made to investors to induce them to invest").

For these reasons, the Responsible Officer is unable to prove that BDO Seidman's alleged malpractice and fiduciary violations proximately caused Bankest harm.  Summary judgment dismissing Counts I and IV is therefore warranted.

**B.    The Responsible Officer Is Unable To Prove The Other
Elements Of Aiding And Abetting A Breach Of Fiduciary Duty**

The Responsible Officer's claim for aiding and abetting a breach of fiduciary duty is also unsupportable based upon the uncontested facts.  To sustain his claim, the Responsible Officer must prove "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."  *In re Meridian Asset Management, Inc*., 296 B.R. 243, 263 (Bankr. N.D. Fla. 2003).  The Responsible Officer is unable to meet his burden for three reasons.

*First*, the aiding and abetting claim is barred by the "economic loss" rule.  BDO Seidman's relationship with Bankest was governed by a series of engagement agreements under which BDO Seidman agreed to provide the audit services at issue in this action.  (Exh. "V" [Engagement Agreement].)  Moreover, although he has not identified the manner in which they exist or can be calculated, the Responsible Officer seeks purely economic damages on behalf of Bankest, the signatory to the engagement agreements.  (Adv. Comp. ¶ 104.)  Accordingly, the economic loss rule bars any further pursuit of a claim for aiding and abetting a breach of fiduciary duty.  *See Waters v. Int'l Precious Metals Corp*., 172 F.R.D. 479, 499 (S.D. Fla. 1996) (aiding and abetting breach of fiduciary duty claims barred because "they arise out of underlying contractual relationships and seek purely economic damages").

17

*Second*, it is uncontested that BDO Seidman lacked any knowledge that the Managers were manufacturing false documents and other information to "thwart" the audit process, were defrauding Bankest investors with false financial statements, or were making direct loans and investments in Bankest's "portfolio" clients, rather than purchasing accounts receivable.  (Exh. "U" [Indictment] ¶¶ 11-15; Exh. "E" [Mendez Depo.] Tr. at 212:14-17.)   As Manager Carlos Mendez testified repeatedly, "at no time did [he] tell BDO or any other auditor that the information that [he was] providing to them was false."  (Exh. "E" [Mendez Depo.] Tr. at 120:7-9, 142:12-21, 148:1-4.)  To the contrary, the entire purpose of creating false documents and other information was to prevent BDO Seidman from obtaining the very "knowledge" of the fiduciary violation that the Responsible Officer now must prove to sustain his claim.  For this separate reason, the aiding and abetting claim is invalid.  *See In re Toy King Distributors, Inc.*, 256 B.R. 1, 178 (Bankr. M. D. Fla. 2000) (plaintiff "must show more" than that the defendant "acted recklessly, imprudently, and even negligently" to establish knowledge of a fiduciary violation).

The *third* reason the Responsible Officer is unable to prove aiding and abetting as a matter of law is because there is no evidence of BDO Seidman's "substantial assistance or encouragement of the wrongdoing."  *Meridian*, 296 B.R. at 263.  To establish a fact question concerning whether BDO Seidman lent "substantial assistance or encouragement" to a breach of fiduciary duty, the Responsible Officer is required to submit evidence proving that it "actively participate[d]" in the wrongdoing.  *Bruhl v. PriceWaterhouseCoopers Int'l.*, No. 03-23044-Civ., 2007 WL 983263 at *10 (S.D. Fla. 2007); *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1566 (S.D. Fla. 1993).  There has never been an allegation, much less evidence, that BDO

18

Seidman actively participated in the fraud at Bankest.  Rather, as demonstrated above, BDO

Seidman was one of its victims.

     For these separate reasons, the Responsible Officer's aiding and abetting a breach of

fiduciary duty claim is invalid as a matter of law and should be dismissed.

## <u>CONCLUSION</u>

     For all the foregoing reasons, the Court should enter summary judgment dismissing the

Adversary Complaint in its entirety.

GREENBERG TRAURIG, P.A.
Attorneys for BDO Seidman, LLP and Sandor Lenner
1221 Brickell Avenue
Miami, FL 33131
Phone: (305) 579-0500
Fax: (305) 579-0717


By: _____/s/ Mark D. Bloom_____
                 JOHN B. HUTTON
                 Florida Bar No. 902160

                 MARK D. BLOOM
                 Florida Bar No. 303836

<u>Of Counsel</u>

Karen Y. Bitar
Adam D. Cole
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York, 10166
(212) 801-9200


*ATTORNEYS FOR BDO*
*SEIDMAN, LLP AND SANDOR LENNER*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 19, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____/s/ Mark D. Bloom_____

Mark D. Bloom

**Service List**

Mark F. Raymond, Esq.
Rhett Traband, Esq.
Co-Counsel for BDO International
Broad and Cassel
One Biscayne Tower, 21st Floor
2 South Biscayne Blvd.
Miami, FL 33131

Kevin W. Goering, Esq./Lisa M. Lewis, Esq.
Counsel for BDO International
Sheppard, Mullin, Richter & Hampton, LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112

Warren R. Trazenfeld, Esq.
Counsel for Plaintiff
3225 Aviation Avenue, Suite 600
Miami, Florida 33133-4741

Paul J. Battista, Esq.
Genovese Joblove & Battista, P.A.
Co-Counsel for Plaintiff
100 S.E. Second Street, 44th Floor
Miami, Florida  33131

Karen Y. Bitar, Esq./Adam Cole, Esq.
Counsel for BDO
Greenberg Traurig, P.A.
MetLife Building
200 Park Avenue
New York, New York 10166

Daniel F. Blonsky, Esq.
Coffey Burlington
Office in the Grove, Penthouse A
2699 South Bayshore Drive
Miami, FL 33133

Office of the U.S. Trustee
51 S.W. First Ave., Room 1204
Miami, FL 33130