# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 03-20951

THE UNITED STATES OF AMERICA,
Plaintiff
vs.

CARLOS E. MENDEZ,
Defendant.

- - -

PLEA TAKEN 5-5-04
BEFORE THE HONORABLE ADALBERTO JORDAN

- - -

APPEARANCES:
FOR THE GOVERNMENT:
STEPHEN STALLINGS, A.U.S.A
CAROLINE HECK MILLER, A.U.S.A

FOR THE DEFENDANT:
JAMES McGUIRK, ESQUIRE

REPORTED BY:
PATRICIA SANDERS, RPR
OFFICIAL COURT REPORTER


DEFENDANT'S EXHIBIT 2

---

2

THE COURT: Please be seated. This is Case No. 03-20951, United States versus Carlos Mendez. Counsel, please announce your appearances.

MR. STALLINGS: Steven Stallings and Caroline Heck Miller on behalf of the United States.

MR. McGUIRK: James McGuirk on behalf of Carlos Mendez who is present in the courtroom.

THE COURT: Good afternoon. It's my understanding that Mr. Mendez wishes to change his not guilty plea and enter a guilty plea to counts one, three, 31 and 35 of the indictment?

MR. McGUIRK: That's correct, Your Honor.

THE COURT: All right. I have the signed plea agreement here.

Mr. Mendez, before I can accept the guilty plea I need to ask you a series of questions so that I can make sure you understand what your rights are and that you are aware of what is going on here this afternoon

If at any time you have any questions or don't understand something please let myself or Mr. McGuirk know and we'll be happy to explain it to you.

DEFENDANT SWORN

THE COURT: Mr. Mendez, the first thing I need to do is advise you, you are under oath and tell you that if you answer any of my questions falsely those answer could later be used against you

---

3

in another prosecution for perjury or for making a false statement. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Please state your full name for the record.

THE DEFENDANT: Carlos E. Mendez.

THE COURT: Where were you born, sir?

THE DEFENDANT: In Uruguay.

THE COURT: How old are you?

THE DEFENDANT: 47 years old.

THE COURT: How far did you go in school and where?

THE DEFENDANT: I earned my Master's in business at the University of Miami.

THE COURT: Tell me your citizenship, sir.

THE DEFENDANT: I am a U.S. citizen

THE COURT: When were you naturalized?

THE DEFENDANT: In 1990.

THE COURT: Have you ever been treated for any mental illness or addiction to narcotics of any kind?

THE DEFENDANT: I have never been treated for anything, no.

THE COURT: Are you currently under the influence of any prescription drugs, narcotics, medication or alcoholic beverage of any kind?

THE DEFENDANT: No.

THE COURT: Have you taken any drugs medication or alcohol

---

4

in the past 24 hours?

THE DEFENDANT: I have not.

THE COURT: Are you currently under the care, treatment of any doctor or medical professional?

THE DEFENDANT: I am not.

THE COURT: Mr. McGuirk, in your opinion is Mr. Mendez competent to enter a guilty plea?

MR. McGUIRK: Yes, Your Honor.

THE COURT: Have you received a copy of the indictment pending against you in this case, that is the written charges made against you by the Government?

THE DEFENDANT: I have.

THE COURT: Have you had the opportunity to go over the charges and the case in genral with Mr. McGuirk your attorney?

THE DEFENDANT: Yes sir.

THE COURT: Have you discussed with him any possible defense strategies and defenses to the charges pending against you?

THE DEFENDANT: I have

THE COURT: Are you satisfied with the counsel, representation and advise given you in this case by Mr. McGuirk?

THE DEFENDANT: Yes, sir.

THE COURT: Anything about his representation you are not satisfied with?

THE DEFENDANT: No.

THE COURT: Mr. Mendez, you have agreed to plead guilty to

5

various counts of the indictment. I would like to through each the counts with you one at a time. You have agreed to plead guilty to Count 1, which charges you with engaging in an illegal agreement or conspiracy under Title 18 United States Code, Section 3.

