# EXHIBIT F

Page 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT

IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 04-14009 CA 31


------------------------------------------------x
BANCO ESPIRITO SANTO INTERNATIONAL, LTD., ESB FINANCE,
LTD., AND BANCO ESPIRITO SANTO, S.A.,
      Plaintiffs,
    vs.
BDO SEIDMAN, LLP, AND BDO INTERNATIONAL B.V.,
      Defendants.
------------------------------------------------x
BDO SEIDMAN, LLP,
      Third-Party Plaintiff,
    vs.
VICTOR BALESTRA, BERNARD MOLLET, JOAQUIN GARNECHO,
PIERRE TREZZINI, EDUARDO ORLANSKY, HECTOR ORLANSKY, R.
PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ,
ARIADNA PUERTO, AND OTTO AMBROSIANI,
      Third-Party Defendants.
------------------------------------------------x

PAGES 1 - 85




MORNING SESSION

Miami, Florida

Wednesday, January 31, 2007, 2007

9:45 a.m.

Before the Honorable Jose M. Rodriguez




Reported by:   Gizella "Gigi" Baan

e6dbfd6f-a7c2-4d5d-a567-7f15fac628a4

Page 2

```
 1              A P P E A R A N C E S
 2
 3   On behalf of the Plaintiffs BANCO ESPIRITO SANTO
 4   INTERNATIONAL, LTD., ET AL.:
 5
 6   SULLIVAN & CROMWELL, LLP
 7       1888 Century Park East
 8       Los Angeles, California  90067
 9       (310) 712-6627
10   BY:  Steven W. Thomas, Esquire
11       Emily S. Alexander, Esquire
12
13   GONZALO R. DORTA, P.A.
14       334 Minorca Avenue
15       Coral Gables, Florida  33134
16       (305) 441-2299
17   BY:  Gonzalo R. Dorta, Esquire
18
19   BERGER SINGERMAN
20       350 East Las Olas Boulevard, Suite
21       Fort Lauderdale, Florida  33301
22       (954) 525-9900
23   BY:  Mitchell W. Berger, Esquire
24
25
```

Page 4

```
 1   On behalf of Defendant BDO International B.V., n/k/a BDO
 2   GLOBAL COORDINATION B.V.:
 3
 4   BROAD AND CASSEL
 5       One Biscayne Tower, 21st Floor
 6       Miami, Florida  33131
 7       (305) 373-9400
 8   BY:  Mark Raymond, Esquire
 9       Rhett Traband, Esquire
10
11   SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
12       30 Rockefeller Plaza, 24th Floor
13       New York, New York  10112
14       (212) 332-3831
15   BY:  Kevin W. Goering, Esquire
16       Lisa M. Lewis, Esquire
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1   On behalf of Defendant BDO Seidman, LLP:
 2
 3   ALVAREZ, ARMAS & BORRON
 4       901 Ponce de Leon Boulevard, Suite 304
 5       Coral Gables, Florida  33134
 6       (305) 461-5100
 7   BY:  Arturo Alvarez, Esquire
 8
 9   GREENBERG TRAURIG, LLP
10       MetLife Building
11       200 Park Avenue, 15th Floor
12       New York, New York  10166
13   BY:  Adam D. Cole, Esquire
14       Karen Y. Bitar, Esquire
15
16   GREENBERG TRAURIG, LLP
17       1221 Brickell Avenue
18       Miami, Florida  33131
19   BY:  Mark Schnapp, Esquire
20       Nikki Simon, Esquire
21
22
23
24
25
```

