# EXHIBIT L

Case 06-01220-AJC    Doc 213-12    Filed 06/19/08    Page 1 of 19

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | CHAPTER 11 |
| E.S. Bankest, L.C., | Case No. 04-17602-BKC-AJC |
| Debtor. _____/ | |
| LEWIS B. FREEMAN, as Liquidating Trustee for the E.S. BANKEST, L.C. Liquidating Trust, | |
| Plaintiff, | Adv. Pro. No. _____ |
| v. | |
| McGLADREY & PULLEN, LLP and RSM McGLADREY, INC., | |
| Defendant. _____/ | |

### ADVERSARY COMPLAINT FOR DAMAGES

Lewis B. Freeman ("Freeman"), in his capacity as Liquidating Trustee of the E.S. Bankest, L.C. Liquidating Trust, hereby sues defendants McGladrey & Pullen, LLP and RSM McGladrey, Inc. (together, "McGladrey"), and states, on knowledge as to himself and his actions and on information and belief as to all other matters, as follows:

## **INTRODUCTION**

1. As an auditor of a public company, McGladrey was required to remain independent from its audit client and to report faithfully and fulsomely to the investing public the results of its audit work. McGladrey's independence was compromised when its audit client, Stratesec Incorporated ("Stratesec"), threatened to sue McGladrey if it did not agree to use an improper "pooling of interest" accounting treatment of Stratesec's financial statement. A client's threat of litigation is extremely rare — McGladrey's audit partner, Ray Green, had not been threatened by a client in 30 years of auditing — and typically compels the auditor to resign.

2. McGladrey's duty did not stop there, however. The duty of an auditor of a public company hired to issue an opinion on that company's financial statement extends beyond its client to members of the public who review the audit client's Securities and Exchange Commission ("SEC") filings and make investment decisions based upon the independent findings of the auditor. Moreover, as in this case, investors make decisions based on an auditor's dismissal or disagreement with an audit client's incorrect presentations of its financial statement.

3. Accordingly, when McGladrey resigned from its engagement as auditor of Stratesec because of its compromised independence, it was required by SEC rules to disclose fully the circumstances of the resignation and the source of its disagreement with the client. Moreover, because McGladrey's timely completion of its work was threatened, professional and ethical accounting standards required it to issue a public disclaimer of opinion in which it announced to investors that it could not reach an opinion regarding Stratesec's financial statements.

4. McGladrey failed to fulfill these obligations. It never completed its audit of Stratesec and issued no opinion on Stratesec's financial statement. Instead, at Stratesec's

behest, McGladrey resigned quietly, not only failing to disclose the reasons for its resignation — that Stratesec sought a more advantageous "pooling of interest" treatment of its acquisition of Security Systems Integration ("SSI") — but instead purposely concealing the fact that its client had threatened to sue McGladrey in an attempt to force it to adopt the impermissible "pooling of interests" treatment.

5.  Specifically, in connection with Stratesec's required filing of a form 8-K with the Securities and Exchange Commission ("SEC") to note a change in its auditor, and to mask the significance of that change, McGladrey claimed in a public document and by separate letter that it had no disagreement with Stratesec regarding its financial statements. Moreover, despite having billed more than 80 hours (most of which was partner time) to evaluating the pooling issue and notwithstanding its extensive, well-documented misgivings concerning the proposed "pooling of interest" treatment, McGladrey falsely stated that it had not reached a conclusion regarding the "pooling of interest" treatment of Stratesec's acquisition of SSI. In so doing, McGladrey intentionally misrepresented material facts (and omitted material facts) that it knew would be relied on by investors.

6.  Why McGladrey cowed to Stratesec is no mystery. In the pre-Enron era, aggressive and litigious clients expected auditors to rubber stamp presentations of financial statements that favored the bottom line — even when those presentations violated basic accounting principles — and to keep quiet if they disagreed. Consistent with the breezy accounting practice of the era, and in lieu of embracing its professional responsibility to its client and to the public shareholders to make plain the reasons for its disagreement and resignation, McGladrey took Stratesec's threat of litigation to heart and kept its mouth shut. In so doing, it turned its back on its obligations to Stratesec's investors.

