# EXHIBIT U

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

03 - 20951 CR-JORDAN

MAGISTRATE JUDGE
~ BROWN

CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 1007
18 U.S.C. § 1343
18 U.S.C. § 1344
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

v.

EDUARDO ORLANSKY,
HECTOR ORLANSKY,
R. PETER STANHAM,
DOMINICK PARLAPIANO,
CARLOS E. MENDEZ,
ARIADNA PUERTO,
OTTO AMBROSIANI,
JEFFREY BARNHILL, and
HOWARD CANTOR,

    Defendants.
_____/

EXHIBIT
Parlapiano
1 for ID
9 6-29-05

INDICTMENT

The Grand Jury charges that.

GENERAL ALLEGATIONS

At various times relevant to this Indictment:

1    Espirito Santo Bank of Florida (" Espirito Santo Bank") was a Florida Chartered Commercial Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC")  Espirito Santo Bank's books and records were periodically examined by federal regulators and audited by independent accounting firms to help ensure the financial soundness of the

institution.  Espirito Santo Bank's banking operations included recommending and facilitating investment opportunities for its banking clients.

2.    Bankest Capital Corporation ("BCC") was a Florida corporation located in Miami-Dade County, Florida, engaged in the business of factoring.  Bankest Receivable Finance and Factoring Corp. ("BRFFC") was a wholly owned subsidiary of BCC and also a Florida corporation engaged in the business of factoring.

3.    E.S. Bankest, LLC ("Bankest") formerly known as E S. Bankest Corp , was a joint venture of BCC and Espirito Santo Bank formed in March, 1998  Bankest was a Florida corporation engaged in the business of factoring  Espirito Santo Bank owned 50% of Bankest, and BCC owned 50% of Bankest until September, 2002.  On or about September 18, 2002, BCC purchased Espirito Santo Bank's 50% interest in Bankest.

<u>Defendants</u>

4.    Defendant **EDUARDO ORLANSKY** was Chairman of the Board of Directors of Bankest.  He was also an owner of Bankest International, S.A. (Nassau), a Bahamian corporation, a Director of Bankest International, S A. (Nassau)'s wholly-owned subsidiary Bankest International, Inc , a Florida corporation, a Director of Bankest International, Inc.'s wholly-owned subsidiary BCC, and a Director of BCC's wholly-owned subsidiary BRFFC  **EDUARDO ORLANSKY** owned and controlled BCC and exercised controlling authority over Bankest.

5.    Defendant **HECTOR ORLANSKY** was President and Chief Executive Officer of Bankest and **EDUARDO ORLANSKY**'s brother.  He was also an owner of Bankest International, S A (Nassau), and a Director of Bankest International, Inc , BCC, and BRFFC.  Beginning in or around 1985, **HECTOR ORLANSKY** served on the Board of Directors of Espirito Santo Bank.

Page 2 of 50

**HECTOR ORLANSKY** owned and controlled BCC and exercised controlling authority over Bankest.

6.    Defendant **R. PETER STANHAM** was a Manager of Bankest and a Director of BCC and BRFFC.  At various times, **R. PETER STANHAM** exercised control over the day-to-day operations of Bankest.

7.    Defendant **DOMINICK PARLAPIANO** was a Manager of Bankest and a Director of BCC and BRFFC  At various times, **DOMINICK PARLAPIANO** exercised control over the day-to-day operations of Bankest.

8.    Defendant **CARLOS E. MENDEZ** was a Senior Vice-President of Bankest.  He managed the finance operations of Bankest, BCC, and BRFFC.

9.    Defendant **ARIADNA PUERTO** was a Vice-President of Bankest with administrative duties over certain aspects of Bankest's operations.

10    Defendant **OTTO AMBROSIANI** was responsible for managing the information technology systems of BCC and Bankest.

11    Defendant **JEFFREY BARNHILL** was an owner and Director of Joy Athletic, Inc. ("Joy"), formerly known as Joy Silk Screen, Inc., a Florida corporation engaged in the athletic clothing business.

12.    Defendant **HOWARD CANTOR** was an owner and Director of StrataSys, Corporation ("StrataSys"), a Florida corporation engaged in the computer technology and consulting business

## Business Relationships and Agreements

13.     Bankest, BCC, and BRFFC were involved in the business of factoring accounts receivable. Accounts receivable are monies which are owed to a company by a customer for products and services provided on credit. A specific sale is generally treated as an account receivable only after the customer is sent an invoice. Businesses that generate accounts receivable from invoices often want to receive money before their customers actually pay their invoices. A "factor" is a type of financing company that provides money to such businesses in exchange for accounts receivable purchased at a discount. Factoring agreements typically provide for the business to sell, assign, or otherwise transfer their accounts receivable, reflected in their invoices, to the factor at a discount in exchange for money. Factors will then seek to collect the purchased accounts receivable, earning money through factoring fees, interest, and the spread between the invoices' face value and the discounted price paid for the accounts receivable.

14.     The legal relationships between Bankest, BCC, and Espirito Santo Bank were spelled out in a series of agreements executed at or shortly after Bankest's formation:

(a) a Shareholders Agreement between Espirito Santo Bank and BCC;

(b) a Master Credit Agreement between Bankest and a lending entity related to Espirito Santo Bank; and

(c) a Master Security Agreement between Bankest and a lending entity related to Espirito Santo Bank.

The above agreements are referred to collectively as the "1998 Formation Agreements". The 1998 Formation Agreements provided that BCC and BRFFC would transfer their existing factoring business activities to Bankest.

Page 4 of 50

15.    Bankest's 1998 Formation Agreements required Bankest to submit its financial statements to an annual independent audit. The accounting firm of BDO Seidman, LLP ("BDO Seidman") audited Bankest's financial statements for fiscal years 2002, 2001, 2000, 1999, and 1998, and audited BRFFC's financial statements for fiscal years 1996 and 1995.

16.    Bankest obtained the money to operate its factoring business through Espirito Santo Bank. Espirito Santo Bank arranged for its banking clients to make short term loans to Bankest. Bankest promised to pay interest to the banking clients and to repay the loans in six, twelve, or eighteen months. The banking clients could choose to "roll-over" the loans for additional periods. These short term loans between Espirito Santo Bank's banking clients and Bankest were called "Debenture Notes."

17.    The accounts receivable that Bankest purchased through its factoring business served as the collateral for the Debenture Notes. In order to maintain adequate collateral to secure the Debenture Notes, the 1998 Formation Agreements prohibited Bankest from advancing funds to its factoring clients in amounts greater than 80% of the face value of the accounts receivable Bankest purchased from such clients. Advances over 80% of the face value of accounts receivable were referred to as "over-advances," and were prohibited under the 1998 Formation Agreements.

18.    Bankest, BCC, and BRFFC entered into factoring agreements with a number of entities, including Joy; StrataSys; Enterprise Network Applications ("ENA"), a Georgia corporation purportedly engaged in the computer software business; and CD JewelBox Company ("CD JewelBox"), a Florida corporation that purported to engage in the business of manufacturing compact disk cases. Defendants utilized the relationships with Joy, StrataSys, ENA, and CD JewelBox, among other entities, in order to perpetrate the schemes set forth in this Indictment.

Scanned Image - 1:04CR20061 Document 4 page 5 Mon Dec 06 00:10:99 2004

## COUNT 1
### (Conspiracy: 18 U.S.C. § 371)

1.    Paragraphs 1 through 18 of the General Allegations section of this Indictment are realleged and incorporated fully herein by reference.

