# EXHIBIT V



**BDO Seidman, LLP**
Accountants and Consultants

NationsBank Tower at International Place
100 S.E. 2nd Street, Suite 2200
Miami, Florida 33131
Telephone: (305) 381-8000
Fax: (305) 374-1135
Voice Mail: (305) 381-7892

October 20, 1999

Mr. Dominick Parlapiano
Senior Vice President, Director
E.S. Bankest LLC
999 Brickell Avenue
Penthouse
Miami, FL 33131

Dear Mr. Parlapiano:

### Agreement To Provide Services

This agreement is intended to describe the nature and scope of our services.

**Audit**

As agreed, we will audit the balance sheet of E.S. Bankest LLC as of December 31, 1999 and the related statements of income, stockholders' equity, and cash flows for the year then ending in accordance with generally accepted auditing standards. The financial records and financial statements are the responsibility of your Company's management. In that regard, management is responsible for establishing and maintaining effective internal control over reporting, establishing and maintaining proper accounting records, selecting appropriate accounting principles, safeguarding company assets and complying with relevant laws and regulations. Management is also responsible for making all financial records and related information available to us.

Our responsibility is to express an opinion on the financial statements based on our audit. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on generally accepted accounting principles. If during the course of our work it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. If, for any reason we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require, we may resign from the engagement prior to completion.

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the financial

**BDO**

statements and, therefore, will not include a detailed check of your Company's transactions for the period. Accordingly, an audit performed in accordance with generally accepted auditing standards is not a guarantee of the accuracy of the financial statements, and there is a risk that material errors or fraud may exist and not be detected by us. Also, an audit is not designed to detect errors or fraud that is immaterial to the financial statements. However, we will inform you of any material errors or fraud that come to our attention. We will also inform you of illegal acts that come to our attention unless they are clearly inconsequential. In addition during the course of our audit, financial statement misstatements may be identified, either through our audit procedures or through communication by your employees to us and we will bring these misstatements to your attention as proposed adjustments. Management is responsible for recording such adjustments in the financial statements or otherwise concluding and confirming in a representation letter provided to us at the conclusion of our audit, that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. At the conclusion of our audit we will communicate to the audit committee all such unrecorded adjustments.

An audit includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions. However, we are responsible for ensuring that you are aware of any reportable conditions, which come to our attention during our engagement.

Because many computerized systems use only two digits to record the year in date fields (for example, the year 1998 is recorded as 98), such systems may not be able to accurately process dates ending in the year 2000 and after. The effects of this problem will vary from system to system and may adversely affect a company's operations as well as its ability to prepare financial statements.

An audit of financial statements conducted in accordance with generally accepted auditing standards is not designed to detect whether the Company's systems are year 2000 compliant. Further, we have no responsibility with regard to the Company's efforts to make its systems, or any other systems, such as those of the Company's vendors, service providers, or any other third parties, year 2000 compliant or provide assurance on whether the Company has addressed or will be able to address all of the affected systems on a timely basis. These are responsibilities of the Company's management. However, for the benefit of management, we may choose to communicate matters that come to our attention relating to the Year 2000 issue.

The working papers prepared in conjunction with our audit are the property of our Firm, constitute confidential information and will be retained by us in accordance with our Firm's policies and procedures.



### Reproduction of Audit Report

If E.S. Bankest LLC plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

### Review of Documents for Sale of Securities

In addition, the audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities (including securities offerings on the Internet) without first submitting copies of the document to us in sufficient time for our review and approval.

### Management Representations

As required by generally accepted auditing standards, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Because of the importance of management's representations to an effective audit and provided the audited financial statements and our report thereon are not included in a registration statements under the Securities Act of 1933 or in a Private Placement Memorandum, E.S. Bankest LLC agrees to release and indemnify BDO Seidman, LLP and its personnel from any liability and costs relating to our services under this agreement attributable to any misrepresentations by management.

### Availability of Records

You agree that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have full cooperation of your personnel.

### Assistance by Your Personnel

We also ask that your personnel, to the extent possible, prepare various schedules and analyses for our staff. This assistance by your personnel will serve to facilitate the progress of our work and minimize costs to you.

### Other Services

We are always available to meet with you and/or other executives at various times throughout the year to discuss current business, operational, accounting, and auditing matters affecting your Company. Whenever you feel such meetings are desirable, please let us know. We are also prepared to provide services to assist you in any of these areas. We will also be pleased, at your request, to attend your directors' and stockholders' meetings.

3



### Independence

Professional standards require us to be independent with respect to your Company in the performance of our services. Any discussions that you have with personnel of our firm regarding employment could pose a threat to our independence. Therefore, we request that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence. In addition, if you hire one of our personnel, you agree to pay us a fee of 20% of that individual's base compensation at your company 90 days from the first day of employment.

### Dispute Resolution Procedure

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, upon written notice to the other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association, except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO Seidman, LLP office providing the relevant services exists, unless the parties agree to a different locale.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.


**BDO**

The award issued by the arbitration panel may be confirmed in a judgment by any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel. In any event, BDO Seidman, LLP's maximum liability to (E.S. Bankest LLC) for any reason, including BDO Seidman', LLP's negligence, relating to the services under this letter shall be limited to the fees paid to BDO Seidman, LLP for the services or work product giving rise to the liability, except to the extent finally determined to have resulted from the gross negligence or willful misconduct of BDO Seidman, LLP.

**Fees**

Our charges to your Company for the audit services described above will be made at our regular rates (subject to mutually agreed upon adjustment for services providing additional value) plus out-of-pocket expenses. Our fees for the 1999 audit engagement is estimated at approximately $40,000.

Our charges for other services will be agreed to separately.

Bills will be rendered on a monthly basis with payment due upon presentation.

* * *

The arrangements described in this letter will be updated annually.

*BDO Seidman, LLP*

BDO Seidman, LLP

Acknowledged:

By _____
              Title

Date _____

5