UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

In re:

E.S. BANKEST, L.C.,

    Debtor.                                            /

LEWIS B. FREEMAN,  Responsible Officer for the
Reorganized Debtor, E.S. Bankest, L.C., a Florida
Limited Liability Corporation,

    Plaintiff,

v.

BDO SEIDMAN, LLP, BDO INTERNATIONAL,
B.V., and SANDOR LENNER,

    Defendants.                                        /

## DEFENDANT BDO INTERNATIONAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to B.R. 7056 and FED.R. CIV.P. 56,[1] Defendant BDO International, B.V. n/k/a BDO Global Coordination, B.V. ("BDO International") moves for partial summary judgment dismissing Count III for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and Count V for securities fraud and states as follows:

BDO International did not violate FDUTPA because there is genuine issue of material fact that BDO International engaged in any deceptive practices, that the Debtor relied upon any

---

[1] BDO International adopts, joins in and incorporates by reference the arguments and authorities in BDO Seidman's Motion for Summary Judgment, specifically those that relate to Count I, which forms the alleged basis for BDO International's liability in Count II.

BROAD and CASSEL
One Biscayne Tower  2  South Biscayne Boulevard  Suite 2100  Miami, Florida  33131  305.373.9400

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

representations or that it is an aggrieved person. Plaintiff's FDUTDA claims are likewise barred in full because such claims do not apply to securities transaction and are barred in part by its lack of standing.

Plaintiff's securities fraud claim fails because BDO International did not misrepresent or omit any material facts in connection with the purchase or sale of any security. Plaintiff also cannot demonstrate scienter, transaction causation or loss causation, any one of which is fatal to Plaintiff's securities fraud claim. Moreover, Count V claim is barred by the United States Supreme Court's recent ruling in *Stoneridge Inv. Partners LLC v. Scientific Atlanta, Inc.*, 128 S. Ct. 761 (Jan. 15, 2008).

## INTRODUCTION

The Debtor, E.S. Bankest, was a supposedly legitimate factoring company that was, in fact, a massive fraud. Until the fraud was discovered in 2003, employees of Bankest defrauded everyone including Bankest's auditors, the United States accounting firm, BDO Seidman. Espirito Santo Bank was 50% owner of Bankest during the material time period and certain of its employees were directors of Bankest.

Through affiliated entities, including the secured creditor, Banco Espirito Santo International Ltd., Espirito Santo filed suit against BDO Seidman and BDO International in Miami-Dade Circuit Court. A directed verdict in BDO International's favor was reversed and the Espirito Santo entities are seeking a new trial in the state court. The Espirito Santo entities obtained verdicts against BDO Seidman following a second trial in which BDO International did

BROAD and CASSEL

CASE NO.: 04-17602-BKC-AJC<br>
Adv. Pro. No. 06-1220-BKC-AJC-A

not participate. In both courts, Espirito Santo is seeking to hold BDO International vicariously liable as the alleged principal of BDO Seidman.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff asserts three claims against BDO International: Count II for vicarious liability for BDO Seidman's alleged negligence;[2] Count III for violation of FDUTPA; and Count V for securities fraud.

1. BDO International is a Netherlands corporation located in Brussels, Belgium. BDO International coordinates member firms in a global accounting network. See October 3, 2006 Deposition of Paul van Elten at 7, excerpts of which are attached as Exhibit 1. Mr. van Elten has been BDO International's International Secretary since 1988 and testified as the representative for BDO International at the first state court trial. February 20, 2007 Trial Testimony of Paul van Elten (A.M.) at 47-49, excerpts of which are attached as Exhibit 2.

2. During the material time period there were approximately 90 member firms in the network. February 20, 2007 Trial Testimony of Paul van Elten (P.M.) at 51, excerpts of which are attached as Exhibit 3.

3. During the relevant time period BDO International employed less than 15 full-time employees. *Id.*

4. BDO Seidman is a member of the BDO network. February 20, 2007 Trial Testimony of Paul van Elten at 49 (Exhibit 2). BDO Seidman is owned by its United States

---

[2] Count II is barred for, among other reasons, for the reasons set forth in BDO Seidman's Motion for Summary Judgment which establishes that there is no basis for underlying liability meaning there can be no vicarious liability.

