UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                          Chapter 11

E.S. BANKEST, L.C.,                                Case No. 04-17602-BKC-AJC
                Debtor,

_____/

LEWIS B. FREEMAN, Responsible Officer
for the Reorganized Debtor E.S. Bankest, L.C.,
a Florida limited liability corporation,

                Plaintiff,

                                                      Adv. Pro. No. 06-1220-BKC-AJC-A

v.

BDO SEIDMAN, LLP, BDO
INTERNATIONAL B.V., and SANDOR
LENNER,

                Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO BDO INTERNATIONAL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Plaintiff Lewis B. Freeman ("Freeman" or "Plaintiff"), in his capacity as Responsible Officer for the Reorganized Debtor E.S. Bankest, L.C. ("Bankest"), by and through the undersigned counsel, responds to the Motion of Defendant BDO International, B.V. for Partial Summary Judgment.

**INTRODUCTION**

      BDO International moves for partial summary judgment on Count III of Plaintiff's Complaint for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") and on Count V for securities fraud. BDO International's motion should be denied.

BDO International made numerous public statements guaranteeing the quality of the audits performed by co-defendant BDO Seidman, including the audits of Plaintiff Bankest. Year after year BDO International promised "strict quality control" over BDO Seidman at the same time BDO Seidman certified as real hundreds of millions of dollars of *fake* accounts receivable at Bankest and its predecessor. Yet now BDO International claims its public promises in its own annual reports were mere "puffery" and disavows any responsibility for BDO Seidman's audits. As the United States District Court held, "either [BDO International is] engaged in a global fraud by producing promotional materials that are a 'pack of lies,' or [BDO is] … part of a 'single, closely intertwined network.'" *Teachers' Retirement System of LA v. A.C.L.N., Ltd.*, No. 01 Civ. 11814(MP), 2003 WL 21058090, at *1 n.4 (S.D.N.Y. May 15, 2003).

BDO International engaged in a deceptive and unfair practice under FDUPTA and BDO International's motion for summary judgment on Count III should be denied.

BDO International seeks to avoid this result by telling the Court that FDUPTA requires proof of reliance as an element of the claim. (Mot. at 10-11.) This is false, and contrary to specific, on-point Florida law.

> A party asserting a deceptive trade practice need not show actual reliance on the representation or omission at issue. . . . That is so because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.

*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-94 (Fla. 1st DCA 2001).

However, Plaintiffs agree that the securities fraud claim should be dismissed in light of recent U.S. Supreme Court precedent because Plaintiffs will not prove specific reliance on a specific public statement. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761 (2008).

**STATEMENT OF DISPUTED FACTS**

Plaintiff submits herewith a Statement of Disputed Facts that Preclude Summary Judgment, which include the following:

1. BDO International made false statements promising the public that it had strict quality control over BDO Seidman's audits:

    - "The stringent conditions with which each member firm has to comply … are paramount. They not only guarantee that our high standards will be met…" (Exh. A [1999 BDO International Annual Report] at 9);

    - BDO International personnel are "responsible for … implementing international quality control". (*Id.* at 8; Exh. B [2000 BDO International Annual Report] at 6 (same));

    - "[T]he organisation's structure ensures strict quality control." (Exh. C [2001 BDO International Annual Report] at 3);

    - "[W]e, at BDO International … ensure that we consistently provide the highest quality of professional services." (Exh. B [2000 BDO International Annual Report] at 3);

    - "BDO firms are careful to adhere to strict quality criteria." (Exh. D [2002 BDO International Annual Report] at 2.)

2. BDO International now disclaims its statements about its control over BDO Seidman, calling the statements "puffery" and "aspirational." *See* (Exh. J [Appellate Answer Brief] at 26-27; Exh. K [2/5/08 Oral Argument Transcript in *Banco Espirito Santo Int'l, Ltd. v. BDO Int'l*, Case No. 3D07-599].)

