3.9 The Member Firm shall promptly and fully notify BDO BV of any actual, suspected or threatened infringement in the Territory of any Intellectual Property the subject of this Agreement which comes to the Member Firm's notice and the Member Firm shall at the request and expense of BDO BV do all such things as may be reasonably required to assist BDO BV or any other party in taking or resisting any proceedings in relation to any such infringement, or in assisting BDO BV or the said other party to maintain the validity and enforceability of the said Intellectual Property whether in or outside the Territory.

3.10 a. Subject to the Member Firm receiving a request pursuant to sub-clause (b) below the Member Firm shall not apply for any Intellectual Property in respect of the International Name or the BDO Acronym either in or outside the Territory.

b. The Member Firm shall, if and whenever required to do so by BDO BV (at the cost of BDO BV), apply for or join with BDO BV in applying for (whether in the name of BDO BV or otherwise) any Intellectual Property in respect of the International Name and/or the BDO Acronym either in or outside the Territory as BDO BV may in its sole discretion decide and will (at the cost of BDO BV) sign and execute all such documents and do all such things as BDO BV considers necessary to vest the said Intellectual Property in BDO BV for and on behalf of the Foundation or otherwise as BDO BV may direct.

3.11 The Member Firm shall not do or authorise any third party to do any act which would or might invalidate or be inconsistent with any of the Intellectual Property the subject of this Agreement and shall not omit or authorise any third party to omit or do any act which, by its omission would have that effect or character.

3.12 Subject only to the express provisions of this Agreement it is agreed and declared that as between the parties hereto all the proprietary and user rights in and to the International Name, the BDO Acronym, the BDO Technical Manuals and the BDO Software shall remain in the Foundation and any use of the same by the Member Firm hereunder (together with all goodwill associated therewith) shall enure for the benefit of the Foundation. Nothing in this Agreement shall give the Member Firm any rights (otherwise than as a licensee) in respect of the International Name or the BDO Acronym or the BDO Technical Manuals or the BDO Software or any Intellectual Property or of the goodwill associated therewith and the Member Firm hereby acknowledges that the Member Firm has not acquired and will not acquire at any time any right or interest (except as a licensee) in respect thereof and that as between the Member Firm and BDO BV all such rights and goodwill are, and shall remain vested in BDO BV for and on behalf of the Foundation.

3.13 If the domestic laws or regulations of the Territory permit the same, the Member Firm shall incorporate, form or otherwise set up a separate entity ("the International Firm") to be called "BDO International" or such other name as BDO BV may, from time to time, notify to the Member Firm with the approval of the Policy Board. The Member Firm shall procure that all Inward Referred Work be performed under the name of the International Firm and that, without limitation to the foregoing, the International Firm be appointed as the statutory auditor of any client initially introduced to the Member Firm by any Other Member Firm.

<u>Outward Referred work</u>

4.    If the Member Firm or a client of the Member Firm shall require Professional Services to be performed outside the Territory, the Member Firm shall (subject to the wishes of the client) refer such client or requirement to an Other Member Firm in the relevant territory. The Member Firm shall use the Referral Guidelines to ensure that instructions are given for the work to be performed by the Other Member Firm in the relevant territory. The Member Firm shall comply at all times with all reasonable requests made by the Other Member Firm for further information or documentation of any kind relating to the said work.

4-1

**Confidential**

BV 01945

Inward Referred Work

5.   If the Member Firm shall receive from BDO BV or an Other Member Firm a request to perform Professional Services for an Other Member Firm or a client of an Other Member Firm the Member Firm shall use its best endeavours to accept such instructions and perform the same. If the Member Firm shall be unable to perform the Professional Services referred to it due to a conflict of interest or other professional considerations it shall promptly notify the Other Member Firm and BDO BV giving (subject to any duty of confidentiality owed to the client) the reasons for the decision.   The Member Firm shall use all reasonable endeavours to give priority to any Inward Referred Work performed by it and shall endeavour to complete the same as expeditiously as possible in accordance with the relevant BDO Technical Manuals.

**Confidential**

BV 01946

5-1

### Duties of the Member Firm

6.1 The Member Firm shall use its best endeavours to promote both the BDO Acronym in and outside the Territory and the Professional Services provided by it to clients and prospective clients in the Territory.

6.2 The Member Firm shall procure that its Partners and employees:
   a. make themselves available at all reasonable times and on reasonable notice to BDO BV or its representatives or employees for the purpose of providing Professional Services, consultation, advice, information gathering and all other similar reasons connected with this Agreement;
   b. at the request of BDO BV assist in the preparation of reports or other papers on professional, technical and other matters relating to the provision of Professional Services in the Territory. It is agreed that copyright or other Intellectual Property rights in the said documentation shall at all times vest upon creation in BDO BV for and on behalf of the Foundation. The Member Firm shall enter into an assignment of such Intellectual Property rights at the request of BDO BV;
   c. at the request of BDO BV assist in the development of any products (whether manuals, computer software, reports, promotional material, databases etc). It is agreed that the Intellectual Property rights in the said products shall at all times vest upon creation in BDO BV for and on behalf of the Foundation. The Member Firm shall enter into an assignment of such Intellectual Property rights at the request of BDO BV;
   d. attend conferences, exhibitions, talks, seminars and other similar arrangements relating to the performance of Professional Services that the Member Firm shall deem necessary for the performance of the duties of the Member Firm under this Agreement or as BDO BV shall reasonably request.

6.3 The Member Firm shall ensure that all persons who are employed or retained by the Member Firm to perform Professional Services shall be suitably qualified for their work and shall at all material times be properly supervised by and under the direct control of a Partner of the Member Firm.

6.4 The Member Firm shall be responsible for making all reasonable enquiries into and obtaining at its own expense all necessary licenses, permits, certificates and approvals (including licences from third parties) and complying with all laws, rules, regulations and other requirements which are necessary or advisable for itself, its Partners and employees for the performance of Professional Services or the use of the International Name or the BDO Acronym or the BDO Technical Manuals or the BDO Software in the Territory

   **REDACTED**    Accordingly, BDO BV neither gives nor shall be deemed to give any guarantee that the International Name and/or the BDO Acronym and/or the BDO Technical Manuals and/or the BDO Software will be free from challenge in all parts of the world.

6.5 While the accuracy of the content of any technical, marketing or information manuals or any other publicity material whether in hard copy format or electronic format or otherwise, produced by, or originating from, any Other Member Firm shall be the responsibility of that Other Member Firm, compliance with legal, regulatory and other requirements in relation to the distribution or publication of the same in the Territory by the Member Firm shall be the responsibility of the Member Firm.

   If the Member Firm becomes aware that the dissemination by any Other Member Firm of any such material would violate any local law in the Territory the Member Firm shall inform BDO BV forthwith.

6-1



**Confidential**

**REDACTED**

Confidential

BV 01948

6-2

<u>Council</u>

7.  During the continuance of this Agreement the Member Firm shall be entitled to appoint one person ("the Representative") to represent and vote on behalf of the Member Firm at meetings of the Council subject in all respects to the Representative complying with the rules and regulations from time to time of the Foundation and the Council.

