**BDO** - 3 -

### Review of Documents for Sale of Securities

In addition, the audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities (including securities offerings on the Internet) without first submitting copies of the document to us in sufficient time for our review and approval.

### Management Representations

As required by auditing standards generally accepted in the United States of America, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Because of the importance of management's representations to an effective audit and provided the audited financial statements and our report thereon are not included in a registration statements under the Securities Act of 1933 or in a Private Placement Memorandum, E.S. Bankest Corp. agrees to release and indemnify BDO Seidman, LLP and its personnel from any liability and costs relating to our services under this agreement attributable to any misrepresentations by management.

### Availability of Records and Personnel

You agree that all records, documentation, and information we request in connection with our audit will be made available to us (including those pertaining to related parties), that all material information will be disclosed to us, and that we will have the full cooperation of and unrestricted access to your personnel during the course of the engagement.

### Assistance by Your Personnel

We also ask that your personnel, to the extent possible, prepare various schedules and analyses for our staff. This assistance by your personnel will serve to facilitate the progress of our work and minimize costs to you.

### Independence

Professional standards require us to be independent with respect to your Company in the performance of our services. Any discussions that you have with personnel of our firm regarding employment could pose a threat to our independence. Therefore, we request that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence. In addition, if you hire one of our personnel, you agree to pay us a fee of 20% of that individual's base compensation at your Company 90 days from the first day of employment.

BDO 04153
Confidential

 **WOLFPACK** Cooperation, Collaboration, Concentration, Communication

ES0002675

**BDO**     -4-

### Dispute Resolution Procedure

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, upon written notice to the other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association, except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO Seidman, LLP office providing the relevant services exists, unless the parties agree to a different locale.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.

The award issued by the arbitration panel may be confirmed in a judgment by any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel. In any event,



**Cooperation, Collaboration, Concentration, Communication**

BDO 04154
Confidential

**BDO**

-5-

BDO Seidman, LLP's maximum liability to E.S. Bankest Corp. for any reason, including BDO Seidman, LLP's negligence, relating to the services under this letter shall be limited to the fees paid to BDO Seidman, LLP for the services or work product giving rise to the liability, except to the extent finally determined to have resulted from the gross negligence or willful misconduct of BDO Seidman, LLP.

<u>Fees</u>

Our charges to the Company for the services described above for the year ending December 31, 2001, will be $55,000 plus out-of-pocket expenses. This fee is based on the following assumptions: your personnel will prepare certain schedules and analyses for us and make available to us documents for our examination as and when requested; there will be no significant changes in the internal controls, accounting systems, key personnel, or structure of the organization; there will be no significant acquisitions or disposals of businesses and there will not be any unanticipated increases in current operations requiring significant additional audit time. Should we encounter any unforeseen problems which will warrant additional time or expense, you will be notified of the situation and, if possible, the added cost.

Bills will be rendered on a monthly basis with payment due upon presentation.

\* \* \*

The arrangements described in this letter will be updated annually.

BDO Seidman, LLP

Acknowledged

By _____  _CHAPMAN_
                                Title

Date _12/20/01_


**Cooperation, Collaboration, Concentration, Communication**

BDO 04155
Confidential



**BDO Seidman, LLP**
Accountants and Consultants

Bank of America Tower at International Place
100 S.E. Second Street, Suite 2200
Miami, Florida 33131-2105
Telephone: (305) 381-8000
Fax: (305) 374-1135

October 1, 2002

Mr. Dominick Parlapiano
E.S. Bankest LLC
999 Brickell Avenue
Miami, FL 33131

Dear Mr. Parlapiano:

Agreement To Provide Services

This agreement is intended to describe the nature and scope of our services.

Audit

As agreed, we will audit the balance sheet of E.S. Bankest LLC as of December 31, 2002 and the related statements of income, members' equity and cash flows for the year then ending in accordance with auditing standards generally accepted in the United States of America. The financial records and financial statements are the responsibility of your Company's management. In that regard, management is responsible for establishing and maintaining effective internal control over financial reporting, establishing and maintaining proper accounting records, selecting appropriate accounting principles, safeguarding company assets and complying with relevant laws and regulations. Management is also responsible for making all financial records and related information available to us.

Our responsibility is to express an opinion on the financial statements based on our audit. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation.

At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on accounting principles generally accepted in the United States of America. If during the course of our work it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. It is possible that because of unexpected circumstances, we may determine that we cannot render a report or otherwise complete the engagement. If, for any reason we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require, we may resign from the engagement prior to completion.

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the

1

BDO 04141
Confidential

Plaintiffs' Exh. No. 62
Filed: January 16 A.D. 2007
Case No. 04-14009 CA 31
Harvey Ruvin, Clerk of Courts

ES0002663




financial statements and, therefore, will not include a detailed check of your Company's transactions for the period. Accordingly, an audit performed in accordance with auditing standards generally accepted in the United States of America is not a guarantee of the accuracy of the financial statements, and there is a risk that material errors or fraud may exist and not be detected by us. Also, an audit is not designed to detect errors or fraud that are immaterial to the financial statements. However, we will inform you of any material errors or fraud that come to our attention. We will also inform you of illegal acts that come to our attention unless they are clearly inconsequential. In addition, during the course of our audit, financial statement misstatements may be identified, either through our audit procedures or through communication by your employees to us and we will bring these misstatements to your attention as proposed adjustments. Management is responsible for recording such adjustments in the financial statements or otherwise concluding and confirming in a representation letter provided to us at the conclusion of our audit, that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. At the conclusion of our audit we will communicate to the audit committee all such unrecorded adjustments.

An audit includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions. However, we are responsible for ensuring that you are aware of any reportable conditions, which come to our attention during our engagement.

E-mail Communication

In connection with this engagement, we may communicate with you or others via e-mail transmission. As e-mails can be intercepted and read, disclosed or otherwise used or communicated by an unintended third party or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot guarantee or warrant that e-mails from us will be properly delivered and read only by the addressee. Therefore, we specifically disclaim and waive any liability or responsibility whatsoever for interception or unintentional disclosure or communication of e-mail transmissions, or for the unauthorized use or failed delivery of e-mails transmitted by us in connection with the performance of this engagement. In that regard, you agree that we shall have no liability for any loss or damage to any person or entity, resulting from the use of e-mail transmissions, including any consequential, incidental, direct or indirect or special damages, such as loss of sales or anticipated profits or disclosure or communication of confidential or proprietary information.

