

**ORDERED in the Southern District of Florida on April 06, 2010.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
(*www.flsb.uscourts.gov*)

| | |
|---|---|
| In re: | Chapter 11 |
| E.S. BANKEST, L.C., | Case No. 04-17602-BKC-AJC |
| Debtor,_____/ | |
| LEWIS B. FREEMAN, Responsible Officer for the Reorganized Debtor E.S. Bankest, L.C., a Florida limited liability corporation, | |
| Plaintiff, | Adv. Pro. No. 06-1220-BKC-AJC-A |
| vs. | |
| BDO SEIDMAN, LLP, BDO INTERNATIONAL B.V., and SANDOR LENNER, | |
| Defendants._____/ | |

**ORDER DENYING BDO INTERNATIONAL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

THE MATTER came before the Court on September 18, 2008 at 2:00 P.M. in Miami, Florida upon the Motion of Defendant BDO International, B.V. ("BDO International") for Partial Summary Judgment against Plaintiff Lewis B. Freeman ("Freeman" or "Plaintiff"), the Responsible Officer for the Reorganized Debtor E.S. Bankest, L.C. ("Bankest").  Defendant BDO International moved for Partial Summary Judgment on Plaintiff's claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., and federal securities laws Rule 10b-5 and 15 U.S.C. § 78j(b).  The Court has reviewed the relevant pleadings, the court file in this adversary proceeding and heard argument of counsel, and being fully advised in the premises, denies partial summary judgment on the undisputed facts as follows.

Plaintiff has withdrawn its federal securities law claim in light of the Supreme Court's decision, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761 (2008), leaving only the FDUTPA claim.  Similarly, at oral argument Defendant BDO International conceded several arguments it advanced in support of its FDUPTA claim, (Sept. 18, 2008 Hearing Tr. at 6-15), leaving only two issues:  (i) whether reliance is an element of a FDUPTA claim and (ii) whether the concededly false public statements made by BDO International are "puffery" and not misleading.  (Pl. Exh. N [2/20/07 a.m. Tr.] at 4842-44, 4850-52, 4857-59; Sept. 18, 2008 Hearing Tr. at 8, 11.)

*First*, reliance is not an element of a FDUPTA claim:  "A party asserting a deceptive trade practice need not show actual reliance on the representation or omission at issue." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-94 (Fla. 1st DCA 2000); *Gold Coast Racing, Inc. v. The Home Depot U.S.A, Inc.*, No. 05-61931-CIV, 2006 WL 4579688, at *2 (S.D.Fla. Feb. 6, 2006) ("a party asserting a deceptive trade practice claim need not show actual reliance on the

-2-

representation or omission at issue"); *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) ("A deceptive practice is one that is likely to mislead consumers," actual reliance is not required).  Rather, "because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice," the question is "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Davis*, 776 So. 2d at 973-94.  Accordingly, injury under FDUPTA is found when "the [defendant] made a misleading advertisement by making an offer or promise which the [defendant] did not intend to keep." *Stires v. Carnival Corp.*, No. 6:02-CV-542-ORL31JGG, 2003 WL 21356781, at *2 (M.D. Fla. Jan. 2, 2003).

*Second*, genuine issues of material fact preclude summary judgment on whether BDO International's admittedly false public statements "would be likely to deceive a consumer acting reasonably in the same circumstances" and therefore violate FDUPTA.  Here, BDO International stated publicly that it imposed "stringent conditions" on each member firm and that its structure ensured "strict quality control."  (Pl. Exh. A [1999 BDO International Annual Report] at 9; Pl. Exh. C [2001 BDO International Annual Report] at 3.)  However, the Plaintiff believes the evidence is that BDO International exercised *no* or minimal control.  BDO International's International Secretary, who was the person publicly identified to impose the "stringent conditions" and "strict quality control," testified that no such controls existed.  (Pl. Exh. N [2/20/07 a.m. Tr.] at 4842 ("Q. So one of the things that BDO International does is it manages and controls member firms such as BDO Seidman, right? A. Well, I don't think we do.").)