According to the indictment you between June of 94 through on or about August 2003 in the Southern District of Florida knowingly and willfully combined, conspired and agreed with others to commit various offenses against the the United States.

These offenses were to devise and implement a scheme and artifice to defraud a financial institution, that is Espirito Santo Bank. In violation of Title 18 United States Code Section 1344.

And to devise and implement a scheme and artifice to defraud by means of materially false pretenses, representations and promises, in violation of Title 18 United States Code Section 1343.

Do you understand the charge as set forth in Count 1?

THE DEFENDANT: Yes, sir.

THE COURT: If you chose to plead not guilty and go to trial the Government would have to prove certain things beyond a reasonable doubt to obtain a verdict of guilty.

The Government would have to prove that sometime between the dates alleged you and another individual, at least one other individual, came to an illegal agreement or conspiracy to commit aim offenses against the United States.

The Government would have to show you and the other

6

individual came into this agreement knowingly, intentionally and willfully. In other words, it was not the product of any mistake or accident on your behalf. The Government would have to show the offenses you and the others agreed to commit against the United States were violations of Title 18 United States Code Section 1343 and violations of Title 18 United States Code Section 1344.

The Government would hae to prove again beyond a reasonable doubt that at some point during the existence of the conspiracy you or some other member of the conspiracy comitted what is known as an overt act, that is an act to further or promote the objective of the conspiracy.

Do you understand those elements of Count 1 the conspiracy charge?

THE DEFENDANT: I do.

THE COURT: Count 3 charges Mr. Mendez, that you violated Title 18 United States Code Section 1344. In essence it's an allegation you committed bank fraud.

It's alleged in the Indictment from on or about June of 97 through on or about April of 98 you and other individuals knowingly ed and implemented a scheme and artifice to defraud Espirito San- Bank and to obtain monies and funds owned by and under the con of that bank by means of materially false and fraudulent pretenses, representations and promises.

Count 3 which you have agreed to plead guilty to has an allegation that on or about April eighth of 98 there was an

7

execution or an attempted execution of scheme and artifice to defraud by obtaining $750,000 in an equity contribution from Espirito Santo Bank based on the submission of false financial information as to a material fact. Do you understand the charges set forth in Count 3?

THE DEFENDANT: I do.

THE COURT: If you chose to go to trial and plead not guilty to that charge -- let me go through Count 31 because they're the same underlying elements for that charge as well.

Count 31 is also a bank fraud charge. Count 31 charges you this time, with regard to other defendants as well, with committing the offense of bank fraud as I previously described.

Count 31 the allegation is on or about May 15, 2002 you and others obtained from Espirito Santo Bank $200,000 in debenture note funding from an individual whose initials are CI, based upon the submission of false financial information as to a material fact.

Do you understand that bank fraud charge?

THE DEFENDANT: Yes, sir.

THE COURT: With respect to each of those charges, Counts 3 and 31 Mr Mendez, if this case had proceeded to trial the Government would have to prove certain things beyond a reasonable doubt to obtain a conviction against you.

They would have to prove first that as to each particular charge on the dates alleged in the indictment with that particular charge you and others devised and implemented a scheme and artifice

8

to defraud. In Count 3 with respect to obtaining the $750,000 in an equity contribution from Espirito Santo Bank and in Count 31 with respect to the 200,000 in debenture note funding from CI's account Again, based on the submission of false financial information as to a material fact.

In addition to proving those things as to each of the counts the Government would also have to prove that you did so knowingly, intentionally and willfully.

The Government would have to prove you obtained that money with regard to the equity contribution and debenture funding based upon the submission of false financial information as to a material fact. Do you understand the elements of each of those charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You have also agreed to plead guilty to Count 35. Count 35 charges you with committing the offense of wire fraud in violation of Title 18 United States Code Section 1343. Count 35 alleges that you and others engaged in a scheme and artifice to defraud some time between June of 94 and August of 2003 in Miami Dade County in this Distrit and elsewhere.