Page 5

```
 1   On behalf of Third-Party Defendants Victor Balestra,
 2   Bernard Mollet, and Joaquin Garnecho
 3
 4   RICHMAN, GREER, WEIL, BRUMBAUGH,
 5   MIRABITO & CHRISTENSEN, P.A.
 6       Miami Center, Suite 1000
 7       201 S. Biscayne Boulevard
 8       Miami, Florida  33131
 9       (305) 373-4000
10   BY:  Manuel Garcia Linares, Esquire
11
12
13   On behalf of Third-Party Defendant Bernard Mollet
14
15   GAMBA & LOMBANA, P.A.
16       2701 Ponce de Leon Boulevard, Mezzanine
17       Coral Gables, Florida  33134
18       (305) 448-4010
19   BY:  Hector J. Lombana, Esquire
20       Geoffrey Marks, Esquire
21
22
23
24
25
```

e6dbfd6f-a7c2-4d5d-a567-7f15fac628a4

Page 58

1    Q.   Mr. Freeman, as part of your duties as the
2 court-appointed receiver of E.S. Bankest, did you
3 collect documents from E.S. Bankest?
4    A.   Yes, I did.
5    Q.   And, Mr. Freeman, did the documents you
6 collected include the subscription agreements signed by
7 the noteholders who purchased notes from E.S. Bankest?
8    A.   Yes.
9    Q.   And based on your investigation, did you
10 understand that they were the customers of Espirito
11 Santo Bank?
12       MR. SCHNAPP:  Objection.  Leading.
13       THE COURT:  Overruled.
14       THE WITNESS:  Yes.
15 BY MR. THOMAS:
16    Q.   Mr. Freeman, did you rely upon the
17 subscription documents that you collected which are
18 contained in Plaintiffs' Exhibit 110-A?
19    A.   Yes.
20    Q.   And, Mr. Freeman, have you kept those
21 documents in the normal course of your business
22 activities since the date that you received them?
23    A.   Yes, I have.
24    Q.   Mr. Freeman, I appreciate that it's a box,
25 but I'm going to have to ask you to please look through

Page 59

1 the box and just make sure that we have just
2 subscription documents in there.
3    A.   (Complies.)
4       MR. THOMAS:  Your Honor, I apologize for the
5 delay, but I think it's important to be able to clarify.
6       While he's doing that, can I ask a question
7 of your clerk?
8       THE COURT:  You may.
9       MR. THOMAS:  (Complies.)
10       Your Honor, I was just clarifying with your
11 clerk that technically even though they're all
12 subscription agreements, 110-A, B, C, D are different
13 exhibits so I'll have to show him each one.
14       THE COURT:  All right.  So he can sit down
15 now.
16 BY MR. THOMAS:
17    Q.   Mr. Freeman, having reviewed Plaintiffs
18 Exhibit marked for ID 110-A, are you comfortable that
19 these are the -- a portion of the subscription
20 agreements that you collected?
21    A.   Yes.
22       MR. THOMAS:  May I approach the witness?
23       THE COURT:  You may.
24       MR. THOMAS:  With your permission, Your
25 Honor, I'm going to ask Mr. Freeman to take a quick look

Page 60

1 at 110-B and see if it's the continuation of the
2 documents.
3       THE COURT:  You may.
4       MR. THOMAS:  With your permission, I'll
5 bring another box.
6       THE COURT:  You may.
7       MR. THOMAS:  Your Honor, with your
8 permission, I'm approaching the witness with Plaintiffs'
9 Exhibit marked for ID 110-C.
10       THE COURT:  Okay.
11 BY MR. THOMAS:
12    Q.   Mr. Freeman, are you comfortable that
13 Plaintiffs' Exhibit marked for ID 110-C is a
14 continuation of the subscription documents?
15    A.   Yes.
16       MR. THOMAS:  The last box of this exciting
17 procedure, Your Honor, is coming now.  With your
18 permission, I will approach the witness with Plaintiffs'
19 Exhibit 110-D marked for ID.
20       THE COURT:  You may.
21 BY MR. THOMAS:
22    Q.   Mr. Freeman, are you comfortable that
23 Plaintiffs' Exhibit marked for ID 110-D contains a
24 continuation of the subscription documents?
25    A.   Yes.