7. E.S. Bankest, L.C. ("Bankest") was one such investor. In reliance on McGladrey's misstatement — and its complicity in Stratesec's attempt to mask the failing of its business — Bankest invested in 400,000 warrants to purchase Stratesec securities, options it acquired in exchange for cancellation of debt exceeding $2 million. Bankest also poured millions of additional dollars in loans and factoring advances into Stratesec, and purchased an additional 7,000,000 shares of Stratesec common stock, without any awareness that the company's auditors disputed an improper accounting treatment that materially affected Stratesec's bottom line. These investments ultimately returned zero and, because Bankest was not aware of problems with Stratesec's finances or financial statement presentation, resulted in a complete loss to Bankest. By this action, Plaintiff Freeman seeks to hold McGladrey accountable for its misstatements and to recover for Bankest's loss.

## JURISDICTION, PARTIES AND VENUE

8. Plaintiff Freeman is the Liquidating Trustee for the E.S. Bankest, L.C. Liquidating Trust. E.S. Bankest L.C. (*i.e.*, "Bankest"), a Florida limited liability corporation with its principal place of business in Miami-Dade County, Florida, filed a voluntary Chapter 11 petition in this Court on August 9, 2004.

9. On information and belief, Defendant McGladrey & Pullen, LLP is a professional accounting firm organized as a limited liability partnership under the laws of the State of Minnesota with its corporate headquarters in Bloomington, Minnesota. It is registered with the Florida Department of State as a limited liability partnership with partners living and doing business in Florida. McGladrey provides assurance, tax, financial advisory, and consulting services out of offices including an office in Miami, Florida. As used here, the term

"McGladrey" refers to and includes both McGladrey & Pullen, LLP and RSM McGladrey, Inc., as well as any predecessor entities including Keller Bruner & Company, LLP.

10. On information and belief, Defendant RSM McGladrey, Inc. is a business services firm organized under the laws of the State of Delaware with its corporate headquarters in Bloomington, Minnesota. It is an indirect, wholly owned subsidiary of H&R Block and provides accounting and attest services through its association with McGladrey & Pullen, LLP, including out of an office in Miami, Florida. As used here, the term "McGladrey" refers to and includes both RSM McGladrey, Inc. and McGladrey & Pullen, LLP, as well as any predecessor entities including Keller Bruner & Company, LLP.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Adversary Proceeding is brought pursuant to Rule 7001(1), Federal Rules of Bankruptcy Procedure. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue for this adversary proceeding is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## FACTS

**I.   Stratesec Acquires SSI**

12. Stratesec began operations in 1987. It provided security services for commercial and governmental facilities including Dulles Airport and the World Trade Center, including provision and monitoring of access control, intrusion detection, closed circuit television, and fire detection systems. After going public in September 1997, its common stock was traded on the American Stock Exchange under the symbol "SFT."

13. SSI was another security systems company that provided security-related design, engineering, installation, maintenance and monitoring services, primarily to the federal government.

14. On November 30, 2000, Stratesec merged with SSI through an exchange of stock. To effect the combination, SSI merged into a newly-formed subsidiary of Stratesec in exchange for 1.65 million newly-issued shares and 350,000 treasury shares of Stratesec's common stock. SSI thus became a wholly-owned subsidiary of Stratesec.

## II. Stratesec Asks McGladrey To Approve Treatment of Its Acquisition of SSI As A "Pooling of Interests," But McGladrey Declines

15. On December 4, 2000, Stratesec issued a press release announcing its acquisition of SSI in a transaction that management believed would be accounted for as a "pooling of interests," subject to final determination by its auditors.

16. As a result of Stratesec's acquisition of SSI, its auditor was required to decide among two accounting treatments for the acquisition with regard to Stratesec's financial statements: (1) a "pooling of interests" treatment in which merging companies' financial statements are essentially combined line-by-line as if the entities had been merged for the entire year, masking their individual performance, or (2) a "purchase" treatment, which records a business combination based on the values exchanged, recording its costs, assumed liabilities and assets accordingly.