2.    From in or around June, 1994, and continuing through in or around August, 2003, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**EDUARDO ORLANSKY,
HECTOR ORLANSKY,
R. PETER STANHAM,
DOMINICK PARLAPIANO,
CARLOS E. MENDEZ,
ARIADNA PUERTO,
OTTO AMBROSIANI,
JEFFREY BARNHILL, and
HOWARD CANTOR,**

did knowingly and willfully combine, conspire, confederate, and agree, with each other and with others, known and unknown to the Grand Jury, to commit the following offenses against the United States, that is:

(a)    to devise and implement a scheme and artifice to defraud a financial institution, that is, Espirito Santo Bank, and to obtain monies and funds owned by and under the custody and control of said financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344; and

(b)    to devise and implement a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, in violation of Title 18, United States Code, Section 1343

## OBJECTIVES OF THE CONSPIRACY

3.     The objectives of the conspiracy were that defendants would and did:

(a)  obtain money for Bankest, BCC, and BRFFC from financial institutions and others by using inflated and false accounts receivable and false financial information to receive funding;

(b)  cover-up and conceal the existence of the conspiracy from federal banking regulators, independent auditing firms, and managers of Espirito Santo Bank; and

(c)  perpetuate the appearance, through false documents and representations, that defendants were engaged in a legitimate factoring operation.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the objectives of the conspiracy included, among others, the following:

4.     The defendants would inflate the quantity and value of accounts receivable used as collateral for the Debenture Notes

5      The defendants would represent that invoices they knew to be uncollectible were actually collectible.

6.     The defendants would represent that invoices prepared prematurely for goods not yet shipped were actually valid, legitimate invoices for shipped goods

7.     The defendants would create fictitious accounts receivable records where there were no actual invoices or sales at all.

8.     The defendants would prepare materially false financial statements.

9.     The defendants would cycle money from Bankest and BCC, to factoring clients, and

then back to BCC and Bankest, with no underlying factoring transaction, in order to make it appear that the factoring clients' accounts receivable were being paid on a timely basis.

10     The defendants would change the dates on accounts receivable to make them appear more recent, and thus more likely to be collectible.

11     The defendants would seek to thwart the audit function by providing auditors with fictitious invoices

12     The defendants would seek to thwart the audit function by providing auditors with fictitious checks.

13.     Some of the defendants would represent that uninsured accounts receivable were insured

14     Some of the defendants would seek to thwart the audit function by providing auditors with fictitious insurance confirmations reflecting that accounts receivable were actually insured when, in fact, they were not insured.

15     Some of the defendants would seek to thwart the audit function by providing auditors with fictitious and forged audit inquiry confirmation letters.

16.     The defendants would obtain unqualified audit opinions on false financial statements

17.     The defendants would present the false audited financial statements to Espirito Santo Bank in order to continue obtaining funding.

18.     The defendants would present the false audited financial statements to Espirito Santo Bank to show compliance with collateral ratio requirements in loan agreements.

19.     The defendants would prepare accounts receivable aging reports with the amounts inflated

Page 8 of 50

Scanned Image: FWJCPCK9211 Document 4 page 5 filed Dec 30 00 00 00 00 2007 [illegible]

20.    The defendants would present the false accounts receivable reports to Espirito Santo Bank in order to continue obtaining funding.

21.    Some of the defendants would present the false audited financial statements and accounts receivable reports to examiners from the FDIC.

22    The defendants would present the false audited financial statements and accounts receivable reports to banks and prospective lenders in an effort to obtain funding.

23.    Defendants would obtain approximately $170,000,000 ($170 million) in loan proceeds for BCC, BRFFC, and Bankest.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objectives thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.    On or about June 8, 1994, **EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO**, and **R. PETER STANHAM** formed BRFFC.

2.    On or about June 27, 1994, **EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO**, and **R. PETER STANHAM** caused BRFFC to execute a Confidential Private Placement Memorandum, and Trust Deed governing the terms under which the Debenture Notes would be administered.

3.    On or about March 31, 1995, **CARLOS E. MENDEZ, EDUARDO ORLANSKY, HECTOR ORLANSKY**, and **DOMINICK PARLAPIANO** communicated regarding funding Joy in an amount greater than 80% of valid, legitimate accounts receivable corresponding to shipped merchandise.

Page 9 of 50

Scanned Image  1:06-CJ/243-I Document # page 9 Main Doc HI 00 00 00 2008

4.      On or about July 19, 1995, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO,** and **CARLOS E. MENDEZ** communicated regarding BRFFC's status as an "unsecured lender" to Joy, and Joy's assignment of invoices for goods that had yet to be shipped.

5.      On or about June 10, 1996, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO,** and **CARLOS E. MENDEZ** communicated regarding **DOMINICK PARLAPIANO's** use of a company named "Convergence" to engage in corporate finance activities for the mutual benefit of BCC and **DOMINICK PARLAPIANO.**

6       On or about July 31, 1996, **EDUARDO ORLANSKY** executed a Collection Factoring Agreement on behalf of BCC with ENA

7       On or about September 9, 1996, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO,** and **CARLOS E. MENDEZ** communicated regarding "BCC receiving Redeemable Preferred Stock for the amount of Joy's Loan Balance, due BCC, which is not secured by good A/R" [accounts receivable], and efforts to "minimize Joy's disclosure/audit requirements . . . along the same lines of what we have done with BRFFC and BCC."

8.      On or about January 3, 1997, **DOMINICK PARLAPIANO** incorporated CD JewelBox.

9       On or about January 6, 1997, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO,** and **CARLOS E. MENDEZ** communicated regarding using accounts receivable assigned by CD JewelBox and another company.

Scanned Image - 07542R2991J1 Document 4 page 10 time Date kl 06:09:44 2002

as well as invoices from Joy for goods not yet shipped, to justify over-advances to Joy.

10.    On or about May 29, 1997, **JEFFREY BARNHILL** executed a letter to BDO Seidman purporting to confirm that Joy had sold and transferred accounts receivable totaling $10,662,902.62 to BCC as of December 31, 1996.

11.    In or around June of 1997, **HECTOR ORLANSKY** met with the Chairman of Espirito Santo Financial Holdings, S A. ("ESFH"), regarding a joint venture between BCC and Espirito Santo Bank.

12.    On or about June 25, 1997, **HECTOR ORLANSKY** sent a letter via facsimile transmission to the Chairman of ESFH in Portugal regarding a joint venture between BCC and Espirito Santo Bank

13.    On or about August 20, 1997, **HECTOR ORLANSKY** proposed to the Chairman of ESFH that Espirito Santo Bank invest $1,000,000 in a joint venture with BCC, and that additional funding for the joint venture come from Debenture Notes sold to Espirito Santo Bank's clients.

14.    On or about December 24, 1997, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ,** and **ARIADNA PUERTO** communicated regarding shifting profits from BRFFC to BCC in a manner which would not "show any underperformance in BRFFC" in light of the pending joint-venture with Espirito Santo Bank.

15.    On or about February 27, 1998, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** executed a Pre-Incorporation Agreement between BCC and Espirito Santo Bank.

16.    On or about March 18, 1998, **EDUARDO ORLANSKY** executed the Articles of Incorporation for Bankest

Scanned Image   I:\ACR\2011\ Document 4 page 11 Man Dec 10 19 09 30 2003

17.    On or about April 7, 1998, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** executed a Shareholders Agreement between Espirito Santo Bank and BCC regarding the formation, capitalization, and governance of Bankest.

18.    On or about April 7, 1998, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** attended the organizational meeting of the Directors of Bankest, and were appointed Chairman, President, Secretary, and Senior Vice-President, respectively, of Bankest.

19.    On or about April 8, 1998, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused a $750,000 equity contribution from Espirito Santo Bank to be deposited into Bankest's account.

20    On or about April 14, 1998, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused the deposit of $750,000 of Debenture Note funding into Bankest's account

21    On or about April 14, 1998, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused Bankest to advance $752,572.72 to BRFFC.

22.    On or about April 23, 1998, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused a $250,000 equity contribution from Espirito Santo Bank to be deposited into Bankest's account.

23    On or about July 8, 1998, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $16,141,882 in accounts receivable to be presented to Bankest's Board of Directors

Scanned Image  LOCK R2053.1 Document 4 page 13 filed Oct 06 04 44 44 2002

24.    On or about August 12, 1998, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $22,881,924 in accounts receivable to be presented to Bankest's Board of Directors.