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

partners. February 15, 2007 Trial Testimony of Sandor Lenner (P.M.) at 26-27, excerpts of which are attached as Exhibit 4; February 20, 2007 Trial Testimony of Paul van Elten (P.M.) at 62 (Exhibit 3). BDO Seidman does not have a parent company. February 14, 2007 Trial Testimony of Sandor Lenner (P.M.) at 116, excerpts of which are attached as Exhibit 5.

5. BDO Seidman performed audits of the financial statements of the Debtor E.S. Bankest L.C. for the years 1998 through 2002. Adversary Comp.¶¶-27-59.

6. BDO International performs no auditing services and played no role in any of the Bankest audits. February 15, 2007 Trial Testimony of Sandor Lenner (P.M.) at 27 (Exhibit 4); February 20, 2007 Trial Testimony of Paul van Elten (P.M.) at 53 (Exhibit 3).

7. BDO International publishes an annual report. *See, e.g.,* Exhibits 6-9 (BDO International Annual Reports for 1999-2002).

8. BDO International never had any contact or relationship with E.S. Bankest LC ("Bankest"). See Affidavit of Paul Van Elten in support of Defendant, BDO International B.V.'s Motion to Dismiss Complaint, ¶13, attached as Exhibit 10.

9. BDO International never made or caused to be made to any person any representation, comment, opinion or other statement concerning any aspect of Bankest's business. *Id.* ¶14.

10. BDO International was never retained by Bankest for any purpose, much less for providing accounting or auditing services. Likewise, BDO International has not received any payment of any kind from Bankest for any reason, including any audit fees, licensing fees,

methodology fees, management fees, business development revenues, or product development revenues. *Id* ¶17.

11. BDO International is funded by member firms who must pay their share of costs determined through a Cost Memorandum and must pay a pro rata share that is based upon the reserves derived from the matters that were referred by other member firms. February 20, 2007 Trial Testimony of Paul van Elten (P.M.) at 24; Member Firm Agreement ("MFA") at 8-1, attached as Exhibit 11.

12. The MFA is a confidential document that is not available to the public. MFA at 19-1.

13. In its Adversary Complaint Plaintiff alleges BDO International made misrepresentations in its Annual Reports. Adv. Compl. ¶11.

14. In its 2001 Annual Report, BDO International stated its "structure ensures strict quality controls." BDO International 2001 Annual Report at 3, attached as Exhibit 8.

15. In its 1999 Annual Report, BDO International describes the accounting network as a "globally oriented organization, dedicated in particular to expanding businesses, and the people behind them." BDO International 1999 Annual Report at 6, attached as Exhibit 6.

16. There is no evidence that the Debtor or any of its agents ever saw any of BDO International's annual reports, statements on its web-site, or its promotional materials.

17. BDO International publishes "technical manuals" relating to a variety of topics that are available to member firms in the BDO network. MFA at 1-1, Exhibit 11. These Manuals

are not publicly available. *Id.* at 13.2-13.3, Exhibt 11. There is no evidence that the Debtor had access to any of these technical manuals.

19. Bankest issued debenture notes and borrowed monies for the stated purpose of purchasing accounts receivable. Adv. Compl. ¶19.

## SUMMARY JUDGMENT STANDARD

It is well-settled that the Court should enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, taken together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R. CIV.P. 56(c). This Court stated:

> Once the moving party identifies those portions of the record that demonstrate the absence of a genuine issue of material fact, [a] party opposing summary judgment must set forth specific facts showing a genuine issue for trial, and may not rely on mere allegations . . . .
>
> * * *
>
> Where the factual context renders the non-moving party's position implausible, it must come up with more persuasive evidence than would be otherwise necessary to defeat summary judgment.