3. BDO International failed to exercise the control it promised and advertised it had

3

over BDO Seidman and, as a result, BDO Seidman conducted grossly negligent audits that were not in accordance with Generally Accepted Auditing Standards and that violated BDO International and BDO Seidman's audit manuals.  *See* (Exh. N [2/20/07 a.m. Tr.] at 4842-44; Exh. G [Phase I Verdict Form in *Banco Espirito Santo Int'l Ltd. v. BDO Seidman*, Case No. 04-14009 CA 31 ("Phase I Verdict Form")]; Exh. H [Phase II Verdict Form in *Banco Espirito Santo Int'l Ltd. v. BDO Seidman*, Case No. 04-14009 CA 31 ("Phase II Verdict Form")].)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), as incorporated by the Federal Rule of Bankruptcy Procedure 7056 and 9014(c), summary judgment shall be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2000) ("It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact."). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *In re Optical Technologies, Inc.*, 246 F.3d at 1334 (citing *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)).

## ARGUMENT

**I.    FDUPTA Applies to BDO International's False Statements Promising Quality Control over BDO Seidman's Audits**

The evidence of BDO International's false statements precludes summary judgment because the evidence proves – or at the very least creates a genuine issue of material fact – that BDO International engaged in a deceptive act or unfair practice.[1]  BDO International made

---

[1] A FDUPTA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Fla. Stat. § 501.201 *et seq.*; *Kia Motors America Corp. v. Butler,* 985 So. 2d 1133 (Fla. 3d DCA 2008).

4

express statements that it ensured the quality of BDO Seidman's audits. (Exh. A [1999 BDO International Annual Report] at 9 ("The stringent conditions with which each member firm has to comply … are paramount. They not only guarantee that our high standards will be met…" ); *id.* at 8 (BDO International personnel are "responsible for … implementing international quality control"); Exh. B [2000 BDO International Annual Report] at 6 (same); *id.* at 3; Exh. C [2001 BDO International Annual Report] at 3 ("the organisation's structure ensures strict quality control"); Exh. E [Member Firm Agreement]; Exh. D [2002 BDO International Annual Report] at 2.)

BDO International, however, failed to exercise the control it promised and advertised it had over BDO Seidman. Despite its promises, BDO International did nothing to keep its promise of "strict quality control." (Exh. N [2/20/07 a.m. Tr.] at 4282-83.) BDO International now states that because it has only ten people working for it, it was incapable of such strict quality control. (Exh. O [2/20/07 p.m. Tr.] at 4953.) As a result, BDO Seidman conducted grossly negligent audits that were not in accordance with Generally Accepted Auditing Standards and that violated BDO International and BDO Seidman's audit manuals. *See* (Exh. G [Phase I Verdict Form]; Exh. H [Phase II Verdict Form].)

Worse, now BDO International disavows its public promises of "strict quality control"—even calls those promises "puffery". (Exh. K [2/5/08 Oral Argument Transcript in *Banco Espirito Santo Int'l, Ltd. v. BDO Int'l*, Case No. 3D07-599].) In other words, BDO International lied.

One Court already has so found. The United States District Court for the Southern District of New York held that BDO International's claims that it had nothing to do with the

5

audits of member firms like BDO Seidman were expressly contradicted by the very same annual reports cited here:

> Mr. van Elten's representations that BDO International B.V. is not involved in the activities of its Member Firms or the quality of their work, are explicitly contradicted by International's Annual Reports. Indeed, these reports state that the responsibility for implementing International's quality control and training programs rests squarely in the International Office in Brussels and, even more particularly, with its Chief Executive Officer and its International Secretary, Paul van Elten.

*A.C.L.N.*, 2003 WL 21058090, at *4 (citations omitted).

FDUPTA protects "the consuming public" from practices "likely to mislead" consumers, that offend "established public policy," and that are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2007) (citations omitted). Thus, BDO International's false statements are precisely the type of deceptive practice FDUPTA prohibits. *See Urling v. Helms Exterminator*, 468 So. 2d 451 (Fla. 1st DCA 1985) (reversing directed verdict on FDUPTA claim when evidence that defendant made a false statement); *Dept. of Legal Affairs v. Father & Son Moving & Storage*, 643 So. 2d 22 (Fla. 4th DCA 1994) (citing with approval for FDUPTA application *Peacock Buick, Inc.*, 86 F.T.C. 1532, 1545 (1975) where court held misrepresentations and failure to disclose relevant and material facts were unfair and deceptive acts).