7-1

**Confidential**

BV 01949

Cost Memorandum

8.1 The Member Firm shall pay to BDO BV within one month after the date of the invoice (or on such later date as BDO BV may specify) such sum or sums as may be determined by BDO BV in accordance with the provisions set out in the Cost Memorandum from time to time issued by BDO BV and approved by the Policy Board and Council or in accordance with separate assessments approved by the Policy Board, including any sales and value added taxes and any other taxes, charges and duties levied, imposed or assessed by any competent authority. The Cost Memorandum may be altered by BDO BV at any time and such alterations notified to the Member Firm but alterations shall first have been approved by the Policy Board and the Council.

8.2 BDO BV shall issue an invoice to the Member Firm stating the sum payable by the Member Firm in accordance with the Cost Memorandum or separate assessments at least one month before the date for payment of the same. Any dispute between BDO BV and the Member Firm in relation to the amounts to be payable by the Member Firm in accordance with the Cost Memorandum shall be settled by negotiation and, if necessary, arbitration in accordance with clauses 25 and 26.

**Confidential**

<u>Professional Rules and Standards</u>

9.1  Subject to the provisions of clause 9.3, the Member Firm shall at all times comply with the principles set out in the BDO Technical Manuals in respect of all Inward Referred Work and Transnational Audits undertaken by the Member Firm. For Local Work the Member Firm shall at least comply with the prescribed local standards and shall use its best endeavours to comply with the BDO Technical Manuals for such work.

Without prejudice to the foregoing the Member Firm shall:
a)  conform to the Quality Standard agreed and issued by the Forum from time to time;
b)  subject its policies, methodologies and work undertaken in relation to Transnational Audits to periodic International Quality Assurance Review;
c)  use its best endeavours to promote the use of International Accounting Standards and International Standards on Auditing and such other international standards as may be agreed from time to time by the Forum;
d)  meet other specific obligations appropriate to Transnational Audits as may from time to time be agreed by the Forum;
e)  abide by the provisions of the Forum's Constitution and the operating procedures approved thereunder; and
f)  adhere to all future commitments of BDO BV to the Forum.

9.2  If the Member Firm shall at any time become aware that it will be in breach of or at variance with any of the domestic laws, accounting standards, professional regulations or generally accepted accounting practices in the Territory by complying with the provisions of any of the BDO Technical Manuals the Member Firm shall forthwith give to BDO BV notice in writing ("the Variation Notice") of the circumstances surrounding the same together with a copy of or detailed information relating to the relevant law, accounting standard or professional regulation and an opinion from the Member Firm setting out how the Member Firm proposes to vary its practice in such a way so as not to be in breach of or at variance with the said laws, standards, regulations or practices.

9.3  On receipt of a Variation Notice from the Member Firm in accordance with clause 9.2 BDO BV shall be entitled to investigate the circumstances surrounding the proposed variation and the Member Firm hereby undertakes to provide BDO BV with all documents and any other relevant material whatsoever that BDO BV may request to enable BDO BV to investigate the same. After investigation BDO BV shall, by notice in writing signed by the Chief Executive Officer ("the Authorising Notice"), set out the way in which the Member Firm may alter its practice from the provisions of the relevant BDO Technical Manuals in order to comply with the laws, standards, practices or professional regulations in force in the Territory.

9.4  Nothing in this Clause 9 shall be deemed to prejudice or affect any duty on the part of the Member Firm as regards any other party to comply with the standards of professional conduct, statements of standard accounting practice, standards relating to Professional Services, domestic laws, generally accepted accounting principles or professional regulations in force or in operation in the Territory.

9-1



Confidential                                                    BV 01951

<u>Periodic Reviews</u>

10.1 The Member Firm shall at the request of BDO BV from time to time submit to review by persons nominated by BDO BV of any Local Work or Inward Referred work performed by the Member Firm and the Member Firm shall supply to the said persons all information and documentation that they may request from the Member Firm so as to enable them to carry out the said review.

10.2 The Member Firm shall submit to any international quality assurance review prescribed by the Forum.

10.3 The Member Firm shall at the request of BDO BV submit from time to time to a review of its management by persons nominated by BDO BV and the Member Firm shall supply to the said persons all information and documentation that they may request from the Member Firm so as to enable them to carry out said review.

10-1

**Confidential**

**BV 01952**

**REDACTED**

Confidential

BV 01953

11-1

Exchange of Information

12.1 The Member Firm agrees that it will promptly supply to BDO BV:

    a. a notice in writing setting out the names of all the Partners of the Member Firm and of any Subsidiaries and the addresses of all offices at which they carry on business and if at any time the said names shall change due to the appointment, resignation, removal or death of any Partners (or any other reason) the Member Firm shall forthwith supply BDO BV with an up to date list of the Partners of the Member Firm and of any Subsidiaries and of all changes to such addresses;

    b. such details as BDO BV may require of the management and partnership structure of the Member Firm and of any changes to such details or of any new proposals or developments in relation to them;

    c. details of all significant changes and developments which the Member Firm shall have implemented or is intending to implement relating to the performance of Professional Services by it;

    d. a copy of any published material which it produces for internal or external use which the Member Firm considers may be of interest to any of the Other Member Firms or to BDO BV relating to the performance of Professional Services;

    e. a description of any significant or material changes in the domestic laws or professional regulations, applicable to the Territory relating to the provision of Professional Services which may or will affect the ability of the Member Firm to perform its obligations in relation to the BDO Technical Manuals or otherwise under this Agreement;

    f. any information which may come into its possession which may materially assist BDO BV or any Other Member Firm to perform Professional Services outside the Territory;

    g. all the documentation and information that BDO BV requests from the Member Firm relating to Inward Referred Work and Outward Referred Work;

# REDACTED

    i. the accounts of the Member Firm drawn up in accordance with International Accounting Standards for each financial year of the Member Firm (in a form acceptable to BDO BV) immediately following the approval of the said accounts by the Partners of the Member Firm but in no case later than 180 days from year-end. Such accounts shall be submitted to BDO BV together with the questionnaire accompanying annual accounts in a form as prescribed from time to time by BDO BV. In the case of a Member Firm consisting of an association or federation or other grouping of firms or bodies, incorporated or otherwise, or other entities, references in this clause to accounts are to the accounts of each such individual firm or other entity, and also of the federation or association, and this clause shall apply to each such set of accounts accordingly. Also in such a case, the accounts shall include consolidated accounts showing the combined results and financial position of all such entities;

    j. any information or documentation reasonably requested by BDO BV in order to enable it to perform its duties under this Agreement.

12.2 BDO BV shall make available to the Member Firm:

    a. any report, recommendation, paper, study or other similar document which BDO BV considers will be beneficial or informative to the Member Firm for the performance of Professional Services by it;

    b. an up to date list of all the Other Member Firms containing the addresses, telephone and fax numbers, e-mail addresses and domain names of the same together with a summary of the Professional Services performed by each of them and BDO BV shall forthwith inform the Member Firm of any changes in the said list from time to time;

    c. in so far as available from Other Member Firms, such specialist staff as may be requested by the Member Firm at rates to be mutually agreed in advance by the parties.