Ownership of Working Papers

The working papers prepared in conjunction with our audit are the property of our Firm, constitute confidential information and will be retained by us in accordance with our Firm's policies and procedures.

2

BDO 04142
Confidential

ES0002664

 **BDO**

### Reproduction of Audit Report

If E.S. Bankest LLC plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

### Posting of Audit Report and Financial Statements on Your Web Site

The audited financial statements and our report thereon should not be presented on your web site without first contacting us in sufficient time to permit your providing us with additional representations we require.

### Review of Documents for Sale of Securities or Private Placement of Debt

The audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities or debt placements (including offerings on the Internet) without first submitting copies of the document to us in sufficient time for our review and approval.

### Management Representations

As required by auditing standards generally accepted in the United States of America, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Because of the importance of management's representations to an effective audit and provided the audited financial statements and our report thereon are not included in a registration statement under the Securities Act of 1933 or in a Private Placement Memorandum, E.S. Bankest LLC agrees to release and indemnify BDO Seidman, LLP and its personnel from any liability and costs relating to our services under this agreement attributable to any misrepresentations by management.

### Availability of Records and Personnel

You agree that all records, documentation and information we request in connection with our audit will be made available to us (including those pertaining to related parties), that all material information will be disclosed to us, and that we will have the full cooperation of, and unrestricted access to, your personnel during the course of the engagement.

### Assistance by Your Personnel

We also ask that your personnel, to the extent possible, prepare various schedules and analyses for our staff. This assistance by your personnel will serve to facilitate the progress of our work and minimize costs to you.

3

BDO 04143
Confidential



## Other Services

We are always available to meet with you and other executives at various times throughout the year to discuss current business, operational, accounting, and auditing matters affecting your Company. Whenever you feel such meetings are desirable, please let us know. We are also prepared to provide services to assist you in any of these areas. We will also be pleased, at your request, to attend your directors' and stockholders' meetings.

## Independence

Professional standards require us to be independent with respect to your Company in the performance of our services. Any discussions that you have with personnel of our firm regarding employment could pose a threat to our independence. Therefore, we request that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence.

## Dispute Resolution Procedure

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement, either party may, upon written *notice to the* other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the *facilitator* shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association (AAA), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO Seidman, LLP office providing the relevant services exists, unless the parties agree to a different locale.

4

BDO 04144
.Confidential

ES0002666

# IBDO

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.

The award issued by the arbitration panel may be confirmed in a judgment by any federal or state court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel. In any event, BDO Seidman, LLP's maximum liability to (E.S. Bankest LLC) for any reason, including BDO Seidman, LLP's negligence, relating to the services under this letter shall be limited to the fees paid to BDO Seidman, LLP for the services or work product giving rise to the liability, except to the extent finally determined to have resulted from the gross negligence or willful misconduct of BDO Seidman, LLP.

## Fees

Our charges to the Company for the services described above for the year ending December 31, 2002, will be $60,000 plus out-of-pocket expenses. This fee is based on the following assumptions: your personnel will prepare certain schedules and analyses for us and make available to us documents for our examination as and when requested; there will be no significant changes in the internal controls, accounting systems, key personnel, or structure of the organization; there will be no significant acquisitions or disposals of businesses; there will not be any unanticipated increases in current operations requiring significant additional audit time. Should we encounter any unforeseen problems which will warrant additional time or expense, you will be notified of the situation and, if possible, the added cost.

Our charges for other services, i.e. registration statements, private placements, comfort letters, etc., will be agreed to separately.

Bills will be rendered on a monthly basis with payment due upon presentation.

5

BDO 04145
Confidential

ES0002667

**IBDO**

• • •

The arrangements described in this letter will be updated annually.

BDO Seidman, LLP

*BDO Seidman, SSP*

Acknowledged

By _____

~~Senior Vice President, Manager~~

Title

Date *March 05, 2001*

6

BDO 04146
Confidential

ES0002668

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 04-14009 CA 31

BANCO ESPIRITO SANTO     )
INTERNATIONAL, LTD., ESB    )
FINANCE, LTD., and BANCO     )
ESPIRITO SANTO S.A,         )
                             )
   Plaintiffs            )
                             )        **VERDICT FORM**
   vs.                )
                             )
BDO SEIDMAN, LLP,        )
                             )
   Defendant.          )
                             )
_____)

2007 JUN 15 PM 2:58

A.TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

1



We, the jury, return the following verdict:

1.   On the claim of ESB Finance, do you find that Defendant BDO Seidman, LLP was negligent when auditing E.S. Bankest, L.C.?

YES   ✓

NO   _____

*If your answer to Question No. 1 is yes, then go to Question No. 2.   If your answer to Question No. 1 is no, then go to Question No. 3.*

2.   On the claim of ESB Finance, do you find that Defendant BDO Seidman, LLP was grossly negligent when auditing E.S. Bankest, L.C.?

YES   ✓

NO   _____

*Please answer Question No. 3.*

3.   On the claim of Banco Espirito Santo, S.A. (Nassau Branch), do you find that Defendant BDO Seidman, LLP was negligent when auditing E.S. Bankest, L.C.?

YES   ✓

NO   _____

*If your answer to Question No. 3 is yes, then go to Question No. 4.   If your answer to Question No. 3 is no, then go to the end of the Verdict Form.*

2

4.     On the claim of Banco Espirito Santo, S.A. (Nassau Branch), do you find that Defendant BDO Seidman, LLP was grossly negligent when auditing E.S. Bankest, L.C.?

YES     ✓

NO     _____

This is the end of the Verdict Form.  The Foreperson should sign and date the Verdict Form below.

SO SAY WE ALL, this _15 Th_ day of _JUNE_ , 2007.

_Nancy E. Hammiel_
Foreperson

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. _JUL / 5_ AD 20 _07_
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____

3

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR    MIAMI-DADE    COUNTY,
FLORIDA

GENERAL JURISDICTION

BANCO ESPIRITO SANTO
INTERNATIONAL, LTD.,
ESB FINANCE, LTD. and BANCO
ESPIRITO SANTO, S.A. (NASSAU
BRANCH),

     Plaintiffs,

vs.