Where public statements—here regarding BDO International's "stringent" or "strict" controls—are met with evidence that those statements may be false—a genuine issue of material fact exists as to whether a reasonable consumer would be misled. *See Furmanite America, Inc.*

*v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1146-47 (M.D. Fla. 2007) (finding summary judgment inappropriate on FDUTPA claim where numerous issues of fact existed as to defendant's alleged hiring plan). Although BDO International relies on non-FDUPTA cases to argue that BDO International's statements are only puffery, even those cases recognize that factual assertions that are capable of measurement or provably false – like that controls existed – are not puffery. *Cook*, *Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

Still further, where an advertisement of quality control is made with no intention of keeping that promise, a FDUPTA claim is stated. *See, e.g.*, *Stires*, 2003 WL 21356781, at *2 (FDUTPA violated by offer or promise which the advertiser did not intend to keep); *see also Day v. Le-Jo Enterprises, Inc.*, 521 So. 2d 175, 178 (Fla. 3d DCA 1988) (reversing grant of directed verdict on FDUTPA claim where sufficient evidence existed that defendant made promises to plaintiff which it never intended to perform). Plaintiff presented testimony from BDO International that indicates that at the time the public statements were made, BDO International may well have known it did not have the ability to exercise any quality control over its member firms. Mr. van Elten stated that with only ten people, it was impossible for BDO International to impose such strict quality control on its member firms. (Pl. Exh. O [2/20/07 p.m. Tr.] at 4953.) A genuine issue of material fact is raised as to whether BDO International made statements it knew it could not fulfill, thereby violating FDUTPA.

As the United States District Court for the Southern District of New York held in reviewing these same public statements by BDO International and the same denials from Mr. van Elten,

> *Mr. van Elten's representations that BDO International B.V. is not involved in the activities of its Member Firms or the quality of their work, are explicitly contradicted by International's Annual Reports*. Indeed, these reports state that the responsibility for implementing International's quality control and training programs rests squarely in the International Office in Brussels and, even more particularly, with its Chief Executive Officer and its International Secretary, Paul van Elten. . . .
>
> * * * * *
>
> *[E]ither defendants are engaged in a global fraud by producing promotional materials that are a "pack of lies," or defendants are present in New York as part of a "single, closely intertwined network."*

*Teachers' Retirement System of LA v. A.C.L.N., Ltd.*, No. 01 Civ. 11814(MP), 2003 WL 21058090, at *1 n.4, *4 (S.D.N.Y. May 15, 2003). (citations omitted).

## SUMMARY

BDO International operates a network of BDO auditing firms worldwide. One of those member firms is BDO Seidman, which audited the debtor, Bankest. Freeman's claims include that BDO Seidman was grossly negligent in auditing Bankest and, at issue on this motion are the numerous public statements BDO International made concerning its oversight and control over its member firms, including BDO Seidman—statements which BDO International now admits were false. Despite their falsity, BDO International argues its public statements are not actionable under FDUPTA.

BDO International moved for partial summary judgment on Count III of Plaintiff's Complaint for violation of FDUTPA on several grounds. At the hearing BDO International conceded several of its arguments, leaving only its argument that BDO International's statements are not actionable under the FDUTPA because, in BDO International's words, they are merely "puffery" and its argument that reliance is an element of a FDUTPA claim for which Plaintiff

does not have evidence sufficient to create an issue of fact to defeat summary judgment. The Court finds against BDO International on both grounds and denies the motion.

## I.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), as incorporated by the Federal Rule of Bankruptcy Procedure 7056 and 9014(c), summary judgment shall be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2000) ("It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact."). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Id.* (citing *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)).

## II.    PLAINTIFF'S EVIDENCE THAT BDO INTERNATIONAL'S STATEMENTS TO THE PUBLIC WERE FALSE PRECLUDES SUMMARY JUDGMENT

Freeman's FDUTPA claim arises from BDO International's numerous statements to the public regarding its oversight and control of its member firms, including BDO Seidman. Freeman argues that BDO International's statements were false and they were in violation of FDUTPA, which prohibits "deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2); *Kia Motors America Corp. v. Butler*, 985 So. 2d 1133 (Fla. 3d DCA 2008). The statements at issue include the following:

- "The stringent conditions with which each member firm has to comply … are paramount. They not only guarantee that our high standards will be met…" (Pl. Exh. A [1999 BDO International Annual Report] at 9);

- BDO International personnel are "responsible for … implementing international quality control." (*Id.* at 8; Pl. Exh. B [2000 BDO International Annual Report] at 6 (same));

- "[T]he organisation's structure ensures strict quality control." (Pl. Exh. C [2001 BDO International Annual Report] at 3);

- "[W]e, at BDO International … ensure that we consistently provide the highest quality of professional services." (Pl. Exh. B [2000 BDO International Annual Report] at 3);

- "BDO firms are careful to adhere to strict quality criteria." (Pl. Exh. D [2002 BDO International Annual Report] at 2.)

- "Our audits are backed up by extensive experience and expertise and therefore add credibility to a client's financial statements." (Pl. Exh. A [1999 BDO International Annual Report] at 3; Pl. Exh. C [2001 BDO International Annual Report] at 5; Pl. Exh. B [2000 BDO International Annual Report] at 4.)