And it was the purpose of the scheme and artifice to defraud, according to the indictment, that you and others obtained money for Bankest, BCC, BRFFC and from financial institutions and others by using inflated and false account receivables and fraudulent financial information to receive funding.

Count 35 alleges in furtherance of the scheme to defraud

9

...u and others used wire transmissions. Specif, ...sed them ...ary 17, 2002 through the fax transmission of fraudulent Bankest 2000 and 1999 financial statements from Bankest in Miami Florida to r... in New York, New York. Do you understand that wire fraud charge?

THE DEFENDANT: I do, Your Honor.

THE COURT: If you went to trial the Government would have to prove that from on or about June of 94 through on or about August 2003 in Miami Dade County in this district you and others engaged in a scheme to defraud by means of fraudulent and materially false pretenses, representations and promises.

That is you and others money for Bankest, BCC, BRFFC and from other financial institutions by using inflated and false account receivables and fraudulent financial information to receive funding.

Do you understand those elements of Count 35?

THE DEFENDANT: I do.

THE COURT: Mr. Mendez, I am going to now tell you about the penalties you are facing as a result of the guilty plea. Count 1 carries with it a maximum of not more than five years imprisonment.

Any term of imprisonment as to Count 1 is to be followed by a term of supervised release of at least two but not more than three years. There's a maximum fine of $250,000. There's a mandatory cial assessment of $100.

In addition to these penalties there is also the

10

availability for me under federal law to order restitution to be paid. Do you understand those penalties?

THE DEFENDANT: I do.

THE COURT: Do you understand I can impose a sentence within those terms if you plead guilty to Count 1?

THE DEFENDANT: Yes.

THE COURT: Counts 3 and 31 are bank fraud charges and each carry the same penalties. Each one of those counts has a maximum sentence of 30 years imprisonment. Any term of imprisonment would be followed by a term of three years but not more than five years.

There's also a maximum fine of $1,000,000. There's a mandatory special assessment of $100 as to each count. Again, there is the potential for the order of restitution. Do you understand the penalties for Counts 3 and 31?

THE DEFENDANT: Yes, sir.

THE COURT: With regard to Count 35 there is a maximum sentence of 30 years imprisonment. Any term of imprisonment is to be followed by a term of supervised release of three but not more than five years. Also a maximum fine of $1,000,000, with a andatory special assessment of $100. Do you understand those ties, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Mendez, I am not telling you that will be your sentence. My job is to tell you the worst possible scenario. As we stand here today if you were to receive the maximum sentence

11

on each of the counts ... was to stack them on top of each other you would be facing a mandatory 95 years in prison. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I am not telling you, you will get that but I need to advise you of the worst possible scenario. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Have you had a chance to discuss the sentencing guidelines and how they might affect your case with Mr. McGuirk?

THE DEFENDANT: I have, Your Honor.

THE COURT: Do you understand that the sentence will be calculated pursuant to the sentencing guidelines which will assign a numeric score to the offense and to your criminal history and background if there is any?

THE DEFENDANT: Yes.

THE COURT: Do you understand any estimate given to you by Mr. McGuirk or anyone else is only an estimate and I will not be able to determine the sentence until I have reviewed a presentence investigation report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you will not be allowed to withdraw the guilty plea solely as a result of the sentence you receive?

THE DEFENDANT: Yes.

12

THE COURT: Do you understand under some circumstances either you or the Government may have the right to appeal the sentence I impose?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand I can depart from the guidelines and give you a sentence that is higher or lower than that fixed by the guidelines?

THE DEFENDANT: Yes.

THE COURT: Do you understand if I depart upward you can appeal and if I depart downward the Government can appeal?

THE DEFENDANT: Yes, sir.

THE COURT: If you would take a look at the copy of the plea agreement Mr. McGuirk has there. Is that your signature on the last page, sir?

THE DEFENDANT: It's my signature.

THE COURT: Is that the agreement you signed?