Page 61

1    Q.   Just a few more questions, sir.
2    A.   It's not me.  It's the microphone.
3    Q.   Plaintiffs' Exhibit marked for ID 110-A, B,
4 C, and D, are those documents that you collected
5 pursuant to your duties as the court-appointed receiver
6 of E.S. Bankest?
7    A.   Yes.
8    Q.   And Plaintiffs' Exhibits marked for ID
9 110-A, B, C, and D, have you kept those in the normal
10 course of your business activity as the receivership of
11 E.S. Bankest since the date that you collected them?
12    A.   Yes.
13    Q.   And in the course of your duties as the
14 court-appointed receiver of E.S. Bankest, did you rely
15 upon Plaintiffs' Exhibits marked for ID 110-A, B, C, and
16 D?
17    A.   Yes, I did.
18       MR. THOMAS:  At this time, Your Honor,
19 Plaintiffs move into evidence Plaintiffs' Exhibits
20 marked for ID 110-A, B, C, D.
21       MR. SCHNAPP:  At this time we will renew all
22 objections previously stated side bar as well as
23 Rule 604, 701, and Rule 403, that the prejudice
24 outweighs the probative value.
25       THE COURT:  At this time this Court is going

Page 62

1  to accept 110 A through D marked for ID as Plaintiffs'
2  Exhibit 110 A through D into evidence for the limited
3  purpose which we discussed. (Inaud.)
4  BY MR. THOMAS:
5      Q.    Mr. Freeman, I'm going to try to move on to
6  something a little more exciting.
7          Mr. Freeman, to do your duties, did you have
8  to figure out what happened to all the money that flowed
9  into E.S. Bankest?
10     A.    Yes.
11     Q.    And what happened to it?
12         MR. SCHNAPP:  Your Honor, I apologize.  I
13  didn't hear the question.
14         THE COURT:  What was the question?
15  BY MR. THOMAS:
16     Q.    I asked him what happened to it.  I can ask
17  him a more detailed question, if you'd like?
18         MR. SCHNAPP:  Your Honor, I'm going to
19  object to the question.
20         THE COURT:  There's no question.  He
21  withdrew that question.
22         MR. THOMAS:  I withdrew that question.
23         THE COURT:  Next question.
24  BY MR. THOMAS:
25     Q.    Mr. Freeman, when you took over as the

Page 63

1  receiver, you've already testified that you determined
2  that most of the accounts receivable or virtually all of
3  them were fake.  Do you remember that testimony?
4      A.    Yes.
5      Q.    And at that time E.S. Bankest owed over
6  $170 million?
7      A.    Correct.
8      Q.    But the audited financial statements showed
9  that they had $225 million to pay that debt.  Do you
10  recall that testimony?
11         MR. SCHNAPP:  Objection.
12         THE COURT:  Overruled.
13         THE WITNESS:  Approximately.
14  BY MR. THOMAS:
15     Q.    And I believe your testimony was that of the
16  approximately $225 million that were on BDO's audited
17  financial statements, only 5 million of it actually
18  existed?
19         MR. SCHNAPP:  Objection.  Leading.
20         THE COURT:  Overruled.
21  BY MR. THOMAS:
22     Q.    Do you recall that testimony?
23     A.    Yes.
24     Q.    So Mr. Freeman, what happened to the money
25  at E.S. Bankest that was supposed to be used to pay back