17. McGladrey (including its predecessor, Keller, Bruner & Company, LLP) had been Stratesec's auditor since 1999, and was engaged to audit Stratesec's financial statements as of December 31, 2000. *See* Exhibit A. Accordingly, Stratesec asked McGladrey to evaluate the transaction in connection with the Company's filing on Form 8-K/A that was due by February 13, 2001 and, specifically, to determine whether the SSI acquisition fulfilled the conditions required for "pooling of interests" accounting consistent with generally accepted auditing standards ("GAAS").

18. McGladrey spent more than 80 hours (most of which was at the partners level) between December 1, 2000 and February 13, 2001 evaluating whether Stratesec's acquisition of SSI was properly treated, for financial statement purposes, as a "pooling of interest." Upon review of SSI's prior year audited financial statements, unaudited interim financial statements, and materials provided by SSI and its prior independent auditors, McGladrey determined that "pooling of interests" treatment of the acquisition would not be appropriate. Because SSI had paid dividends to its sole shareholder that exceeded its net income, Stratasec's acquisition of SSI did not satisfy the conditions required for that accounting treatment.

### III. Stratesec Threatens To Sue McGladrey and McGladrey Resigns

19. Stratesec was not happy. In a last ditch effort to get the accounting treatment it sought, Stratesec held a telephone call with its auditor on February 13, 2001, purportedly to discuss the accounting treatment of its acquisition.

20. During the call, Wirt Walker III, Stratesec's Chairman of the Board, threatened litigation against McGladrey for its refusal to acquiesce in Stratesec's request and its failure to approve the "pooling of interest" treatment in time for Stratesec's February 13, 2001 filing. The Chairman's threat was reiterated in a second telephone call later that day and, notwithstanding McGladrey's advice, Stratesec filed its Form 8-K/A including pro-forma combined financial statements that effectively reported the SSI transaction as a pooling of interests.

21. When Mr. Walker refused to disavow his threat, McGladrey concluded that its independence and objectivity were impaired. On February 14, 2001, McGladrey informed Mr. Walker and Stratesec's independent legal counsel that McGladrey believed its

independence and objectivity had been impaired based on the Chairman's February 13, 2001 statements. Accordingly, McGladrey believed it was no longer independent and that it was necessary for it to resign as Stratesec's independent accountants.

22. Because the resignation of an auditor is material and a red flag for investors, Stratesec attempted to salvage the relationship. Mr. Walker requested that McGladrey consider further its decision to resign, including the events leading up to February 13, 2001. Then, later on February 14, 2001, Mr. Walker faxed an unsolicited letter to McGladrey by which he apparently intended to clarify the threats made on February 13, 2001.

23. On February 15, 2001, after further reflection, McGladrey called Stratesec and its independent legal counsel to affirm its decision to resign. Immediately upon announcing McGladrey's resignation, Mr. Walker stated that such resignation was not necessary because McGladrey was being fired as Stratesec's independent accountants.

IV.    **McGladrey's Resignation Prompts SEC and Professional Reporting Duties**

24. An auditor of a public company does not resign in a vacuum. Pursuant to S.E.C. Rules codified at 17 C.F.R. § 229.304(a)(1)(iv), a registrant must:

> State whether during the registrant's two most recent fiscal years and any subsequent interim period preceding such resignation, declination or dismissal there were *any disagreements with the former accountant on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure, which disagreement(s), if not resolved to the satisfaction of the former accountant, would have caused it to make reference to the subject matter of the disagreement(s) in connection with its report.* Also, (A) describe each such disagreement; (B) state whether any audit or similar committee of the board of directors, or the board of directors, discussed the subject matter of each of such disagreements with the former accountant; and (C) state whether the registrant has authorized the former accountant to respond fully to the inquiries of the successor accountant concerning the subject matter of each of such disagreements and, if not, describe the nature of any limitation

> thereon and the reason therefore. The disagreements required to be reported in response to this Item include both those resolved to the former accountant's satisfaction and those not resolved to the former accountant's satisfaction. Disagreements contemplated by this Item are those that occur at the decision-making level, i.e., between personnel of the registrant responsible for presentation of its financial statements and personnel of the accounting firm responsible for rendering its report (emphasis added).