25.    On or about August 18, 1998, DOMINICK PARLAPIANO submitted a letter to an accounting firm and to JEFFREY BARNHILL, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and CARLOS E. MENDEZ advising that BCC's over-advance to Joy as of December 31, 1997 was $11,838,430.32

26.    On or about September 9, 1998, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $26,262,699 in accounts receivable to be presented to Bankest's Board of Directors.

27.    On or about October 20, 1998, EDUARDO ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $30,307,345 in accounts receivable to be presented to Bankest's Board of Directors

28.    On or about November 18, 1998, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $32,758,950 in accounts receivable to be presented to Bankest's Board of Directors.

29.    On or about December 16, 1998, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $37,259,009 in accounts receivable to be presented to Bankest's

Scanned image  HEXC3L3095 l Document 4 page 13 Non Dec 04 04 94 99 2003

Board of Directors.

30. On or about January 25, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $40,834,221 in accounts receivable to be presented to Bankest's Board of Directors.

31. On or about February 2, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, OTTO AMBROSIANI, and CARLOS E. MENDEZ** communicated regarding the specific accounts receivable balances as of December 31, 1998, that BDO Seidman sought to confirm as part of its audit of Bankest's financial statements of fiscal year 1998.

32. On or about February 17, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $43,189,559 in accounts receivable to be presented to Bankest's Board of Directors.

33. In or around January and February of 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, ARIADNA PUERTO, OTTO AMBROSIANI, and JEFFREY BARNHILL** caused to be provided to BDO Seidman false Joy checks prepared by **JEFFREY BARNHILL** and **R. PETER STANHAM** in connection with BDO Seidman's audit of Bankest's fiscal year 1998 financial statements.

34. On or about February 17, 1999, **EDUARDO ORLANSKY and DOMINICK PARLAPIANO** asked **JEFFREY BARNHILL** to sign an audit inquiry confirmation letter to BDO Seidman reflecting the value of accounts receivable sold to BCC by Joy as $23,995,112.71.

Page 14 of 50

35.    On or about March 17, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $45,625,415 in accounts receivable to be presented to Bankest's Board of Directors.

36.    On or about April 28, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $49,237,553 in accounts receivable to be presented to Bankest's Board of Directors.

37.    On or about May 18, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO,** and **CARLOS E. MENDEZ** communicated regarding BCC's unsecured $18,420,295 over-advance to Joy as of May, 18, 1999

38.    On or about May 25, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $50,845,735 in accounts receivable to be presented to Bankest's Board of Directors.

39.    In or before June of 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** discussed the fact that CD JewelBox was a fictitious entity created by **DOMINICK PARLAPIANO.**

40.    On or about June 11, 1999, **EDUARDO ORLANSKY** on behalf of Bankest, and **DOMINICK PARLAPIANO** on behalf of FNA, executed a Standard Collection Factoring Agreement.

41.    On or about June 16, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements

Page 15 of 50

showing Bankest owned $51,323,990 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

42. On or about July 26, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $53,127,443 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

43. On or about August 2, 1999, **DOMINICK PARLAPIANO, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **CARLOS E. MENDEZ** communicated regarding the potential for an additional transfer of Joy stock options to BCC in exchange for BCC's funding of Joy's acquisition of another company.

44. On or about August 18, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $53,338,790 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

45. On or about September 15, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $56,515,487 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

46. On or about October 15, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $57,195,335 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox

Page 16 of 50

47.    On or about November 9, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $59,562,587 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

48.    On or about December 14, 1999, **JEFFREY BARNHILL, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO,** and **CARLOS E. MENDEZ** communicated about BCC having over-advanced significant funds to Joy for the period January 1, 1999, through December 10, 1999.

49.    On or about December 16, 1999, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $62,417,315 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox

50.    On or about January 17, 2000, **DOMINICK PARLAPIANO, CARLOS E. MENDEZ,** and **OTTO AMBROSIANI** manipulated the accounting records of BCC so that over $11 million of accounts receivable attributed to CD JewelBox were shifted to ENA

51.    In or around January of 2000, **DOMINICK PARLAPIANO** created invoices for CD JewelBox and provided them to BDO Seidman in connection with its audit of Bankest's 1999 financial statements.

52.    On or about January 26, 2000, **DOMINICK PARLAPIANO** submitted an audit inquiry confirmation letter to BDO Seidman stating that CD JewelBox sold and transferred $5,046,960 in accounts receivable to BCC as of December 31, 1999

53.    On or about January 28, 2000, **EDUARDO ORLANSKY, HECTOR**

Page 17 of 50

Scanned Image    18ACR2011 Document #page 17 Work Doc 06 19 04 00 2003

ORLANSKY, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $60,320,109 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

54.    On or about February 3, 2000, DOMINICK PARLAPIANO and CARLOS E. MENDEZ submitted an audit inquiry confirmation letter to BDO Seidman stating that ENA sold and transferred $16,034,425 in accounts receivable to BCC as of December 31, 1999.

55.    On or about February 7, 2000, EDUARDO ORLANSKY and HECTOR ORLANSKY presented a letter to BDO Seidman representing that $58,040,221.57 was the amount of accounts receivable Bankest purchased from BCC, including $37,302,375.37 due from Joy, and that those amounts remained due and outstanding as of December 31, 1999.

56.    In or around January and February, 2000, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, ARIADNA PUERTO, and OTTO AMBROSIANI provided and caused to be provided financial statements containing the accounts receivable quantities and values reported to Bankest's Board of Directors to BDO Seidman in connection with its audit of the financial statements of Bankest for fiscal year 1999.

57.    On or about February 25, 2000, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $63,727,119 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

58.    On or about March 21, 2000, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements

Scanned Image   I.M.GR#00 I Document 4 page 19 blant Doc 00 00 00 00 2003

showing Bankest owned $71,063,753 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

59.     On or about March 30, 2000, **HECTOR ORLANSKY** sent an application for insurance, via facsimile transmission, to American Credit Indemnity Company in New York that reflected that the amount of accounts receivable owned by Bankest was approximately $70 million.

60.     On or about April 14, 2000, **HECTOR ORLANSKY** prepared and sent a letter to representatives of the FDIC, agreeing to provide an examiner from the FDIC with, among other things, Bankest's current receivable aging list, general ledger, and a complete list of all current clients and their accounts receivable balances.

61     On or about April 17, 2000, **HECTOR ORLANSKY** provided a copy of his April 14, 2000, letter to the FDIC to members of the Board of Directors of Espirito Santo Bank.

62.     On or about April 18, 2000, **HECTOR ORLANSKY** provided an FDIC Examiner and Espirito Santo Bank's President with Bankest's accounts receivable aging list, the general ledger, the 1998 and 1999 audited financial statements, and a complete list of all clients including the accounts receivable balance for each client.

63.     On or about April 27, 2000, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $75,785,621 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

64.     On or about May 17, 2000, **HECTOR ORLANSKY** certified to the Board Directors of Bankest that Bankest was, and had, "since its inception, been in full and uninterrupted compliance with:

Page 19 of 50

Scanned Image 1-93CRQ0011 Document 6 page 19 from Doc 06 06 06 06 2002

a.    Representations made to Noteholders regarding the Company's insuring of Account Receivable, pursuant to the Company's credit insurance policy,

b.    Covenants made in the Master Credit Agreement, having used Loan proceeds solely for the payment of purchase price, including factoring advances, of Insured Accounts Receivable from clients, providing that Loan proceeds have not been used to fund more than 80% of the face value of each Insured Accounts Receivable so purchased . . . ."

65.    On or about May 17, 2000, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $77,626,609 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox

66    On or about June 20, 2000, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $81,337,298 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

67    On or about August 7, 2000, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $85,066,522 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable and other information for CD JewelBox.

68.    On or about August 31, 2000, **DOMINICK PARLAPIANO** and **ARIADNA PUERTO** prepared invoices reflecting purported products sold by CD JewelBox.