*Kapila v. Espirito Santo Bank*, 374 B.R. 333, 337 (Bankr. S.D. Fla. 2007). The party opposing summary judgment must demonstrate more than a mere "scintilla of evidence" supporting the non-movant's position. *Id.*

### I. Plaintiff's FDUTPA Claim is Merit less

Plaintiff's claim that BDO International violated FDUTPA lacks merit for a host of reasons and summary judgment should be entered dismissing Count III. First, there is no genuine issue of material fact that none of BDO International's representations are "deceptive."

BROAD and CASSEL

CASE NO.: 04-17602-BKC-AJC<br>
Adv. Pro. No. 06-1220-BKC-AJC-A

Second, FDUTPA does not apply to securities claims such as those being alleged in this proceeding. Third, Plaintiff cannot demonstrate reliance or that the Debtor was aggrieved. Finally, Plaintiff's claims arising before July 1, 2001 are barred for lack of standing.

### A. There is No Evidence that BDO International Engaged in any Deceptive Practices

Section 501.201, Fla. Stat., *et seq.*, is modeled after the Federal Trade Commission's enabling act and is designed to protect Florida's consumers from being taken advantage of or deceived. FLA. STAT. § 501.202(2) (2006); *Rogers v. Cisco Systems, Inc.*, 268 F. Supp.2d 1305, 1315 (N.D. Fla. 2003) (describing FDUTPA as "Florida's little FTC Act."). Although Plaintiff alleged that BDO International engaged in unconscionable practices, none of the alleged conduct even remotely approaches an unconscionable act. Plaintiff does not allege that BDO International violated any specific portion of FDUTPA, any rules adopted there under or under the FTC Act. *See Rogers*, 268 F. Supp.2d at 1315 (discussing bases of liability under FDUTPA).

Thus, Plaintiff's claim can only be assessed as an alleged deceptive practice. It is likely that Florida courts will adopt the FTC's definition of a deceptive practice which is a practice "that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium Comms. & Fulfillment v. Office of Attorney General,* 761 So.2d 1256, 1263 (Fla. Ct. App. 2000) (citing *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 4131 (9th Cir. 1986). The *Millennium* court noted that the alleged deception must cause more than a mere possibility of deceiving a reasonable consumer who is relying on the practice. *Id.*

First, BDO International's statement that its "structure ensures strict quality controls" does not relate to a material fact. Courts have construed similarly amorphous representations as

7<br>
**BROAD and CASSEL**

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

not constituting statements of material facts. *Pappas v. Frank Azar & Assocs., P.C.*, 2007 U.S. Dist. LEXIS 66368, at *15 (D. Colo. 2007) (citing *Park Rise Homeowners Ass'n v. Resource Constr. Co.,* 155 P.3d 427, 434-36 (Colo. Ct. App. 2006)); *Saltzman v. Pella Corp.,* 2007 U.S. Dist. LEXIS 19650, at *10-11 (N.D. Ill. 2007). The *Pappas* court noted that the term "quality construction" was a statement of opinion not fact because it depended on a frame of reference. The court also noted that the allegedly deceptive representation must be capable of "measure or calibration." 2007 U.S. Dist. LEXIS 66368, at *15. Here, the statement "strict quality controls" is not capable of measurement. It is clear -- and not subject to dispute – that the statement is not deceptive.

Second, BDO International's statement that it, meaning the international accounting network, is a global organization, is true. There is no dispute that there are member accounting firms on every continent except Antarctica. Moreover, the phrase "global enterprise" is not susceptible of being a material fact.

Third, other representations referenced by Plaintiff are likewise not statements of fact and not deceptive. For example, the claim that: "The stringent conditions with which each member firm has to comply to be part of the BDO network are paramount" (See Adversary Complaint ¶65) includes key descriptive words such as "stringent" and "paramount" which are not capable of measure or calibration and dependent on the speaker's frame of reference.

Accordingly, Plaintiff cannot prove that BDO International made a single representation that was deceptive and summary judgment on Count III is warranted.