BDO International's cases are inapposite. First, BDO International cites several cases which do not concern false statements and are inapplicable. *See Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (statement not false); *Pappas v. Frank Azar & Assoc., P.C.*, 2007 WL 2683549 (D. Colo. Sept. 7, 2007) (statements not false).

BDO International also attempts to distinguish between statements of fact versus opinion, but that is not the test under the FDUPTA—if the practice at issue is "likely to mislead" even one consumer, it is actionable under FDUPTA. *See Rollins, Inc.*, 951 So. 2d at 869; *PNR, Inc. v. Beacon Prop. Mgt., Inc.*, 842 So.2d 773, 777 (Fla.2003) (holding that the statute "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single practice"). BDO International's representations that it exercised "strict quality control" over the audits of BDO Seidman—now admitted to be false by BDO International—are clearly the type of practice "likely to mislead" consumers which FDUPTA prohibits.

## II.     Plaintiff Has Standing to Assert a FDUPTA Claim Against BDO International

BDO International argues that FDUPTA is inapplicable because there is a securities law claim, but then argues there is no securities law claim against it (and Plaintiffs have withdrawn the claim). (Mot. at 9-10, 12-19.) BDO International cannot have it both ways. The FDUPTA claim concerns BDO International's false statements and the grossly negligent audits that failed to detect the fraud at Bankest. This is independent from any securities law claim.

Thus, the cases cited by BDO International where the plaintiffs were investors who purchased securities in connection with the allegedly false business practice are wholly inapplicable here. *See* Mot. at 9 (citing *Crowell v. Morgan Stanley Dean Witter*, 87 F. Supp. 2d 1287 (S.D. Fla. 2000) (dismissing FDUPTA claim asserted by purchaser of securities for deceptive practices made in connection with the sale of securities); *Rogers v. Cisco Systems, Inc.*, 268 F. Supp. 2d 1305, 1309-10 (N.D. Fla. 2003) (same)).

## III.    Reliance Is Not an Element of a FDUPTA Claim

7

BDO International next argues that FDUPTA requires Plaintiff to prove reliance. Not so. Florida courts are clear that reliance is not an element of a FDUPTA claim:

> A party asserting a deceptive trade practice need not show actual reliance on the representation or omission at issue. . . . That is so because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.

*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-94 (Fla. 1st DCA 2001). BDO International is also incorrect when it states plaintiff must prove fraud to assert a FDUPTA claim. *Urling*, 468 So. 2d at 453 ("A finding of fraud, however, is not necessary to sustain a violation under the [FDUPTA].").

Because reliance is not an element of a FDUPTA claim, BDO International's damages argument fails as well. The actual damages—at a minimum—include the fees paid to BDO, as the grossly negligent audits were worthless. *See, e.g.*, *Urling*, 468 So. 2d at 455 (damages recoverable under FDUPTA include the "diminished value of the goods or services received"). Moreover, the services received were not only diminished, they were worthless. BDO International's services were worthless because it did nothing to "strictly control" the audit of Bankest as promised. Accordingly, BDO Seidman departed from GAAS and its own audit manual and the fraud was never discovered. In the very first audit of Bankest, BDO Seidman's audit manager requested documents required by GAAS, BDO International's and BDO Seidman's audit manuals which would have revealed the fraud. (Exh. L [Rivera Aff.]; Exh. Q [4/17/07 a.m. Tr.] at.1099-1118; Exh. M [2/6/07 p.m. Tr.] at 3452-57, 3462.) BDO Seidman departed from GAAS and the audit manuals by going forward with the audits without these documents. (Exh. R [4/19/07 p.m. Tr.] at 1713-14, 1744-55.) Because of this violation, the

Capital Officers were able to grow the fraud. (Exh. P [4/16/07 a.m. Tr.] at 891-92.) If BDO International would have kept its promise, the fraud would have been stopped before it started. As BDO Seidman's lead audit partner admitted:

> Q. In fact, there were thousands and thousands of fake transactions over seven years, year after year after year after year, right?
>
> A. That's what I've learned during the course of this trial and other proceedings, correct.
>
> Q. And to find the fraud, you only had to find one fake one, right?
>
> A. Yes.