12-1

**Confidential**

**BV 01954**

<u>Confidentiality</u>

13.1 Except as provided in clause 13, the Member Firm shall at all times during the continuance of this Agreement and after its termination:
    a. keep any Restricted Information confidential and not disclose any of it; and
    b. not use any Restricted Information for any purpose other than the exercise of its rights and the performance of its obligations under this Agreement.

13.2 Subject to clauses 13.3 and 13.4, any Restricted Information may be disclosed by the Member Firm to:
    a. any clients or prospective clients;
    b. any governmental or other authority or regulatory body or judge or court of law; or
    c. any employees of either the Member Firm, of any Subsidiaries, or of any of the afore-mentioned persons;

to such extent only as is necessary for the purposes contemplated by this Agreement or as is required by law and subject in each case to the Member Firm using its best endeavours to ensure that the person in question keeps the same confidential and does not use the same except for the purposes for which the disclosure is made.

13.3 The BDO Technical Manuals and BDO Software may only be disclosed by the Member Firm to those falling within the categories set out in clause 13.2 with the prior written consent of BDO BV (except that the BDO Technical Manuals and BDO Software may be disclosed by the Member Firm to its and its Subsidiaries' employees).

# REDACTED



Confidential

BV 01955

.13-1

Exclusivity

14. Except with the prior written consent of BDO BV (including the consent of the Policy Board) which consent will not be unreasonably withheld - the Member Firm shall not during the continuance of this Agreement:

    a. enter into any agreement to refer or receive Professional Services to or from any other person, firm or body other than BDO BV or an Other Member Firm;

    b. display or otherwise use any other name, style or logo except the International Name, BDO Acronym or the Domestic Name in the manner set out in clause 3 hereof in respect of any Professional Services performed by it;

    c. set up or incorporate a branch office or Subsidiary or any other similar body under the control (whether direct or indirect) of the Member Firm performing Professional Services outside the Territory or promote or be engaged whether directly or indirectly in any business to do so;

    d. acquire any interest whatsoever in, or participate in, or in the share capital of, any company, partnership, firm, body (whether incorporated or otherwise), or entity which itself has entered into any agreement to refer or to receive Professional Services to or from any other person or body other than BDO BV or an Other Member Firm;

    e. consent to or allow the Domestic Name or any other name representing the Member Firm to be used or displayed in any directory or other document linking the Member Firm with any company, partnership, firm or other entity providing Professional Services other than BDO BV or an Other Member Firm;

    f. effect any merger or any amalgamation or association of whatsoever nature by which its annual fee income will be increased by 100% or more.

14-1

**Confidential**

BV 01956

Partners, Subsidiaries and Employees

15.1 The Member Firm shall take all necessary steps to ensure that during the continuance of this Agreement:

a. all Partners and Subsidiaries shall agree to be bound by all the terms and conditions of this Agreement in all respects by executing an instrument of adherence in a form acceptable to BDO BV; and

b. all employees of the Member Firm shall not do any acts or omissions which could result in a breach by the Member Firm of the terms and conditions of this Agreement.

15.2 Where the Member Firm is a partnership or other unincorporated association, and without prejudice to the provisions of clause 16, the Member Firm shall be regarded as continuing for the purposes of this Agreement, notwithstanding the admission of new Partners or the retirement of Partners, provided that this clause 15 is complied with and clause 14 is not contravened.

**Confidential**

BV 01957

15-1

Termination

16.1 Subject to the provisions of clause 16.2 this Agreement may be terminated by either party giving to the other not less than two years' written notice.

16.2 BDO BV may (with the approval of the Policy Board) terminate this Agreement either immediately or by giving up to two years' written notice to the Member Firm:

  a. (if the Member Firm is a corporate entity) if the Member Firm or any of its directors or shareholders has a liquidator or a receiver or a trustee in bankruptcy (or similar such insolvency practitioner) appointed over the whole or a substantial part of its assets or if an order is made or resolution is passed or any similar procedure instituted for the bankruptcy or winding up of the Member Firm;

  b. (if the Member Firm is a partnership) if the Member Firm or any Partner of the Member Firm becomes insolvent or commits an act of bankruptcy or any similar process is levied on any of the assets of the Member Firm or any of the Partners thereof;

  c. if the Member Firm enters into discussions with its creditors with the purpose of preventing situations described in a) or b) above;

  d. if the Member Firm does or suffers anything similar to any of the foregoing under the laws of the Territory;

  e. if the Member Firm or more than 25% of its Partners loses its professional qualification(s) and/or its right to practise;

  f. if the Member Firm ceases or threatens to cease to carry on business;

  g. if BDO BV considers it is in its best interest or that of the BDO network as a whole that the Member Firm should no longer be a Member of the organization.

  h. if the Member Firm commits what BDO BV considers to be a serious or persistent breach of any of the terms of this Agreement (including non payment of invoices under the Cost Memorandum, separate assessments **REDACTED** under this Agreement when due);

  i. if the Member Firm or its Partners dispose or intend to dispose of equity in the firm or a substantial part of its assets or business to any other person, company, partnership, firm or entity which is not a party to or not bound by this Agreement or has entered into any agreement to refer or to receive Professional Services to or from any other person or body other than BDO BV or an Other Member Firm;

  j. if the Member Firm transfers a major part (which is understood to mean at least 50%) of the equity or control of its business to any other person, company, partnership, firm or any other entity whatsoever which is not a party to or bound by this Agreement or has entered into any agreement to refer or to receive Professional Services to or from any other person or body other than BDO BV or an Other Member Firm;

  k. if the Member Firm reduces in size or disintegrates as a result of a major portion or major centre of it leaving. For the purpose of this clause "a major portion" is understood to mean at least 50% of the number of Partners or entities, or Partners representing at least 50% of the annual fee income of the Member Firm for its latest financial year;

  l. if the Member Firm or its Partners acquire any interest whatsoever in, or participate in, or in the share capital of, any company, partnership, firm, body (whether incorporated or otherwise), or any other entity whatsoever which itself has entered into any agreement to refer or to receive Professional Services to or from any other person or body other than BDO BV or an Other Member Firm without the prior written consent of BDO BV approved by the Policy Board;

  m. if the Member Firm effects any merger or any amalgamation or association of whatsoever nature by which its annual fee income will be increased by 100% or more without the prior written consent of BDO BV approved by the Policy Board;

  n. if the Member Firm makes a press announcement, public announcement or any other statement as referred to in clause 19 without the prior written consent of BDO BV;

16-1

C27

**Confidential**

o. if the Member Firm fails to adhere to the terms set out in Clause 9.1.

p. if BDO BV decides in its sole discretion that the Member Firm is using the BDO Acronym or International Name or BDO Technical Manuals or BDO Software in a way or manner that fails to meet the standards or conditions of use imposed by BDO BV in this Agreement or uses the foregoing in a manner that causes significant risk of material disparagement to, or material loss of protection in, the BDO Acronym or International Name or BDO Technical Manuals or BDO Software. Alternatively or additionally, BDO BV may, at its discretion require that the Member Firm immediately ceases use of the BDO Acronym and International Name and BDO Technical Manuals and BDO Software on receipt of written notice from BDO BV setting out full details of the relevant matters.