BDO SEIDMAN, LLP

     Defendant,

_____/

CASE NO.:  04-14009 CA 31

**VERDICT FORM**

**EXHIBIT**

**H**

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

We, the jury, return the following verdict:

     1.    Do you find for Plaintiff ESB Finance on its claim for damages against Defendant BDO Seidman?

YES   ✓

NO   _____

    *If your answer to Question 1 is yes, please proceed to Question 2. If your answer to Question 1 is no, your verdict is for Defendant BDO Seidman on Plaintiff ESB Finance's claim, please proceed to Question 15.*

     2.    Was there negligence on the part of Plaintiff ESB Finance which was a legal cause of its damages?

YES   _____

NO   ·✓

     3.    Was there negligence on the part of Victor Balestra which was a legal cause of Plaintiff ESB Finance's damages?

YES   _____

NO   ✓

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

4.      Was there negligence on the part of Bernard Mollet which was a legal cause of Plaintiff ESB Finance's damages?

YES  _____

NO   _✓___

5.      Was there negligence on the part of Pierre Trezzini which was a legal cause of Plaintiff ESB Finance's damages?

YES  _____

NO   _✓___

6.      Was there negligence on the part of Joaquim Garnecho which was a legal cause of Plaintiff ESB Finance's damages?

YES  _____

NO   _✓___

7.      Was there negligence on the part of Espirito Santo Bank of Florida which was a legal cause of Plaintiff ESB Finance's damages?

YES  _____

NO   _✓___

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

8. Was there negligence on the part of Compagnie Bancaire Espirito Santo, S.A. which was a legal cause of Plaintiff ESB Finance's damages?

YES _____

NO _____✓_____

9. Was there negligence on the part of Ricardo Espirito Santo Salgado which was a legal cause of Plaintiff ESB Finance's damages?

YES _____

NO _____✓_____

10. Was there negligence on the part of Jackson Behr Gilbert which was a legal cause of Plaintiff ESB Finance's damages?

YES _____

NO _____✓_____

11. Was there negligence on the part of Robert Stewart which was a legal cause of Plaintiff ESB Finance's damages?

YES _____

NO _____✓_____

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK.

12.    Was there negligence on the part of Fernando Espirito Santo which was a legal cause of Plaintiff ESB Finance's damages?

YES _____

NO ___✓___

*If you answered no to Questions 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, please proceed to Question 14. If you answered yes to any of Questions 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 or 12, please proceed to Question 13.*

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

13.   State the percentage of any negligence, which was a legal cause of damages to Plaintiff ESB Finance, that you charge to:

Defendant BDO Seidman          _____%

Plaintiff ESB Finance          _____%

Victor Balestra          _____%

Bernard Mollet          _____%

Pierre Trezzini          _____%

Joaquim Garnecho          _____%

Espirito Santo Bank of Florida          _____%

Compagnie Bancaire Espirito Santo, S.A _____%

Ricardo Espirito Santo Salgado          _____%

Jackson Behr Gilbert          _____%

Robert Stewart          _____%

Fernando Espirito Santo          _____%

**Total must be 100%**

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

14. What is the total amount (100%) of damages sustained by Plaintiff ESB Finance?

Total damages of Plaintiff ESB Finance $ _140·000, 000 , 00_____

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Plaintiff ESB Finance or the above-listed non-parties. If you have found Plaintiff ESB Finance or any non-party negligent in any degree, the court in entering judgment will reduce Plaintiff ESB Finance's total amount of damages determined by you in Question 14 by the percentage of negligence which you found is chargeable to Plaintiff ESB Finance or any non-party.

15. Do you find for Plaintiff Banco Espirito Santo, S.A. (Nassau Branch) on its claim for damages against Defendant BDO Seidman?

YES  ✓ _____

NO  _____

*If your answer to Question 15 is yes, please proceed to Question 16. If your answer to Questions 15 is no, your verdict is for Defendant BDO Seidman on Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s claim, and you should not proceed further except to date and sign this verdict form and return it to the courtroom.*

A TRUE COPY
CERTIFICATION ON LAST PAGE .
HARVEY RUVIN, CLERK

16.    Was there negligence on the part of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch) which was a legal cause of its damages?

YES _____

NO _____✓

17.    Was there negligence on the part of Victor Balestra which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES _____

NO _____✓

18.    Was there negligence on the part of Bernard Mollet which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES _____

NO _____✓

19.    Was there negligence on the part of Pierre Trezzini which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES _____

NO _____✓

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

20.     Was there negligence on the part of Joaquim Garnecho which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  \_\_\_\_\_

NO  ✓

21.     Was there negligence on the part of Espirito Santo Bank of Florida which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  \_\_\_\_\_

NO  ✓

22.     Was there negligence on the part of Compagnie Bancaire Espirito Santo, S.A. which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  \_\_\_\_\_

NO  ✓

23.     Was there negligence on the part of Ricardo Espirito Santo Salgado which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  \_\_\_\_\_

NO  ✓

A TRUE COPY
CERTIFICATION ON LAST PAGE.
HARVEY RUVIN, CLERK

24.   Was there negligence on the part of Jackson Behr Gilbert which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  _____

NO  ___✓___

25.   Was there negligence on the part of Robert Stewart which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  _____

NO  ___✓___

26.   Was there negligence on the part of Fernando Espirito Santo which was a legal cause of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s damages?

YES  _____

NO  ___✓___

*If you answered no to Questions 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26, please proceed to Question 28. If you answered yes to any of Questions 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 or 26, please proceed to Question 27.*

A TRUE COPY
CERTIFICATION ON LAST PAGE.
HARVEY RUVIN, CLERK

27.   State the percentage of any negligence, which was a legal cause of damages to Plaintiff Banco Espirito Santo, S.A. (Nassau Branch), that you charge to:

| | |
|---|---|
| Defendant BDO Seidman | _____ % |
| Plaintiff Banco Espirito Santo, S.A. (Nassau) | _____ % |
| Victor Balestra | _____ % |
| Bernard Mollet | _____ % |
| Pierre Trezzini | _____ % |
| Joaquim Garnecho | _____ % |
| Espirito Santo Bank of Florida | _____ % |
| Compagnie Bancaire Espirito Santo, S.A | _____ % |
| Ricardo Espirito Santo Salgado | _____ % |
| Jackson Behr Gilbert | _____ % |
| Robert Stewart | _____ % |
| Fernando Espirito Santo | _____ % |

**Total must be 100%**

A.TRUE COPY
CERTIFICATION ON LAST PAGE.
HARVEY RUVIN, CLERK

28. What is the total amount (100%) of damages sustained by Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)?

Total damages of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch) $ _30,000,000 $ $\frac{00}{}$

_____

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Plaintiff Banco Espirito Santo, S.A. (Nassau Branch) or the above-listed non-parties. If you have found Plaintiff Banco Espirito Santo, S.A. (Nassau Branch) or any non-party negligent in any degree, the court in entering judgment will reduce Plaintiff Banco Espirito Santo, S.A. (Nassau Branch)'s total amount of damages determined by you in Question 28 by the percentage of negligence which you found is chargeable to Plaintiff Banco Espirito Santo, S.A. (Nassau Branch) or any non-party.