False statements made to the public will violate FDUPTA. *See, e.g., Stires*, 2003 WL 21356781, at *2 (FDUTPA violated by offer or promise which the advertiser did not intend to keep); *Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135, 1140-41 (Fla. 3d DCA 1989) (same). Here, Freeman argues that BDO International violated FDUPTA in making the above statements because BDO International did not and could not exercise any quality control over BDO Seidman, its member firm, and the statements therefore were false in violation of FDUTPA. The Court finds that Plaintiff's evidence creates a genuine issue of material fact as to whether BDO International engaged in a deceptive act or unfair practice when it made the statements.

Specifically, the Court finds Plaintiff's evidence creates a genuine issue of material fact as to whether BDO International could not and did not exercise the control it promised and advertised it had over BDO Seidman. For example, despite its promises, the undisputed evidence is that BDO International did nothing to keep its promise of "strict quality control." BDO International's secretary testified that, contrary to its public statements, BDO International

-7-

did not in fact manage or control its member firms.  (Pl. Exh. N [2/20/07 a.m. Tr.] at 4842-43 ("Q. So one of the things that BDO International does is it manages and controls member firms such as BDO Seidman, right? A. Well, I don't think we do.").)  BDO International also states that because it has only ten people working for it, it could not exercise the very strict quality control it stated it had over its member firms.  (Pl. Exh. O [2/20/07 p.m. Tr.] at 4953 ("Q. How on earth would you be able to [have day-to-day control over member firms] with 10 people?  Really, it's – I cannot -- it's physically impossible").)

This evidence is sufficient to show that BDO International misrepresented the nature of control and oversight it performed over BDO Seidman, a violation of FDUTPA.  *See Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451 (Fla. 1st DCA 1985) (reversing directed verdict on FDUTPA claim when evidence that defendant made a false statement); *Dept. of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 643 So. 2d 22 (Fla. 4th DCA 1994) (citing with approval for FDUTPA application *Peacock Buick, Inc*., 86 F.T.C. 1532, 1545 (1975) where court held misrepresentations and failure to disclose relevant and material facts were unfair and deceptive acts).

Indeed, BDO International does not deny the falsity of these statements.  Instead, BDO International argues that its statements about its control over BDO Seidman are merely "puffery," are not capable of measurement, and as such cannot be the basis of a FDUTPA claim.  (Sept. 18, 2008 Hearing Tr. at 10-13.)  In arguing that these statements are inactionable puffery, BDO International relies on *Cook*, *Perkiss and Liehe*, 911 F.2d 242, a federal case concerning actionable statements under the Lanham Act.[1]  The Court finds *Cook* unpersuasive.

---

[1] BDO International also cites several cases which do not concern false statements and are inapplicable.  *See Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So. 2d 1256, 1263 (Fla. 3d DCA

-8-

First, there is no FDUTPA claim in *Cook*. Putting that aside, the distinction the *Cook* court makes between puffery or nonactionable statements and actionable statements clearly supports a finding that BDO International's statements were not puffery as Defendant claims. The statements at issue in *Cook*, made by the defendant collection agency, were that the defendant was "the low cost commercial collection expert." *Id.* at 246. The plaintiff claimed the deception was that the defendant was claiming it was superior to attorneys who offered the same service. *Id*. The Court held that "advertising which merely states in general terms that one product is superior to another is not actionable" in contrast to statements which included "specific factual assertions." *Id*.

Here, BDO International's statements are specific factual assertions capable of measurement as defined in *Cook*. Indeed, the question is simply whether BDO International exercised the control it promised. Plaintiff submits evidence that BDO International did not – and by admission could not – provide *any* or at best minimal quality control. (Pl. Exh. O [2/20/07 p.m. Tr.] at 4953; Pl. Exh. N [2/20/07 a.m. Tr.] at 4842-44.) BDO International also attempts to distinguish between statements of fact versus opinion and argues that BDO International's statements were merely inactionable opinions. (Sept. 18, 2008 Hearing Tr. at 6-14.) The cases are clear, however, that the test under FDUPTA is whether the defendant "made an allegedly misleading advertisement by making an offer or promise which the advertiser did not intend to keep." *Stires*, 2003 WL 21356781, at *2 (FDUTPA violated by offer or promise which the advertiser did not intend to keep); *Izadi*, 550 So. 2d at 1140-41 (same); *see also PNR, Inc. v. Beacon Prop. Mgt., Inc*., 842 So. 2d 773, 777 (Fla. 2003) (holding that the statute "applies

---

2000) (statement not false); *Pappas v. Frank Azar & Assoc., P.C.*, 2007 WL 2683549 (D. Colo. Sept. 7, 2007) (statements not false).

-9-

to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single practice"). The Court finds that Plaintiff's evidence both that BDO International did not and could not exercise the control it promised, allegedly rendering BDO International's statements a "deceptive practice" under FDUPTA, is a question of fact precluding entry of summary judgment.