THE DEFENDANT: This is the agreement I signed.

THE COURT: Did you have the opportunity to go over it with Mr. McGuirk before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the terms of the plea agreement.

THE DEFENDANT: Yes.

THE COURT: Let me go over some of the basic provisions with you. You have agreed to plead guilty to Counts 1, 3, 31 and 35,

13

h I have explained to you already. In exchai... or the guilty a the Government will seek dismissal of counts 2, 5 through 30, 4, 37, 39, 42, 43, 44 and 46 as to you at the time of sentencing. : your understanding, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Paragraph three tells you about the sentencing guidelines, which we have already discussed. Paragraphs four and ive tell you about the penalties you are facing, which I have previously gone over.

In paragraph six the Government says it reserves the right to inform Probation and myself as to any and all facts pertinent to the sentencing process. The Government also reserves the right to make any recommendation as to the punishment subject only to the terms of this agreement. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: In paragraph seven the Government agrees to recommend at sentencing that the Court reduce by two or three levels your sentencing guideines based upon your acceptance of responsibility. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: The Government has also agreed to recommend I sentence you at the low end of the applicable guidelines range. Do understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It states further that the Government is not

14

required to make either of those recommendations on your behalf if one of three things occur. If you fail or refuse to make a full, accurate or complete disclosure to Probation of the circumstances surrounding the relevant offense conduct.

Two, if you are found to have misrepresented facts to the Government prior to entering the plea agreement. Or, three, if you commit any misconduct after entering into the plea agreement. Do you understand those three exceptions?

THE DEFENDANT: I do.

THE COURT: Paragraph eight contains the recommendations of the parties concerning the sentence to be imposed. I am under no obligation to accept the sentencing recommendations by the parties, and if I have a factual or legal basis to do so I can disregard or reject one or more of these recommendations. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: If I decide not to follow one or more of these recommendations that by itself will not be a ground for you to take back or withdraw the guilty plea. Do you understand that?

THE DEFENDANT: I do.

THE COURT: In paragraph nine you say Mr. Mendez, you agree seek any mitigating role reductions under 3B1.2. You agree not to seek any downward departures under Chapter Five of the sentencing guidelines. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

15

with the Government to obtain full restitution to all the victims of the fraudulent schemes as set forth in the indictment. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Paragraphs eleven and twelve, as well as thirteen and fourteen contains cooperation language as well as language regarding your assistance in various forfeiture proceedings. Do you understand the provisions of those paragraphs, sir?

THE DEFENDANT: Yes, sir, I do understand.

THE COURT: Paragraph 12 also says however that the Government does not intend to seek forfeiture of your home purchased in May 2002.

But nothing in this agreement prohibits the Government from seeking forfeiture of amounts representing the proceeds of loans obtained from entities controlled by one or more defendants, including a $180,000 loan made in connection with the purchase of the homestead to the extent such proceeds are not used for restitution. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You also say in paragraph 12 that you are giving up your right and waiving any claim or defense you may have to argue any forfeiture sought by the Government in this case is excessive under the Eighth Amendment to the United States Constitution. Have you agreed to that, sir?

16

THE DEFENDANT: Yes, sir.

THE COURT: Paragraphs thirteen and fourteen, again, discuss your cooperation, describes how that cooperation works.

In Paragraph 13 it also states that the Government is not required to file a motion for downward departure on your behalf. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The Government cannot withhold a downward departure based on an non Constitutional basis such as race, religion, national origin or the like, but if it's simply a disagreement over how thorough or significant your cooperation was neither I or Mr. McGuirk can force the Government to file a departure on your behalf. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: If the Government does file a motion for downward departure on your behalf I am under no obligation to grant that motion. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: If I do decide to grant a motion filed on your behalf I am under no obligation to follow the recommendations of the parties concerning the sentence to be imposed. In other words, the departure to be given. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: I have to listen to the Government's

17

not bound by the recommendations made by parties concerning extent of the departure. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Paragraph fifteen contains appellate waiver language. Under Title 18 of the United States Code Section 3742 you have the right to appeal the conviction and whatever sentence I impose. That is a right by statute and no one can take it away. Do you understand?