Page 64

1  all this debt?
2          MR. SCHNAPP:  Objection.  701, 702.  And,
3  Your Honor, may I have a side bar on this?
4          THE COURT:  No.  I'm going to sustain the
5  objection.  Rephrase your question.
6  BY MR. THOMAS:
7      Q.    Mr. Freeman, as part of your duties, did you
8  investigate what happened to the money that came into
9  E.S. Bankest that was not used to pay off the debt?
10     A.    Yes.
11     Q.    And, Mr. Freeman, what happened to it?
12         MR. SCHNAPP:  Your Honor, may I have -- my
13  objection is under 604, 701, and 702.  And I'd like to
14  address the Court with this.
15         THE COURT:  Overruled.
16         THE WITNESS:  Monies went out from E.S.
17  Bankest to the various companies to underwrite their
18  businesses.  For example, ENA, which was the Atlanta
19  technology company, when Mr. Heil -- I said, well,
20  you -- I have $35 million of accounts receivable that
21  are due from your company.  Mr. Heil said, no, that's
22  wrong.
23         MR. SCHNAPP:  Objection.  This is hearsay,
24  speculation.
25         THE COURT:  Overruled.

Page 65

1          THE WITNESS:  My investigation and
2  conversation, Mr. Heil said he did not -- he did not buy
3  $35 million worth of accounts receivable.  You invested
4  $35 million in our company.  That was a startup.  And if
5  you don't give us more money, we'll go out of business.
6  And they did.  So that's an example of 35 million.
7          Joy Manufacturing was another example.  The
8  balance sheet, the accounts receivable from the
9  certified financials showed that there was supposed to
10  be $110 million worth of good accounts receivable.  In
11  fact, there was only 5 million.  So my investigation
12  showed that -- what happened to the other 105?  The
13  money was invested in the company and the company had
14  continuing losses, 5 million, 10 million, $20 million a
15  year.  So that again, 100 million, 35 million.
16         The same thing with StrataSys, the Miami
17  company -- according to the books had $35 million.  In
18  fact, there was none.  It was another company that was
19  losing money and had been invested in.
20         And the last, you know, big one that --
21  there was StrataSec, which was a Washington, D.C. public
22  company.  Where when they called, they told me that they
23  owed me 9 or 7 million, depending on the day, depending
24  on the story.  And, in fact, I owned 43 percent of the
25  company.  And the company was out of business because

e6dbfd6f-a7c2-4d5d-a567-7f15fac628a4

Page 66

1    they were -- they had $10 million that they owed me --
2    or 7 million but they didn't have any accounts
3    receivable. So you add the 110, the 35, the 30, and 10,
4    it's about $180 million. Take away the $5 million that
5    we collected from Joy, that's 175 million worth of
6    investments into companies that were not profitable and
7    that funded our investment in their losses.
8    BY MR. THOMAS:
9        Q.   Mr. Freeman, did the Orlanskys and
10   Parlapiano, in fact, own part of Joy?
11       A.   Yes.
12           MR. SCHNAPP: Objection --
13           THE COURT: Overruled.
14   BY MR. THOMAS:
15       Q.   And, Mr. Freeman, based on your
16   investigation, did Espirito Santo own any part of Joy?
17           MR. SCHNAPP: Same objection. May I have an
18   opportunity to -- for the purposes of the record to
19   lodge my objection?
20           THE COURT: State your objection. Your
21   objection?
22           MR. SCHNAPP: Yes, I do.
23           THE COURT: Overruled.
24   BY MR. THOMAS:
25       Q.   And, Mr. Freeman, is -- were the Orlanskys

Page 67

1    and Parlapiano taking money that came in from Espirito
2    Santo and Espirito Santo's customers and investing it in
3    companies in which they owned?
4            MR. SCHNAPP: Your Honor, leading. And 604
5    and 701.
6            THE COURT: Overruled. It's yes or no.
7            THE WITNESS: Yes.
8    BY MR. THOMAS:
9        Q.   And that included Joy?
10       A.   Yes.
11       Q.   And ENA?
12           MR. SCHNAPP: Same objections, Your Honor.
13           THE COURT: Overruled.
14           MR. SCHNAPP: I'm sorry. Maybe just the
15   timing. I just want to make sure that I need to at
16   least state my objection before Mr. Freeman answers.
17           THE WITNESS: I'm sorry, Mr. Schnapp. I'll
18   be glad to slow down.
19   BY MR. THOMAS:
20       Q.   And was that also true of StrataSys?
21           MR. SCHNAPP: Same objection.
22           THE WITNESS: Yes.
23   BY MR. THOMAS:
24       Q.   And, Mr. Freeman, were these monies supposed
25   to be used to factor accounts receivable from these