25. The former accountant has disclosure responsibilities as well. 17 C.F.R. § 229.304(a)(3) further provides that upon resignation of an accountant:

> The registrant shall request the former accountant to furnish the registrant with a letter addressed to the Commission stating whether it agrees with the statements made by the registrant in response to this Item 304(a) and, if not, stating the respects in which it does not agree. The registrant shall file the former accountant's letter as an exhibit to the report on registration statement containing this disclosure.

26. In assessing its agreement or disagreement with the statements of the registrant, "[i]f any such accountant believes that the statements made in response to paragraph (a) of this section are incorrect or incomplete, it may present its views in a brief statement, ordinarily expected not to exceed 200 words, to be included in the annual report or proxy or information statement. This statement shall be submitted to the registrant within ten business days of the date the accountant receives the registrant's disclosure." 17 C.F.R. § 229.304, Instruction No. 2. These provisions create an obligation to disclose the reasons for resignation and whether any disagreement exists:

> The term "disagreements" as used in this Item **shall be interpreted broadly**, to include any difference of opinion concerning any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure which (if not resolved to the satisfaction of the former accountant) would have caused it to make reference to the subject matter of the disagreement in connection with its report. It is not necessary for there to have been an argument to have had a disagreement, merely a difference of opinion. For purposes of this Item, however, the term disagreements does not include initial differences of opinion

9

> based on incomplete facts or preliminary information that were later resolved to the former accountant's satisfaction by, and providing the registrant and the accountant do not continue to have a difference of opinion upon, obtaining additional relevant facts or information.

17 C.F.R. § 229.304, Instruction No. 4 (emphasis added).

27.     Stratesec's threats prompted responsibilities under professional accounting standards as well. According to American Instituted of Certified Public Accountants ("AICPA") Ethics Rule 101-6, an auditor threatened with litigation to the extent its independence is impaired is required to disengage or disclaim the opinion.

28.     McGladrey chose to disengage as Stratasec's auditor. However, as described above, it did not comply with SEC rules requiring a fulsome disclosure of the disagreement with Stratasec regarding the pooling issue and the cause of its loss of independence and subsequent resignation. In addition, even if McGladrey claims that it had not reached a conclusion on pooling, when Mr. Walker threatened litigation for failure to conclude that a pooling of interests treatment was permitted, the timing of McGladrey's work was restricted, creating a limitation on the scope of McGladrey's work.

29.     Pursuant to AICPA Professional Standards, AU Sec. 508.22, "[r]estrictions on the scope of [an] audit, whether imposed by the client or by circumstances, such as the timing of his or her work . . . may require the auditor to qualify his or her opinion or to disclaim an opinion." Further, AU Sec. 508.24 provides, "[w]hen restrictions that significantly limit the scope of the audit are imposed by the client, ordinarily the auditor should disclaim an opinion." Thus, regardless of whether or not McGladrey came to a conclusion regarding the pooling issue or even whether there was a disagreement between auditor and client, McGladrey was required by professional auditing standards to issue a disclaimer of opinion in

which the auditor states publicly that it does not express an opinion on the financial statements and provides the substantive reasons for the disclaimer.

## V.     McGladrey and Stratesec Claim No Disagreement Among Auditor and Client

30.     On February 15, 2001, Stratesec filed a form 8-K to identify "Changes in Registrant's Certifying Accountant." The 8-K was filed in accordance with a public company's obligation to note changes in its auditors.

31.     In the form 8-K, Stratesec noted that McGladrey was no longer its independent auditor. Stratesec acknowledged that McGladrey had resigned because its independence and objectivity had been impaired, but claimed that there were

> **no disagreements with [the auditor] on any matter of accounting principles or practices, financial statement disclosure, audit scope or procedure . . . McGladrey & Pullen, LLP had not formed a conclusion about whether the Company's accounting for the acquisition of SSI meets the conditions for pooling-of-interests method of accounting.**

32.     This information was untrue. McGladrey resigned because it not only disagreed with Stratesec's proposed treatment of its acquisition of SSI as a pooling of interest, but was threatened with litigation over it.

33.     However, McGladrey did not inform investors of the truth. Instead, McGladrey endorsed the false Statement. To avoid the specter of litigation that Stratesec had raised with it, McGladrey submitted to the Securities and Exchange Commission a February 26, 2001 letter confirming that it had "read and agreed with the statements of [Stratesec] included in Item 4 of the Company's 8-K."