69.    On or about September 19, 2000, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial

Page 20 of 50

statements showing Bankest owned $96,149,474 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

70.    On or about October 4, 2000, JEFFREY BARNHILL assigned $947,391.86 of purported Joy invoices to BCC.

71.    On or about October 9, 2000, DOMINICK PARLAPIANO asked HOWARD CANTOR to prepare five StrataSys invoices using specified accounts and in specific ranges of amounts in order to conceal a Bankest over-advance to pay StrataSys's October 13, 2000, payroll.

72.    On or about October 10, 2000, HOWARD CANTOR sent five StrataSys invoices to Bankest in response to DOMINICK PARLAPIANO's request.

73.    On or about October 20, 2000, EDUARDO ORLANSKY, HECTOR ORIANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $100,914,558 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

74.    On or about November 14, 2000, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $111,962,171 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for CD JewelBox.

75.    On or about December 8, 2000, EDUARDO ORLANSKY and HECTOR ORLANSKY caused $100,000 in proceeds from a Debenture Note to be deposited in Bankest's bank account.

76.    On or about December 19, 2000, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial

Scanned Image   I-SICR-0921 Document 4 page 21 filed Dec 04 00:00:00 2002

statements showing Bankest owned $111,962,171 in accounts receivable to be presented to Bankest's Board of Directors.

77.    On or about January 29, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $119,811,192 in accounts receivable to be presented to Bankest's Board of Directors.

78.    In or around January and February of 2001, **DOMINICK PARLAPIANO** redacted minutes of previously held Bankest Board of Directors meetings and provided these redacted minutes to BDO Seidman auditors who were auditing Bankest's 2000 financial statements.

79.    In or around January and February, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, ARIADNA PUERTO, OTTO AMBROSIANI, JEFFREY BARNHILL,** and **HOWARD CANTOR** caused to be provided false documentation supporting the accounts receivable quantities and values reflected in Bankest's records to BDO Seidman in connection with its audit of Bankest's 2000 financial statements, including

a    Joy invoices relating to goods purportedly sold to various companies;

b.    StrataSys invoices and checks relating to services purportedly provided to various companies;

c    ENA invoices and checks relating to software and services purportedly provided to various companies, and

d.    Redacted minutes of Bankest's Board of Directors meetings.

80.    On or about February 12, 2001, **DOMINICK PARLAPIANO** prepared and

submitted a memorandum to BDO Seidman stating that "ES Bankest does not advance monies (make Advance(s)/loan(s)) to Clients in amounts, which in the aggregate, total more than 80% of the Credit Insured A/Rs [accounts receivable] purchased from said Clients."

81.     On or about February 14, 2001, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** presented a letter to BDO Seidman representing that $80,092,170.52 was the amount of accounts receivable Bankest purchased from BCC, including $43,659,873.11 due from Joy, and that those amounts remained due and outstanding as of December 31, 2000.

82.     On or about February 22, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY,** and **R. PETER STANHAM** represented to BDO Seidman that Bankest owned $103,165,913 in accounts receivable, that the financial statements of Bankest presented fairly, in all material respects, the financial position, results of operations, and cash flows of Bankest, and that there had been no fraud by management or employees having significant roles in internal control

83.     On or about February 27, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $124,788,534 in accounts receivable to be presented to Bankest's Board of Directors.

84.     On or about March 27, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $129,367,495 in accounts receivable to be presented to Bankest's Board of Directors.

85.     On or about April 24, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements

showing Bankest owned $135,185,541 in accounts receivable to be presented to Bankest's Board of Directors. 86.    On or about May 22, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $139,875,495 in accounts receivable to be presented to Bankest's Board of Directors.

87.    On or about June 19, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $146,325,876 in accounts receivable to be presented to Bankest's Board of Directors

88    On or about July 18, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $152,837,581 in accounts receivable to be presented to Bankest's Board of Directors.

89    On or about July 23, 2001, **EDUARDO ORLANSKY**, purportedly on behalf of Bankest, executed an Option Agreement to purchase 200,000 shares of common stock of a Bankest factoring client.

90.    On or about July 26, 2001, **OTTO AMBROSIANI and ARIADNA PUERTO** discussed how to account for the cycling of funds back and forth between the BCC and Bankest accounts.

91.    On or about September 4, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, ARIADNA PUERTO, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $153,173,418 in accounts receivable to be presented to

Page 24 of 50

Scanned Image  LASCR10001 Document 4 page 24 Mon Dec 03 00 34 04 2001

Bankest's Board of Directors.

92.    On or about September 25, 2001, **EDUARDO ORLANSKY,** purportedly on behalf of Bankest, executed an Option Agreement for an option to purchase an additional 200,000 shares of common stock of a Bankest factoring client.

93.    On or about September 26, 2001, **DOMINICK PARLAPIANO, EDUARDO ORLANSKY, HECTOR ORLANSKY, CARLOS E. MENDEZ,** and **ARIADNA PUERTO** communicated regarding the fact that ENA's revenue stream had yet "to commence" and that Bankest had been financially supporting ENA.

94.    On or about October 2, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $157,103,335 in accounts receivable to be presented to Bankest's Board of Directors.

95.    On or about October 30, 2001, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** executed a letter agreement to obtain an overdraft line of credit of up to $3,000,000 from Banco Espirito Santo, S.A., Nassau Branch.

96.    On or about November 20, 2001, **EDUARDO ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $172,203,653 in accounts receivable to be presented to Bankest's Board of Directors.

97.    On or about December 12, 2001, **DOMINICK PARLAPIANO, EDUARDO ORLANSKY, HECTOR ORLANSKY, CARLOS E. MENDEZ,** and **ARIADNA PUERTO** received a report from ENA stating that ENA had a total amount of outstanding accounts receivable of only $129,500

Page 25 of 50

Scanned Image 1-9 (CR2001) Document Image 28 from Doc 14 99 99 99 2002

98.    On or about December 18, 2001, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $173,332,196.23 in accounts receivable to be presented to Bankest's Board of Directors, including accounts receivable for ENA in excess of $36.7 million.

99.    On or about December 18, 2001, **R. PETER STANHAM** sent, via facsimile transmission, the false financial information provided at the December 17, 2001, Bankest Board of Directors meeting to the General Manager of Banco Espirito Santo, N.Y., in New York City, New York.

100    On or about December 31, 2001, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** executed a "Collateral Value Certificate" declaring that "[a]s of the close of business, December 31, 2001, Bankest owned one hundred seventy-seven million four hundred twenty-five thousand six hundred fifty-nine dollars and thirty eight cents ($177,425,659 38) of Insured Accounts Receivable as defined in the Master Credit Agreement" and that "E S. Bankest is in full compliance of its requirements related to maintaining ownership of Insured Accounts Receivable in the aggregate face value of at least one hundred and twenty percent (120%) of the amount of Note(s) proceeds not invested in Approved Securities, as stated in the Master Credit Agreement and Master Security Agreement."

101.    On or about January 17, 2002, **CARLOS E. MENDEZ** caused a copy of Bankest's false 2000 and 1999 financial statements to be sent, via facsimile transmission, to a prospective lender in New York City, New York,.

102.    On or about January 22, 2002, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements

Scanned Image : 1*E3C1C0941 Document # page 26 Main Doc 06 06 06:06 2003

showing Bankest owned $178,103,308 in accounts receivable to be presented to Bankest's Board of Directors.

103.    On or about February 4, 2002, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** presented a letter to BDO Seidman representing that $105,174,331.72 was the amount of accounts receivable Bankest purchased from BCC, including $61,962,882.41 due from Joy, and that those amounts remained due and outstanding as of December 31, 2001.

104.    On or about February 8, 2002, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** represented to BDO Seidman that the financial statements of Bankest presented fairly, in all material respects, the financial position, results of operations, and cash flows of Bankest, and that there had been no fraud by management or employees having significant roles in internal control

105.    In or around January and February 2002, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, ARIADNA PUERTO, OTTO AMBROSIANI, JEFFREY BARNHILL,** and **HOWARD CANTOR** caused to be provided or made available documents supporting Bankest's accounts receivable balance to BDO Seidman and Price Waterhouse in connection with audits of the financial statements of Bankest for fiscal year 2001, including invoices and checks related to Joy, ENA, and StrataSys, and redacted minutes of Bankest's Board of Directors meetings.