BROAD and CASSEL

### B.     FDUTPA Does Not Apply to Claims Involving Securities Transactions

At the heart of Plaintiff's claims is the allegation that Bankest suffered damages as a result of securities transactions, namely its sale of debentures. Indeed, Plaintiff asserts a separate claim for violation of the federal securities laws. Adv. Compl. Count V. It is well-settled that FDUTPA does not apply to securities transactions because those transactions are adequately regulated by the federal securities laws.

The overwhelming majority of federal courts hold that deceptive and unfair trade practices acts do not apply to securities transactions. The court in *Crowell v. Morgan Stanley Dean Witter*, 87 F. Supp.2d 1287, 1294-95 (S.D. Fla. 2000) held that FDUTPA does not apply to securities claims. Likewise, the court held in *Rogers* that FDUTPA did not apply to actions involving securities transactions. 268 F. Supp.2d at 1316 (granting motion to dismiss). The *Rogers* court cited 14 decisions of other federal courts that rejected application of similar statutes to securities transactions. The FTC Act upon which FDUTPA is modeled has generally been construed not to apply to securities transactions. The reasoning in *Crowell* and *Rogers* is sound given the extensive regulation of securities transactions under the federal securities laws.

Plaintiff's claims clearly involve securities transactions. First, Plaintiff is asserting a claim for alleged securities fraud. Second, and assuming that Plaintiff can demonstrate reliance --it cannot— on the alleged deceptive practices, the only action taken in reliance thereon, ends with the sale of Bankest securities.

Accordingly, BDO International respectfully submits that the Court should follow the overwhelming majority of courts which have considered this issue and grant summary judgment

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

in its favor as to Plaintiff's FDUTPA claim (Count III) because it relates to securities transactions.

### C. Count III Should be Dismissed Because There is No Evidence of Reliance or Damages by the Debtor

Plaintiff can point to no evidence that the Debtor or any of its agents saw or relied upon any of the alleged representations made by BDO International. In a typical FDUTPA claim, a consumer will sue a company based upon a deceptive or unfair practice that the consumer experienced, or at least witnessed. Here there is no causal link between Bankest's eventual insolvency at the hands of its crooked management and BDO International's allegedly deceptive advertisements.

In *Berry v. Budget Rent-A-Car Sys., Inc.*, 497 F. Supp.2d 1361, 1368 (S.D. Fla. 2007), the court noted that plaintiffs' claim related to allegedly deceptive advertising, but dismissed the claim because plaintiffs did not allege reliance. Implicit in the court's decision is the requirement of reliance for a FDUTPA claim. *Id.* ("the Complaint is entirely devoid of allegations regarding any advertisements or descriptions of the CRF's purpose that Plaintiffs relied upon. This failure is ultimately fatal to their claim . . . .").

The decisions by a few Florida courts that a plaintiff alleging a FDUTPA claim need not prove fraud are inapposite. Those decisions appear to emanate from decisions construing the FTC Act which either find that acts other than deceptive practices can support a violation which is not at issue here or that a misrepresentation although "**innocently made**" can support a violation. *See, e.g., Rollins, Inc. v. Heller*, 454 So. 2d 580, 584 (Fla. 3d DCA 1984)(citing *D.D.D. Corp. v. FTC*, 125 F.2d 679, 682 (7th Cir. 1942)).

10

BROAD and CASSEL

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

As a corollary and closely related concept, plaintiffs asserting FDUTPA claims must prove they were "aggrieved" by the purportedly deceptive conduct. *Natural Answers, Inc. v. Smithkline Beecham Corp.,* 2008 U.S. App. LEXIS 12569, at *20 (11th Cir. Jun. 13, 2008); *Mclean v. GMAC Mortgage Corp.,* 2008 U.S. Dist. LEXIS 36143, at *42 (S.D. Fla. 2008) (dismissing FDUTPA claims on summary judgment because plaintiff did not show how it was harmed by GMAC's failure to disclose its annual statements). The Eleventh Circuit held that a plaintiff asserting a FDUTPA claim "must have been aggrieved by the alleged unfair and deceptive act." *Natural Answers, Inc.,* 2008 U.S. App. LEXIS 12569, at *20.