(Exh. S [5/4/07 a.m. Tr.] at 3239.)

Because there is a genuine issue of material fact whether BDO International's false statements caused Bankest's damages, the motion for summary judgment should be denied.

**IV.    Plaintiff's Claims Are Timely**

BDO International misconstrues the statute when it argues that Plaintiff's claims are partially time barred because as a legal entity, it was not a "consumer" with FDUPTA standing. Since 1993—long before Plaintiff's cause of action accrued—FDUPTA's definition of "consumer" has included business organizations such as limited liability companies like E.S. Bankest. Fla. Stat. § 501.203(7); *Guyana Telephone & Telegraph Co. v. Melbourne International Communications*, *Ltd.*, 329 F.3d 1241, 1246-47 (11th Cir. 2003). Thus, Plaintiff has standing and no part of its claim is time barred. BDO International apparently relies on cases finding that business entities lack standing under FDUPTA if their claim arises from their actions as suppliers or producers, and not consumers. *See id.* These cases are inapplicable because

9

Plaintiff was acting as a consumer when it purchases the services of BDO Seidman. *See* (Exh. F [BDO Engagement Letters].)

## CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment should be denied.

Dated: September 16, 2008

                                            Respectfully submitted,

THOMAS, ALEXANDER & FORRESTER LLP
Co-Counsel for Plaintiff
14 27th Avenue
Venice, CA 90291
Tel:  (310) 961-2536
Fax: (310) 526-6852

and

WARREN R. TRAZENFELD, PA
Co-Counsel for Plaintiff
3225 Aviation Avenue, Suite 600
Miami, FL 33133-4741
Tel.  (305) 860-1100
Fax. (305) 858-6123

and

GENOVESE JOBLOVE & BATTISTA, P.A.
Co-Counsel for Plaintiff
Bank of America Tower, Suite 4400
100 Southeast Second Street
Miami, FL 33131
Tel. (305) 349-2300
Fax. (305) 349-2310


By:_____/s/ Allison R. Day_____
      Paul J. Battista, Esq.
      Florida Bar No. 884162
      Allison R. Day, Esq.
      Florida Bar No. 494097

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by U.S. mail, postage prepaid, over-night mail, hand-delivery and/or electronic mail upon all parties on the attached Service List, this 16th day of September, 2008.

By:  /s/ Allison R. Day
　　　　Allison R. Day

**Service List**

Daniel A. Miller, Esq.
Broad & Cassel
One North Clematis Street, Suite 500
West Palm Beach, FL 33401

Kevin W. Goering, Esq.
Lisa M. Lewis, Esq.
Sheppard, Mullin, Richter & Hampton, LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112

John B. Hutton, Esq.
Greenberg Traurig, P.A.
1221 Brickell Ave.
Miami, FL 33131

Karen Y. Bitar, Esq./Adam D. Cole, Esq.
Greenberg Traurig, P.A.
885 Third Ave.
New York, NY 10166

Daniel F. Blonsky, Esq.
Burlington, Weil, Schweip, Kaplan & Blonsky, P.A.
Office in the Grove, Penthouse A
2699 South Bayshore Drive
Miami, FL 33133

Office of the U.S. Trustee
51 S.W. First Ave., Room 1204
Miami, FL 33130

Rhett Traband, Esq.
Mark Raymond, Esq.
Broad and Cassel
One Biscayne Tower
21st Floor
2 S. Biscayne Blvd
Miami, Florida 33131

Daniel L. Gold, Esq.
800 Brickell Ave # 902
Miami, FL 33131