**Confidential**

16-2

### Consequences of Termination

17.1 Upon termination of this Agreement by the Member Firm pursuant to clause 16.1 the Member Firm shall pay to BDO BV a sum equal to twice the net fees earned by the Member Firm in respect of Inward Referred Work in the reporting year preceding the date of the relevant notice of termination.

Without prejudice to the above provisions of this sub-clause, in case the Member Firm gives notice of termination pursuant to clause 16.1 at any time during the first twelve months following the commencement of this Agreement the Member Firm shall pay to BDO BV the greater of the amount determined above or an amount equal to 5% of its latest annual fee income with a minimum of € 25,000.

17.2 Upon termination of this Agreement by BDO BV pursuant to clause 16.1 BDO BV shall pay to the Member Firm a sum equal to the amount of net fees earned by Other Member Firms in respect of Outward Referred Work of the Member Firm in the reporting year preceding the date of the relevant notice of termination. Upon termination of this Agreement by BDO BV pursuant to clause 16.2.g. BDO BV shall pay to the Member Firm such amount as will enable the Member Firm to change the display of the International Name and BDO Acronym from the material and documentation referred to in clauses 3.4 and 3.7.

17.3 In this clause "net fees" shall mean gross fees on a full accrual basis in accordance with International Accounting Standards with no deduction for bad debts, less VAT (or any other similar sales tax or tax on added value) for all Inward Referred Work or Outward Referred Work (as the case may be) of the Member Firm.

17.4 If at any time after this Agreement has been in place for 12 months the Member Firm gives notice to BDO BV terminating this Agreement pursuant to clause 16.1 in circumstances where the Member Firm properly considers that BDO BV has committed a serious or persistent breach of any of the terms of this Agreement and has failed to remedy such breach (if capable of remedy) within one month of the second of two written notices (the second of which shall not be sent within one month after the first notice) from the Member Firm giving full particulars of the breach and requiring it to be remedied, the Member Firm shall be entitled within one month of the relevant notice of termination to make a written offer to negotiate in accordance with clause 25 and, if the dispute is not resolved by negotiation, refer the matter to arbitration in accordance with clause 26. The Tribunal shall decide, notwithstanding the provisions of clauses 16 and 17 and subject to the provisions of clause 17.5 below:
   i. the amount of the termination payment payable by the Member Firm to BDO BV; and
   ii. the amount of time before termination of this Agreement shall take place.

17.5 It is agreed that the discretion of the Tribunal under clause 17.4 above shall be limited as follows:
   a. the amount of the termination payment payable by the Member Firm to BDO BV shall range from zero to a sum equal to twice the net fees (as defined) earned by the Member Firm in respect of Inward Referred Work in the reporting year preceding the date of the relevant notice of termination;
   b. the amount of time before termination of this Agreement shall take place shall range between immediate termination following the decision of the arbitrators to a period of two years from the relevant notice of termination.

17-1

**Confidential**

**BV 01960**

17.6 The Member Firm or BDO BV (as the case may be) shall pay the said termination payment due to the other party in accordance with this clause 17 on the date of the expiry of the notice terminating this Agreement with interest accruing from that date at the rate of ten per cent per annum (10%). Any payment shall be payable in the currency of the Kingdom of the Netherlands at the rate in effect at the last reporting date.

17.7 The impact of a withdrawal may take considerable time to materialise and thus be extremely difficult to measure but the termination payment calculated in accordance with clause 17.1 represents the parties' best estimate of the loss which may be suffered by BDO BV with respect to (a) damage to the goodwill and reputation of the International Name and (b) the cost of procuring and instituting a new member firm in the Territory in replacement of the Member Firm.

17.8 The termination payment shall be received by BDO BV as an agent for and for the account of the Foundation.

.17-2

**Confidential**

BV 01961

18. Upon termination of this Agreement for any reason:

    a. the Member Firm shall cease to use the International Name and the BDO Acronym or any other Intellectual Property the subject of this Agreement forthwith in any way whatsoever and will not represent itself or permit itself to be held out as being in any way connected with the International Name, the BDO Acronym, BDO BV or any Other Member Firm. At the same time the Member Firm shall assign to BDO BV or as it shall direct any registration of Internet or similar domain names;

    b. the Member Firm agrees that it will not use any trading style, trade name or mark, logo or get-up in respect of Professional Services provided by it which is the same as or similar to or nearly resembling or incorporating the BDO Acronym or International Name as would, or might be likely to cause confusion or deception or amount to passing-off;

    c. the Member Firm shall within 30 days send to BDO BV or otherwise dispose of in accordance with the directions of BDO BV all Restricted Information, documentation, stationery or any other similar material relating to BDO BV or any Other Member Firm then in the possession of the Member Firm. To the extent that the Member Firm may have acquired any rights independent of BDO BV by virtue of its use of the International Name or the BDO Acronym and to the extent that the Member Firm shall hold the legal title to any Intellectual Property rights in any materials which are beneficially owned by BDO BV or the Foundation, the Member Firm shall assign forthwith to BDO BV (for and on behalf of the Foundation) or otherwise as BDO BV may direct such rights and take such further steps as may be necessary to ensure that such rights vest absolutely in BDO BV (for and on behalf of the Foundation) or the said other party (as applicable);

    d. the Member Firm shall cease forthwith to use the BDO Software and the Member Firm agrees either to return the BDO Software to BDO BV or to destroy the same at the request of BDO BV and to delete any copies of the BDO Software in the possession and/or control of the Member Firm. This clause 18.d. shall also apply if the licence to use the BDO Software is terminated pursuant to clause 3.7 j.(a);

    e. the Member Firm shall promptly use all best endeavours to transfer any Inward Referred Work to an Other Member Firm in a smooth and ordered fashion supplying (subject to any consent required by the client) to the Other Member Firm all documents, client files and reports and any other material whatsoever necessary to enable the Other Member Firm to perform the Inward Referred Work. Without prejudice to the generality of the foregoing it is agreed that the Member Firm shall procure that the ownership and all the goodwill and other assets whatsoever of the International Firm be transferred forthwith to the said Other Member Firm or such other party as BDO BV shall notify to the Member Firm together with the benefits of all contracts and engagements entered into or being performed by or in the name of the International Firm in accordance with the terms of this Agreement. The Member Firm will give to BDO BV and the said Other Member Firm appropriate warranties in a form satisfactory to BDO BV concerning the accuracy of the balance sheet of the International Firm

## REDACTED         REDACTED

The Member Firm agrees that it will promptly do all such things as are necessary to implement the terms of this sub-clause(e).