29. Under the circumstances of this case, state whether you find Plaintiffs are entitled to punitive damages against Defendant BDO Seidman.

YES ___✓___

NO _____

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

SO SAY WE ALL, this __13__ day of _August_ , 2007

_Nancy E. Hammil_
Foreperson

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original an file in this office. _____ AU /_ 0 7
HARVEY RUVIN, Clerk of Circuit and County Courts

Deputy Clerk _____

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR    MIAMI-DADE    COUNTY,
FLORIDA

GENERAL JURISDICTION

BANCO ESPIRITO SANTO
INTERNATIONAL, LTD.,
ESB FINANCE, LTD. and BANCO
ESPIRITO SANTO, S.A. (NASSAU
BRANCH),

        Plaintiffs,

vs.

BDO SEIDMAN, LLP

        Defendant,

_____/

CASE NO.:  04-14009 CA 31

FILED
2007 AUG 14  PH 6:41

## **VERDICT FORM**

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

EXHIBIT
tabbies
I

We, the jury, return the following verdict:

1.    What is the total amount of punitive damages, if any, which you find, by the greater weight of evidence, should be assessed against Defendant BDO Seidman?

$ _351,689,343 . 00_____

If you elect not to assess punitive damages against Defendant BDO Seidman, you should enter a zero (0) as the amount of damages, and sign and date the verdict form.

SO SAY WE ALL, this _14_ day of _August_, 2007

_Nancy E. Hammuel_
Foreperson

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office. _Aug 14_ AD 20__
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____
_J/73_

IN THE DISTRICT COURT OF APPEAL OF FLORIDA
THIRD DISTRICT

---

### CASE NO. 3D07-599

---

## BANCO ESPIRITO SANTO INTERNATIONAL, LTD., ESB FINANCE, LTD. and BANCO ESPIRITO SANTO, S.A. (Nassau Branch),

Appellants,

vs.

## BDO INTERNATIONAL, B.V.,

Appellee.

---

Appeal from a Final Judgment of
the Circuit Court of the Eleventh Judicial
Circuit in and for Miami-Dade County, Florida
Lower Court No. 04-14009 CA 31

---

### APPELLEE'S ANSWER BRIEF

---

KEVIN W. GOERING
Sheppard, Mullin, Richter &
Hampton LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112
Tel: 212.332.3800
Fax: 212.332.3888
Of Counsel

MARK F. RAYMOND, P.A.
RHETT TRABAND, P.A.
Broad and Cassel
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.373.9400
Counsel for the Appellee



EXHIBIT
J

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

STATEMENT OF THE CASE ............................................................. 1

STATEMENT OF THE FACTS ........................................................... 4

SUMMARY OF ARGUMENT ............................................................. 7

ARGUMENT ..................................................................................... 9

I.   THE COURT PROPERLY GRANTED A DIRECTED
     VERDICT FOR BDO INTERNATIONAL ................................... 9

A.   Appellants Failed to Present Any Evidence that BDO
     International Acknowledged that BDO Seidman Was Its Agent
     and that BDO Seidman Accepted the Undertaking........................ 10

B.   Appellants Presented No Evidence that BDO International
     Exercised Day-to-Day Control over BDO Seidman ....................... 13

     1.   The Contractual Guidelines on the Use of the BDO Name
          Do Not Demonstrate Control .................................................. 20

     2.   BDO International's Audit Manuals Did Not Apply
          to the Bankest Audits ............................................................ 23

     3.   BDO International Does Not Play Any Role in BDO
          Seidman's Employment Decisions .......................................... 24

     4.   BDO International's Conditional Right to Terminate
          a Member Firm Does Not Demonstrate Control....................... 25

     5.   There is No Evidence that BDO International Could
          or Did "Manage and Control" BDO Seidman .......................... 26

     6.   The Trial Court Properly Ruled on the Agency Issue
          Which Was a Question of Law ................................................ 27

C.   The Jurisdictional Order is Not Dispositive of the Agency Issue..... 28

i

# TABLE OF CONTENTS
## (continued)

Page

    1.   The Extensive Litigation Subsequent to the Jurisdictional Order Illustrates the Lack of Merit in Appellants' Argument................................................................................ 29

    2.   Because the Jurisdictional Order is Non-final and Based on a Limited Record, it Does Not Constitute a Final Determination on the Merits ...................................................... 29

D.   The Trial Court Properly Granted the Directed Verdict as There Was No Credibility Issue for a Jury to Resolve...................... 31

CONCLUSION    ......................................................................................... 33

CERTIFICATE OF SERVICE ............................................................. 34

CERTIFICATE OF COMPLIANCE ..................................................... 36

ii

# TABLE OF AUTHORITIES

CASES                                                       Page(s)

*Alberter v. McDonald's Corp.*, 70 F. Supp. 2d 1138 (D. Nev. 1999) ................... 25

*Alvarado v. Cisneros*, 919 So. 2d 585 (Fla. 3d DCA 2006) ................................... 30

*Amstar Ins. Co. v. Cadet*, 862 So. 2d 736 (Fla. 5th DCA 2003) ............................ 11

*Archdiocese v. Green*, 899 So. 2d 322 (Fla. 3d DCA 2004) ................................. 11

*Badillo v. Playboy Ent. Group*, 2006 U.S. Dist. LEXIS 17205 (M.D. Fla. 2006) . 10

*Bangkok Crafts v. Capitolo di San Pietro in Vaticano*,
2004 U.S. Dist. LEXIS 25235 (S.D.N.Y. 2004) ..................................................... 21

*BDO Int'l B.V. v. Banco Espirito Santo Int'l, Ltd.*,
911 So. 2d 1246 (Fla. 3d DCA 2005) ...................................................................... 3

*Brinkley v. Brinkley*, 453 So. 2d 941 (Fla. 4th DCA 1984) ................................... 10