### III.   PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE THAT BDO INTERNATIONAL'S FAILURE TO EXERCISE CONTROL CAUSED PLAINTIFF'S DAMAGES

#### A.   Reliance Is Not An Element of a FDUTPA Claim.

BDO International next argues that FDUTPA requires Plaintiff to prove reliance and that summary judgment should therefore be granted on causation and damages. Florida courts are clear, however, that reliance is not an element of a FDUTPA claim:

> A party asserting a deceptive trade practice need not show actual reliance on the representation or omission at issue. . . . That is so because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.

*Davis*, 776 So. 2d at 973-94; *Gold Coast Racing*, 2006 WL 4579688, at *2 ("a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue"); *Bookworld Trade*, 532 F.Supp.2d at 1364 ("A deceptive practice is one that is likely to mislead consumers," actual reliance is not required). In the same vein, a plaintiff is not required to prove fraud to assert a FDUTPA claim. *Urling*, 468 So. 2d at 453 ("A finding of fraud, however, is not necessary to sustain a violation under the [FDUTPA]."); *Bookworld Trade*, 532 F.Supp.2d at 1364; *Gold Coast Racing*, 2006 WL 4579688, at *2.

> **B.    Plaintiff Has Presented Sufficient Evidence that BDO International's Failure to Exercise Its Control over BDO Seidman Damaged Plaintiff.**

Freeman also has presented sufficient evidence to indicate that BDO International's exercise of oversight, or lack thereof, over BDO Seidman damaged Plaintiff.  Plaintiff has presented evidence demonstrating that BDO Seidman may have conducted grossly negligent audits that were not in accordance with Generally Accepted Auditing Standards ("GAAS") and that violated BDO International and BDO Seidman's audit manuals.  *See* (Pl. Exh. G [Phase I Verdict Form]; Pl. Exh. H [Phase II Verdict Form].)  As a result of BDO's grossly negligent audits, Freeman claims actual damages, including the fees paid to BDO.  *See, e.g.*, *Urling*, 468 So. 2d at 455 (damages recoverable under FDUTPA include the "diminished value of the goods or services received").

In addition, Freeman has presented evidence that the audits performed failed because BDO International did nothing to "strictly control" the audit of Bankest as promised, including BDO International's failure to make sure BDO Seidman followed the BDO audit manuals.  As a result of BDO International's failures, BDO Seidman departed from GAAS and its own audit manual and the fraud was never discovered.

For example, in the very first audit of Bankest, BDO Seidman's audit manager requested documents required by GAAS, BDO International's and BDO Seidman's audit manuals which would have revealed the fraud.  (Pl. Exh. L [Rivera Aff.]; Pl. Exh. Q [4/17/07 a.m. Tr.] at.1099-1118; Pl. Exh. M [2/6/07 p.m. Tr.] at 3452-57, 3462.)  BDO Seidman departed from GAAS and the audit manuals by going forward with the audits without these documents.  (Pl. Exh. R [4/19/07 p.m. Tr.] at 1713-14, 1744-55 ("Q. So in that case, if Mr. Rivera had treated Bankest Capital checks as customer checks, BDO Seidman would have violated [GAAS], their own audit

-11-

manual, and their own procedures set out in C-10?  A. Yes.").)  Because of this violation, the Capital Officers were able to grow the fraud.  (Pl. Exh. P [4/16/07 a.m. Tr.] at 891-92.)

Thus, Freeman's evidence of causation demonstrates that if BDO International would have kept its promise of strict oversight over BDO Seidman, the fraud may have been stopped. As BDO Seidman's lead audit partner admitted:

> Q. In fact, there were thousands and thousands of fake transactions over seven years, year after year after year after year, right?
>
> A. That's what I've learned during the course of this trial and other proceedings, correct.
>
> Q. And to find the fraud, you only had to find one fake one, right?
>
> A. Yes.

(Pl. Exh. S [5/4/07 a.m. Tr.] at 3239.)  This evidence creates a genuine issue of material fact whether BDO International's allegedly false statements caused damage to Bankest.  Thus, the motion for summary judgment is denied on this ground as well.

Accordingly, based upon the foregoing facts of record and conclusions of law, it is

ORDERED and ADJUDGED that BDO International's Motion for Summary Judgment is DENIED.

# # #

<u>Submitted by</u>:
Allison R. Day, Esq.
GENOVESE JOBLOVE & BATTISTA, P.A.
*Attorneys for Plaintiff, Lewis B. Freeman*
100 S.E. Second Street, 44th Floor
Miami, Florida  33131
Telephone No. (305)349-2300
Facsimile No. (305) 349-2310

[Attorney Allison R. Day, Esq. is directed to serve a conformed copy of this Order on all parties in interest]