THE DEFENDANT: I do understand.

THE COURT: You can appeal on a whole host of grounds that may be available to you. For example, you can appeal on the grounds I made a mistake of fact at sentencing, that I got the facts about you and your involvement in the case wrong, which led me to impose an improper sentence.

Or you could argue I made a mistake of law, that I misapplied the guidelines in this case, which led me to sentence you incorrectly. Do you understand that right?

THE DEFENDANT: I do.

THE COURT: You are also giving up any right you have to file a collateral challenge to your sentence and conviction in this case. Is that you have agreed to do.

THE DEFENDANT: Yes, sir.

THE COURT: Both the appellate waiver and the collateral challenge waiver are subject to a couple of exceptions. Basically you have the right like any other person charged with the crime to

18

file a petition for post conviction relief pursuant to various sections of the United States Code. They are set forth in paragraph 15. I believe it should be Title 28, Mr. Stallings.

MR. STALLINGS: That's correct. My apologies for the error. It should be Title 28.

THE COURT: I will change it on the signed copy I have here and I will get each of you to initial it.

Under various provisions of United States Code you have the opportunity to mount post conviction challenges. One of the grounds that can be raised is the fact you did not receive effective assistance of counsel or that something else went wrong with these proceedings. Do you understand that?

THE DEFENDANT: I do.

THE COURT: In paragraph 15 you say you are giving up the right to appeal and you are giving up the right to file a petition for post conviction relief under Title 28 United States Code Section 2255 or any other applicable provision. Is that what you have agreed to?

THE DEFENDANT: Yes, sir.

THE COURT: There are a couple of exceptions. The waiver not apply if I impose a sentence that exceeds the maximum permitted by statute or if I impose a sentence based upon an upward departure.

And finally, the waiver does not apply if the Government
— — — — — — — — — — — — — If the Government appeals you can

19

appeal as if these waivers do not apply. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Paragraph 16 advises you I have not yet determined your sentence and tells you that any estimate of your sentence or sentencing range by Mr. McGuirk is only a prediction, it is not a promise, is not binding on the Government, Probation or on me. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Paragraph 19 says this is the entire agreement and understanding between yourself and the Government and there are no other agreements, promises, representations or understanding. Is that correct?

THE DEFENDANT: That's correct.

THE COURT: Aside from what we have discussed this afternoon, has anyone made any different promise or assurance in any kind of an effort to get you to plead not guilty in this case?

THE DEFENDANT: No.

THE COURT: Has anyone tried to force you, pressure or coerce you into pleading guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own freewill because you are in fact guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the offenses to which you are pleading are felony offenses?

20

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if the pleas are accepted and you are adjudicated they will deprive you of very valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand an adjudication of guilty can affect your immigration status or your ability to remain in or return to the United States?

THE DEFENDANT: I do understand.

THE COURT: You told me you are a naturalized citizen so that last provision would not apply to you. However, since I do not have any information in front of me telling me whether you are a naturalized citizen or not I tell you that out of an abundance of caution.

THE DEFENDANT: Yes, sir.

MR. McGUIRK: Based on his representation that he is a naturalized U.S. citizen I have advised it would affect his citizenship.

THE COURT: It shouldn't as long as you became a naturalized citizen before the events in this case took place. Again, I give that piece of advice out of an abundance of caution. Because I have had other individuals that told me they thought they were American citizens and it turns out they were not.

21

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you understand you have the absolute right to plead not guilty to the offenses charged against ...d to persist in that plea?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if you plead not guilty you would have the right to a jury trial by your peers?

THE DEFENDANT: Yes, sir.

THE COURT: You would be presumed innocent and the Government would have to prove your guilt beyond a reasonable doubt. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand at trial you would have the right to the assistance of your counsel and if you could not afford an attorney I would appoint someone to represent you at no cost?