Page 68

1    companies; meaning, buy accounts receivable?
2            MR. SCHNAPP: Objection. Argumentative,
3    604, and 701.
4            THE COURT: Overruled.
5            THE WITNESS: Yes.
6    BY MR. THOMAS:
7        Q.   And instead, did they simply invest the
8    money into companies that the Orlanskys and Parlapiano
9    owned?
10           MR. SCHNAPP: I object.
11           THE COURT: Sustain the objection.
12   BY MR. THOMAS:
13       Q.   And what did they do instead, Mr. Freeman?
14       A.   They invested the money in the companies
15   that were losing money or startup companies instead of
16   buying accounts receivable.
17       Q.   And who had the ownership stake in those
18   companies?
19           MR. SCHNAPP: Objection. 604, 701, and 702.
20           THE COURT: Overruled.
21           THE WITNESS: Parlapiano and the two
22   Orlansky brothers.
23   BY MR. THOMAS:
24       Q.   Mr. Freeman, now that we've discussed where
25   the money went, I'm going to show you a bunch of

Page 69

1    documents. And I'm going to try to get them moved in as
2    fast as I possibly can. Or Your Honor will decline.
3    (Inaud.)
4            MR. THOMAS: And, Your Honor, with your
5    permission, I'm going to read off the plaintiffs
6    exhibits numbers marked for ID and I'll just give them
7    to him all at once, with your permission.
8            All of these are marked for ID, Plaintiffs'
9    Exhibit Number 1361, Number 133, Number 137,
10   Number 1114, Number 473, Number 63, and Number 275. All
11   Plaintiffs' exhibits marked for ID. And with your
12   permission, Your Honor, I'll show them to Mr. Freeman.
13           THE COURT: You may.
14   BY MR. THOMAS:
15       Q.   If you can keep them in order, I'll try to
16   keep them in order, if I can.
17           Mr. Freeman, if we can please start with
18   Plaintiffs' Exhibit Number 1361.
19       A.   Okay.
20       Q.   Sir, how many pages is that?
21       A.   Three.
22       Q.   And what's the date?
23       A.   February 14th, 2002.
24       Q.   And, Mr. Freeman, Plaintiffs' Exhibit
25   Number 133, how many pages is that?

e6dbfd6f-a7c2-4d5d-a567-7f15fac628a4

Page 70

1    A.   One.
2    Q.   And what's the date?
3    A.   2-27-2002.
4    Q.   Mr. Freeman, looking at Plaintiffs' Exhibit
5  Number 1361 and Number 133 marked for ID, Mr. Freeman,
6  as part of your duties as the court-appointed receiver,
7  did you collect Plaintiffs' Exhibits Number 1361 and 133
8  marked for ID at E.S. Bankest?
9    A.   Yes, I did.
10   Q.   And, Mr. Freeman, did you rely upon
11 Plaintiffs' Exhibits 1361 and 133 marked for ID?
12   A.   Yes, I did.
13   Q.   And, Mr. Freeman, did you keep them in the
14 normal course of your business activities in the
15 receivership of E.S. Bankest until such time as you
16 testified here today?
17   A.   Yes, I have.
18       MR. THOMAS:  At this time, Your Honor,
19 Plaintiffs move into evidence Plaintiffs' Exhibits
20 marked for ID 1361 and 133.
21       MR. SCHNAPP:  Your Honor, I object.  There's
22 no foundation.  It's hearsay.  No evidence under 133
23 that it was ever received.
24       Your Honor, may I borrow your document,
25 please?