34.     McGladrey's confirming letter was designed to be relied on by the investing public. When an auditor resigns, it is required to state its agreement or disagreement with its audit client's statement of reasons for resignation so that investors may evaluate for

11

themselves the reliability of the audit client's financial statements. Despite its plain obligation to make a fulsome disclosure and state its disagreement with Stratesec, McGladrey was bullied into submitting a flatly incorrect and incomplete material statement to the SEC.

35. Moreover, McGladrey failed to make the "noisy withdrawal" that the AICPA and GAAS require. Rather than issuing a disclaimer of opinion that acknowledged the scope violation that occurred during its audit of Stratesec, it made affirmative false statements to further its own interests above those of the investing public.

## VI. McGladrey's Misstatements Mislead Investors

36. McGladrey's misstatements and omissions had consequences for a Stratesec investor: E.S. Bankest, L.C. ("Bankest").

37. Bankest financed Stratesec's business. Bankest was a "factor," meaning that it purchased accounts receivable from companies like Stratesec, earning money through factoring fees, interest and the spread between the receivables' face amount and the discounted price paid for them. Thus, Bankest advanced funding to Stratesec in exchange for forthcoming payments from Stratesec's customers.

38. Stratesec fell behind in its payments to Bankest, having failed to remit to Bankest monies paid to it to by its customers. As of June 7, 2001, Stratesec owed Bankest some $4.3 million. Because Stratesec had refused to remit funds per its contract with Bankest and in violation of Florida civil theft laws, Bankest made demand for treble damages in the amount of $3,762,000.

39. In response, Stratesec proposed a securities sale. Specifically, Stratesec proposed to issue Bankest a warrant for 200,000 shares of Stratesec at $1.50 per share, with an

expiration date of December 31, 2001. Stratesec estimated the value of the shares to be potentially in excess of $1,000,000.

40.     Following a review of investment materials including McGladrey's public filings and financial statements, Bankest elected to purchase the warrants. By Option Agreement dated July 23, 2001, Bankest purchased options on 200,000 shares of Stratesec's common stock at $1.00 per share. Bankest also purchased a second run of 200,000 shares of Stratesec stock at a strike price of $.70 per share on September 25, 2001.

41.     Moreover, and as McGladrey was aware, Bankest continued to pour money into Stratesec in exchange for receivables as well in the form of equity investment. Over the next two and a half years, Bankest would advance Stratesec more than $17 million in exchange for receivables that were not fully collected. In 2003, it purchased 7,000,000 million shares of Stratesec common stock in exchange for cancellation of $1,750,000 owed by Stratesec to Bankest.

42.     Bankest's investments in Stratesec, whether through debt or equity, were worthless. By the time Plaintiff assumed control of Bankest and examined its account with Stratesec, Stratesec had gone out of business owing Bankest more than $9 million and its stock was worth less than $.01 per share.

## COUNT I

**(Violation of Federal Securities Law, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, Rule 10b-5)**

43.     Freeman incorporates by reference the allegations of paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44.     15 U.S.C. § 78j ("Section 10(b)") provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

45. 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), interpreting section 10(b), in turn provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

46. As alleged herein, in connection with Stratesec's Form 8-K, McGladrey knowingly or recklessly made a false statement or omission of a material fact, misrepresenting or omitting its disagreement with Stratesec over the "pooling of interests" treatment of its acquisition of SSI, its conclusions regarding that treatment, and if its evaluation caused the McGladrey to question its conclusions with respect to any of the financial statements or auditor reports it rendered in the past and the circumstances surrounding its resignation.

47. Bankest justifiably relied on McGladrey's false statement or omission of material fact in connection with the purchase or sale of securities which proximately caused injury to Bankest, in an amount to be proven at trial.

## COUNT II

### (Violation of Federal Securities Law, 15 U.S.C. § 78r(a))

48. Freeman incorporates by reference the allegations of paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. As alleged herein, McGladrey has made or caused to be made a statement which is false or misleading with respect to a material fact in connection with Stratesec's 8-K, namely the circumstances surrounding its resignation as auditor of Stratesec.