106.    On or about February 8, 2002, **DOMINICK PARLAPIANO** represented to BDO Seidman that "the Company believes that all AR, which are greater than 90 days past due as of this date, are collectable from the debtors, the credit insurance company, or the AR originating-Client . . ."

Page 27 of 50

Scanned Image  1 SECR20961 Document 4 page 27 filed Doc 64 05-06-06 2002

107.    In or around February, 2002, **EDUARDO ORLANSKY** asked Stratesec to send Bankest uncollectible invoices.

108.    On or about February 14, 2002, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** prepared a letter to the President of Espirito Santo Bank demanding that Espirito Santo Bank either place Debenture Notes or secure a line of credit of $30 million to fund Bankest.

109.    On or about February 15, 2002, **DOMINICK PARLAPIANO** sent a letter, via Federal Express, to Banco Espirito Santo S.A. in New York, New York, with copies to **EDUARDO ORLANSKY, HECTOR ORLANSKY, and R. PETER STANHAM**, stating that "E.S Bankest is not in any default or breach of the Credit Agreement and that there has been no misstatement of any material financial information "

110    In or around February, 2002, **DOMINICK PARLAPIANO** caused funds to be wired from Bankest to ENA so that six checks from ENA to Bankest could clear and be paid as they came due.

111.    On or about February 26, 2002, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $178,103,308 in accounts receivable to be presented to Bankest's Board of Directors

112.    On or about February 27, 2002, **DOMINICK PARLAPIANO** prepared and submitted a memorandum to BDO Seidman stating that Bankest provided its BDO Seidman audited financial statements to Espirito Santo Bank as Placement Agent for the Debenture Notes, and stating that Bankest was in full compliance with the collateral ratio requirements of the Master Credit Agreement and Private Placement Memoranda.

Page 28 of 50

113.   On or about March 6, 2002, **EDUARDO ORLANSKY** sent Bankest's 2001 and 2000 audited financial statements and accounts receivable aging report as of January 31, 2002, to a prospective lender in order to obtain financing.

114.   On or about March 14, 2002, **DOMINICK PARLAPIANO** prepared an e-mail to ENA instructing ENA to send funds back to BCC and BII via checks bearing specified amounts and dates.

115.   On or about March 20, 2002, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $183,269,897 in accounts receivable to be presented to Bankest's Board of Directors

116   On or about March 25, 2002, **EDUARDO ORLANSKY** and **R. PETER STANHAM,** transferred by wire $365,000 to StrataSys.

117.   On or about March 25, 2002, **HOWARD CANTOR** executed a check to Bankest in the amount of $363,954.25.

118   On or about April 5, 2002, **DOMINICK PARLAPIANO** provided information, including invoices, to auditors conducting a "walk-through" of StrataSys transactions.

119.   On or about April 23, 2002, **EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM,** and **DOMINICK PARLAPIANO** caused false financial statements showing Bankest owned $207,900,000 in accounts receivable to be presented to Bankest's Board of Directors.

120.   On or about April 28, 2002, **DOMINICK PARLAPIANO, HECTOR ORLANSKY, CARLOS E. MENDEZ,** and **OTTO AMBROSIANI** communicated regarding

Page 29 of 50

costly advances to Joy and other factoring clients, utilization of ENA's account to "off-set Joy's huge AR requirements and to effect large collections," and a plan involving "very careful communication to Espirito Santo Bank" and BDO Seidman.

121.    On or about May 28, 2002, EDUARDO ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $214,673,571 in accounts receivable to be presented to Bankest's Board of Directors.

122.    On or about May 28, 2002, EDUARDO ORLANSKY and R. PETER STANHAM wire-transferred $2,019,722.99 to Banco Espirito Santo, N.Y., in New York City, New York, as payment of principal and interest due on a loan secured by accounts receivable.

123     On or about June 18, 2002, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements showing Bankest owned $220,346,671 in accounts receivable to be presented to Bankest's Board of Directors

124     On or about June 26, 2002, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ caused Bankest financial statements and accounts receivable aging reports to be transmitted, via Federal Express, to a prospective lender in Charlotte, North Carolina, in order to obtain financing.

125.    On or about July 1, 2002, ARIADNA PUERTO, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ communicated regarding the use of checks to pay-off an ENA accounts receivable balance.

126     On or about July 25, 2002, EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, and DOMINICK PARLAPIANO caused false financial statements

Page 30 of 50

Scanned Image  1 if PCR20061 Document 4 page 30 Num Doc 36 34 06 06 2002

showing Bankest owned $220,670,994 in accounts receivable to be presented to Bankest's Board of Directors.

127. On or after July 31, 2002, **DOMINICK PARLAPIANO** sent a handwritten spreadsheet showing an over-advance to Joy through July 31, 2002, to **EDUARDO ORLANSKY**, **HECTOR ORLANSKY**, and **CARLOS E. MENDEZ**.

128. On or about August 2, 2002, **DOMINICK PARLAPIANO** prepared a letter to a Manager of Bankest, stating that Bankest owned accounts receivable valued at over $220 million.

129. On or about August 9, 2002, **DOMINICK PARLAPIANO** prepared a letter to a Manager of Bankest, stating that Bankest owned accounts receivable valued at over $225 million.

130. On or about September 30, 2002, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** sent a letter, via facsimile transmission, to Banco Espirito Santo S A, in Portugal asking for continued funding for Bankest.

131. On or about November 26, 2002, **EDUARDO ORLANSKY** executed a Restructuring Agreement that restructured the debt owed by Bankest and required Bankest to provide monthly accounts receivable aging reports

132. On or about March 31, 2003, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** presented a letter to BDO Seidman reflecting inter-company balances between BCC and Bankest.

133. In or around February, March, and April of 2003, **EDUARDO ORLANSKY**, **HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, ARIADNA PUERTO, OTTO AMBROSIANI,** and **HOWARD CANTOR** made available documents supporting Bankest's accounts receivable balance to BDO Seidman in

Page 31 of 50

Scanned Image  1 BACK30411 Document 4 page 31 More Doc 94 96 97 99 2003

connection with its audit of the financial statements of Bankest for fiscal year 2002, including invoices and checks related to Joy, ENA, and StrataSys, and redacted minutes of Bankest's Board of Directors meetings.

134.    In or around April of 2003, **HOWARD CANTOR**, **DOMINICK PARLAPIANO**, **CARLOS E. MENDEZ**, and **ARIADNA PUERTO** assisted in correcting an "error" made on a StrataSys invoice provided to BDO Seidman in connection with its audit of Bankest's financial statements.

135.    On or about April 2, 2003, **DOMINICK PARLAPIANO**, **ARIADNA PUERTO**, and **CARLOS E. MENDEZ** discussed providing overtime pay for an employee who helped prepare invoices on a Saturday.

136    On or about April 10, 2003, **EDUARDO ORLANSKY** and **HECTOR ORLANSKY** represented to BDO Seidman that the financial statements of Bankest presented fairly, in all material respects, the financial position, results of operations, and cash flows of Bankest, and that there had been no fraud by management or employees having significant roles in internal control.

137.    On or about May 9, 2003, **DOMINICK PARLAPIANO** provided a letter to Espirito Santo Bank with copies to **EDUARDO ORLANSKY**, **HECTOR ORLANSKY**, and **CARLOS E. MENDEZ** representing that "the receivables portfolio has not been deteriorating but improving" and that Bankest owned $242,213,745.20 in accounts receivable as of December 31, 2002.

138.    On or about May 13, 2003, **DOMINICK PARLAPIANO** prepared and sent a letter to Espirito Santo Bank attaching a list of accounts receivable.

139.    On or about May 24, 2003, **ARIADNA PUERTO** and **DOMINICK PARLAPIANO**

Page 32 of 50

created an insurance document utilizing a letterhead from "EULER American Credit Indemnity" and

data from Bankest's computerized records and provided the document to auditors.