The Debtor cannot show it was aggrieved by practices of which it was not even aware. Even assuming that BDO International's representations were found to be deceptive, there is no evidence that Bankest – or any other person – took any action in reliance on such representations.

### D.  Plaintiff's FDUTPA Claims Arising Before July 1, 2001 Are Barred

Prior to July 1, 2001, only consumers could assert claims for violations of FDUTPA. *Portionpac Chem. v. Sanitech Sys.,* 217 F. Supp.2d 1238, 1253 (M.D. Fla. 2002)(dismissing claim because plaintiff was not involved in a consumer transaction with defendant). FDUTPA was amended on July 1, 2001 to permit persons and not simply "consumers" to recover actual damages. Claims arising before July 1, 2001, however, are barred because Plaintiff is not a consumer. *Guyana Tel. & Tel. v. Melbourne Int'l Comms.*, 329 F.3d 1241, 1247 (11th Cir. 2003); *Advance Prot. Techs., Inc. v. Square D. Co.*, 390 F. Supp.2d 1155 (M.D. Fla. 2005). The

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

Eleventh Circuit found that the 2001 amendment to FDUTPA did not apply retroactively to resuscitate claims by non-consumers. *Guyana*, 329 F.3d at 1247.

Here, the Debtor was not a "consumer" as that term was defined by FDUTPA and Plaintiff's attempt to assert claims that originated before July 1, 2001 on behalf of Bankest is barred. Plaintiff's claim that BDO International made deceptive statements before July 1, 2001, thus, is barred by the Debtor's lack of standing.

## II. Count V for Alleged Securities Fraud Totally Lacks Merit

Plaintiff's securities fraud claim is a frivolous claim and there is no evidence to support any of the elements of such a *primary* claim against BDO International. The elements of a claim under 15 U.S.C. §78j(b)(Section 10(b)) and SEC Rule 10b-5 are: (1) the defendant misrepresented or failed to disclose a material fact when under a duty to disclose; (2) the misrepresentation or omission was in connection with the purchase of sale of a security; (3) the defendant intentionally or with reckless disregard for the truth communicated the misrepresentation or omission; (4) the misrepresentation or omission proximately caused the plaintiff to enter into the transaction; and (5) the misrepresentation or omission proximately caused damages. *See Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194 (11th Cir. 2001).

### A. BDO International Did Not Misrepresent Any Material Facts "in Connection With" Bankest's Sale of Securities

While far from a model of the requisite detailed pleading necessary to even assert a securities fraud claim, at best,[3] Plaintiff's Adversary Complaint alleges that BDO International

---

[3] Indeed, Plaintiff's securities fraud claim fails to meet the requirements of a properly pled claim under the Eleventh Circuit's holding in *Garfield v. NDC Health Corp.,* 466 F.3d 1255,

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

misrepresented its (1) control over BDO Seidman; (2) its global network; and (3) its superior quality controls.  Plaintiff does not allege and cannot allege that BDO International failed to disclose any material fact.

Plaintiff's claim is barred, because, assuming arguendo, the statements were false, they did not relate to the security in question, Bankest, and they were not material.  Indeed, BDO International's advertisement about strict quality control is an opinion and not a fact because its truth cannot be tested.  *See In re Winn-Dixie Stores*, 531 F. Supp.2d 1334, 1344 (M.D. Fla. 2007)("Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions."); *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 746 (7th Cir. Ill. 1997)("Mere sales puffery is not actionable under Rule 10b-5")(citing *Searls v. Glasser*, 64 F.3d 1061 (7th Cir. 1995); *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1217-18 (1st Cir. 1996); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996); *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993)).

The decision in *Pub. Sch. Teachers Pension & Retirement Fund v. Ford Motor Co. (In re Ford Motor Co. Sec. Litig.)*, 381 F.3d 563 (6th Cir. Mich. 2004) is particularly illustrative in this context.  There, the Sixth Circuit affirmed dismissal of securities fraud claims against Ford in connection with numerous statements, including statements about Ford's commitment to quality, because those statements were not actionable. The Court noted:

---

1262 (11th Cir. 2006)("For claims brought under the Exchange Act, including Appellants' claims under Section 10b . . . the complaint must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.").