    f. except as provided by clause 17.2 the Member Firm shall have no claim against BDO BV or any other Member Firm for compensation for loss of any rights or benefits under this Agreement;

    g. Neither the Member Firm nor any Subsidiaries nor any of their Partners shall not until the expiry of two years after the date of termination whether on their own account or for any other person, firm or company, solicit or endeavour to entice away from any Other Member Firm (which expression shall include any Other Member Firm appointed by BDO BV in the Territory) and the International Firm any person, firm or company who or

which in the preceding two years shall have been a client of or in the habit of dealing with the said Other Member Firm and/or the International Firm;

h. the provisions of clause 11.4 and clause 13.1 shall continue in force in accordance with their terms;

i. the Representative of the Member Firm shall cease to be entitled to attend and vote at the meetings of the Council in accordance with the rules and regulations from time to time of the Foundation and the Council;

j. subject as otherwise provided herein and to any rights or obligations which have accrued prior to termination or by virtue of clause 17, neither party shall have any further obligation to the other under this Agreement;

k. the Member Firm shall pay without delay to BDO BV any amounts due under this Agreement that are still outstanding including but not limited to invoices under the Cost Memorandum, separate assessments         REDACTED         In case the Member Firm has agreed to make certain additional investments, payments under such arrangements become due without delay and the Member Firm agrees to pay any amounts due thereunder;

# REDACTED



**Confidential**

BV 01963

-18-2

19. The Member Firm – including the International Firm and Subsidiaries - agrees that it shall not at any time make a press announcement, public announcement or any other statement (whether written or oral, in print or by way of any electronic media) to any third party including existing or prospective clients of the Member Firm or any Other Member Firm relating to the termination of this Agreement or the intention of the Member Firm to be associated with another firm or group of firms providing Professional Services following the termination of this Agreement without the prior written consent of BDO BV.

19-1

**Confidential**

BV 01964

<u>Amendments</u>

20. No waiver, cancellation or alteration of the provisions of this Agreement shall be valid unless made in writing on or after the signing of this Agreement and approved by the authorised signatories of BDO BV and the Member Firm. Notwithstanding the generality of the foregoing this Agreement can be altered by a majority vote representing 75% or more of the Council members. Amendments agreed in this way are binding for the Member Firm and the Other Member Firms without exception and BDO BV will provide to the Member Firm a Schedule setting out the changes to the Agreement.

20-1

**Confidential**

BV 01965

Miscellaneous

21.1 If any provision of this Agreement is held by any court or other competent authority to be void or unenforceable in whole or in part, this Agreement shall continue to be valid as to the other provisions thereof and the remainder (if any) of the affected provision.

21.2 Nothing in this Agreement shall create, or be deemed to create, a partnership or a joint venture between the parties hereto or between the Member Firm and any Other Member Firm.

21.3 If the terms of this Agreement are at any time translated into the language of any other country and any difference whatsoever shall occur between this Agreement and the said translation, this Agreement shall at all times prevail and the terms or meaning of the said translation shall be construed accordingly.

21-1

**Confidential**

BV 01966

<u>Assignment</u>

22.1 This Agreement shall enure for the benefit of BDO BV and its successors and assigns and without prejudice to the generality of the foregoing BDO BV may with the approval of the Council and for the purpose of reconstruction of the BDO network at any time transfer all or part of its rights, benefits or obligations hereunder to another company or other body approved by the Council which is entitled to the Intellectual Property. If BDO BV so transfers all or a part of its rights, benefits or obligations hereunder references to BDO BV in this Agreement (including in this clause) to the extent of the said transfer shall be construed as a reference to the transferee.

22.2 This Agreement shall be personal to the Member Firm and the Member Firm shall not be entitled to assign, transfer, charge or make over any of its benefits, rights or obligations to any other person, firm or company without the prior express permission in writing to do so from BDO BV.



**Confidential**

**BV 01967**

22-1

<u>Waiver</u>

23.  No failure by BDO BV to exercise, and no delay by BDO BV in exercising, any right or
     remedy available to BDO BV under this Agreement or in law or in equity shall operate as a
     waiver of any such right or remedy nor shall any single or partial exercise of such right or
     remedy preclude any other or further exercise thereof, nor shall any such failure to exercise,
     or delay in exercising, or single or partial exercise of any such right or remedy preclude the
     exercise of any other right or remedy and the rights and remedies of BDO BV herein
     contained shall be cumulative and not exclusive of any other rights or remedies provided by
     law or in equity.

**Confidential**

23-1

Entire Agreement

24. It is hereby agreed that this Agreement embodies the entire understanding of the parties and there are no express or implied representations, promises, terms, conditions, warranties or obligations, oral or written, other than those contained herein. In particular (but without limitation to the generality of the foregoing) the agreement between BDO International B.V. and BDO Seidman, LLP dated 1 April 1998 is hereby cancelled with effect from the commencement of this Agreement without prejudice to any rights or obligations which may have accrued under it before the date hereof.

24-1

**Confidential**

BV 01969

Settlement of disputes

25. If any dispute arises, the parties will in good faith attempt to settle it by negotiation and their dispute will not be referred to arbitration until 30 days have elapsed following one party making a written offer to the other to negotiate a settlement and during that period the parties will use all reasonable endeavours to do so.

25-1

**Confidential**                                    BV 01970

Arbitration

26.1 Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration.

26.2 The Tribunal shall consist of three Council members as arbitrators. The parties to the dispute shall each appoint one Council member (who cannot be a Policy Board member) to the Tribunal who shall together appoint the third Council member forthwith, who will be the Chairman of the Tribunal. If either party fails to appoint an arbitrator within fourteen days after being asked by the other party, the Chairman of the Council shall appoint an arbitrator (who cannot be a Policy Board member). If no agreement can be reached as to the third Council member that member shall be appointed by the Chairman of the Council or, if the Chairman of the Council has himself been appointed to the Tribunal by one of the parties, the third Council member shall be appointed by the Chairman of the Policy Board. Such third Council member cannot be a Policy Board member.

26.3 The Tribunal shall decide "ex aequo et bono" and further shall take account of the provisions of this Agreement and the usages of the profession applicable to the dispute.

26.4 The Tribunal shall have power to order such relief on a provisional basis which it would have power to grant in a final award.

26.5 The seat of the arbitration shall be London, but the Tribunal shall be entitled to hold hearings or meetings anywhere convenient.

26-1

**Confidential**

BV 01971

Governing Law and Jurisdiction

27. This Agreement is governed in all respects by English law and each of the parties and each of the Partners of the Member Firm irrevocably submits to the non-exclusive jurisdiction of the English Courts.

**Confidential**

BV 01972

27-1

<u>Costs</u>

28.   The parties will pay their own costs in respect of this Agreement.

**Confidential**

28-1

BV 01973

## Notices

29.1 The address for service of notices under this Agreement is in respect of either of the parties the address shown above or such other address as one party hereto shall notify in writing to the other for this purpose. Service of notice on the Member Firm shall be deemed to be service of notice on all the Partners of such Member Firm and on all Subsidiaries.

29.2 Notice shall be given in writing (either sent by post, courier or delivered by hand) at the address for service and will be deemed to have been received on the fourth day (not including Saturdays, Sundays, public or religious holidays) after despatch.