*Brooks v. Re/Max International*, 865 N.E.2d 252 (Ill. Ct. App. 2007) .................. 21

*Buhler v. Travelers Indem. Co.*, 174 So. 2d 59 (Fla. 3d DCA 1965) ...................... 9

*Dalia v. Electronic Realty Assocs.*, 629 So. 2d 1075 (Fla. 3d DCA 1994) ............ 27

*Deutsche Credit Corp. v. Gale Group*, 616 So. 2d 469 (Fla. 5th DCA 1993) . 13, 15

*Dev. Corp. v. WBC Constr.*, 925 So. 2d 1156 (Fla. 4th DCA 2006) ...................... 14

*Dinaco v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003) ..................................... 21

*Emery v. Visa Int'l Ass'n*, 95 Cal. App. 4th 952 (Cal. Ct. App. 2002) .................. 21

*Enic v. F.F. South Co.*, 870 So. 2d 888 (Fla. 5th DCA 2004) ........................... 12-14

*Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143 (Fla. 3d DCA 2007) ................. 14-15

iii

*Gillet v. Watchtower Bible & Tract Soc'y*, 913 So. 2d 618 (Fla. 3d DCA 2005)... 17

*Goldschmidt v. Holman*, 571 So. 2d 422 (Fla. 1990) ......................................... 7, 10

*In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002) ....... 19

*In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................... 18-19

*In re Royal Ahold N.V. Secs. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ......................................................................... 19

*In re Royal Dutch/Shell Transp. Secs. Litig.*, 380 F. Supp. 2d 509 (D.N.J. 2005). 19

*Ins. Co. v. American Marine Holdings*,
2005 U.S. Dist. LEXIS 39707 (M.D. Fla. 2005) ............................................... 15, 17

*Johnson Constr. Mgmt. v. Lopez*, 902 So. 2d 206 (Fla. 3d DCA 2005) ................ 10

*Keys Jeep Eagle v. Chrysler Corp.*, 897 F. Supp. 1437 (S.D. Fla. 1995)............... 27

*Klak v. Eagles' Reserve Homeowners' Ass'n*,
862 So. 2d 947 (Fla. 2d DCA 2004) .................................................................... 29-30

*Laborers' Int'l Union v. Rayburn Crane Serv., Inc.*,
559 So. 2d 1219 (Fla. 2d DCA 1990) ..................................................................... 14

*Ladner v. Plaza Del Prado Condo. Ass'n*, 423 So. 2d 927 (Fla. 3d DCA 1982).... 29

*Machtinger v. Inertial Airline Servs.*, 937 So. 2d 730 (Fla. 3d DCA 2006) .......... 30

*Madio Group v. Shores*, 897 F. Supp. 1408 (M.D. Fla. 1995) ............................... 27

*Metropolitan Dade County v. Glaser*, 732 So. 2d 1124 (Fla. 3d DCA 1999).. 13, 27

*Nazworth v. Swire Florida, Inc.*, 486 So. 2d 637 (Fla. 1st DCA 1986) ........... 16, 17

*Oberlin v. Marlin American Corp.*, 596 F.2d 1322 (7th Cir. 1979) ................. 21-22

iv

*Ortega v. General Motors Corp.*, 392 So. 2d 40 (Fla. 4th DCA 1980)............ 15, 17

*Pardo v. Tanning Research Lab.*, 996 F. Supp. 1222 (M.D. Fla. 1998) ........... 10-11

*Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026 (Fla. 4th DCA 1994) ................ 16

*Philadelphia Indem. Ins. Co. v. Kohne*, 294 F. Supp. 2d 1319 (M.D. Fla. 2003) .. 12

*Samra v. Shaheen Bus. & Inv. Group*, 355 F. Supp. 2d 483 (D.D.C. 2005) .......... 27

*State v. American Tobacco Co.*,707 So. 2d 851 (Fla. 4th DCA 1998)................ 7, 13

*Teachers' Retirement Sys. v. A.C.L.N., Ltd.*,
2003 WL 21058090 (S.D.N.Y. 2003) ..................................................................... 18

*Theo. Hirsch Co. v. Scott,* 100 So. 157 (Fla. 1924) ................................................. 30

*United States Olympic Comm. v. Intelicense Corp.*,
737 F.2d 263 (2d Cir. 1984)..................................................................................... 22

*Vasquez v. Bd. of Regents*, 548 So. 2d 251 (Fla. 2d DCA 1989)............................ 14

*Villazon v. Prudential Health CarePlan, Inc.*, 843 So. 2d 842 (Fla. 2003)............ 27

*Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002)..................................................... 30

*Wood v. Shell Oil Co.*, 495 So. 2d 1034 (Ala. 1986)............................................... 18

*XL Vision, LLC v. Holloway*, 856 So. 2d 1063 (Fla. 5th DCA 2003) .................... 30

*York Div., Borg-Warner Corp. v. United Ass'n of Journeymen and Apprentices.*,
473 F. Supp. 896 (S.D. Fla. 1979) ........................................................................... 25

## INTRODUCTION

Appellants seek review of a judgment in BDO International's favor following the lower court's grant of a motion for directed verdict. Appellants primarily argue that there was sufficient evidence from which a jury could conclude that BDO International was vicariously liable for audits performed by its purported agent, BDO Seidman. The court's grant of a directed verdict, however, was proper in all respects as Appellants failed to present evidence that BDO Seidman was BDO International's agent. In addition to the absence of such evidence, extensive precedent compelled the entry of the directed verdict.

It is undisputed that the plaintiffs must prove three elements to demonstrate actual agency, yet Appellants failed to muster sufficient evidence to prove *any* of those three elements. And, Appellants' suggestion that the lower court's finding of personal jurisdiction over BDO International somehow has a preclusive effect on the ultimate issue in the case lacks merit and runs counter to the proceedings in the litigation below and to law.

## STATEMENT OF THE CASE

Appellants are several related financial institutions that invested in E.S. Bankest L.C. ("Bankest"), which was a factoring company located in Miami. RLXVII-13402, 13404 (First Amended Complaint ¶¶10-12, 18). BDO Seidman, a

1

New York Limited Partnership, audited Bankest's financial statements for the years 1998 through 2002.    Appellee BDO International is a Netherlands corporation located in Brussels, Belgium.    RCLVII-51 (P.M.)/Appellants' Appendix (hereinafter "A") 7-125.[1]

Appellants sued BDO Seidman and BDO International and alleged that, among other claims, BDO Seidman committed malpractice when performing the Bankest audits.    RI-48 (Complaint). Bankest had been a massive fraud and its principals faked hundreds of millions of dollars in financial records. Appellants sought to hold BDO International vicariously liable for BDO Seidman's alleged malpractice, based upon a purported principal/agent relationship.