THE DEFENDANT: I understand.

THE COURT: Do you understand at trial you would have the right to see and hear all of the witnesses against you and the right to have those witnesses questioned or cross examined in your defense?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand at trial you would have the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your behalf?

THE DEFENDANT: I do.

22

THE COURT: Do you understand you would have the right to decline to testify unless you voluntarily elected to do so?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if you chose not to testify at trial that silence could not be used against you?

THE DEFENDANT: I do understand.

THE COURT: Do you understand that if you enter a plea of guilty there will be no trial and you will have waived or given up the right to a trial and all the rights that go along with it?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Mendez, please listen carefully. I will have Mr. Stallings explain what the Government would prove if this case were to go to trial on the counts you are pleading guilty to. After he is done I will ask whether you agree or disagree with the facts as he has related.

MR. STALLINGS: If this matter had proceeded to trial the United States would have proven beyond a reasonable doubt by competent evidence the following facts:

During the period of the conspiracy alleged in the indictment defendant Carlos Mendez held the title of Vice president of Bankest ...il Corporation and its related entities, which I'll refer to collectively as Bankest.

Bankest was purportedly engaged in the business of factoring. Bankest obtained its funding for the factoring business through ... business relationships with Espirito Santo Bank of Florida

23

a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation. Mr. Mendez's role at Bankest was to handle finance related issues for Bankest. Bankest was owned by codefendants Hector and Eduardo Orlansky. Mr. Mendez was not an owner or director of the entities involved in the fraud.

In 1997 and early 1998 Bankest and Espirito Santo Bank of Florida negotiated towards the formation of a joint venture to conduct factoring operations, ultimately leading to the formation of E.S. Bankest Corp on or about March 18, 1998 as a joint venture between Espirito Santo Bank of Florida and Bankest.

In order to induce Espirito Santo Bank of Florida to enter into the joint venture defendants fraudulently inflated the value of the accounts receivables owned by Bankest.

Defendant Carlos Mendez was knowingly involved in conducting the finances of Bankest in such a way so as to make these false representations about the value of the accounts receivables possible and was aware that these false representations were being made to the bank.

ES Bankest was operated as a joint venture half owned by the bank and half owned by Bankest from 1998 through 2002. During that period defendants conspired and schemed to misrepresent to the bank and to auditors the value of accounts receivable purportedly owned by ES Bankest in order to continue obtaining funding through the bank.

The various mechanisms defendants used to further conceal

24

and disguise this fraud were sophisticated and included creating and using false invoices, changing dates on old receivables to make them appear current, creating false checks, redacting monthly board meeting minutes before production to the auditors and other techniques and machinations.

As a result monthly reports provided to the bank and audited annual financial statements for ES Bankest were materially false. Based on the fraudulent representations about the value of Bankest's accounts receivables the bank solicited its banking clients to loan money to ES Bankest through debenture notes.

One such debenture note payment was issued as a result of defendants' fraudulent scheme. Which was a May 15, 2002 transfer of $200,000 from a banking client identified by the initials CL.

Defendant Mendez was a knowing participant in the scheme to defraud the bank so this debenture note funding would continue. In addition, the defendants engaged in interstate transmissions of facsimiles in order to carry out their scheme.

For example, on or about January 17, 2002 defendants transmitted by facsimile fraudulent Bankest 2000 and 1999 financial statements from Bankest in Miami Florida to GMAC in New York in an attempt to obtain additional funding to continue the fraudulent practices.