Page 71

1        THE COURT:  Sure.  (Complies.)
2        MR. SCHNAPP:  Your Honor, with respect --
3  let me more specifically say, with respect to 1361,
4  there's no foundation.  It's hearsay.  And there's no
5  evidence that it was -- there's no foundation laid for
6  this document under the hearsay rule.
7        With respect to Number 133, it's the same
8  objections, Your Honor.  And there's no evidence that
9  this document was ever received by BDO Seidman.  It was
10 written by --
11       MR. THOMAS:  Objection, Your Honor.  That
12 doesn't go --
13       MR. SCHNAPP:  There's no foundation for
14 this -- may I approach the bench?
15       THE COURT:  No.  Make your objections for
16 the record.
17       MR. SCHNAPP:  My objections are it's
18 hearsay, no foundation.
19       THE COURT:  Overruled.  At this time
20 Plaintiffs' Exhibit 1361 for ID and 133 for ID are now
21 Plaintiffs' Exhibit 1361 in evidence and 133 in
22 evidence.
23       MR. THOMAS:  Your Honor, for a head's up,
24 I'm now going to do together -- actually, we'll do all
25 these together.  I can do the remaining ones together,

Page 72

1  Your Honor.
2  BY MR. THOMAS:
3    Q.   Mr. Freeman, Plaintiffs' Exhibits marked for
4  ID Numbers 137, 1114, 473, 63, and 275, pursuant to your
5  duties as the court-appointed receiver, did you collect
6  these documents?
7    A.   Yes.
8    Q.   And, Mr. Freeman, pursuant to your duties as
9  the court-appointed receiver of E.S. Bankest, did you
10 rely upon these documents?
11   A.   Yes, I did.
12   Q.   And, Mr. Freeman, pursuant to your duties as
13 the court-appointed receiver of E.S. Bankest, did you
14 keep these documents in the normal course of your
15 business activity in the receivership of E.S. Bankest
16 until such time as you testified here today?
17   A.   Yes, I have.
18       MR. THOMAS:  Your Honor, at this time
19 Plaintiffs move into evidence Plaintiffs' Exhibit marked
20 for ID 137, 1114, 473, 63, and 275.
21       MR. SCHNAPP:  Your Honor, may I see the
22 documents?  I'm having trouble with the computer.
23       THE COURT:  Sure.
24       MR. SCHNAPP:  Or actually, I should say my
25 eyes.  Thank you.

Page 73

1        Your Honor, with respect to Exhibit
2  Number 137, it's hearsay and it's not relevant under
3  401.  It's outside the time frame that's relevant in the
4  complaint.
5        With respect to 1114, again we would state
6  that it's hearsay.  There's no foundation that's been
7  laid for this document.  And 604.
8        With respect to Exhibit 473, it's hearsay
9  and, again, it's not relevant, Your Honor.  And we would
10 suggest that this document purports to be sent
11 internally within the -- E.S. Bankest.  It's outside the
12 scope of the time frame that's relevant.  It's dated
13 April 21, 2003.
14       And with respect to 63, purports to be
15 related to -- is not relevant to this case under
16 Rule 401.  And that would be for -- my last objection
17 was to Exhibit 63.
18       And finally, with respect to Plaintiffs'
19 Exhibit Number 275 for identification, same objection.
20 It relates to BRFFC which is not a subject of the
21 complaint, so it's not relevant.
22       THE COURT:  Thank you.  At this time I'm
23 going to overrule the objection.  I'm going to accept
24 Plaintiffs' Exhibits 1347 for ID, 1114 for ID, 473 for
25 ID, 63 for ID, and 275 for ID.  And I'm going to accept