50. Bankest relied on the false statement and this reliance caused loss to Bankest. In reliance on McGladrey's false statements, Bankest purchased securities at a price which was affected by the false statement and thereby incurred damages in an amount to be proved at trial.

## COUNT III

### (Professional Negligence, *i.e.* Malpractice)

51. Freeman incorporates by reference the allegations of paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52. McGladrey, as a professional independent auditor performing accounting services for Stratesec, had a duty to possess the degree of learning and skill of a professional accountant practicing in the same locality and under similar circumstances, to use the care and skill as would be used by reputable professional accountants under similar circumstances, and to use reasonable diligence and best judgment in accomplishing the purpose for which it was employed, including to properly assess its independence and, where compromised, to respond professionally and consistent with SEC and professional rules.

53. McGladrey's duties extended beyond its audit client. Auditors of public companies owe a public duty and are therefore supposed to be wholly independent from and free

of any conflict of interest with their audit clients. Specifically, the auditor's duty runs to the investing public who an auditor is specifically aware will be relying on its work and making investment decisions based upon the independent findings of the auditor, as well as based on an auditor's dismissal or disagreement with an audit client's incorrect presentations of its financial statement.

54. Here, McGladrey had a duty to Bankest since it knew that its audit work would reach and influence Bankest in making its decisions to invest or not invest in Stratesec. Because Bankest was Stratesec's principal lender and required copies of Stratesec's audited financials on an annual basis, McGladrey knew that Stratesec intended that McGladrey's audit work would reach and influence Bankest and that Stratesec would use the audited work in solicitation of loans and other investment by Bankest.

55. McGladrey breached its duties. In connection with Stratesec's required filing of a form 8-K with the Securities and Exchange Commission ("SEC") to note a change in its auditor, McGladrey insisted by separate letter that it had no disagreement with Stratesec it had reached no conclusion regarding the "pooling of interest" treatment of Stratesec's acquisition of SSI. In so doing, McGladrey negligently misrepresented material facts (and omitted material facts) that it knew would be relied on by investors.

56. McGladrey's statements were relied on by Bankest since its incorrect representations of compliance with GAAP and GAAS misled Plaintiffs into believing Bankest was the financially healthy and creditworthy company depicted in the financial statements. Perceiving no problem in the accounting methodology at Stratesec or other failure in its business, Bankest continued to lend money to Stratesec and purchase Stratesec securities. Had McGladrey's dismissal and/or withdrawal been brought to Bankest's attention, it would not have

continued this investment and would have discovered the truth: that Stratesec was a failing business without reasonable hope of recovery.

57. As a direct and proximate result of McGladrey's professional negligence, Stratesec's lenders suffered losses of not less than $5 million.

## COUNT IV
### (Fraudulent Misrepresentation)

58. Freeman incorporates by reference the allegations of paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59. As alleged herein, McGladrey made knowing misstatements regarding the fact of its disagreement with Stratesec over the "pooling of interests" treatment of its acquisition of SSI, its conclusions regarding that treatment, and if its evaluation caused the McGladrey to question its conclusions with respect to any of the financial statements or auditor reports it rendered in the past and the circumstances surrounding its resignation.

60. McGladrey made these misstatements knowingly, recklessly, purposefully and with the intent and knowledge that they would be relied on by investors of Stratesec.

61. Bankest relied on McGladrey's misstatements both in investing in Stratesec stock and in continuing to advance money to Stratesec. As a proximate consequence of McGladrey's misstatements, Bankest was damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Freeman prays that judgment be entered in its favor and against the Defendant as follows:

A. actual compensatory and consequential damages in an amount to be proven at trial;

B. such civil penalties as allowed by law;

C. punitive damages as allowed by law;

D. attorneys' fees and costs of this suit as allowed by law;

E. pre-judgment and post-judgment interest as allowed by law; and

F. such other and further legal and equitable relief as the Court deems just and proper.

Dated: April 13, 2006.    Respectfully submitted,

                          WARREN R. TRAZENFELD, P.A.
                          3225 Aviation Avenue, Suite 600
                          Miami, Florida 33133-4741
                          (305) 860-1100
                          (305) 858-6123 Fax
                          Counsel for Lewis B. Freeman

                          By _____
                                Warren R. Trazenfeld