140.    On or about June 16, 2003, **EDUARDO ORLANSKY** and **ARIADNA PUERTO**

delivered accounts receivable aging reports to Espirito Santo Bank pursuant to the provisions of the

November 26, 2002 Restructuring Agreement.

141.    On or about August 8, 2003, **EDUARDO ORLANSKY, HECTOR ORLANSKY,**

**DOMINICK PARLAPIANO, CARLOS E. MENDEZ, ARIADNA PUERTO,** and **OTTO**

**AMBROSIANI** attended a meeting at which **EDUARDO ORLANSKY** and **HECTOR**

**ORLANSKY** told defendants that they had to lie to an incoming federally appointed examiner in

order to avoid detection of defendants' schemes.

All in violation of Title 18, United States Code, Section 371

Scanned Image  1931CR00491 Document 4 page 33 filed Dec 06 06 06 06 2003

### COUNTS 2-4
### Bank Fraud
### (18 U.S.C. §§ 1344 and 2)

1.      Paragraphs 1 through 18 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.      Beginning in or around June, 1997, and continuing through in or around April, 1998, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**EDUARDO ORLANSKY,**
**HECTOR ORLANSKY,**
**R. PETER STANHAM,**
**DOMINICK PARLAPIANO, and**
**CARLOS E. MENDEZ,**

did knowingly and willfully devise and implement a scheme and artifice to defraud a financial institution, that is, Espirito Santo Bank, and to obtain monies and funds owned by and under the custody and control of said financial institution by means of materially false and fraudulent pretenses, representations, and promises.

### PURPOSE OF THE SCHEME AND ARTIFICE

3      It was the purpose of the scheme and artifice that the defendants would and did obtain money for Bankest, BCC, and BRFFC, by submitting false and fraudulent financial information as to a material fact, including inflated accounts receivable quantities and values, to Espirito Santo Bank, in order to induce Espirito Santo Bank to invest a total of $1,000,000 and enter into a joint venture between BCC and Espirito Santo Bank.

4      The allegations in paragraphs 4 through 8, 10, and 15 through 20 of the manner and means section of Count 1 of this Indictment are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

Scanned Image  FBACKUP04 I Document 4 page 34 Mon Dec 08 09 49 09 2003

## EXECUTIONS OF THE SCHEME AND ARTIFICE

On or about the dates specified as to each count below, in the Southern District of Florida and elsewhere, the defendants did knowingly and willfully execute and attempt to execute the above-described scheme and artifice to defraud a financial institution and to obtain monies and funds owned by and under the custody and control of a financial institution, as described below:

| COUNT | APPROXIMATE DATE | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|---|---|---|
| 2 | April 7, 1998 | Execution of Shareholders Agreement governing joint venture between BCC and Espirito Santo Bank, based on the submission of false financial information as to a material fact. |
| 3 | April 8, 1998 | Obtaining of $750,000 in equity contribution from Espirito Santo Bank based on the submission of false financial information as to a material fact. |
| 4 | April 23, 1998 | Obtaining of $250,000 in equity contribution from Espirito Santo Bank based on the submission of false financial information as to a material fact. |

All in violation of Title 18, United States Code, Sections 1344 and 2

Scanned Image - HHJCR20901 Document 4 page 36 Mon Dec 04 00:00:00 2002

### COUNTS 5 - 31
### Bank Fraud
### (18 U.S.C. §§ 1344 and 2)

1.    Paragraphs 1 through 18 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.    Beginning in or around April, 1998, and continuing through on or about September, 2002, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth as to each count below, did knowingly and willfully devise and implement a scheme and artifice to defraud a financial institution, that is, Espirito Santo Bank, and to obtain monies and funds owned by and under the custody and control of said financial institution by means of materially false and fraudulent pretenses, representations, and promises.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.    It was the purpose of the scheme and artifice that the defendants would and did obtain money for Bankest, BCC, and BRFFC, by submitting false and fraudulent financial information as to a material fact, including inflated accounts receivable quantities and values, to Espirito Santo Bank, in order to induce Espirito Santo Bank to solicit its customers to subscribe to Debenture Notes and utilize its accounts to transfer Debenture Note payments to fund Bankest.

4.    The allegations in paragraphs 4 through 21 and 23 of Count 1 of the manner and means section of this Indictment are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

### EXECUTIONS OF THE SCHEME AND ARTIFICE

On or about the dates specified as to each count below, in the Southern District of Florida and elsewhere, the defendants, identified as to each count below, did knowingly and willfully

Page 36 of 50

Scanned Image  FISICIGHH | Document # page 36 thru Doc 44 44 44 46 2002

execute and attempt to execute the above-described scheme and artifice to defraud a financial

institution and to obtain monies and funds owned by and under the custody and control of a financial

institution, as described below:

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|---|---|---|---|
| 5 | May 20, 1998 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from M.G.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 6 | October 9, 1998 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from C M 's account, based upon the defendants' submission of false financial information as to a material fact. |
| 7 | December 16, 1998 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM. DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from F L 's account, based upon the defendants' submission of false financial information as to a material fact |
| 8 | January 8, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from J S.'s account, based upon the defendants' submission of false financial information as to a material fact |

Page 37 of 50

Scanned Image  FS JCR29951 Document 4 page 37 Mon Oct 19 10:06:99 2003

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|---|---|---|---|
| 9 | May 17, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $1,000,000 in Debenture Note funding from B.H.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 10 | August 27, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from A.I.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 11 | September 13, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from H.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 12 | October 22, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $200,000 in Debenture Note funding from P.F.'s account, based upon the defendants' submission of false financial information as to a material fact. |

Scanned Image  194CR20961 Document 4 page 38 filen Dec 01 00:00:00 2003

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|-------|--------------|------------|----------------------------------------|
| 13 | November 15, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $500,000 in Debenture Note funding from M.I.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 14 | November 22, 1999 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from M.A.L.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 15 | February 3, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from V M.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 16 | February 3, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL. | Obtaining from Espirito Santo Bank $500,000 in Debenture Note funding from F.M.'s account, based upon the defendants' submission of false financial information as to a material fact. |

Scanned image  F9SCR20901 Document A page 29 filed Dec 01 04 00 59 2002

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|-------|--------------|------------|----------------------------------------|
| 17 | March 2, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $400,000 in Debenture Note funding from G.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 18 | April 28, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from R.H.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 19 | May 22, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from W.K.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 20 | July 28, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, and JEFFREY BARNHILL | Obtaining from Espirito Santo Bank $300,000 in Debenture Note funding from C.M.L.'s account, based upon the defendants' submission of false financial information as to a material fact. |

Scanned Image - 1-9-DCE(KKO)1 Document 4 Issue 48 Mon Jun 06 09 09 06 2001

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|---|---|---|---|
| 21 | November 3, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $500,000 in Debenture Note funding from L.B.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 22 | December 8, 2000 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from T.D.O.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 23 | January 29, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $1,000,000 in Debenture Note funding from I.X.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 24 | February 8, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $1,000,000 in Debenture Note funding from P.C.L.'s account, based upon the defendants' submission of false financial information as to a material fact. |

Page 41 of 50

Scanned Image 16SCR2001 Document 8 page 41 Mon Dec 18 09:38:00 2002

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|---|---|---|---|
| 25 | March 12, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from T S L.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 26 | April 9, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from R E S.'s account, based upon the defendants' submission of false financial information as to a material fact |
| 27 | September 26, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from I.C.J.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 28 | December 5, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $200,000 in Debenture Note funding from J.C.D.'s account, based upon the defendants' submission of false financial information as to a material fact. |

Scanned image 75AC82841 Document 4 page 42 Mon Dec 08 09 34 02 2003

| COUNT | APPROX. DATE | DEFENDANTS | EXECUTIONS OF THE SCHEME AND ARTIFICE |
|---|---|---|---|
| 29 | February 8, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from M.A.G.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 30 | May 6, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $100,000 in Debenture Note funding from M.G B.'s account, based upon the defendants' submission of false financial information as to a material fact. |
| 31 | May 15, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, R. PETER STANHAM, DOMINICK PARLAPIANO, CARLOS E. MENDEZ, JEFFREY BARNHILL, and HOWARD CANTOR | Obtaining from Espirito Santo Bank $200,000 in Debenture Note funding from C.I.'s account, based upon the defendants' submission of false financial information as to a material fact. |

All in violation of Title 18, United States Code, Sections 1344 and 2.