13
BROAD and CASSEL

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

> In their complaint, plaintiffs allege that Ford made many misleading statements regarding its commitment to quality, safety, and corporate citizenship, such as: 1) "At Ford quality comes first."; 2) "We aim to be the quality leader"; 3) "Ford has its best quality ever"; 4) "Ford is "taking across-the-board actions to improve . . . [its] quality."; 5) Ford has made "quality a top priority"; 6) "Ford is a worldwide leader in automotive safety"; 7) Ford has made "quality a top priority"; … 12) Ford's "greatest asset is the trust and confidence . . . [it] has earned from . . . [its] customers"; 13) Ford "is going to lead in corporate social responsibility." Such statements are either mere corporate puffery or hyperbole that a reasonable investor would not view as significantly changing the general gist of available information, and thus, are not material, even if they were misleading. All public companies praise their products and their objectives. Courts everywhere "have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace - loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available."   .   .   .   .
>
> The same is true with respect to statements such as (1) "We want to ensure that all our vehicles have world-class quality[,] . . . developing cars and trucks that are *defect-free*" and (2) "We're also insisting our suppliers maintain Ford's **stringent quality standards."**

*Id.* at 570-71 (emphasis supplied). Indeed, Judge Moore cited *Ford* in dismissing a securities fraud claim and stated: "General flowery advertising language, such as this assurance of 'peace of mind,' is not generally actionable as a securities fraud." *Cordova v. Lehman Bros.*, 526 F. Supp.2d 1305, 1314 (S.D. Fla. 2007).

None of the statements BDO International was alleged to have made related to Bankest. Indeed, BDO International's advertisements have nothing to do with Bankest or any security. Thus, Plaintiff cannot prove the critical "in connection with" element for a securities fraud claim. Under Section 10(b) the Plaintiff must demonstrate that the misrepresentation bore a nexus to the security. *See In re Financial Corp of America Shareholder Litig.*, 796 F.2d 1126, 1130 (9th Cir.

1986)(mistaken accounting advice did not relate to securities transaction). While the "in connection with" element is liberally construed, it cannot be extended far past its natural boundaries to include statements that do not "touch" upon or relate to any security.

### B.    Plaintiff Cannot Prove the Scienter Element of Its Securities Fraud Claim

Plaintiff bears the burden of proving that BDO International intentionally or with severely reckless disregard for the truth made misrepresentations or omissions. BDO International was, however, totally unaware of Bankest and therefore could not have acted with the requisite degree of scienter to support a securities fraud claim.

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to reduce the spate of securities fraud claims filed in the United States. Congress demanded that private securities litigants plead and prove that the defendant acted with heightened intent. *See Tellabs v. Makor Issues & Rights*, 127 S. Ct. 2499, 2509 (2007). Securities plaintiffs must prove that the defendant acted intentionally to deceive or "acted with a severely reckless state of mind." *Bryant v. Avado Brands,* 187 F. 3d 1271, 1273 (11th Cir. 1999). The use of the modifier "severe" with recklessness indicates the degree of culpability required. The Eleventh Circuit explained that severe recklessness is an "extreme departure" from ordinary care. *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1264 (11th Cir. 2006). It is appropriate to grant summary judgment when scienter is found lacking. *In re Acceptance Ins. Cos., Sec. Litig*., 352 F. Supp. 2d 940, 962 (D. Neb. 2004)("The absence of . . . scienter . . . is sufficient to support a motion for summary judgment.")(citations omitted); *Granville Market Letter, Inc. v. Oppenheimer & Co.*, 610 F. Supp. 922 (S.D. Fla. 1985).