29-1

**Confidential**

BV 01974

<u>Transitional arrangements</u>

30. In case this Agreement replaces a previous agreement between the parties as referred to in the second sentence of clause 24, then the second paragraph of clause 17.1 will not be effective; instead only the first paragraph of clause 17.1 will then apply.

30-1

**Confidential**

BV 01975

AS WITNESS the hands of the parties or their duly authorised representatives.

SIGNED by                                    }    BDO International b.v.
Cecil Fleming                                }    *C. F. Fleming*
for and on behalf of                         }
BDO International B.V.                        }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Seidman, LLP                             }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Healthcare Group, LLC                    }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Human Capital Search, LLC                }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Investments, LLC                         }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Seidman Management, Inc.                 }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Seidman Solutions Provider, LLC          }


SIGNED by                                    }
                                             }
for and on behalf of                         }
BDO Solutions, LLC                           }


**Confidential**

BV 01976

31-1

**SCHEDULE 1**

**THE TERRITORY**

**UNITED STATES OF AMERICA**

Confidential

BV 01977



**BDO Seidman, LLP**
Accountants and Consultants

NationsB      wer At International Place
100 S.E. 2nd Street, Suite 2200
Miami, Florida 33131
Telephone (305) 381-8000
Fax (305) 374-1135

January 22, 1999

Mr. Dominick Parlapiano
E.S. Bankest Corp.
999 Brickell Avenue
Penthouse
Miami, FL 33131

Dear Mr. Parlapiano:

This agreement is intended to describe the nature and scope of our services.

**Audit**

As agreed, we will audit the balance sheet of E.S. Bankest Corp. as of December 31, 1998 and the related statements of income, stockholders' equity, and cash flows for the year then ended in accordance with generally accepted auditing standards. The financial records and financial statements are the responsibility of your Company's management.

Our responsibility is to express an opinion on the financial statements based on our audit. At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on generally accepted accounting principles. If during the course of our work it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you.

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the financial statements and, therefore, will not include a detailed check of your Company's transactions for the period. Accordingly, an audit performed in accordance with generally accepted auditing standards is not a guarantee of the accuracy of the financial statements and there is a risk that material errors or fraud may exist and not be detected by us. However, we will inform you of any material errors or fraud that come to our attention.

Because many computerized systems use only two digits to record the year in date fields (for example, the year 1998 is recorded as 98), such systems may not be able to accurately process dates ending in the year 2000 and after. The effects of this problem will vary from system to system and may adversely affect a company's operations as well as its ability to prepare financial statements.

*c/a*
*PTC - 1*

BDO 04191
Confidential

Plaintiffs' Exh. No. 58
Filed: January 16 A.D. 2007
Case No. 04-14009 CA 31
Harvey Ruvin, Clerk of Courts

ES0002713



EXHIBIT
**F**

 

- 2 -

An audit of financial statements conducted in accordance with generally accepted auditing standards is not designed to detect whether the Company's systems are year 2000 compliant. Further, we have no responsibility with regard to the Company's efforts to make its systems, or any other systems, such as those of the Company's vendors, service providers, or any other third parties, year 2000 compliant or provide assurance on whether the Company has addressed or will be able to address all of the affected systems on a timely basis. These are responsibilities of the Company's management. However, for the benefit of management, we may choose to communicate matters that come to our attention relating to the Year 2000 issue.

### Reproduction of Audit Report

If E.S. Bankest Corp. plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review.

### Review of Documents for Sale of Securities

In addition, the audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities without first submitting copies of the document to us in sufficient time for our review.

### Management Representations

As required by generally accepted auditing standards, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations.

### Availability of Records

You agree that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have full cooperation of your personnel.

### Assistance by Your Personnel

We also ask that your personnel, to the extent possible, prepare various schedules and analyses for our staff. This assistance by your personnel will serve to facilitate the progress of our work and minimize costs to you.

BDO 04192
Confidential

ES0002714

 

- 3 -

**Dispute Resolution Procedures**

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, upon written notice to the other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitrations Rules for Professional Accounting and Related Disputes of the American Arbitration Association, except that no prehearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO Seidman, LLP office providing the relevant services exists, unless the parties agree to a different locale.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.

The award issued by the arbitration panel may be confirmed in a judgment by any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and the expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court

3/4

BDO 04193
Confidential

**BDO**                                      - 4 -                                      

shall be borne entirely the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by arbitration panel.

**Fees**

Our charges to your Company for the audit and tax return preparation services described above will be made at our regular rates plus out-of-pocket expenses. Our fees for the 1998 engagement is estimated at approximately $40,000 determined as follows.

| | |
|---|---:|
| • Billing audit December 31, 1996 | $ 25,000 |
| • Additional audit procedures attributable to increase in the Company's operations since 1996 to 1998 (accounts receivable and debentures increased from approximately $12,000,000 to $30,000,000 and operations doubled) | 10,000 |
| • Additional audit procedures of permanent file and review of new agreements | 3,000 |
| • Increase in audit fees resulting from increases in billing rates from 1996 to 1998 | 2,000 |
| Estimated fee | $ 40,000 |

Our charges for other services will be agreed to separately.

Bills will be rendered on a monthly basis with payment due upon presentation.

* * *

The arrangements described in this letter will continue in effect from year to year unless amended by agreement between us.

BDO Seidman, LLP

Acknowledged: _E.S. Bankest, LLC_

By: _Dominick C. Philapiano_  Title _Sr. Vice President, Member._

Date: _February 4, 1999_

BDO 04194
Confidential

12/10/99  11:24                                                                NO.561  P002/006



**IBDO**

**BDO Seidman, LLP**
**Accountants and Consultants**



NationsBank Tower at International Place
100 S.E. 2nd Street, Suite 2200
Miami, Florida 33131
Telephone: (305) 381-8000
Fax: (305) 374-1135
Voice Mail: (305) 381-7832

October 20, 1999

Mr. Dominick Parlapiano
Senior Vice President, Director
E.S. Bankest LLC
999 Brickell Avenue
Penthouse
Miami, FL 33131

Dear Mr. Parlapiano:

**Agreement To Provide Services**

This agreement is intended to describe the nature and scope of our services.

**Audit**

As agreed, we will audit the balance sheet of E.S. Bankest LLC as of December 31, 1999 and the related statements of income, stockholders' equity, and cash flows for the year then ending in accordance with generally accepted auditing standards. The financial records and financial statements are the responsibility of your Company's management. In that regard, management is responsible for establishing and maintaining effective internal control over reporting, establishing and maintaining proper accounting records, selecting appropriate accounting principles, safeguarding company assets and complying with relevant laws and regulations. Management is also responsible for making all financial records and related information available to us.

Our responsibility is to express an opinion on the financial statements based on our audit. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on generally accepted accounting principles. If during the course of our work it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. If, for any reason we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require, we may resign from the engagement prior to completion.