BDO International moved to dismiss the Complaint based upon lack of personal jurisdiction. RIII-403.  The court denied the motion, finding there was an "expectation that BDO [International] could be haled into the State of Florida to answer for the allegations against its underlings" and that "BDO [International] does general business within the State [ ] through its entity, [BDO] Seidman." RVIII-1552-53/A2-4 (the "Jurisdictional Order").  This Court affirmed the

---

[1]    Appellee BDO International, B.V. is now known as BDO Global Coordination B.V., but the name change is not material to this Appeal. RCLVII-9/A7-83 (P.M.).

2

Jurisdictional Order *per curiam* without opinion. *See BDO Int'l B.V. v. Banco Espirito Santo Int'l, Ltd.*, 911 So. 2d 1246 (Fla. 3d DCA 2005).

BDO International also moved to dismiss the Complaint for failure to state a cause of action. RX-1952. BDO International's motion to dismiss was converted into a motion for judgment on the pleadings. RXII-2355. Though the court denied that motion it strictly limited Appellants' claim against BDO International to "a theory of actual agency." RXIX-3561.

After entry of the Jurisdictional Order and even after its affirmance, the parties actively litigated the agency issue, conducting discovery on the issue and readying the case for trial. RLXVII-13453, 13457 (Notice of Taking Deposition of BDO International); RLXX-14115, 14118 (Sixth Request for Production); RLXXXI-17062, 17065 (Request for Production); RCX-21725 (Response to Requests for Admission).[2]

There were two separate trials involving Appellants' claims. On January 16, 2007, the first trial commenced against BDO International and BDO Seidman. Appellants completed their case-in-chief in five weeks, at which time the court

---

[2]    Indeed, Appellants submitted proposed jury instructions that included an instruction on agency. RCXIX-23514.

3

granted BDO International's motion for a directed verdict. RCXXIV-24457; RCXLI-27249-50/A1-1-2. The court prefaced its ruling by stating:

> the Court having reviewed the Motion for Directed Verdict, the Response filed by all the Plaintiffs, having listened to the evidence, having reviewed the case law that has been submitted by the parties, having conducted its own research regarding the agency issue in Florida, having taken the evidence in the light most favorable to the Plaintiffs . . . ."

RCXLI-27249-50/A1-1-2. The court concluded that "Plaintiffs failed to introduce evidence establishing the elements of its claim against BDO International. Therefore, there is insufficient evidence to raise a question of fact to be presented to the jury." RCXLI-27250/A1-2.

Shortly after entry of the directed verdict, the court granted BDO Seidman's motion for mistrial because counsel for Appellants violated a pre-trial evidentiary order. RCLXV-5-8. Thereafter, a new trial was commenced in which BDO International did not participate. RCLVI-5. That trial resulted in the verdicts that are being appealed by BDO Seidman and cross-appealed by Appellants in a separate appeal to this Court under Case number 3D07-2746.

## STATEMENT OF THE FACTS

BDO International submits these additional facts because they are necessary to place Appellants' facts into proper context or to correct Appellants' assertions about the evidence.

4

BDO International coordinates the activities of member accounting firms in the global network. RCLVII-49/A7-123. All of the member firms bear the name BDO in some form or fashion. RCLVII-49-50/A6-27-28. During the relevant time period, BDO International employed a maximum of only ten employees and there were approximately 90 member firms in the network. RCLVII-51/A7-125.

BDO International does not perform audits or accounting services. RCLVII-53/A7-127. Accordingly, BDO International performed no auditing or accounting services for Bankest. *Id.* Member firms do not need to consult with BDO International before choosing to perform services for a client. RCLVII-58/A7-132. In short, BDO International had nothing to do with the Bankest audits. RCXLIV-75 (P.M.) (BDO Seidman auditor admits that BDO International did not instruct him how to audit Bankest); RCLVI-25 (P.M.) (same).

BDO International plays no role in the hiring or firing of BDO Seidman employees. RCLVII-54-55/A7-128-29. BDO International plays no role in determining the compensation of BDO Seidman employees. RCLVII-58/A7-132.

BDO International does not and could not control the day-to-day activities of the 90 member firms and their nearly 25,000 employees. RCLVII-51, 56-57/A6-29, 34-35; RCLVII-61/A7-135. BDO International's international secretary, Paul

van Elten, testified: "How on earth would you be able to do that with 10 people? Really, it's – I cannot – it's physically impossible." RCLVII-61/A7-135.

To join the network, each member firm must execute a Member Firm Agreement ("MFA") which permits the firm to use the BDO name and logo. RCLVII-52/A6-30. The MFA also provides that "[n]othing in this Agreement shall create, or be deemed to create, a partnership or a joint venture between" BDO International and any member firm, including BDO Seidman. Trial Exhibit 1487 at §21.2/A11-188.

Member firms are also provided access to software and BDO International's "technical manuals." Trial Exhibit 1487 at §3.1/A11-164. Pursuant to the MFA, member firms are only required to adhere to the "technical manuals" when conducting "Inward Referred Work [or] Transnational Audits." Trial Exhibit 1487 at §9.1/A11-173. BDO International's International Audit Manual is a "technical manual" as defined by the MFA and, therefore, the standards therein applied only during Inward Referred Work or Transnational Audits. *Id.* §1.1/A11-160. The Bankest audits were not Inward Referred Work or Transnational Audits. RCLVII-54/A7-128.

6

## SUMMARY OF ARGUMENT

The lower court correctly granted BDO International's Motion for Directed Verdict because, even after crediting Appellants with all reasonable, non-speculative inferences, Appellants failed to present sufficient evidence such that any jury could find that BDO Seidman acted as BDO International's agent in performing the Bankest audits.

It is undisputed that the elements of actual agency are: (1) acknowledgement by the principal of the agency relationship; (2) acceptance by the agent of the undertaking; and (3) significant control by the principal over the agent's operations. *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990); *State v. American Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998). BDO International is not vicariously liable for any actions by BDO Seidman, one of the many independent member firms in the international network of accounting firms, because there is no evidence to support any of the three elements necessary to prove actual agency.