Defendant Mendez was a knowing participant in the scheme to defraud that utilized these interstate transmissions. As a result of these fraudulent schemes the bank provided funding for Bankest in

25

s of $170,000,000 and the victim in this case ~~ently owed in excess of a hundred million dollars. The Government would ve proven these facts at trial showing defendants knowing

~~~ent in the conspiracy and schemes. But defendant may not ~ve personally known all the details of the conspiracy and scheme :scribed in the indictment or in this proffer.

THE COURT: Thank you, Mr. Stallings. Mr. Mendez, did you ~derstand the facts Mr. Stallings just proffered?

THE DEFENDANT: Yes, sir.

THE COURT: Now Mr. Stallings said at the end of that ~roffer you may not have known all of the details that he just gave. et me ask you these questions.

Did you know that you and others at Bankest were submitting alse information to Espirito Santo Bank and others concerning the inancial condition of Bankest, its receivables, its financial ;tatements and the like?

THE DEFENDANT: Yes, sir.

THE COURT: Did you know that was being done in order to obtain further funding in the factoring business from Espirito Santo Bank and its customers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you know, although you may not have known the details, did you know about the receipt of the $750,000 in initial equity funding from Espirito Santo Bank, did you know that w~~ ~ased in part on materially false representations made by

26

Bankest about its financial condition?

THE DEFENDANT: Yes, sir.

THE COURT: Although you might not have known all of the details were you aware that GMAC was being sent by facsimile the 2000 and 99 financial statements from Bankest which were fraudulent?

THE DEFENDANT: Yes, I do know about the fax being sent to GMAC.

THE COURT: Did you have a role in preparing those financial statements or in accepting that facsimile transmission.

THE DEFENDANT: I believe I had a role in sending the facsimile.

THE COURT: Okay.

MR. McGUIRK: Mr. Mendez, with respect to Count 35 is it true that you took part in the creation of the false financial statements that you either sent yourself or knew were sent to GMAC?

THE DEFENDANT: Yes, sir.

THE COURT: Is there something more you would like to tell the Court about that?

THE DEFENDANT: At no time had I agreed to defraud GMAC. The financial statements I knew were fraudulent, that they were ted receivables that were sent. However Bankest was trying to get replacement financing from GMAC under a separate institution, not under the Bankest name.

At all times I made clear to my supervisors I was not going ~~~~ ~~ ~~~~~ ~~ defraud another

27

institution in order to finu ~~ement financing.

I do agree that information from Bankest was sent to GMAC. Obviously that was sent for the purpose of showing them our operation.

However, as I just said, I was not going to misrepresent any facts for the purpose of getting replacement financing from GMAC.

THE COURT: Let me see if I understand what you are saying. You knew there was a scheme, an illegal agreement to misrepresent the financial condition of Bankest generally to obtain further financing?

THE DEFENDANT: Yes.

THE COURT: Generally?

THE DEFENDANT: Yes.

THE COURT: And you said that you prepared or had a hand in preparing the 99 and 2000 Bankest financial statements which were false?

THE DEFENDANT: Yes.

THE COURT: Despite what you might have intended to do or not do you knew that those false financial statements were being sent to GMAC by means of facsimile?

THE DEFENDANT: Yes.

THE COURT: And you knew they were being sent to GMAC so that GMAC could evaluate the financial condition of Bankest in evaluating whether or not further funding would be provided through

28

another entity?

THE DEFENDANT: Obviously we had, not an agreement with GMAC at that point, the company was working on entering into replacement financing --

THE COURT: You were negotiating and sending them paperwork and they were sending papers back to you in evaluating the situation?

THE DEFENDANT: Yes.

THE COURT: All right. I have heard enough. Mr. Mendez, how do you plead to the charges set forth in Counts 1, 3, 31 and 35, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It is the finding of the Court that Carlos Mendez is fully competent and capable of entering an informed guilty plea. That he is aware of the nature of the charges to which he is pleading, the consequences of the guilty plea. I find the guilty plea is a knowing and voluntary guilty plea supported by an independent basis in fact containing each of the essential elements necessary to prove the crimes charged in the indictment. Therefore the guilty plea is accepted, he's now adjudged guilty of Counts 1, 3, 31 and 35 of the indictment.

PLEA CONCLUDED

29

## CERTIFICATE

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

*[signature]*

DATE FILED          PATRICIA SANDERS, RPR