Page 74

1  as Plaintiffs' Exhibit 1347 into evidence, 1114 into
2  evidence, 473 in evidence, 63 into evidence, and 275
3  into evidence over defense objections.
4      MR. SCHNAPP:  Your Honor, just for
5  convenience, if counsel has extra copies of these
6  documents it's sort of difficult to pull them up on the
7  computer.
8      THE COURT:  Do you have copies for him also?
9      MR. THOMAS:  Yes, we do, Your Honor.
10     MR. SCHNAPP:  May we have a copy of what's
11 been offered?
12     THE COURT:  Do you have a copy of what was
13 just introduced?
14     MR. THOMAS:  Yes, we do.  And we'll provide
15 them right now.
16     MR. THOMAS:  Thank you, Mr. Freeman.
17 May I proceed, Your Honor?
18     THE COURT:  You may.
19     THE WITNESS:  I thought we were done.
20 BY MR. THOMAS:
21     Q.  We're getting closer.  Now, Mr. Freeman, as
22 part of your duties as the court-appointed receiver of
23 E.S. Bankest, did you have to try to reach an
24 understanding of how Parlapiano and the Orlanskys
25 carried out this fraud?

Page 75

1      A.  Yes.
2      Q.  And in reaching an understanding of how
3  the -- Parlapiano and the Orlanskys carried out this
4  fraud, did you determine or did you reach a
5  determination of what documents that they provided to --
6  well, let me try that again, if you don't mind.
7          In carrying out your duties to figure out
8  how this fraud happened, did you reach a determination
9  of what documents they faked and what documents they
10 didn't?
11     A.  Yes.
12     Q.  And, Mr. Freeman, in trying to carry out
13 this fraud, the Orlanskys -- did you ever find, ever,
14 that the Orlanskys and Parlapiano faked customer checks
15 as opposed to client checks or Bankest Capital checks?
16     A.  Let's try it again.
17     Q.  Let me help you get --
18     A.  Maybe break it into piece.
19     Q.  I know.  It's been a long time and we've
20 been admitting documents.
21         Mr. Freeman, in our example, who was the
22 customer when we used Joy?  Would it help if I put that
23 chart back up?
24     A.  It may.
25     MR. THOMAS:  Your Honor, with your

Page 76

1  permission.
2      THE COURT:  You may.
3      MR. THOMAS:  We're going to put it up on the
4  high-tech screen.
5      (Technician complies.)
6  BY MR. THOMAS:
7      Q.  Now, Mr. Freeman --
8      A.  Looks better than when I did it.
9      (Laughter.)
10 BY MR. THOMAS:
11     Q.  Mr. Freeman, in this example we used for how
12 factoring works.  I think you put up stickies on a
13 board.  Do you understand what this example shows?
14     A.  Sure.
15     Q.  And in this example, who is the customer?
16     A.  Joy --
17     Q.  You want to do it your way?
18     A.  Joy Manufacturing was the company that was
19 being factored.  Their customer was Wal-Mart who owed
20 them the money.
21     Q.  And the customer being Wal-Mart, who was the
22 client of Bankest Capital?
23     A.  Joy Manufacturing.
24     Q.  And Bankest Capital in this relationship,
25 were they called a refactor?

Page 77

1      A.  Yes.
2      Q.  And why was Bankest Capital called a
3  refactor?
4      A.  Because the original factoring was with
5  Bankest.  And Bankest Capital bought the receivable or
6  vice versa -- I'm sorry.  Let's go back a minute.
7      Q.  I know because you had the board down here
8  and I put it up here.
9      A.  When you put it up here, we've lost our
10 board is what's happened.
11     Q.  I apologize, Mr. Freeman.  I'm going to use
12 this little pointer for a minute.  You can use it if
13 you'd like.  And let me ask you the questions to set it
14 up, if I could.
15     A.  Okay.
16     Q.  Bankest was the factor; is that right?
17     A.  Yes.
18     Q.  And Bankest through the majority of the time
19 was owned half by Bankest Capital and half by Espirito
20 Santo Bank; is that right?
21     A.  Correct.
22     Q.  And in our example that we did earlier when
23 you were first testifying -- I realize that was a number
24 of days ago now -- you started I believe at the end at
25 Wal-Mart?

e6dbfd6f-a7c2-4d5d-a567-7f15fac628a4