**COUNT 32**
**False Statements to the FDIC**
**(18 U.S.C. §§ 1007 and 2)**

On or about April 18, 2000, in Miami-Dade County, in the Southern District of Florida, the defendant,

**HECTOR ORLANSKY,**

did knowingly and willfully, for the purpose of influencing the action of the Federal Deposit Insurance Corporation, make and invite reliance on false statements and documents, that is, inflated accounts receivable aging reports and misstated financial statements of E.S. Bankest, LLC, in violation of Title 18, United States Code, Sections 1007 and 2.

## COUNTS 33 - 47
### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

1.      Paragraphs 1 through 18 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.      From in or around June, 1994, and continuing through in or around August, 2003, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth as to each count below, did knowingly and willfully devise and implement a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false and fraudulent when made.

### PURPOSE OF THE SCHEME AND ARTIFICE

3       It was the purpose of the scheme and artifice that the defendants would and did obtain money for Bankest, BCC, and BRFFC, from financial institutions and others, by using inflated and false accounts receivable and fraudulent financial information to receive funding

4       The allegations in paragraphs 4 through 23 of the manner and means section of Count 1 of this Indictment are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

### USE OF THE WIRES

5.      On or about the dates specified as to each count below, in the Southern District of Florida and elsewhere, the defendants, identified as to each count below, for the purpose of executing the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and

Page 45 of 50

Scanned Image  1936/9C/0911 Document 4 page 46 Wen Doc 06 06 0014 2002

cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described below.

| COUNT | APPROXIMATE DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATIONS |
|---|---|---|---|
| 33 | March 30, 2000 | HECTOR ORLANSKY | Bankest Application for Business Credit Insurance Policy sent by facsimile from Miami, Florida, to American Credit Indemnity Company in New York, New York |
| 34 | December 12, 2001 | EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ | E-mail from ENA in Atlanta, Georgia, to defendants in Miami, Florida, regarding actual financial condition of ENA and need for additional funding |
| 35 | January 17, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ | Facsimile transmission of fraudulent Bankest 2000 and 1999 financial statements from Bankest in Miami, Florida, to GMAC in New York, New York |
| 36 | February 11, 2002 | EDUARDO ORLANSKY | Facsimile transmission of uncollectible invoices from Stratesec in Springfield, Virginia, to EDUARDO ORLANKSY, in Miami, Florida. |
| 37 | February 27, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ | Wire transfer of $350,000 from BCC's bank account in Miami, Florida to ENA's account in Roswell, Georgia. |

Scanned Image 1 95CFOB943 Document 4 ease 46 Mon Dec 04 04 04 04 2005

| COUNT | APPROXIMATE DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATIONS |
|---|---|---|---|
| 38 | March 8, 2002 | DOMINICK PARLAPIANO | E-mail from DOMINICK PARLAPIANO, in Miami, Florida, to ENA in Atlanta, Georgia, regarding advances of funds to ENA and return of funds from ENA via checks. |
| 39 | March 12, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ | Wire transfer of $300,000 from BCC's bank account in Miami, Florida, to ENA's bank account in Roswell, Georgia. |
| 40 | March 14, 2002 | DOMINICK PARLAPIANO | E-mail from DOMINICK PARLAPIANO, in Miami, Florida, to ENA in Atlanta, Georgia, regarding advances of funds to ENA and return of funds from ENA via checks |
| 41 | March 14, 2002 | DOMINICK PARLAPIANO | Facsimile from DOMINICK PARLAPIANO, in Miami, Florida, to ENA in Atlanta, Georgia, regarding a schedule for the advances of funds to ENA and return of funds from ENA via checks. |
| 42 | March 15, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ | Wire transfer of $400,000 from BCC's bank account in Miami, Florida, to ENA's bank account in Roswell, Georgia |
| 43 | April 15, 2002 | EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ | Wire transfer of $310,000 from BCC's bank account in Miami, Florida, to ENA's bank account in Roswell, Georgia. |

Page 47 of 50

Scanned Image  193CR0901 Document 4 page 47 Mon Dec 04 00 00 00 2003

| COUNT | APPROXIMATE DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATIONS |
|---|---|---|---|
| 44 | May 14, 2002 | **EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ** | Wire transfer of $390,000 from BCC's bank account in Miami, Florida, to ENA's bank account in Roswell, Georgia. |
| 45 | May 28, 2002 | **EDUARDO ORLANSKY and R. PETER STANHAM** | Wire transfer of $2,019,722.99 from Bankest's bank account in Miami, Florida, to Banco Espirito Santo, N.Y's bank account in New York, New York. |
| 46 | June 28, 2002 | **EDUARDO ORLANSKY, HECTOR ORLANSKY, DOMINICK PARLAPIANO, and CARLOS E. MENDEZ** | Wire transfer of $332,000 from BCC's bank account in Miami, Florida, to ENA's bank account in Roswell, Georgia. |
| 47 | September 30, 2002 | **EDUARDO ORLANSKY and HECTOR ORLANSKY** | Facsimile transmission from defendants, **EDUARDO ORLANSKY and HECTOR ORLANSKY**, in Miami, Florida, to Banco Espirito Santo, S.A. in Lisbon, Portugal, regarding continued funding. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

Scanned Image : 9 IUCA2001 Document 4 page 48 Wen Doc 01 04 06 06 2002

## FORFEITURE

1.      The allegations contained in Counts 1 through 47 of this Indictment are realleged and incorporated by reference, as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A).

2.      Upon conviction of any violation of or conspiracy to violate Title 18, United States Code, Sections 1344, 1007 and 1343, affecting a financial institution, as charged in Counts 1 through 47, each defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), all property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation, including but not limited to the sum of $170,000,000

If any of the property described above, as a result of any act or omission by the defendants,

    (1)      cannot be located upon the exercise of due diligence;

    (2)      has been transferred, or sold to, or deposited with a third party;

    (3)      has been placed beyond the jurisdiction of the Court;

    (4)      has been substantially diminished in value; or

    (5)      has been commingled with other property which cannot be subdivided without difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up

Scanned Image  1 05CR20531 Document 4 page 49 filed Doc 92 00 90 99 2003

to the value of the above forfeitable property, pursuant to Title 21, United States Code, Section

853(p), as incorporated by Title 18, United States Code, Section 982(b).

A TRUE BILL.

FOREPERSON

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

STEPHEN S. STALLINGS
ASSISTANT UNITED STATES ATTORNEY

CAROLINE HECK MILLER
ASSISTANT UNITED STATES ATTORNEY

Page 50 of 50

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

03 - 20951 CR-JORDAN

UNITED STATES OF AMERICA,   CASE NO.                              MAGISTRATE JUDGE
                                                                                      BROWN

vs.                                              **CERTIFICATE OF TRIAL ATTORNEY***

**EDUARDO ORLANSKY, ET AL.**

Defendants.
_____/          **Superseding Case Information:**

**Court Division:** (Select One)          New Defendant(s)          Yes ____   No ____
                                          Number of New Defendants   ____
X___ Miami   ____ Key West                Total number of counts      ____
____ FTL     ____ WPB    ____ FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161

3.   Interpreter:   (Yes or No)          No
     List language and/or dialect _____

4.   This case will take ___25___ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
     (Check only one)                              (Check only one)

     I     0 to 5 days        ____          Petty      ____
     II    6 to 10 days       ____          Minor      ____
     III   11 to 20 days      ____          Misdem     ____
     IV    21 to 60 days      _X_           Felony     _X_
     V     61 days and over   ____

6.   Has this case been previously filed in this District Court? (Yes or No)   No___
     If yes:
     Judge _____          Case No _____
     (Attach copy of dispositive order)

     Has a complaint been filed in this matter?   (Yes or No)   No
     If yes:
     Magistrate Case No. _____
     Related Miscellaneous numbers: _____
     Defendant(s) in federal custody as of _____
     Defendant(s) in state custody as of _____
     Rule 20 from the _____ District of _____
     Is this a potential death penalty case? (Yes or No)   No

7    Does this case originate from a matter pending in the U.S Attorney's Office prior to
     April 1, 2003? ___ Yes  _X_ No

8    Does this case originate from a matter pending in the U. S. Attorney's Office prior to
     April 1, 1999? ___ Yes  _X_ No
     If yes, was it pending in the Central Region? ___ Yes ___ No

9    Did this case originate from a matter pending in the Northern Region of the U.S. Attorney's
     Office prior to October 14, 2003? ____ Yes  _X_ No

                                   STEPHEN STALLINGS
                                   ASSISTANT UNITED STATES ATTORNEY
                                   Florida Bar No.  958859

*Penalty Sheet(s) attached

REV 10/29/03

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

03 - 20951 CR- JORDAN

MAGIS. RATE JUDGE
BROWN

### PENALTY SHEET

Defendant's Name:    EDUARDO ORLANSKY          Case No..