CASE NO.: 04-17602-BKC-AJC<br>Adv. Pro. No. 06-1220-BKC-AJC-A

As with the other elements of a securities fraud claim, there is no evidence to demonstrate that BDO International engaged in any behavior towards Bankest or any down line purchaser of its securities. Indeed, by definition, a person cannot intend harm when unaware of the security or the transaction. Unfortunately the only persons who acted with scienter were the Bankest employees who engineered the fraud.

Here, Plaintiff cannot adduce any evidence that BDO International acted intentionally or with severely reckless disregard for the truth.

### C. Plaintiff Cannot Prove Reliance, Transaction Causation or Loss Causation

Plaintiff also cannot establish the essential elements of reliance, transaction causation or loss causation. In this Circuit, the plaintiff must prove that the misrepresentation motivated the plaintiff to engage in the securities transaction (transaction causation) and that the misrepresentation proximately caused Plaintiff's damages (loss causation). *Robbins v. Koger Properties,* 116 F.3d 141, 1447 (11th Cir. 1997). The Eleventh Circuit stated that "transaction causation" is met when the misrepresentation caused the Plaintiff to engage in the challenged transaction. *Id.* The *Robbins* court likened it to the more familiar "but for" causation. *Id.*

By contrast, loss causation requires the plaintiff to prove that the misrepresentation caused the loss. *Id.* The court reiterated "loss causation describes the link between the defendant's misconduct and the plaintiff's economic loss." *Id.* (citation omitted). The plaintiff must demonstrate the misrepresentation was a "substantial" reason for the decline in the investment's value.

**BROAD and CASSEL**

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

In *Robbins,* the Eleventh Circuit reversed denial of judgment for *Deloitte & Touche*. The Plaintiffs alleged that Deloitte which audited Koger's financial statements and caused Koger's price to be artificially inflated, but Plaintiffs offered no evidence that Deloitte had anything to do with Koger's subsequent decline in value.

Another essential element of a securities fraud claim is a showing of justifiable reliance by the plaintiff on the misrepresentation. The Supreme Court reiterated: "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the §10(b) private cause of action." *Stoneridge,* 522 U.S. at 8. There is no evidence that the Debtor knew of BDO International's very existence or any of its alleged <u>misrepresentations</u>. Hence, Plaintiff cannot prove reliance.[4] Likewise, without having seen or heard the alleged misrepresentations, Plaintiff cannot prove that the statements motivated the Debtor to engage in the securities transactions at issue. And, there is no evidence that BDO International's alleged misrepresentations – which did not even concern or relate to Bankest – proximately caused Bankest's fraud scheme to collapse.

BDO International's representations are the proverbial tree falling in the forest. Because the Debtor did not see them, it could not have relied upon them, nor sold securities because of them. Likewise, BDO International's statements could not have triggered Plaintiff's alleged loss.

### D.    Count V is Barred by the Supreme Court's Ruling in *Stoneridge*

If it were not enough that Plaintiff lacks evidence to prove any of the elements of its securities fraud claim, a recent ruling by the United States Supreme Court disposes of Count V. The Court re-affirmed the concept that only primary securities fraud actors are viable defendants.

---

[4] Even if the Debtor could prove that it saw any of the alleged misrepresentations, it cannot demonstrate that its purported reliance was justifiable given the advertising nature of the statements. *See Cordova*, 526 F. Supp.2d at 1314.

17

**BROAD and CASSEL**

CASE NO.: 04-17602-BKC-AJC
Adv. Pro. No. 06-1220-BKC-AJC-A

Prior to 1994, securities plaintiffs thrived on suing so-called secondary actors, such as banks, lawyers and accountants on aiding-and-abetting, or disguised aiding-and-abetting, theories. The Supreme Court seemingly foreclosed such attenuated claims in *Central Bank of Denver, N.A., v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191 (1994). The Court held that aiding-and-abetting claims are not permitted under Section 10(b). 511 U.S. at 166. The Court noted that securities fraud claims often posed a danger of vexatiousness especially as they related to claims against secondary actors such as accounting firms. *Id.* at 189. In 1995 when it enacted the PSLRA, Congress permitted only the SEC to assert aiding-and-abetting claims, not private shareholders. Yet, despite these clear pronouncements, plaintiffs continued to sue "secondary actors" arguing that Section 10(b)(a) applied and that these actors were engaged in a scheme to defraud.