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the financial

BDO 04158
Confidential

DEC 13 '000 11:15                                                              PAGE 02

Plaintiffs' Exh. No. 59
Filed: January 16 A.D. 2007
Case No. 04-14009 CA 31
Harvey Ruvin, Clerk of Courts

ES0002680

NO.561  P003/006





**BDO**

statements and, therefore, will not include a detailed check of your Company's transactions for the period. Accordingly, an audit performed in accordance with generally accepted auditing standards is not a guarantee of the accuracy of the financial statements, and there is a risk that material errors or fraud may exist and not be detected by us. Also, an audit is not designed to detect errors or fraud that is immaterial to the financial statements. However, we will inform you of any material errors or fraud that come to our attention. We will also inform you of illegal acts that come to our attention unless they are clearly inconsequential. In addition during the course of our audit, financial statement misstatements may be identified, either through our audit procedures or through communication by your employees to us and we will bring these misstatements to your attention as proposed adjustments.   Management is responsible for recording such adjustments in the financial statements or otherwise concluding and confirming in a representation letter provided to us at the conclusion of our audit, that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. At the conclusion of our audit we will communicate to the audit committee all such unrecorded adjustments.

An audit includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions. However, we are responsible for ensuring that you are aware of any reportable conditions, which come to our attention during our engagement.

Because many computerized systems use only two digits to record the year in date fields (for example, the year 1998 is recorded as 98), such systems may not be able to accurately process dates ending in the year 2000 and after. The effects of this problem will vary from system to system and may adversely affect a company's operations as well as its ability to prepare financial statements.

An audit of financial statements conducted in accordance with generally accepted auditing standards is not designed to detect whether the Company's systems are year 2000 compliant. Further, we have no responsibility with regard to the Company's efforts to make its systems, or any other systems, such as those of the Company's vendors, service providers, or any other third parties, year 2000 compliant or provide assurance on whether the Company has addressed or will be able to address all of the affected systems on a timely basis. These are responsibilities of the Company's management. However, for the benefit of management, we may choose to communicate matters that come to our attention relating to the Year 2000 issue.

The working papers prepared in conjunction with our audit are the property of our Firm, constitute confidential information and will be retained by us in accordance with our Firm's policies and procedures.

2

BDO 04159
Confidential
PAGE.03

ES0002681

  

**IBDO**

### Reproduction of Audit Report

If E.S. Bankest LLC plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

### Review of Documents for Sale of Securities

In addition, the audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities (including securities offerings on the Internet) without first submitting copies of the document to us in sufficient time for our review and approval.

### Management Representations

As required by generally accepted auditing standards, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Because of the importance of management's representations to an effective audit and provided the audited financial statements and our report thereon are not included in a registration statements under the Securities Act of 1933 or in a Private Placement Memorandum, E.S. Bankest LLC agrees to release and indemnify BDO Seidman, LLP and its personnel from any liability and costs relating to our services under this agreement attributable to any misrepresentations by management.

### Availability of Records

You agree that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have full cooperation of your personnel.

### Assistance by Your Personnel

We also ask that your personnel, to the extent possible, prepare various schedules and analyses for our staff. This assistance by your personnel will serve to facilitate the progress of our work and minimize costs to you.

### Other Services

We are always available to meet with you and/or other executives at various times throughout the year to discuss current business, operational, accounting, and auditing matters affecting your Company. Whenever you feel such meetings are desirable, please let us know. We are also prepared to provide services to assist you in any of these areas. We will also be pleased, at your request, to attend your directors' and stockholders' meetings.

3

BDO 04160
Confidential

DEC 18 1999 11:16

PAGE.04

ES0002682

 



### Independence

Professional standards require us to be independent with respect to your Company in the performance of our services. Any discussions that you have with personnel of our firm regarding employment could pose a threat to our independence. Therefore, we request that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence. In addition, if you hire one of our personnel, you agree to pay us a fee of 20% of that individual's base compensation at your company 90 days from the first day of employment.

### Dispute Resolution Procedure

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, upon written notice to the other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association, except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO Seidman, LLP office providing the relevant services exists, unless the parties agree to a different locale.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.

4

BDO 04161
Confidential

ES0002683

 

NO.561  P006/006

**IBDO**

The award issued by the arbitration panel may be confirmed in a judgment by any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel. In any event, BDO Seidman, LLP's maximum liability to (E.S. Bankest LLC) for any reason, including BDO Seidman', LLP's negligence, relating to the services under this letter shall be limited to the fees paid to BDO Seidman, LLP for the services or work product giving rise to the liability, except to the extent finally determined to have resulted from the gross negligence or willful misconduct of BDO Seidman, LLP.

**Fees**

Our charges to your Company for the audit services described above will be made at our regular rates (subject to mutually agreed upon adjustment for services providing additional value) plus out-of-pocket expenses. Our fees for the 1999 audit engagement is estimated at approximately $40,000.

Our charges for other services will be agreed to separately.

Bills will be rendered on a monthly basis with payment due upon presentation.

• • •

The arrangements described in this letter will be updated annually.

BDO Seidman, LLP

BDO Seidman, LLP

Acknowledged:

By _____
                Title

Date_____

5

BDO 04162
Confidential

DEC 18 1999 11:17

PAGE.06

ES0002684



 **BDO Seidman, LLP**
Accountants and Consultants

International Place
100 S.E. 2nd Street, Suite 2200
Miami, Florida 33131
Telephone: (305) 381-8000 Fax: (305) 374-1135
Voice Mail: (305) 381-7832

January 16, 2001

Mr. Dominick Parlapiano
E. S. Bankest Corp. LLC
999 Brickell Avenue
Penthouse
Miami, FL 33131

Dear Mr. Parlapiano:

This agreement is intended to describe the nature and scope of our services.

**Audit**

As agreed, we will audit the balance sheet of E.S. Bankest Corp. LLC as of December 31, 2000 and the related statements of income, stockholders' equity, and cash flows for the year then ended in accordance with generally accepted auditing standards. The financial records and financial statements are the responsibility of your Company's management. In that regard, management is responsible for establishing and maintaining effective internal control over financial reporting, establishing and maintaining proper accounting records, selecting appropriate accounting principles, safeguarding company assets and complying with relevant laws and regulations. Management is also responsible for making all financial records and related information available to us.

Our responsibility is to express an opinion on the financial statements based on our audit. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on generally accepted accounting principles. If during the course of our work it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. It is possible that because of unexpected circumstances, we may determine that we cannot render a report or otherwise complete the engagement. If, for any reason we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require, we may resign from the engagement prior to completion.

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the financial statements and, therefore, will not include a detailed check of your Company's transactions for

 **Cooperation, Collaboration, Concentration, Communication**

BDO 04628
Confidential

Plaintiffs' Exh. No. 61
Filed: January 16 A.D. 2007
Case No. 04-14009 CA 31
Harvey Ruvin, Clerk of Courts

ES0003150

  

-2-

the period. Accordingly, an audit performed in accordance with generally accepted auditing standards is not a guarantee of the accuracy of the financial statements and there is a risk that material errors or fraud may exist and not be detected by us. Also, an audit is not designed to detect errors or fraud that is immaterial to the financial statements. However, we will inform you of any material errors or fraud that come to our attention. We will also inform you of illegal acts that come to our attention unless they are clearly inconsequential. In addition, during the course of our audit, financial statement misstatements may be identified, either through our audit procedures or through communication by your employees to us and we will bring these misstatements to your attention as proposed adjustments. Management is responsible for recording such adjustments in the financial statements or otherwise concluding and confirming in a representation letter provided to us at the conclusion of our audit, that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. At the conclusion of our audit we will communicate to the audit committee all such unrecorded adjustments.