Appellants failed to adduce evidence demonstrating the critical acknowledgement and acceptance elements of the actual agency test. Appellants did not present any evidence that BDO International acknowledged that BDO Seidman would act as its agent when performing any audits including the audits at

7

issue. And, Appellants did not present evidence that BDO Seidman agreed to act as BDO International's agent when auditing Bankest.

BDO International does not exercise or possess the right to exercise the type of significant day-to-day control over BDO Seidman required to be deemed its domineering principal. Appellants misread the documents reflecting the relationship between BDO International and BDO Seidman in an attempt to demonstrate controls that do not exist. Moreover, in similar circumstances, numerous courts correctly held that the contractual relationships similar to the relationship between BDO International and the member accounting firms does not evidence control of an agent by its principal.

Similarly, BDO International's licensing of the BDO brand name to BDO Seidman and the accompanying guidelines for the presentation of the BDO name do not create an agency relationship. Contrary to Appellants' argument, BDO Seidman was not obligated to use BDO International's audit manuals when auditing Bankest and, indeed, the limited application of those manuals reflects BDO International's inability to control the means by which BDO Seidman conducts its business. Likewise, the MFA and BDO International's Articles of Association do not support the notion that BDO International controls BDO

8

Seidman. In sum, the relationship between BDO International and BDO Seidman does not bear any indicia of a principal-agent relationship.

Equally devoid of merit is Appellants' argument that this Court decided the agency issue when it affirmed the Jurisdictional Order *per curiam* without written opinion. The lower court's interlocutory finding on personal jurisdiction has no preclusive effect on BDO International's defense. Indeed, the parties litigated the agency issue through trial. Appellants did not raise this argument below.

Finally, the trial court did not weigh the evidence in BDO International's favor, rather there was no evidence to support a verdict for Appellants. Accordingly, the judgment should be affirmed.

## ARGUMENT

### I. THE COURT PROPERLY GRANTED A DIRECTED VERDICT FOR BDO INTERNATIONAL

Appellants correctly note that the Court is to review a directed verdict carefully and it must credit Appellants with all "reasonable inferences" from the evidence. However, as this Court noted long ago: "[i]t is not a question of whether any evidence is submitted . . . . The test is whether or not it is sufficient to convince the jury of the truth of the cause of action . . . ." *Buhler v. Travelers Indem. Co.*, 174 So. 2d 59, 60 (Fla. 3d DCA 1965). Moreover, courts should not

9

credit evidence or inferences therefrom that are speculative or hypothetical. *See Johnson Constr. Mgmt. v. Lopez*, 902 So. 2d 206, 209-10 (Fla. 3d DCA), *rev. denied*, 914 So. 2d 953 (Fla. 2005) (reversing and instructing trial court to grant directed verdict); *Brinkley v. Brinkley*, 453 So. 2d 941, 943-44 (Fla. 4th DCA 1984).

**A.    Appellants Failed to Present Any Evidence that BDO International Acknowledged that BDO Seidman Was Its Agent and that BDO Seidman Accepted the Undertaking**

After five weeks of trial, Appellants failed to introduce any evidence that would permit a jury to find in their favor on the first two elements of actual agency. The first two elements of actual agency are acknowledgement by the principal that the agent will act for it on a specific undertaking and the agent's acceptance of the assignment or agreement to act in that capacity. *Goldschmidt,* 571 So. 2d at 424 n.5; *see Pardo v. Tanning Research Lab.*, 996 F. Supp. 1222, 1225 (M.D. Fla. 1998)(applying Florida law).   Appellants offered no evidence from which any jury could conclude that BDO International acknowledged that BDO Seidman would act for it when BDO Seidman conducted the Bankest audits or any other audits. *See Badillo v. Playboy Ent. Group*, 2006 U.S. Dist. LEXIS 17205, at *30-31 (M.D. Fla. 2006) (granting summary judgment for alleged principal and finding it significant that agreement disclaimed relationship.)

10

Appellants primarily argue that the MFA reflects both the acknowledgement and acceptance elements. There is absolutely no support for this tortured reading of the MFA. Indeed, the MFA expressly disclaims a "partnership or joint venture" relationship. Trial Exh. 1487 at §21.2/A11-188. The MFA grants BDO Seidman the right to use certain of BDO International's intellectual property, such as the BDO name and logo. *Id.* at §3.1/A11-164. As such, BDO International and BDO Seidman do not have a franchisor-franchisee or parent-subsidiary relationship; instead the relationship is, at most, more akin to a licensor-licensee relationship.

The MFA is wholly insufficient to establish that BDO International acknowledged that BDO Seidman would act as its agent during any audits, including the Bankest audits. *See e.g. Archdiocese v. Green*, 899 So. 2d 322, 325 (Fla. 3d DCA 2004) (finding no agency relationship because principal did not authorize alleged agent to act for it); *Amstar Ins. Co. v. Cadet*, 862 So. 2d 736, 741-42 (Fla. 5th DCA 2003) (finding no actual agency because there was no acknowledgement that one party was authorized to accept premium payments as agent for another); *Pardo*, 996 F. Supp. at 1225 (granting summary judgment for alleged principal). The *Pardo* court noted: "Under Florida law, actual agency occurs when the principal *specifically* authorizes its agent to take *certain actions*." *Id.* (emphasis added). Thus, the principal's authorization must be specific and

11

must identify the metes and bounds of the agent's authority to act. Here, the MFA does not supply such authorization.

*Philadelphia Indem. Ins. Co. v. Kohne*, 294 F. Supp. 2d 1319 (M.D. Fla. 2003), is distinguishable and offers Appellants no support. There, the court determined that a rental car company that was expressly authorized to sell insurance policies offered by Philadelphia Indemnity was its agent. Thus, there was a specific identification by the insurance company of the explicit actions that the rental car company was permitted to take. Here, BDO Seidman does not sell BDO International's services; it sells its own services.

Likewise, *Enic v. F.F. South Co.*, 870 So. 2d 888 (Fla. 5th DCA 2004), does not support Appellants' argument because the court found there was no agency relationship between a parent and its wholly-owned subsidiary. The court found that the parent did not exercise day-to-day control over its subsidiary's project in Florida. *Id.* at 892. The court was not persuaded by the overlap of directors between the parent's board and the subsidiary's board, by the fact that the parent funded its subsidiary, or by its ability to control the disposition of the subsidiary's assets. *Id.*

Appellants were equally unsuccessful in establishing the second element of actual agency -- that BDO Seidman accepted an undertaking to act for BDO

12

International when conducting its audits of Bankest or any other audits. The record is devoid of any testimony on this essential aspect of actual agency.