Count # 1:          Conspiracy

                    18 U.S.C. § 371

*Max. Penalty:      5 years of imprisonment


Counts # 2 - 31:    Bank Fraud

                    18 U.S.C. § 1344

*Max. Penalty:      30 years of imprisonment


Counts # 34-37, 39, 42-47:
                    Wire Fraud

                    18 U.S.C. § 1343


*Max. Penalty:      30 years of imprisonment


Count #


*Max. Penalty:

Count # :


*Max. Penalty

          * Refers only to possible term of incarceration, does not include possible fines,
          restitution. special assessments, parole terms, or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

03 - 20951 CR-JORDAN

MAGISTRATE JUDGE
BROWN

**PENALTY SHEET**

Defendant's Name:    **HECTOR ORLANSKY**    Case No.:

Count # 1.    Conspiracy

18 U.S.C. § 371

*Max. Penalty:    5 years of imprisonment

Counts # 2 - 31.    Bank Fraud

18 U.S.C. § 1344

*Max. Penalty:    30 years of imprisonment

Count # 32.    False Statements to the FDIC

18 U.S.C. § 1007

*Max  Penalty:    30 years of imprisonment

Counts # 33-35, 37, 39, 42-44, 46-47.
            Wire Fraud

18 U.S.C. § 1343

*Max. Penalty,    30 years of imprisonment

Count # :

*Max  Penalty

  * Refers only to possible term of incarceration, does not include possible fines,
restitution, special assessments, parole terms, or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

03 - 2 0 9 5 1  CR-JORDAN

MAGISTRATE JUDGE
~ BROWN

**PENALTY SHEET**

Defendant's Name:  R. PETER STANHAM          Case No.:

Count # 1:          Conspiracy

                    18 U.S.C. § 371

*Max. Penalty:      5 years of imprisonment

Counts # 2 - 31:    Bank Fraud

                    18 U.S.C. § 1344

*Max. Penalty:      30 years of imprisonment

Count # 45:         Wire Fraud

                    18 U.S.C. § 1343

*Max. Penalty:      30 years of imprisonment

Count # :

*Max. Penalty:

Count # :

*Max. Penalty:

    * Refers only to possible term of incarceration, does not include possible fines,
    restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 03 - 20951 CR-JORDAN

MAGISTRATE JUTT
BROWN

PENALTY SHEET

Defendant's Name:    DOMINICK PARLAPIANO          Case No.:

| | |
|---|---|
| Count # 1: | Conspiracy |
| | 18 U.S.C. § 371 |
| *Max. Penalty: | 5 years of imprisonment |

| | |
|---|---|
| Counts # 2 - 31: | Bank Fraud |
| | 18 U S C. § 1344 |
| *Max Penalty: | 30 years of imprisonment |

| | |
|---|---|
| Counts # 34-35, 37-44, 46: | Wire Fraud |
| | 18 U.S.C. § 1343 |

*Max Penalty:     30 years of imprisonment

Count # .

*Max. Penalty:

* Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 03-20951 CR-JORDAN

MAGISTRATE JUDGE
BROWN

**PENALTY SHEET**

Defendant's Name:    CARLOS E. MENDEZ

Case No.:

Count # 1:          Conspiracy

                    18 U.S.C. § 371

*Max. Penalty:      5 years of imprisonment

Counts # 2 - 31:    Bank Fraud

                    18 U.S.C. § 1344

*Max. Penalty:      30 years of imprisonment

Counts # 34-35, 37, 39, 42-44, 46:
                    Wire Fraud

                    18 U.S.C. § 1343

*Max. Penalty:      30 years of imprisonment

Count # :

*Max. Penalty:

Count # :

*Max. Penalty:

      * Refers only to possible term of incarceration, does not include possible fines,
   restitution, special assessments, parole terms, or forfeitures that may be applicable

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

03 - 20951  CR-JORDAN

MAGISTRATE JUDGE

**PENALTY SHEET**

Defendant's Name.    ARIADNA PUERTO          Case No.:

Count # 1:          Conspiracy

                    18 U.S.C. § 371

*Max Penalty:       5 years of imprisonment

Count #

*Max Penalty:

Count # :

*Max. Penalty:

Count # :

*Max Penalty

   * Refers only to possible term of incarceration, does not include possible fines,
   restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

03 - 20951 CR-JORDAN

### PENALTY SHEET

Defendant's Name:   OTTO AMBROSIANI          Case No.:

Count # 1.          Conspiracy

                    18 U.S.C. § 371

*Max. Penalty.      5 years of imprisonment

Count #

*Max. Penalty:

Count # :

*Max  Penalty·

Count # :

*Max  Penalty·

* Refers only to possible term of incarceration, does not include possible fines,
restitution, special assessments, parole terms, or forfeitures that may be applicable

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

# 03 - 20951 CR-JORDAN

MAGISTRATE JUDGE
BROWN

PENALTY SHEET

Defendant's Name:    JEFFREY BARNHILL          Case No.:

Count # 1:          Conspiracy

                    18 U.S.C. § 371

*Max. Penalty:      5 years of imprisonment

Counts # 5 - 31:    Bank Fraud

                    18 U.S.C. § 1344

*Max. Penalty:      30 years of imprisonment

Count #

*Max. Penalty:

Count # :

*Max. Penalty:

Count # :

*Max. Penalty:

        * Refers only to possible term of incarceration, does not include possible fines,
    restitution, special assessments, parole terms, or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

# 03 - 20951 CR-JC

**PENALTY SHEET**

MAGISTRATE JUDGE
BROWN

Defendant's Name:    HOWARD CANTOR          Case No.:

Count # 1:          Conspiracy

                    18 U.S.C. § 371

*Max. Penalty:      5 years of imprisonment

Counts # 21 - 31:   Bank Fraud

                    18 U.S.C. § 1344

*Max Penalty        30 years of imprisonment

Count #

*Max. Penalty:

Count # :

*Max Penalty:

Count # :

*Max. Penalty:

    * Refers only to possible term of incarceration, does not include possible fines,
    restitution, special assessments, parole terms, or forfeitures that may be applicable.

No._____

# UNITED STATES DISTRICT COURT

_____ SOUTHERN ___ District of ___ FLORIDA ___

_____ CRIMINAL ___ Division

## THE UNITED STATES OF AMERICA

vs.

EDUARDO ORLANSKY, et al.

# INDICTMENT

IN VIOLATION OF: 18 U.S.C. § 371
18 U.S.C. § 1007
18 U.S.C. § 1343
18 U.S.C. § 1344
18 U.S.C. § 2
18 U.S.C. § 982

A true bill.

_____
Foreman

FOREPERSON FGJ 03-02(M/A)

Filed in open court this _____ day,
of _____ A.D. 20____

_____
Clerk

Bail, $ _____

CRIV 130 74
JM 85

C 3r 2 FJ CS-CC 3 2