On January 15, 2008, the Supreme Court squelched those claims in *Stoneridge*. 128 S.Ct. 761. There, Stoneridge sued several entities, including the deceived auditors, for losses arising out of its purchase of Charter Communications stock. *Id.* at 766-67.

The Eighth Circuit affirmed the dismissal of these claims as did the Supreme Court. Justice Kennedy held that "[t]he conduct of a secondary actor must satisfy each of the elements or preconditions of liability. . . ." *Id.* at 769. Justice Kennedy rejected the "scheme to defraud" argument and noted there was an absence of reliance such that the claim could not proceed. *Id.* ("Respondents had no duty to disclose; and their deceptive acts were not communicated to the public. No member of the investing public had knowledge, either actual or presumed, of respondents' deceptive acts during the relevant times. Petitioner, as a result, cannot show reliance

BROAD and CASSEL

CASE NO.: 04-17602-BKC-AJC<br>Adv. Pro. No. 06-1220-BKC-AJC-A

upon any of respondents' actions except in an indirect chain that we find too remote for liability.").

Here, Plaintiff cannot prove the elements of a primary cause of action for securities fraud against BDO International as it is required to do.

## CONCLUSION

For the reasons and authorities cited above, BDO International respectfully requests that the Court enter summary judgment in BDO International's favor on Counts III and V.

**BROAD AND CASSEL**
Mark F. Raymond, P.A.
Rhett Traband, P.A.
Attorney for Defendant BDO
 International, BV
One Biscayne Tower, 21st Floor
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone:  (305) 373-9400


 By __/s/ Rhett Traband_____
    Rhett Traband, P.A.
    Florida Bar No. 0028894
    Mark F. Raymond, P.A.

**SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP**
Kevin W. Goering
30 Rockefeller Plaza, 24th Floor
New York, NY  10112
Tel:  (212) 332-3800
Fax:  (212) 332-3888
Of Counsel

CASE NO.: 04-17602-BKC-AJC<br>
Adv. Pro. No. 06-1220-BKC-AJC-A

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on June 27, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List set forth below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _____/s/ Rhett Traband_____<br>
Rhett Traband, P.A.

## SERVICE LIST
### (Adversary Proceeding)

| | |
|---|---|
| **Warren R. Trazenfeld, Esq.**<br>Warren R. Trazenfeld, PA,<br>3225 Aviation Avenue<br>Suite 600,<br>Miami, FL 33133-4741<br>Tel: (305) 860-1100<br>Fax: (305) 858-6123<br>**Counsel for Plaintiff** | **Mark Bloom, Esq.**<br>**John B. Hutton, Esq.**<br>GREENBERG TRAURIG, P.A.<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br>**Counsel for BDO Seidman, LLP** |
| **Paul J. Battista, Esq.**<br>**Allison R. Day, Esq.**<br>Genovese Joblove & Battista, Esq.<br>100 SE 2nd Street, 44th Floor<br>Miami, Florida 33131<br>Tel: (305) 349-2300<br>Fax: (305) 349-2310<br>**Co-Counsel for Plaintiff** | **Karen Y. Bitar, Esq.,**<br>**Adam Cole, Esq.**<br>GREENBERG TRAURIG, LLP<br>200 Park Avenue<br>New York, NY 10116<br>Tel: (212) 801-9200<br>Fax: (212) 801-6400<br>**Counsel for BDO Seidman, LLP** |
| **Office of the U.S. Trustee**<br>51 SW First Avenue<br>Room 1204<br>Miami, Florida 33130 | **Daniel F. Blonsky, Esq.**<br>COFFEY BURLINGTON<br>Office in the Grove, Penthouse A<br>2699 S. Bayshore Drive<br>Miami, Florida 33133 |

MIA1\COMMLIT\391619.3<br>
34090/0001

20<br>
BROAD and CASSEL