An audit includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions. However, we are responsible for ensuring that you are aware of any reportable conditions, which come to our attention during our engagement.

**Ownership of Working Papers**

The working papers prepared in conjunction with our audit are the property of our Firm, constitute confidential information and will be retained by us in accordance with our Firm's policies and procedures.

**Reproduction of Audit Report**

If E. S. Bankest Corp. plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

**Review of Documents for Sale of Securities**

In addition, the audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document, other than a planned Registration Statement or Private Placement Memorandum to be used in connection with the sale of securities (including securities offerings on the Internet) without first submitting copies of the document to us in sufficient time for our review.

 Cooperation, Collaboration, Concentration, Communication

BDO 04629
- Confidential

ES0003151

  

- 3 -

**Management Representations**

As required by generally accepted auditing standards, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Because of the importance of management's representations to an effective audit and provided the audited financial statements and our report thereon are not included in a registration statements under the Securities Act of 1933 or in a Private Placement Memorandum, E. S. Bankest Corp. agrees to release and indemnify BDO Seidman, LLP and its personnel from any liability and costs relating to our services under this agreement attributable to any misrepresentations by management.

**Availability of Records**

You agree that all records, documentation, and information we request in connection with our audit will be made available to us (including those pertaining to related parties), that all material information will be disclosed to us, and that we will have full cooperation of your personnel.

**Assistance by Your Personnel**

We also ask that your personnel, to the extent possible, prepare various schedules and analyses for our staff. This assistance by your personnel will serve to facilitate the progress of our work and minimize costs to you.

**Independence**

Professional standards require us to be independent with respect to your Company in the performance of our services. Any discussions that you have with personnel of our firm regarding employment could pose a threat to our independence. Therefore, we request that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence.

**Dispute Resolution Procedures**

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, upon written notice to the other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

 **Cooperation, Collaboration, Concentration, Communication**

BDO 04630
Confidential

ES0003152



- 4 -

Each party may disclose any facts to the other party or to the facilitator which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitrations Rules for Professional Accounting and Related Disputes of the American Arbitration Association, except that no prehearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO Seidman, LLP office providing the relevant services exists, unless the parties agree to a different locale.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.

The award issued by the arbitration panel may be confirmed in a judgment by any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and the expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by arbitration panel.

**Fees**

Our charges to your Company for the audit services described above will be $53,000 plus out-of-pocket expenses. This fee is based on the following assumptions: your personnel will prepare certain schedules and analyses for us and make available to us documents for our examination as and when requested; there will be no significant changes in the internal controls, accounting systems, key personnel, or structure of the organization; there will be no significant acquisitions or disposals of businesses; there will not be any unanticipated



**Cooperation, Collaboration, Concentration, Communication**

BDO 04631
-Confidential

**IBDO**                                                                - 5 -

increases in current operations requiring significant additional audit time. Should we encounter any unforeseen problems which will warrant additional time or expense, you will be notified of the situation and, if possible, the added cost.

Our charges for other services, i.e., registration statements, private placements, comfort letters etc., will be billed separately.

Bills will be rendered on a monthly basis with payment due upon presentation.

* * *

The arrangements described in this letter will continue in effect from year to year unless amended by agreement between us.

*BDO Seidman SSP*

BDO Seidman, LLP

Acknowledged:

By: _Hit Olo_       _President_
                                  Title

Date: _JAN 22 2001_

**Cooperation, Collaboration, Concentration, Communication**

BDO 04632
Confidential

ES0003154



**BDO Seidman, LLP**
Accountants and Consultants

International Place
100 S.E. 2nd Street, Suite 2200
Miami, Florida 33131-2105
Telephone: (305) 381-8000
Fax: (305) 374-1135

December 4, 2001

Mr. Dominick Parlapiano
E.S. Bankest Corp.
999 Brickell Avenue
Penthouse
Miami, FL 33131

Dear Mr. Parlapiano:

<u>Agreement To Provide Services</u>

This agreement is intended to describe the nature and scope of our services.

<u>Audit</u>

As agreed, we will audit the balance sheet of E.S. Bankest Corp. as of December 31, 2001 and the related statements of income, stockholders' equity, and cash flows for the year then ending in accordance with auditing standards generally accepted in the United States of America. The financial records and financial statements are the responsibility of your Company's management. In that regard, management is responsible for establishing and maintaining effective internal control over financial reporting, establishing and maintaining proper accounting records, selecting appropriate accounting principles, safeguarding company assets and complying with relevant laws and regulations. Management is also responsible for making all financial records and related information available to us.

Our responsibility is to express an opinion on the financial statements based on our audit. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on accounting principles generally accepted in the United States of America. If during the course of our work it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. It is possible that because of unexpected circumstances, we may determine that we cannot render a report or otherwise complete the engagement. If, for any reason we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require, we may resign from the engagement prior to completion.



**Cooperation, Collaboration, Concentration, Communication**

BDO 04151
Confidential

Plaintiffs' Exh. No. 60
Filed: January 16 A.D. 2007
Case No. 04-14009 CA 31
Harvey Ruvin, Clerk of Courts

ES0002673

  

**BDO**

-2-

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the financial statements and, therefore, will not include a detailed check of your Company's transactions for the period. Accordingly, an audit performed in accordance with auditing standards generally accepted in the United States of America is not a guarantee of the accuracy of the financial statements, and there is a risk that material errors or fraud may exist and not be detected by us. Also, an audit is not designed to detect errors or fraud that is immaterial to the financial statements. However, we will inform you of any material errors or fraud that come to our attention. We will also inform you of illegal acts that come to our attention unless they are clearly inconsequential. In addition, during the course of our audit, financial statement misstatements may be identified, either through our audit procedures or through communication by your employees to us and we will bring these misstatements to your attention as proposed adjustments. Management is responsible for recording such adjustments in the financial statements or otherwise concluding and confirming in a representation letter provided to us at the conclusion of our audit, that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. At the conclusion of our audit we will communicate to the audit committee all such unrecorded adjustments.

An audit includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions. However, we are responsible for ensuring that you are aware of any reportable conditions, which come to our attention during our engagement.

Ownership of Working Papers

The working papers prepared in conjunction with our audit are the property of our Firm, constitute confidential information and will be retained by us in accordance with our Firm's policies and procedures.

Reproduction of Audit Report

If E.S. Bankest Corp. plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

Posting of Audit Report and Financial Statements on Client's Web Site

The audited financial statements and our report thereon should not be presented on your web site without first contacting us in sufficient time to permit your providing us with additional representations we require.



**WOLFPACK** Cooperation, Collaboration, Concentration, Communication℠

BDO 04152
Confidential