Thus, no jury could conclude from the evidence that BDO Seidman accepted an undertaking to act on behalf of BDO International when conducting the Bankest audits. In fact, not one witness or document offered by Appellants provides a basis on which any jury could infer either the first or the second elements of actual agency. Appellants failed to show that BDO International acknowledged or that BDO Seidman accepted such an undertaking, accordingly, the court's entry of a directed verdict was proper.

**B.      Appellants Presented No Evidence that BDO International Exercised Day-to-Day Control over BDO Seidman**

Appellants also failed to introduce evidence establishing the third element of actual agency -- control by the principal over the day-to-day affairs of the agent. *See Metropolitan Dade County v. Glaser*, 732 So. 2d 1124, 1125 (Fla. 3d DCA 1999); *Deutsche Credit Corp. v. Gale Group, Inc.*, 616 So. 2d 469, 471-73 (Fla. 5th DCA 1993) (finding that the court should have directed verdict for alleged principal). To establish the control element, the plaintiff must demonstrate pervasive control by the principal over the agent's day-to-day operations. *Enic*, 870 So. 2d at 891; *American Tobacco*, 707 So. 2d at 855 (stating principal's control of its alleged agent "must be very significant.").

13

An agency relationship is established by showing "control or domination over the [agent's] every day affairs," neither of which is remotely borne out by the evidence concerning BDO International presented by Appellants. *See Vasquez v. Bd. of Regents*, 548 So. 2d 251, 254 (Fla. 2d DCA 1989)(finding no agency relationship as a matter of law when the alleged principal did not control the day-to-day operations of the alleged agent); *Dev. Corp. v. WBC Constr.*, 925 So. 2d 1156, 1162 (Fla. 4th DCA 2006) (holding that agency did not exist because the parent company did not have operational control over its subsidiary).   The governing principle is well-established:

> [T]he parent corporation, to be liable for its subsidiary's acts under the . . . agency theory, must exercise control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'

*Enic,* 870 So. 2d at 891 (quoting *Vantage View, Inc. v. Bali East Dev. Corp.*, 421 So. 2d 728 (Fla. 4th DCA 1982)); *see Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1146 (Fla. 3d DCA 2007)(quoting *Enic* with approval); *Laborers' Int'l Union v. Rayburn Crane Serv., Inc.*, 559 So. 2d 1219, 1223 (Fla. 2d DCA 1990) (finding parent did not "dominate" alleged agent's actions). This Court recognized that "having a unified or 'global' strategy and goals, cross-selling in promotional

materials, and performing services for one another" also does not establish control by the alleged principal. *Gadea*, 949 So. 2d at 1146.

In *Deutsche Credit Corp.*, the Fifth District Court of Appeal held that a directed verdict should have been entered in favor of an alleged principal because the evidence presented did not sufficiently establish control for the purposes of establishing an agency relationship. 616 So. 2d at 471-72. Despite a showing at trial that the alleged principal had some control over the alleged agent, such as being able to collect payments under a lease agreement and investigating and approving the alleged agent's business transactions, the court found the evidence did not demonstrate actual agency. *Id.* Critically, the court explained that agency was lacking because the alleged principal did not control the "means or method by which [the alleged agent] conducted its business." *Id.* at 472.

Significantly, the jury could not conclude from the evidence that BDO International controlled or could control the means by which BDO Seidman accomplished its task, namely the audits of Bankest's financial statements. *See Ins. Co. v. American Marine Holdings, Inc.*, 2005 U.S. Dist. LEXIS 39707, at *20 (M.D. Fla. 2005)(quoting *Ortega v. General Motors Corp.*, 392 So. 2d 40, 42 (Fla. 4th DCA 1980)). To the contrary, the evidence conclusively established that BDO Seidman retained complete control over the procedures used during the audits,

15

including the hiring and firing of any employees that worked on the audits. In fact, as explained by Mr. van Elten, it would have been impossible for BDO International, a company with only ten employees located in Brussels, Belgium, to control the day-to-day operations of over 90 member firms around the world.

*Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026 (Fla. 4th DCA 1994), cited by Appellants, is inapposite. There, Domino's required its franchisee to follow strict procedures set forth in what the court termed a "veritable bible." *Id.* at 1029. The court noted that the "veritable bible" contained twenty-four different elements of control. *Id.* at 1027-28. Notably and unlike this action, the franchisee was required to remit a set royalty to Domino's based on weekly sales. *Id.* And, Domino's instructed the *franchisee* how to make the pizza, again, an element of day-to-day control that BDO International did not possess. *Id.*

*Nazworth v. Swire Florida, Inc.*, 486 So. 2d 637 (Fla. 1st DCA 1986), is also inapposite. There, Swire, the alleged principal, owned a shopping center and employed a management company to manage the center. *Id.* at 638. Swire was sued in a wrongful death claim for acts committed by the center's security force. *Id.* at 637-38. Unlike this action, Swire specifically authorized the management company to hire security guards. *Id.* at 638. Moreover, the contract provided Swire with extensive controls over the management company, including the right to pay

16

bills, limitations on expenditures and on the choice of vendors used by the management company. *Id.* Similar control factors are not remotely present in this case.

In *Ortega,* a case that is far more pertinent than the cases cited by Appellants, the court found that General Motors was not liable as the principal of a retail dealer, even though there was an agreement with the dealer that:

> required [the dealer] to 1) obtain GMC's approval of the location and design of its premises; 2) remain open during [customary business hours] . . .; 3) follow a uniform system of accounting specified by GMC and make its records available for inspection by GMC at reasonable times . . .; 7) obtain needed service training for members of its service department provided by GMC; 8) refrain from engaging in fraudulent conduct in its dealings with the public.

*Ortega,* 392 So. 2d at 42. The court noted that plaintiff failed to present evidence that General Motors controlled the day-to-day operations of the dealer, an issue of the "greatest importance" to the control element. *Id.; see also Gillet v. Watchtower Bible & Tract Soc'y,* 913 So. 2d 618   (Fla. 3d DCA 2005)(upholding entry of summary judgment for defendant on the ground that no agency relationship existed because of defendant's lack of control over the alleged agent while she was engaging in proselytizing activities); *Ins. Co.,* 2005 U.S. Dist. LEXIS 39707, at *20.

17